No. 23-3214

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

*v.*

YASIEL PUIG VALDES,
*Defendant-Appellee.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
DISTRICT COURT NO. CR 22-394(A)-DMG*

## EXCERPTS OF RECORD
## VOLUME II OF II

E. MARTIN ESTRADA
United States Attorney

BRAM M. ALDEN
Assistant United States Attorney
Chief, Criminal Appeals Section

RAJESH R. SRINIVASAN
Assistant United States Attorney
Criminal Appeals Section

1000 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-3898/7416
Email: bram.alden@usdoj.gov
        rajesh.srinivasan@usdoj.gov

Attorneys for Plaintiff-Appellant
UNITED STATES OF AMERICA

ER 12

Case 2:22-cr-00394-DMG   Document 1   Filed 08/29/22   Page 1 of 6   Page ID #:1

```
                                              FILED
                                    CLERK, U.S. DISTRICT COURT

                                    8/29/2022

                                    CENTRAL DISTRICT OF CALIFORNIA
                                    BY: ____JB____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No.  2:22-cr-00394-JLS |
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1001(a)(2): Making False Statements] |
| YASIEL PUIG VALDES, | |
| Defendant. | |

The Acting United States Attorney charges:

[18 U.S.C. § 1001(a)(2)]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   Defendant YASIEL PUIG VALDES was a professional baseball player who played for the Los Angeles Dodgers between 2013 and 2018. The Dodgers traded defendant PUIG to the Cincinnati Reds in December 2018, and the Reds traded defendant PUIG to the Cleveland Indians on July 31, 2019.  As of June 2022, defendant PUIG played for the Kiwoom Heroes of the Korean Baseball Organization League, based in South Korea.

2.   The Department of Homeland Security, Homeland Security Investigations ("HSI") and the Internal Revenue Service – Criminal

1  Investigation Division ("IRS-CI") in Los Angeles and the United

2  States Attorney's Office ("USAO") for the Central District of

3  California were conducting a federal criminal investigation into

4  federal crimes, including illegal sports gambling and money

5  laundering (the "Federal Investigation").

6       3.    The operation of a sports gambling business in California

7  was prohibited by 18 U.S.C. § 1955 and California Penal Code § 337a.

8              <u>The Wayne Nix Illegal Sports Gambling Business</u>

9       4.    Wayne Nix was a resident of Orange County, California.  Nix

10  was a minor league baseball player from 1995 to 2001.

11       5.    Sometime after 2001, Nix began operating an illegal

12  bookmaking business in the Los Angeles area that accepted and paid

13  off bets from bettors in California and elsewhere in the United

14  States based on the outcomes of sporting events at agreed-upon odds

15  (the "Nix Gambling Business").  Through contacts he had developed

16  during his own career in professional sports, Nix created a client

17  list of current and former professional athletes, and others.

18       6.    Nix used agents to place and accept bets from others for

19  the Nix Gambling Business, thus expanding the business.

20       7.    Sand Island Sports operated Internet sports gambling

21  websites, including www.sandislandsports.com and www.betprestige.com

22  (hereinafter, the "Sand Island Sports websites"), hosted on servers

23  primarily located outside the United States.  Sand Island Sports also

24  operated toll-free telephone services (the "call center") to

25  facilitate sports betting.  The Sand Island Sports websites and call

26  center facilitated unlawful sports gambling by providing a platform

27  to book makers to track bets placed by their clients.

28

8.   Agent 1 was a former collegiate baseball player and a private baseball coach.  Beginning in 2019, Agent 1 worked for the Nix Gambling Business as an agent.  Agent 1 placed and accepted bets from others and helped Nix maintain the Nix Gambling Business by, among other things, demanding and collecting money owed to the Nix Gambling Business by bettors and others.

9.   As part of the Nix Gambling Business, Nix and Agent 1 used the Sand Island Sports websites and call center to create accounts through which wagers would be placed and tracked, and to set credit limits for bettors.

10.  Nix provided bettors with account numbers and passwords for the Sand Island Sports websites and directed the bettors to use the Sand Island Sports websites to place bets with the Nix Gambling Business.

11.  Bettors would place bets online through the Sand Island Sports websites, and through Nix, Agent 1, and others working at Nix's direction.

12.  In January 2019, defendant PUIG met Agent 1 at a youth baseball camp, and Agent 1 later assisted defendant PUIG in preparing for the upcoming baseball season.

13.  Individual A was a client of the Nix Gambling Business who, in or about June 2019, was owed at least $200,000 in gambling winnings from the Nix Gambling Business.

14.  Individual B was a private baseball coach who assisted defendant PUIG in placing sports bets with Agent 1 and assisted Agent 1's efforts to collect gambling debts from defendant PUIG.

1              Defendant PUIG's Use of the Nix Gambling Business

2        15.   Beginning no later than May 2019, defendant PUIG began

3  placing bets on sporting events with the Nix Gambling Business

4  through Agent 1.  By June 17, 2019, defendant PUIG owed the Nix

5  Gambling Business $282,900 for sports gambling losses.

6        16.   Between June 25, 2019, and July 3, 2019, in a series of

7  text messages, Agent 1 and Individual B instructed defendant PUIG to

8  make a check or wire transfer payable to Individual A.

9        17.   On June 25, 2019, defendant PUIG withdrew $200,000 from a

10  Bank of America financial center in Glendale, California, and

11  purchased two cashiers' checks for $100,000 each that were made

12  payable to Individual A.

13        18.   On July 3, 2019, defendant PUIG sent the cashiers' checks

14  to Individual A via the United Parcel Service ("UPS") and sent a

15  photo of the UPS shipping label to Agent 1 and Individual B via text

16  message.

17        19.   On July 4, 2019, via text message, Nix provided defendant

18  PUIG direct access to the Sand Island Sports websites, assigned

19  defendant PUIG player identification number "R182" and password "yp,"

20  and provided defendant PUIG the Sand Island Sports website addresses.

21        20.   Between July 4, 2019, and September 29, 2019, defendant

22  PUIG placed 899 bets on sporting events through the Nix Gambling

23  Business, Agent 1, and Sand Island Sports.

24              Investigation into Wayne Nix and Agent 1

25        21.   On January 27, 2022, defendant PUIG was interviewed in the

26  presence of his attorney by HSI, IRS-CI, and the USAO regarding the

27  Federal Investigation, including the cashiers' checks defendant PUIG

28

1    sent to Individual A. Defendant PUIG, through his counsel, requested
2    that HSI not record the interview.

3        22. At the beginning of the interview, a Special Agent from HSI
4    admonished defendant PUIG that lying to federal law enforcement
5    agents is a crime, and defendant PUIG stated that he understood.

6    B.   FALSE STATEMENTS

7        23. On or about January 27, 2022, in Los Angeles County, within
8    the Central District of California, and affecting the Federal
9    Investigation in the Central District of California, and in a matter
10   within the jurisdiction of the executive branch of the government of
11   the United States, namely, HSI, IRS-CI, and the USAO, defendant PUIG
12   knowingly and willfully made materially false statements and
13   representations to HSI, IRS-CI, and the USAO knowing that these
14   statements and representations were untrue:

15        a. Defendant PUIG falsely stated that he had never
16   discussed sports betting with Agent 1. In fact, as defendant PUIG
17   then knew, defendant PUIG discussed sports betting with Agent 1 via
18   telephone and text messages on numerous occasions, and Agent 1
19   assisted defendant PUIG in placing at least 899 bets on sporting
20   events between in or about May 2019 and on or about September 29,
21   2019.

22        b. Defendant PUIG falsely stated that he had placed a bet
23   online with an unknown person on an unknown website which resulted in
24   a loss of $200,000. In fact, as defendant PUIG then knew, defendant
25   PUIG placed a series of bets directly through Agent 1 that resulted
26   in the gambling loss, and not through a website.

27        c. Defendant PUIG falsely stated that he did not know the
28   individual who instructed him to send $200,000 in cashiers' checks to

5

ER 17

1  Individual A and that he had never communicated with that person via

2  text message.  In fact, as defendant PUIG then knew, Agent 1 and

3  Individual B, who defendant PUIG knew, instructed defendant PUIG via

4  text messages to send $200,000 to Individual A, and defendant PUIG

5  had communicated with Agent 1 and Individual B on multiple occasions.

STEPHANIE S. CHRISTENSEN
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

KRISTEN A. WILLIAMS
Assistant United States Attorney
Acting Chief, Major Frauds Section

ALEXANDER B. SCHWAB
Assistant United States Attorney
Deputy Chief, Major Frauds Section

JEFF MITCHELL
Assistant United States Attorney
Major Frauds Section

DANIEL BOYLE
Assistant United States Attorney
Asset Forfeiture & Recovery
Section

ER 18

DocuSign Envelope ID: 0B2A6BB1-B15A-48EE-865E-8AA71A3991AD

Case 2:22-cr-00394-DMG   Document 6   Filed 08/29/22   Page 1 of 27   Page ID #:15

1 | STEPHANIE S. CHRISTENSEN
Acting United States Attorney
2 | SCOTT M. GARRINGER
Assistant United States Attorney
3 | Chief, Criminal Division
JEFF MITCHELL (Cal. Bar No. 236225)
4 | Assistant United States Attorney
Major Frauds Section
5 | DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
6 | Asset Forfeiture & Recovery Section
    1100 United States Courthouse
7 |    312 North Spring Street
    Los Angeles, California 90012
8 |    Telephone: (213) 894-0698/2426
    Facsimile: (213) 894-6269/0141
9 |    E-mail:   jeff.mitchell@usdoj.gov
    E-mail:   daniel.boyle2@usdoj.gov
10 |
Attorneys for Plaintiff
11 | UNITED STATES OF AMERICA

LODGED
CLERK, U.S. DISTRICT COURT

8/29/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ D ____ DEPUTY

12 |             UNITED STATES DISTRICT COURT

13 |         FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 | UNITED STATES OF AMERICA,          No. CR 2:22-cr-00394-JLS

15 |          Plaintiff,          PLEA AGREEMENT FOR DEFENDANT
                                  YASIEL PUIG VALDES
16 |             v.

17 | YASIEL PUIG VALDES,

18 |          Defendant.

19 |

20 |

21 |     1.   This constitutes the plea agreement between YASIEL PUIG

22 | VALDES ("defendant") and the United States Attorney's Office for the

23 | Central District of California (the "USAO") in the above-captioned

24 | case.  This agreement is limited to the USAO and cannot bind any

25 | other federal, state, local, or foreign prosecuting, enforcement,

26 | administrative, or regulatory authorities.

27 |                    DEFENDANT'S OBLIGATIONS

28 |     2.   Defendant agrees to:

DocuSign Envelope ID: 0B2A6BB1-B15A-48EE-865F-8AA71A3991AD

Case 2:22-cr-00394-DMG   Document 6   Filed 08/29/22   Page 2 of 27   Page ID #:16

1          a.    Give up the right to indictment by a grand jury and,

2    at the earliest opportunity requested by the USAO and provided by the

3    Court, appear and plead guilty to a single-count information in the

4    form attached to this agreement as Exhibit A or a substantially

5    similar form, which charges defendant with Making False Statements in

6    violation of 18 U.S.C. § 1001(a)(2).

7          b.    Not contest facts agreed to in this agreement.

8          c.    Abide by all agreements regarding sentencing contained

9    in this agreement.

10          d.    Appear for all court appearances, surrender as ordered

11    for service of sentence, obey all conditions of any bond, and obey

12    any other ongoing court order in this matter.

13          e.    Not commit any crime; however, offenses that would be

14    excluded for sentencing purposes under United States Sentencing

15    Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not

16    within the scope of this agreement.

17          f.    Be truthful at all times with the United States

18    Probation and Pretrial Services Office and the Court.

19          g.    Pay the applicable special assessment at or before the

20    time of sentencing unless defendant has demonstrated a lack of

21    ability to pay such assessments.

22          h.    Recommend that defendant receive, as part of his

23    sentence, a fine in an amount no less than $55,000 and not to argue,

24    or suggest in any way, either orally or in writing, that a lower fine

25    amount be imposed.

26                        THE USAO'S OBLIGATIONS

27    3.   The USAO agrees to:

28          a.    Not contest facts agreed to in this agreement.

                                    2

ER 20

DocuSign Envelope ID: 0B2A6BB1-B16A-48EE-965F-8AA71A3991AD

1          b.   Abide by all agreements regarding sentencing contained

2    in this agreement.

3          c.   At the time of sentencing, provided that defendant

4    demonstrates an acceptance of responsibility for the offense up to

5    and including the time of sentencing, recommend a two-level reduction

6    in the applicable Sentencing Guidelines offense level, pursuant to

7    USSG § 3E1.1, and recommend and, if necessary, move for an additional

8    one-level reduction if available under that section.

9          d.   Except for criminal tax violations (including

10   conspiracy to commit such violations chargeable under 18 U.S.C.

11   § 371), not further criminally prosecute defendant for violations of

12   18 U.S.C. § 1503 arising out of defendant's conduct described in the

13   agreed-to factual basis set forth in paragraph 9 below.  Defendant

14   understands that the USAO is free to criminally prosecute defendant

15   for any other unlawful past conduct or any unlawful conduct that

16   occurs after the date of this agreement.  Defendant agrees that at

17   the time of sentencing the Court may consider the uncharged conduct

18   in determining the applicable Sentencing Guidelines range, the

19   propriety and extent of any departure from that range, and the

20   sentence to be imposed after consideration of the Sentencing

21   Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

22                       NATURE OF THE OFFENSE

23   4.   Defendant understands that for defendant to be guilty of

24   the crime charged in the single-count information, that is, Making

25   False Statements, in violation of Title 18, United States Code,

26   Section 1001(a)(2), the following must be true:

27          a) Defendant made a false statement;

28

                              3

DocuSign Envelope ID: 0B2A6BB1-B1BA-48EE-965F-8AA71A3991AD

Case 2:22-cr-00394-DMG   Document 6   Filed 08/29/22   Page 4 of 27   Page ID #:18

1    b) The statement was made in a matter within the

2     jurisdiction of a federal law enforcement agency;

3    c) The defendant acted willfully; that is, the defendant

4     acted deliberately and with knowledge both that the

5     statement was untrue and that his conduct was

6     unlawful; and

7    d) The statement was material to the activities or

8     decisions of the law enforcement agency; that is, it

9     had a natural tendency to influence, or was capable of

10    influencing, the agency's decisions or activities.

11        <u>PENALTIES</u>

12  5. Defendant understands that the statutory maximum sentence

13 that the Court can impose for a violation of 18 U.S.C. § 1001(a)(2),

14 is: five years' imprisonment; a three-year period of supervised

15 release; a fine of $250,000 or twice the gross gain or gross loss

16 resulting from the offense, whichever is greatest; and a mandatory

17 special assessment of $100.

18  6. Defendant understands that supervised release is a period

19 of time following imprisonment during which defendant will be subject

20 to various restrictions and requirements.  Defendant understands that

21 if defendant violates one or more of the conditions of any supervised

22 release imposed, defendant may be returned to prison for all or part

23 of the term of supervised release authorized by statute for the

24 offense that resulted in the term of supervised release, which could

25 result in defendant serving a total term of imprisonment greater than

26 the statutory maximum stated above.

27  7. Defendant understands that, by pleading guilty, defendant

28 may be giving up valuable government benefits and valuable civic

ER 22

DocuSign Envelope ID: 0B2A6BB1-B15A-48EE-865F-8AA71A3991AD

Case 2:22-cr-00394-DMG   Document 6   Filed 08/29/22   Page 5 of 27   Page ID #:19

1  rights, such as the right to vote, the right to possess a firearm,
2  the right to hold office, and the right to serve on a jury. Defendant
3  understands that he is pleading guilty to a felony and that it is a
4  federal crime for a convicted felon to possess a firearm or
5  ammunition.  Defendant understands that the conviction in this case
6  may also subject defendant to various other collateral consequences,
7  including but not limited to revocation of probation, parole, or
8  supervised release in another case and suspension or revocation of a
9  professional license.  Defendant understands that unanticipated
10 collateral consequences will not serve as grounds to withdraw
11 defendant's guilty plea.

12      8.   Defendant and his counsel have discussed the fact that, and
13 defendant understands that, if defendant is not a United States
14 citizen, the conviction in this case makes it practically inevitable
15 and a virtual certainty that defendant will be removed or deported
16 from the United States.  Defendant may also be denied United States
17 citizenship and admission to the United States in the future.
18 Defendant understands that while there may be arguments that
19 defendant can raise in immigration proceedings to avoid or delay
20 removal, removal is presumptively mandatory and a virtual certainty
21 in this case.  Defendant further understands that removal and
22 immigration consequences are the subject of a separate proceeding and
23 that no one, including his attorney or the Court, can predict to an
24 absolute certainty the effect of his conviction on his immigration
25 status.  Defendant nevertheless affirms that he wants to plead guilty
26 regardless of any immigration consequences that his plea may entail,
27 even if the consequence is automatic removal from the United States.
28

ER 23

DocuSign Envelope ID: 0B2A6BB1-B15A-48EE-865F-8AA71A3991AD

1                          FACTUAL BASIS

2       9.   Defendant admits that defendant is, in fact, guilty of the

3  offense to which defendant is agreeing to plead guilty.  Defendant

4  and the USAO agree to the statement of facts provided below and agree

5  that this statement of facts is sufficient to support a plea of

6  guilty to the charge described in this agreement and to establish the

7  Sentencing Guidelines factors set forth in paragraph 11 below but is

8  not meant to be a complete recitation of all facts relevant to the

9  underlying criminal conduct or all facts known to either party that

10  relate to that conduct.

11      The Department of Homeland Security, Homeland Security

12  Investigations ("HSI") and the Internal Revenue Service – Criminal

13  Investigation Division ("IRS-CI") in Los Angeles and the United

14  States Attorney's Office ("USAO") for the Central District of

15  California were conducting a federal criminal investigation into

16  federal crimes, including illegal sports gambling and money

17  laundering (the "Federal Investigation").

18      Wayne Nix was a minor league baseball player from 1995 to 2001.

19  Sometime after 2001, Nix began operating an illegal bookmaking

20  business in the Los Angeles area that accepted and paid off bets from

21  bettors in California and elsewhere in the United States based on the

22  outcomes of sporting events at agreed-upon odds (the "Nix Gambling

23  Business").  Through contacts he had developed during his own career

24  in professional sports, Nix created a client list of current and

25  former professional athletes, and others.

26      Nix used agents, including Agent 1, to place and accept bets

27  from others for the Nix Gambling Business, thus expanding the

28  business.  Agent 1 was a former collegiate baseball player and a

6

ER 24

DocuSign Envelope ID: 0B2A6BB1-B16A-48EE-B65F-8AA71A3991AD

1    private baseball coach.  Beginning in 2019, Agent 1 worked for the

2    Nix Gambling Business as an agent.  Agent 1 placed and accepted bets

3    from others and helped Nix maintain the Nix Gambling Business by,

4    among other things, demanding and collecting money owed to the Nix

5    Gambling Business by bettors and others.

6         As part of the Nix Gambling Business, Nix and Agent 1 used the

7    Sand Island Sports websites and call center to create accounts

8    through which wagers would be placed and tracked.  Nix provided

9    bettors with account numbers and passwords for the Sand Island Sports

10   websites and directed the bettors to use the Sand Island Sports

11   websites to place bets with the Nix Gambling Business.  Bettors would

12   place bets online through the Sand Island Sports websites, and

13   through Nix, Agent 1, and others working at Nix's direction.

14        Defendant was a professional baseball player who played for the

15   Los Angeles Dodgers between 2013 and 2018.  The Dodgers traded

16   defendant to the Cincinnati Reds in December 2018, and the Reds

17   traded defendant to the Cleveland Indians on July 31, 2019.

18        In January 2019, defendant met Agent 1 at a youth baseball camp,

19   and Agent 1 later assisted defendant in preparing for the upcoming

20   baseball season.  Individual B was a private baseball coach who

21   assisted defendant with batting practice, but also assisted defendant

22   in placing sports bets with Agent 1 and assisted Agent 1's efforts to

23   collect gambling debts from defendant.

24        Beginning no later than May 2019, defendant began placing bets

25   on sporting events with the Nix Gambling Business through Agent 1.

26   Defendant called and sent text messages to Agent 1 with wagers on

27   sporting events.  After Agent 1 received the wagers from defendant,

28   Agent 1 submitted the bets to the Nix Gambling Business on behalf of

1    defendant.  By June 17, 2019, defendant owed the Nix Gambling

2    Business $282,900 for sports gambling losses.

3       Between June 25, 2019, and July 3, 2019, in a series of text

4    messages, Agent 1 and Individual B instructed defendant to make a

5    check or wire transfer payable to Individual A.  Individual A was a

6    client of the Nix Gambling Business who, in or about June 2019, was

7    owed at least $200,000 in gambling winnings from the Nix Gambling

8    Business.

9       On June 25, 2019, defendant withdrew $200,000 from a Bank of

10    America financial center in Glendale, California, and purchased two

11    cashiers' checks for $100,000 each that were made payable to

12    Individual A, but did not immediately send the checks due to a

13    dispute over the balance and access to the Sand Island Sports

14    website.  Between June 28, 2019, and July 4, 2019, defendant

15    requested direct access to the Sand Island Sports websites, but Nix

16    refused to provide defendant direct access to the websites until

17    defendant paid his gambling debt.

18       On July 3, 2019, defendant sent the cashiers' checks to

19    Individual A via the United Parcel Service ("UPS") and sent a photo

20    of the UPS shipping label to Agent 1 and Individual B via text

21    message.  Agent 1 forwarded the photo of the UPS label to Nix as

22    proof that defendant paid his gambling debt.

23       The following day, Nix provided defendant direct access to the

24    Sand Island Sports websites.  Specifically, on July 4, 2019, Nix sent

25    defendant a text message and assigned defendant player identification

26    number "R182" and password "yp," and provided defendant the Sand

27    Island Sports website addresses.  Between July 4, 2019, and September

28

DocuSign Envelope ID: 0B2A6BB1-B16A-48EE-865F-8AA71A3991AD

Case 2:22-cr-00394-DMG   Document 6   Filed 08/29/22   Page 9 of 27   Page ID #:23

1  29, 2019, defendant placed 899 bets on tennis, football, and

2  basketball games through the Sand Island Sports websites.

3       On January 27, 2022, defendant was interviewed in the presence

4  of his attorney by HSI, IRS-CI, and the USAO regarding the Federal

5  Investigation.  At the beginning of the interview, a Special Agent

6  from HSI admonished defendant that lying to federal law enforcement

7  agents is a crime, and defendant stated that he understood.  During

8  the interview, defendant made several false statements to the agents

9  that were material to the investigation.  For example, the agents

10  presented defendant a photo of Agent 1 and asked defendant if he ever

11  discussed sports gambling with Agent 1.  Defendant falsely stated

12  that he had never discussed sports betting with Agent 1 and that he

13  knew Agent 1 only from baseball.  In fact, as defendant then knew,

14  defendant discussed sports betting with Agent 1 via telephone and

15  text messages on hundreds of occasions.  In addition, Agent 1 placed

16  several bets for defendant between May and July 3, 2019, that

17  resulted in defendant paying $200,000 to the Nix Gambling Business,

18  and Agent 1 subsequently assisted defendant obtain an account with

19  Sand Island Sports and place 899 additional bets on sporting events

20  through the website between July 4, 2019, and September 29, 2019.

21       The agents also presented defendant with a copy of one of the

22  cashiers' checks he purchased on June 25, 2019, made payable to

23  Individual A, and asked defendant why he sent the cashier's check.

24  Defendant falsely stated that he had placed a bet online with an

25  unknown person on an unknown website that resulted in a loss of

26  $200,000.  In fact, as defendant then knew, defendant placed a series

27  of bets directly through Agent 1 that resulted in the gambling loss.

28

ER 27

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

Case 2:22-cr-00394-DMG   Document 6   Filed 08/29/22   Page 10 of 27   Page ID #:24

1    Defendant also falsely stated that he did not know the

2  individual who instructed him to send $200,000 in cashiers' checks to

3  Individual A and that he had never communicated with that person via

4  text message.  In fact, as defendant then knew, Agent 1 and

5  Individual B instructed defendant via text messages to send $200,000

6  to Individual A, and defendant had communicated with Agent 1 and

7  Individual B on hundreds of occasions related to defendant's gambling

8  with the Nix Gambling Business.

9    On March 14, 2022, defendant sent Individual B an audio message

10  via WhatsApp regarding his January 2022 interview with HSI and IRS-

11  CI.  During the audio message, defendant told Individual B that he

12  "[sat] over there and listen [to] what these people said and I no

13  said nothing, I not talking.  I said that I only know [Agent 1] from

14  baseball."

15                          SENTENCING FACTORS

16    10.  Defendant understands that in determining defendant's

17  sentence the Court is required to calculate the applicable Sentencing

18  Guidelines range and to consider that range, possible departures

19  under the Sentencing Guidelines, and the other sentencing factors set

20  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

21  Sentencing Guidelines are advisory only, that defendant cannot have

22  any expectation of receiving a sentence within the calculated

23  Sentencing Guidelines range, and that after considering the

24  Sentencing Guidelines and the other § 3553(a) factors, the Court will

25  be free to exercise its discretion to impose any sentence it finds

26  appropriate up to the maximum set by statute for the crime of

27  conviction.

28

                                  10

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965F-8AA71A3991AD

1       11.  Defendant and the USAO agree to the following applicable

2  Sentencing Guidelines factors:

3    Base Offense Level:            6              USSG § 2B1.1

4

5  Defendant and the USAO reserve the right to argue that additional

6  specific offense characteristics, adjustments, and departures under

7  the Sentencing Guidelines are appropriate.

8       12.  Defendant understands that there is no agreement as to

9  defendant's criminal history or criminal history category.

10      13.  Defendant and the USAO reserve the right to argue for a

11 sentence outside the sentencing range established by the Sentencing

12 Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

13 (a)(2), (a)(3), (a)(6), and (a)(7).

14                    WAIVER OF CONSTITUTIONAL RIGHTS

15      14.  Defendant understands that by pleading guilty, defendant

16 gives up the following rights:

17           a.   The right to persist in a plea of not guilty.

18           b.   The right to a speedy and public trial by jury.

19           c.   The right to be represented by counsel -- and if

20 necessary have the Court appoint counsel -- at trial.  Defendant

21 understands, however, that, defendant retains the right to be

22 represented by counsel -- and if necessary have the Court appoint

23 counsel -- at every other stage of the proceeding.

24           d.   The right to be presumed innocent and to have the

25 burden of proof placed on the government to prove defendant guilty

26 beyond a reasonable doubt.

27           e.   The right to confront and cross-examine witnesses

28 against defendant.

11

ER 29

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

Case 2:22-cr-00394-DMG   Document 6   Filed 08/29/22   Page 12 of 27   Page ID #:26

1          f.   The right to testify and to present evidence in

2    opposition to the charges, including the right to compel the

3    attendance of witnesses to testify.

4          g.   The right not to be compelled to testify, and, if

5    defendant chose not to testify or present evidence, to have that

6    choice not be used against defendant.

7          h.   Any and all rights to pursue any affirmative defenses,

8    Fourth Amendment or Fifth Amendment claims, and other pretrial

9    motions that have been filed or could be filed.

10                    WAIVER OF APPEAL OF CONVICTION

11     15.  Defendant understands that, with the exception of an appeal

12   based on a claim that defendant's guilty plea was involuntary, by

13   pleading guilty defendant is waiving and giving up any right to

14   appeal defendant's conviction on the offense to which defendant is

15   pleading guilty.  Defendant understands that this waiver includes,

16   but is not limited to, arguments that the statute to which defendant

17   is pleading guilty is unconstitutional, and any and all claims that

18   the statement of facts provided herein is insufficient to support

19   defendant's plea of guilty.

20              LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

21     16.  Defendant agrees that, provided the Court imposes a term of

22   imprisonment within or below the range corresponding to an offense

23   level of four and the criminal history category calculated by the

24   Court, defendant gives up the right to appeal all of the following:

25   (a) the procedures and calculations used to determine and impose any

26   portion of the sentence, with the exception of the Court's

27   calculation of defendant's criminal history category; (b) the term of

28   imprisonment imposed by the Court, except to the extent it depends on

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

Case 2:22-cr-00394-DMG   Document 6   Filed 08/29/22   Page 13 of 27   Page ID #:27

1   the Court's calculation of defendant's criminal history category;
2   (c) the fine imposed by the Court, provided it is within the
3   statutory maximum; (d) to the extent permitted by law, the
4   constitutionality or legality of defendant's sentence, provided it is
5   within the statutory maximum; (e) the term of probation or supervised
6   release imposed by the Court, provided it is within the statutory
7   maximum; and (f) any of the following conditions of probation or
8   supervised release imposed by the Court: the conditions set forth in
9   Second Amended General Order 20-04 of this Court; the drug testing
10  conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the
11  alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).
12      17.  Defendant also gives up any right to bring a post-
13  conviction collateral attack on the conviction or sentence, except a
14  post-conviction collateral attack based on a claim of ineffective
15  assistance of counsel, a claim of newly discovered evidence, or an
16  explicitly retroactive change in the applicable Sentencing
17  Guidelines, sentencing statutes, or statutes of conviction.
18  Defendant understands that this waiver includes, but is not limited
19  to, arguments that the statute to which defendant is pleading guilty
20  is unconstitutional, and any and all claims that the statement of
21  facts provided herein is insufficient to support defendant's plea of
22  guilty.
23      18.  The USAO agrees that, provided (a) all portions of the
24  sentence are at or below the statutory maximum specified above and
25  (b) the Court imposes a term of imprisonment within or above the
26  range corresponding to an offense level of four and the criminal
27  history category calculated by the Court, the USAO gives up its right
28  to appeal any portion of the sentence.

13

ER 31

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

Case 2:22-cr-00394-DMG   Document 6   Filed 08/29/22   Page 14 of 27   Page ID #:28

1                 RESULT OF WITHDRAWAL OF GUILTY PLEA

2       19.  Defendant agrees that if, after entering a guilty plea

3   pursuant to this agreement, defendant seeks to withdraw and succeeds

4   in withdrawing defendant's guilty plea on any basis other than a

5   claim and finding that entry into this plea agreement was

6   involuntary, then (a) the USAO will be relieved of all of its

7   obligations under this agreement; and (b) should the USAO choose to

8   pursue any charge that was either dismissed or not filed as a result

9   of this agreement, then (i) any applicable statute of limitations

10  will be tolled between the date of defendant's signing of this

11  agreement and the filing commencing any such action; and

12  (ii) defendant waives and gives up all defenses based on the statute

13  of limitations, any claim of pre-indictment delay, or any speedy

14  trial claim with respect to any such action, except to the extent

15  that such defenses existed as of the date of defendant's signing this

16  agreement.

17                  EFFECTIVE DATE OF AGREEMENT

18      20.  This agreement is effective upon signature and execution of

19  all required certifications by defendant, defendant's counsel, and an

20  Assistant United States Attorney.

21                     BREACH OF AGREEMENT

22      21.  Defendant agrees that if defendant, at any time after the

23  effective date of this agreement, knowingly violates or fails to

24  perform any of defendant's obligations under this agreement ("a

25  breach"), the USAO may declare this agreement breached.  All of

26  defendant's obligations are material, a single breach of this

27  agreement is sufficient for the USAO to declare a breach, and

28  defendant shall not be deemed to have cured a breach without the

                              14

1  express agreement of the USAO in writing.  If the USAO declares this

2  agreement breached, and the Court finds such a breach to have

3  occurred, then: (a) if defendant has previously entered a guilty plea

4  pursuant to this agreement, defendant will not be able to withdraw

5  the guilty plea, and (b) the USAO will be relieved of all its

6  obligations under this agreement.

7      22.  Following the Court's finding of a knowing breach of this

8  agreement by defendant, should the USAO choose to pursue any charge

9  that was either dismissed or not filed as a result of this agreement,

10  then:

11      a.  Defendant agrees that any applicable statute of

12  limitations is tolled between the date of defendant's signing of this

13  agreement and the filing commencing any such action.

14      b.  Defendant waives and gives up all defenses based on

15  the statute of limitations, any claim of pre-indictment delay, or any

16  speedy trial claim with respect to any such action, except to the

17  extent that such defenses existed as of the date of defendant's

18  signing this agreement.

19      c.  Defendant agrees that: (i) any statements made by

20  defendant, under oath, at the guilty plea hearing (if such a hearing

21  occurred prior to the breach); (ii) the agreed to factual basis

22  statement in this agreement; and (iii) any evidence derived from such

23  statements, shall be admissible against defendant in any such action

24  against defendant, and defendant waives and gives up any claim under

25  the United States Constitution, any statute, Rule 410 of the Federal

26  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

27  Procedure, or any other federal rule, that the statements or any

28

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

Case 2:22-cr-00394-DMG   Document 6   Filed 08/29/22   Page 16 of 27   Page ID #:30

1    evidence derived from the statements should be suppressed or are

2    inadmissible.

3                  COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

4                                OFFICE NOT PARTIES

5         23.  Defendant understands that the Court and the United States

6    Probation and Pretrial Services Office are not parties to this

7    agreement and need not accept any of the USAO's sentencing

8    recommendations or the parties' agreements to facts or sentencing

9    factors.

10        24.  Defendant understands that both defendant and the USAO are

11   free to: (a) supplement the facts by supplying relevant information

12   to the United States Probation and Pretrial Services Office and the

13   Court, (b) correct any and all factual misstatements relating to the

14   Court's Sentencing Guidelines calculations and determination of

15   sentence, and (c) argue on appeal and collateral review that the

16   Court's Sentencing Guidelines calculations and the sentence it

17   chooses to impose are not error, although each party agrees to

18   maintain its view that the calculations in paragraph 11 are

19   consistent with the facts of this case.  While this paragraph permits

20   both the USAO and defendant to submit full and complete factual

21   information to the United States Probation and Pretrial Services

22   Office and the Court, even if that factual information may be viewed

23   as inconsistent with the facts agreed to in this agreement, this

24   paragraph does not affect defendant's and the USAO's obligations not

25   to contest the facts agreed to in this agreement.

26        25.  Defendant understands that even if the Court ignores any

27   sentencing recommendation, finds facts or reaches conclusions

28   different from those agreed to, and/or imposes any sentence up to the

                                        16

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

1   maximum established by statute, defendant cannot, for that reason,

2   withdraw defendant's guilty plea, and defendant will remain bound to

3   fulfill all defendant's obligations under this agreement.  Defendant

4   understands that no one -- not the prosecutor, defendant's attorney,

5   or the Court -- can make a binding prediction or promise regarding

6   the sentence defendant will receive, except that it will be within

7   the statutory maximum.

8                          NO ADDITIONAL AGREEMENTS

9        26.  Defendant understands that, except as set forth herein,

10  there are no promises, understandings, or agreements between the USAO

11  and defendant or defendant's attorney, and that no additional

12  promise, understanding, or agreement may be entered into unless in a

13  writing signed by all parties or on the record in court.

14  //

15  //

16  //

17

18

19

20

21

22

23

24

25

26

27

28

ER 35

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

Case 2:22-cr-00394-DMG Document 6 Filed 08/29/22 Page 18 of 27 Page ID #:32

1          <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2          27.  The parties agree that this agreement will be considered

3     part of the record of defendant's guilty plea hearing as if the

4     entire agreement had been read into the record of the proceeding.

5     AGREED AND ACCEPTED

6     UNITED STATES ATTORNEY'S OFFICE
      FOR THE CENTRAL DISTRICT OF
7     CALIFORNIA

8     STEPHANIE S. CHRISTENSEN
      Acting United States Attorney

9

10    _/s/ Jeff Mitchell_____          _August 29, 2022_____
      JEFF MITCHELL                         Date
11    Assistant United States Attorney

12    _____              _July 7, 2022_____
      YASIEL PUIG VALDES                    Date
13    Defendant

14    _____              _July 7, 2022_____
      KERI AXEL                             Date
15    Attorney for Defendant
      Yasiel Puig Valdes

16

17

18               <u>CERTIFICATION OF DEFENDANT</u>

19         I have read this agreement in its entirety.  This agreement has

20    been read to me in Spanish, the language I understand best.  I have

21    had enough time to review and consider this agreement, and I have

22    carefully and thoroughly discussed every part of it with my attorney.

23    I understand the terms of this agreement, and I voluntarily agree to

24    those terms.  I have discussed the evidence with my attorney, and my

25    attorney has advised me of my rights, of possible pretrial motions

26    that might be filed, of possible defenses that might be asserted

27    either prior to or at trial, of the sentencing factors set forth in

28    18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions,

                              18

1  and of the consequences of entering into this agreement.  No

2  promises, inducements, or representations of any kind have been made

3  to me other than those contained in this agreement.  No one has

4  threatened or forced me in any way to enter into this agreement.  I

5  am satisfied with the representation of my attorney in this matter,

6  and I am pleading guilty because I am guilty of the charge and wish

7  to take advantage of the promises set forth in this agreement, and

8  not for any other reason.

9

10  YASIEL PUIG VALDES                          July 7, 2022
    Defendant                              ─────────────────
11                                         Date

12

13

14              CERTIFICATION OF INTERPRETER

15  I, María del Pilar Fernández am fluent in the written and spoken

16  English and Spanish languages.  I accurately translated this entire

17  agreement from English into Spanish to defendant PUIG on this date.

18  ───────────────────────                    06/29/2022
    INTERPRETER                            ─────────────────
19                                         Date

20

21              CERTIFICATION OF DEFENDANT'S ATTORNEY

22      I am Yasiel Puig Valdes's attorney.  I have carefully and

23  thoroughly discussed every part of this agreement with my client.

24  Further, I have fully advised my client of his rights, of possible

25  pretrial motions that might be filed, of possible defenses that might

26  be asserted either prior to or at trial, of the sentencing factors

27  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

28  provisions, and of the consequences of entering into this agreement.

                          19

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

1 | To my knowledge: no promises, inducements, or representations of any

2 | kind have been made to my client other than those contained in this

3 | agreement; no one has threatened or forced my client in any way to

4 | enter into this agreement; my client's decision to enter into this

5 | agreement is an informed and voluntary one; and the factual basis set

6 | forth in this agreement is sufficient to support my client's entry of

7 | a guilty plea pursuant to this agreement.

8 |

9 | KERI AXEL                                    Date          July 7, 2022
   | Attorney for Defendant
10 | Yasiel Puig Valdes

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

# EXHIBIT A

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

Case 2:22-cr-00394-DMG   Document 6   Filed 08/29/22   Page 22 of 27   Page ID #:36

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                  FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,        │  CR No.

11           Plaintiff,               │  I N F O R M A T I O N

12           v.                       │  [18 U.S.C. § 1001(a)(2): Making
                                      │  False Statements]
13   YASIEL PUIG VALDES,

14           Defendant.

15

16       The United States Attorney charges:

17                    [18 U.S.C. § 1001(a)(2)]

18   A.    INTRODUCTORY ALLEGATIONS

19       At times relevant to this Information:

20       1.    Defendant YASIEL PUIG VALDES was a professional baseball

21   player who played for the Los Angeles Dodgers between 2013 and 2018.

22   The Dodgers traded defendant PUIG to the Cincinnati Reds in December

23   2018, and the Reds traded defendant PUIG to the Cleveland Indians on

24   July 31, 2019.  As of June 2022, defendant PUIG played for the Kiwoom

25   Heroes of the Korean Baseball Organization League, based in South

26   Korea.

27       2.    The Department of Homeland Security, Homeland Security

28   Investigations ("HSI") and the Internal Revenue Service – Criminal

ER 40

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

1  Investigation Division ("IRS-CI") in Los Angeles and the United

2  States Attorney's Office ("USAO") for the Central District of

3  California were conducting a federal criminal investigation into

4  federal crimes, including illegal sports gambling and money

5  laundering (the "Federal Investigation").

6      3.   The operation of a sports gambling business in California

7  was prohibited by 18 U.S.C. § 1955 and California Penal Code § 337a.

8  <u>The Wayne Nix Illegal Sports Gambling Business</u>

9      4.   Wayne Nix was a resident of Orange County, California.  Nix

10  was a minor league baseball player from 1995 to 2001.

11      5.   Sometime after 2001, Nix began operating an illegal

12  bookmaking business in the Los Angeles area that accepted and paid

13  off bets from bettors in California and elsewhere in the United

14  States based on the outcomes of sporting events at agreed-upon odds

15  (the "Nix Gambling Business").  Through contacts he had developed

16  during his own career in professional sports, Nix created a client

17  list of current and former professional athletes, and others.

18      6.   Nix used agents to place and accept bets from others for

19  the Nix Gambling Business, thus expanding the business.

20      7.   Sand Island Sports operated Internet sports gambling

21  websites, including www.sandislandsports.com and www.betprestige.com

22  (hereinafter, the "Sand Island Sports websites"), hosted on servers

23  primarily located outside the United States.  Sand Island Sports also

24  operated toll-free telephone services (the "call center") to

25  facilitate sports betting.  The Sand Island Sports websites and call

26  center facilitated unlawful sports gambling by providing a platform

27  to book makers to track bets placed by their clients.

28

ER 41

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

1      8.   Agent 1 was a former collegiate baseball player and a

2  private baseball coach.  Beginning in 2019, Agent 1 worked for the

3  Nix Gambling Business as an agent.  Agent 1 placed and accepted bets

4  from others and helped Nix maintain the Nix Gambling Business by,

5  among other things, demanding and collecting money owed to the Nix

6  Gambling Business by bettors and others.

7      9.   As part of the Nix Gambling Business, Nix and Agent 1 used

8  the Sand Island Sports websites and call center to create accounts

9  through which wagers would be placed and tracked, and to set credit

10  limits for bettors.

11      10.  Nix provided bettors with account numbers and passwords for

12  the Sand Island Sports websites and directed the bettors to use the

13  Sand Island Sports websites to place bets with the Nix Gambling

14  Business.

15      11.  Bettors would place bets online through the Sand Island

16  Sports websites, and through Nix, Agent 1, and others working at

17  Nix's direction.

18      12.  In January 2019, defendant PUIG met Agent 1 at a youth

19  baseball camp, and Agent 1 later assisted defendant PUIG in preparing

20  for the upcoming baseball season.

21      13.  Individual A was a client of the Nix Gambling Business who,

22  in or about June 2019, was owed at least $200,000 in gambling

23  winnings from the Nix Gambling Business.

24      14.  Individual B was a private baseball coach who assisted

25  defendant PUIG in placing sports bets with Agent 1 and assisted Agent

26  1's efforts to collect gambling debts from defendant PUIG.

27

28

3

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

Case 2:22-cr-00394-DMG   Document 6   Filed 08/29/22   Page 25 of 27   Page ID #:39

1                    Defendant PUIG's Use of the Nix Gambling Business

2          15.   Beginning no later than May 2019, defendant PUIG began

3     placing bets on sporting events with the Nix Gambling Business

4     through Agent 1.  By June 17, 2019, defendant PUIG owed the Nix

5     Gambling Business $282,900 for sports gambling losses.

6          16.   Between June 25, 2019, and July 3, 2019, in a series of

7     text messages, Agent 1 and Individual B instructed defendant PUIG to

8     make a check or wire transfer payable to Individual A.

9          17.   On June 25, 2019, defendant PUIG withdrew $200,000 from a

10    Bank of America financial center in Glendale, California, and

11    purchased two cashiers' checks for $100,000 each that were made

12    payable to Individual A.

13         18.   On July 3, 2019, defendant PUIG sent the cashiers' checks

14    to Individual A via the United Parcel Service ("UPS") and sent a

15    photo of the UPS shipping label to Agent 1 and Individual B via text

16    message.

17         19.   On July 4, 2019, via text message, Nix provided defendant

18    PUIG direct access to the Sand Island Sports websites, assigned

19    defendant PUIG player identification number "R182" and password "yp,"

20    and provided defendant PUIG the Sand Island Sports website addresses.

21         20.   Between July 4, 2019, and September 29, 2019, defendant

22    PUIG placed 899 bets on sporting events through the Nix Gambling

23    Business, Agent 1, and Sand Island Sports.

24                    Investigation into Wayne Nix and Agent 1

25         21.   On January 27, 2022, defendant PUIG was interviewed in the

26    presence of his attorney by HSI, IRS-CI, and the USAO regarding the

27    Federal Investigation, including the cashiers' checks defendant PUIG

28

4

ER 43

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

Case 2:22-cr-00394-DMG   Document 6   Filed 08/29/22   Page 26 of 27   Page ID #:40

1   sent to Individual A.  Defendant PUIG, through his counsel, requested

2   that HSI not record the interview.

3       22.  At the beginning of the interview, a Special Agent from HSI

4   admonished defendant PUIG that lying to federal law enforcement

5   agents is a crime, and defendant PUIG stated that he understood.

6   B.   <u>FALSE STATEMENTS</u>

7       23.  On or about January 27, 2022, in Los Angeles County, within

8   the Central District of California, and affecting the Federal

9   Investigation in the Central District of California, and in a matter

10  within the jurisdiction of the executive branch of the government of

11  the United States, namely, HSI, IRS-CI, and the USAO, defendant PUIG

12  knowingly and willfully made materially false statements and

13  representations to HSI, IRS-CI, and the USAO knowing that these

14  statements and representations were untrue:

15          a.   Defendant PUIG falsely stated that he had never

16  discussed sports betting with Agent 1.  In fact, as defendant PUIG

17  then knew, defendant PUIG discussed sports betting with Agent 1 via

18  telephone and text messages on numerous occasions, and Agent 1

19  assisted defendant PUIG in placing at least 899 bets on sporting

20  events between in or about May 2019 and on or about September 29,

21  2019.

22          b.   Defendant PUIG falsely stated that he had placed a bet

23  online with an unknown person on an unknown website which resulted in

24  a loss of $200,000.  In fact, as defendant PUIG then knew, defendant

25  PUIG placed a series of bets directly through Agent 1 that resulted

26  in the gambling loss, and not through a website.

27          c.   Defendant PUIG falsely stated that he did not know the

28  individual who instructed him to send $200,000 in cashiers' checks to

5

DocuSign Envelope ID: 0B2A6BB1-B4BA-48EE-965E-8AA71A3991AD

Case 2:22-cr-00394-DMG   Document 6   Filed 08/29/22   Page 27 of 27   Page ID #:41

1   Individual A and that he had never communicated with that person via

2   text message.  In fact, as defendant PUIG then knew, Agent 1 and

3   Individual B, who defendant PUIG knew, instructed defendant PUIG via

4   text messages to send $200,000 to Individual A, and defendant PUIG

5   had communicated with Agent 1 and Individual B on multiple occasions.

6

7                              TRACY L. WILKISON
                               United States Attorney
8

9

10                             SCOTT M. GARRINGER
                               Assistant United States Attorney
11                             Chief, Criminal Division

12                             KRISTEN A. WILLIAMS
                               Assistant United States Attorney
13                             Acting Chief, Major Frauds Section

14                             ALEXANDER B. SCHWAB
                               Assistant United States Attorney
15                             Deputy Chief, Major Frauds Section

16                             JEFF MITCHELL
                               Assistant United States Attorney
17                             Major Frauds Section

18                             DANIEL BOYLE
                               Assistant United States Attorney
19                             Asset Forfeiture & Recovery
                               Section
20

21

22

23

24

25

26

27

28

                                    6

1 | E. MARTIN ESTRADA
  | United States Attorney
2 | SCOTT M. GARRINGER
  | Assistant United States Attorney
3 | Chief, Criminal Division
  | JEFF MITCHELL (Cal. Bar No. 236225)
4 | Assistant United States Attorney
  | Major Frauds Section
5 | DAN G. BOYLE (Cal. Bar No. 332518)
  | Assistant United States Attorney
6 | Asset Forfeiture & Recovery Section
  |     1100 United States Courthouse
7 |     312 North Spring Street
  |     Los Angeles, California 90012
8 |     Telephone: (213) 894-0698/2426
  |     Facsimile: (213) 894-6269/0141
9 |     E-mail:   jeff.mitchell@usdoj.gov
  |               daniel.boyle2@usdoj.gov
10 |
   | Attorneys for Plaintiff
11 | UNITED STATES OF AMERICA

12 |                    UNITED STATES DISTRICT COURT

13 |               FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 | UNITED STATES OF AMERICA,         No. CR 22-394-DMG

15 |              Plaintiff,           GOVERNMENT'S MOTION FOR BREACH OF
   |                                   PLEA AGREEMENT; MEMORANDUM OF
16 |              v.                   POINTS AND AUTHORITIES

17 | YASIEL PUIG VALDES,

18 |
   |              Defendant.
19 |

20 |

21 |      Plaintiff United States of America, by and through its counsel

22 | of record, the United States Attorney for the Central District of

23 | California and Assistant United States Attorneys Jeff Mitchell and

24 | Daniel Boyle, hereby moves for a Court finding that defendant YASIEL

25 | PUIG VALDES breached the terms of his plea agreement.

26 | //

27 | //

28 |

1        This motion is based upon the attached memorandum of points and

2   authorities, the attached exhibits, the files and records in this

3   case, and such further evidence and argument as the Court may permit.

4    Dated: December 14, 2022          Respectfully submitted,

5                                      E. MARTIN ESTRADA
                                       United States Attorney
6
                                       SCOTT M. GARRINGER
7                                      Assistant United States Attorney
                                       Chief, Criminal Division
8

9                                          */s/ Jeff Mitchell*
                                       JEFF MITCHELL
10                                     DANIEL BOYLE
                                       Assistant United States Attorney
11
                                       Attorneys for Plaintiff
12                                     UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1          <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    PROCEDURAL BACKGROUND**

3          On August 29, 2022, the government filed plea agreement for

4    defendant YASIEL PUIG VALDES ("defendant").  The plea agreement

5    required defendant to plead guilty.  In exchange for his guilty plea,

6    the government agreed not to prosecute defendant for the more serious

7    offense of Obstruction of Justice.

8          Defendant appeared for his guilty plea on November 23, 2022, but

9    refused to plead guilty.  The government hereby seeks to be relieved

10   of its contractual obligations.

11   **II.   ARGUMENT**

12         The Ninth Circuit Court of Appeals has determined that "[p]lea

13   agreements are contractual in nature and are measured by contract law

14   standards."  <u>United States v. De la Fuente</u>, 8 F.3d 1333, 1337 (9th

15   Cir. 1993) (internal citation omitted).

16         "When the government seeks to revoke a plea agreement, it must

17   demonstrate to the trial court that the defendant has not fulfilled

18   his promises."  <u>United States v. Gonzalez Sanchez</u>, 825 F.2d 572, 578

19   (1st Cir. 1987).  The government has the burden of proving a breach

20   of the plea agreement by a preponderance of the evidence.  <u>See</u> <u>United</u>

21   <u>States v. Packwood</u>, 848 F.2d 1009, 1011 (9th Cir. 1988); accord

22   <u>United States v. Tilley</u>, 964 F.2d 66, 71 (1st Cir. 1992); <u>United</u>

23   <u>States v. Verrusio</u>, 803 F.2d 885, 894 (7th Cir. 1986).

24         **A.    Defendant Breached His Plea Agreement by Refusing to Plead**
25              **Guilty**

26         The plea agreement required defendant to plead guilty.  (Dkt.

27   No. 6, Plea Agreement ¶ 2(a).)  In exchange for his guilty plea, the

28   government agreed not to prosecute defendant for the more serious

1  offense of Obstruction of Justice, in violation of 18 U.S.C. § 1503,

2  arising out of defendant's conduct described in the factual basis of

3  the plea agreement.  (Id. ¶ 3(d).)

4       Defendant appeared for his guilty plea on November 23, 2022, but

5  refused to plead guilty.  (Dkt. No. 24.)  At defense counsel's

6  request, both the Court and the government gave defendant a second

7  opportunity to plead guilty on November 29, 2022, but defendant again

8  refused to plead guilty.  (Dkt. No. 26.)  In addition, defendant has

9  stipulated that he longer intends to plead guilty in this matter and

10 has requested a trial date.  (Id.)

11      **B.   The Remedy for Defendants' Breach of the Plea Agreement Is**
12      **to Relieve the Government of Its Obligations Under the**
           **Agreement**

13      When a defendant is found to have breached a plea agreement, the

14 appropriate remedy is to relieve the government of its obligations

15 under the agreement.  See Gonzalez-Sanchez, 825 F.2d at 578 ("the

16 failure of the defendant to fulfill his promise to cooperate and

17 testify fully and honestly releases the government from the plea

18 agreement," and the government was entitled to "indict and try the

19 defendant regardless of whatever it may have promised earlier");

20 United States v. Sandoval-Lopez, 122 F.3d 797, 800 (9th Cir. 1997)

21 ("Where a defendant has breached a plea agreement, courts have found

22 the government to be free from its obligations.").  As the Ninth

23 Circuit succinctly stated in Sandoval-Lopez:

24      Plea bargains are contractual in nature and subject to
        contract-law standards.  Just as with other forms of
25      contracts, a negotiated guilty plea is a "bargained-for
        quid pro quo."  Thus, either party can be said to 'breach'
26      a plea bargain if it fails to live up to the promises it
        made under the terms of the agreement.  Where a defendant
27      has breached a plea agreement courts have found the
        government to be free from its obligations.

28

2

ER 49

1  122 F.3d. at 800 (internal citations omitted).

2        In this case, the plea agreement signed by defendant, with

3  advice of counsel, explicitly state that violating any of its

4  provisions will constitute a breach:

5        Defendant agrees that if defendant, at any time after the
         effective date of this agreement, knowingly violates or
6        fails to perform any of defendant's obligations under this
         agreement ("a breach"), the USAO may declare this agreement
7        breached.  All of defendant's obligations are material, a
         single breach of this agreement is sufficient for the USAO
8        to declare a breach, and defendant shall not be deemed to
         have cured a breach without the express agreement of the
9        USAO in writing.  If the USAO declares this agreement
         breached, and the Court finds such a breach to have
10       occurred, then: (a) if defendant has previously entered a
         guilty plea pursuant to this agreement, defendant will not
11       be able to withdraw the guilty plea, and (b) the USAO will
         be relieved of all its obligations under this agreement.
12

13  (Plea Agreement ¶ 21.)

14        As a consequence, in the event of a breach, the government is no

15  longer bound by its agreements.  (Id.) For all of these reasons, the

16  Court should find defendant in breach of his plea agreement.

17  **III. CONCLUSION**

18        The government requests that the Court make a finding that

19  defendant breached his plea agreement.  Pursuant to the above terms,

20  such a finding will relieve the government of its obligations under

21  the plea agreement.

22

23

24

25

26

27

28

Keri Curtis Axel (Bar No. 186847)
  kaxel@waymakerlaw.com
Jose R. Nuño (Bar No. 312832)
  jnuno@waymakerlaw.com
WAYMAKER LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (424) 652-7800
Facsimile:  (424) 652-7850

Attorneys for Defendant
Yasiel Puig Valdes

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:22-cr-00394-DMG |
| Plaintiff, | **DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR BREACH OF PLEA AGREEMENT** |
| v. | |
| YASIEL PUIG VALDES, | |
| Defendant. | |

1      Defendant Yasiel Puig Valdes ("Defendant Puig" or "Puig"), through his

2   counsel Waymaker LLP, respectfully submits his Opposition to the government's

3   Motion for Breach of Plea Agreement ("Mot." (Dkt. 33)), filed December 14, 2022.

4      The government's Motion presents no issue that the Court should reach at this

5   time.  A plea agreement is a contract, to which the Court is not a party.  Like any

6   other party to a contract, to merit the Court's intervention, the government must

7   prove the elements of a breach of contract – which include damages – or

8   demonstrate the need for an injunctive remedy that would satisfy the elements

9   necessary for declaratory relief.  The government has done neither.  The

10  government's motion is premature and unnecessary, and the Court should decline to

11  take any action at this time.

12  **I.      FACTUAL AND PROCEDURAL BACKGROUND**

13      The government issued a grand jury subpoena to defendant Puig on December

14  14, 2021, seeking testimony on February 16, 2022.  Given his commitment to play

15  baseball in the Republic of Korea in summer 2022, and his need to leave for Korea

16  in February, Puig's counsel requested that Puig be permitted to sit for an interview

17  in lieu of grand jury testimony, and the government agreed.

18      The interview took place by video conference on January 27, 2022; Puig was

19  at a hotel and had just returned from a workout.  The only person in the room with

20  Puig was a civil attorney who had assisted him in a prior civil matter; the rest of the

21  participants on the interview, including the interpreter, were in different locations on

22  Zoom.  Puig did not have his own interpreter, and the attorney who was with him

23  did not speak Spanish.

24      Prior to the interview, the prosecutors did not tell Puig's attorney what the

25  interview would be about, other than that it would be about online gambling.

26  Although it is common to request records from a witness to jog memory and

27  because records are often the best evidence—particularly when historical

28  communications are at issue—the government did not request any records from

1

DEFENDANT PUIG'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR
BREACH OF PLEA AGREEMENT

1  Puig.  He therefore had no preparation or context to evaluate the government's

2  questions, although they were asking about communications that took place more

3  than 2 years before the interview.  As Puig attempted to refresh his own recollection

4  during the interview using messages on his own device, the government terminated

5  the interview.

6         After the interview, the government did not contact Puig's attorney, did not

7  indicate that the government had any issues with the interview, never requested any

8  messages or documents from Puig, and never requested a follow up interview.

9         On May 9, 2022, the government issued a target letter to Puig, indicating he

10  was a target of a criminal investigation regarding possible false statements and

11  obstruction of justice.  The undersigned criminal counsel from Waymaker LLP were

12  retained on or about May 25, 2022.  Counsel were told that the government had no

13  interest in talking with Puig again and were prepared to indict him.

14         On June 6, 2022, the government met with Puig and his counsel via Zoom

15  and made a presentation of the evidence and the charges it intended to bring.  Puig

16  was in Korea.  The prosecutors told counsel and Puig that the government was

17  intending to indict him imminently with false statements and obstruction charges,

18  and already had authority to proceed with those charges. They further stated that, if

19  indicted, the government would seek an arrest warrant which would go into Interpol;

20  this would trigger Puig's arrest abroad.  Puig was given two days, until June 8,

21  2022, to let the government know if he was interested in a pre-indictment

22  disposition.  Defense counsel responded to the government on June 8 and requested

23  that the government issue a plea offer to the false statements charge only, and, on

24  June 16, 2022, the government issued a plea agreement that would have Puig plead

25  guilty to a charge of Making False Statements in violation of 18 U.S.C. §

26  1001(a)(2).

27         After some discussion between counsel concerning the potential factual basis

28  and other issues, the government made some edits and reissued the plea agreement

DEFENDANT PUIG'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR
BREACH OF PLEA AGREEMENT

1  on June 27, 2022, and then again on July 6, 2022, with a July 8, 2022 deadline.  Puig
2  signed on July 7, 2022.  The government signed and filed the plea agreement on
3  August 29, 2022.  (*See* Dkt. 6.)

4      After finishing his baseball season, Puig returned from Korea on November
5  13, 2022.  On November 15, Puig appeared in this Court for an initial appearance
6  and arraignment.  He waived his right to an indictment and preliminary hearing; and
7  a change of plea proceeding was promptly scheduled for November 23, 2022.

8      On that date, Puig appeared with counsel and requested additional time to
9  explore a factual innocence defense.  Counsel for Puig informed this Court about the
10  procedural history of Mr. Puig's charges, the urgency required by the government's
11  plea agreement in light of Puig's ongoing baseball season and potential international
12  arrest, and the facts that counsel had reviewed and developed with Puig since he
13  returned from Korea and was able to meet with counsel in person.  Specifically,
14  counsel informed this Court that, in preparation for the change of plea hearing,
15  counsel and Puig found evidence suggesting that other individuals had sought to
16  induce him to collude or obstruct the government's investigation but Puig had
17  repeatedly refused – at a minimum contradicting the government's obstruction
18  allegations.  Prior to the hearing, defense counsel had requested and reviewed
19  interview reports that corroborated some of Puig's statements, casting doubt on the
20  government's prosecution theory.

21      Accordingly, counsel requested various additional discovery items from the
22  government to explore Puig's factual defenses with him, as the Court would have
23  required that counsel affirm that they had done under Fed. R. Crim. P. 11.  The
24  Court granted a short continuance of the change-of-plea hearing until November 29,
25  2022, and ordered the parties to meet and confer regarding the requested discovery.

26      The government subsequently provided some of the items requested, and the
27  defense team finally had time in person with Puig to review those items and to
28  evaluate the context of events with Puig.

DEFENDANT PUIG'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR
BREACH OF PLEA AGREEMENT

1       On November 28, 2022, counsel informed the government that, after

2   reviewing the materials and further exploring the facts with Puig, he did not intend

3   to enter a guilty plea, and counsel together informed this Court, who took the

4   hearing off calendar.

5   **II.      DISCUSSION**

6       The government's motion for breach of the plea agreement fails because:

7   (1) the government cannot meet the elements of a contractual breach without any

8   damages; and (2) any request for declaratory relief is not actionable or ripe for

9   adjudication.  The defense also respectfully notes that the government has not asked

10  this Court to find a "knowing breach" as required by paragraph 22 of the plea

11  agreement and the defense believes that issue – if the government wishes to raise it

12  – should not be addressed until pretrial motions; the defense needs the benefit of

13  discovery to determine whether to challenge the specific enforcement of that

14  paragraph.

15      **A.      The Government Has Suffered No Damages to Satisfy the Elements**

16      **of a Breach of Contract Claim**

17      Based on the fact that defendant Puig has decided not to enter a guilty plea,

18  the government has filed a motion for breach, asking this Court for the remedy of

19  being "released from its obligations" under the plea agreement.  (*See* Mot. at 3.)  As

20  the government recognizes (*id.* at 1) plea agreement is a contract – contractual

21  principles therefore apply. *See United States v. Plascencia-Orozco*, 852 F.3d 910,

22  919 (9th Cir. 2017) ("Because 'plea agreements are contractual in nature' we

23  measure them by 'contract law standards.'") (Citations omitted).  Thus, the

24  government asks the Court to find a breach of contract, but the elements of a

25  contractual breach are clearly not met.

26      Breach of contract requires: "(1) the existence of the contract, (2) plaintiff's

27  performance or excuse for nonperformance, (3) defendant's breach, and (4) the

28

4

DEFENDANT PUIG'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR
BREACH OF PLEA AGREEMENT

1    resulting damages to the plaintiff." *Anheuser-Busch, LLC v. State Farm Mut. Auto.*

2    *Ins. Co.*, 2020 WL 6205705 *7 (C.D. Cal. Sept. 11, 2020).

3         Here, the government cannot satisfy the elements of breach of contract

4    because it has no damages.  *See Global Hawk Ins. Co. v. Wesco Ins. Co.*, 424 F.

5    Supp. 3d 848, 854 (C.D. Cal. 2019) ("A claim for breach of contract 'is not

6    actionable without damage.'")  Indeed, Puig both waived indictment and appeared

7    voluntarily (from a foreign country) pursuant to a summons in this case, all of which

8    to-date has saved the government resources over the alternative of an indictment,

9    warrant, and foreign arrest.  These shortcomings (and the government's failure to

10   identify any possible damages in its motion), make clear that the government

11   "cannot sustain a claim for breach of contract because [the government] did not

12   suffer any cognizable harm caused by [Puig]."  *Global Hawk*, 424 F. Supp. 3d at

13   861.

14        **B.    The Government's Requested Relief Is Unspecified, Overbroad,**

15             **and Not Ripe**

16        When evaluated under appropriate principles of contract law, it appears that

17   what the government really seeks is declaratory relief, in the form of a declaration

18   from this Court that the government may be relieved of its contractual obligations.

19   But declaratory relief is not ripe for determination.  The rationale for avoiding the

20   premature adjudication for declaratory relief "is to prevent courts from entangling

21   themselves in abstract disagreements." *In re Real Estate Assoc. Ltd., P'ship Litig.*,

22   223 F. Supp. 2d 1109, 1138 (C.D. Cal. 2002).  "In order for an issue to be ripe for

23   determination, two conditions must be satisfied: (1) the dispute must be sufficiently

24   concrete to make declaratory relief appropriate (citations omitted); and (2) if a court

25   declines to consider the issues, the parties will suffer hardship."  *Id.*

26        Here, the request is not ripe for determination because it is not sufficiently

27   concrete to make declaratory relief appropriate.  Indeed, the government has

28   requested that the Court "relieve it from its obligations" under the plea agreement

5

1   without specifying exactly the obligation(s) of which it seeks to be relieved.  This

2   alone makes its motion premature and unsupported.  Similarly, there is no hardship

3   that will be suffered if the Court declines to consider the issues at this point in the

4   litigation.  Indeed, while the government does not specify the obligation(s) of which

5   it seeks to be relieved, it references that one of its obligations was not to charge

6   defendant with a violation of 18 U.S.C. § 1503, Obstruction of Justice.  (Mot. at 2-

7   3.)  But nothing is stopping the government from proceeding with the case, using the

8   regular tools at its disposal to seek an indictment, should it wish to do so.

9          Accordingly, the government cannot show a concrete need for the Court's

10  intervention, nor will it suffer any hardship without it.  If the government wishes to

11  supersede the information, it has the power to convene a grand jury, present

12  evidence, and cause an indictment to be returned.  *See* Fed. R. Crim. P. 6(a)(1).

13  There is no legal or practical impediment to the government taking these actions.

14         By contrast, this is not the situation – often present in breach of plea

15  agreement cases – where the defendant has entered a guilty plea such that the

16  government needs to seek the specific relief of vacating the guilty plea that the

17  Court has accepted pursuant to Rule 11.  *See, e.g.*, *U.S. v. Aguila-Muniz*, 156 F.3d

18  974, 978 (9th Cir. 1998) ("After a plea agreement has been accepted and entered by

19  the court, the court may not rescind the plea agreement on the government's motion

20  unless the defendant has breached the agreement.").  Here, there is no comparable

21  need for any specific form of relief, so the motion should be denied.

22         If the government were to seek a superseding indictment, defendant Puig

23  would possibly have a breach motion because he would have damages.  The Ninth

24  Circuit has endorsed the procedure that a defendant may challenge an indictment for

25  breach of a plea agreement.  *See Plascencia-Orozco*, 852 F.3d at 920 ("If the

26  government indicts a defendant on charges that the defendant believes are barred by

27  a preexisting plea agreement, the defendant may move to dismiss those charges.")

28  Like any party to a contract, however, Puig might or might not decide to assert such

WAYMAKER

1   breach, in which case the Court might never be asked to intervene.  Judicial

2   economy favors waiting until the point at which there is a justiciable controversy

3   and a need for judicial intervention, and this is not that point.

4          The government's belief that the Court needs to do something to "relieve it

5   from its contractual obligations" apparently arises from superfluous language in the

6   plea agreement stating that its obligations will be relieved "[i]f the USAO declares

7   this agreement breached, and the Court finds such a breach to have occurred."  (*See*

8   Plea Agreement (Dkt. 6) at ¶ 21).  But the government drafted this language and

9   includes it in all plea agreements in this district.  The Court did not draft the

10  language, nor is it found in any statute or rule.  The government cannot use

11  contracting language to assign the Court a task, where the law does not provide a

12  basis for the Court's involvement.  *See supra*, *Real Estate Assoc. Ltd.*, 223 F. Supp.

13  2d at 1138.

14  **C.      The Government Has Not Requested that the Court Find a**

15  **         Knowing Breach and the Defense Requests that Any Discussion of**

16  **         that Issue Be Deferred Until the Pretrial Motion Stage**

17          Finally, it is important to note that the government requested only that the

18  Court find a breach under paragraph 21 of the plea agreement, rather than a

19  "knowing breach" of the plea agreement under paragraph 22, and did not ask this

20  Court to invoke any of the potential waivers in the subparagraphs of paragraph 22.

21  Out of an abundance of caution, however, and because the government did not

22  identify with precision the relief it seeks, the defense wishes to be clear that it does

23  not believe paragraph 22 is implicated by the government's Motion and, in any

24  event, it would respectfully request that any adjudication of that issue be deferred to

25  the pre-trial motion stage of this case.

26          Paragraph 22 of the plea agreement provides, among other things, that if the

27  Court finds a "knowing breach" of the plea agreement, the Court may permit the

28  Factual Basis to be admitted at trial.  The defense submits that this is more

DEFENDANT PUIG'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR
BREACH OF PLEA AGREEMENT

1  appropriately a pre-trial issue, and also submits that Puig and his team need to

2  review all of the discovery before it can respond to whether a "knowing breach" has

3  occurred.  Puig may also ask the Court to exclude the statement on other evidentiary

4  bases.

5          As the defense has informed the Court, the circumstances defendant was

6  under in deciding whether to enter a plea agreement with the government were

7  difficult, at best.  After retaining criminal counsel on May 25, 2022, the government

8  met (over Zoom) with counsel and defendant concerning the government's view of

9  the evidence and his options on June 6, 2022, with a short deadline to indicate his

10  willingness to discuss a plea, and a plea agreement was issued eight days after that.

11  As defendant Puig was weighing his options, he was also enduring a grinding work

12  schedule half-way across the world in Korea.  For a charge that did not present a

13  danger to anyone, and presented no statute of limitations issues, it is not clear why

14  there was a need for haste, but the government clearly was in a hurry.

15          This presented the defendant with a Hobson's choice: agree to a plea

16  agreement or face a mid-season arrest and extradition, ruining his season and

17  interfering with his only source of gainful employment.  The impossibility of this

18  choice was compounded by the fact that defendant had new counsel, was 17-hours

19  away in a different time zone, has a third-grade education, ADHD, and needed a

20  Cuban translator to understand the government's complex plea agreement and

21  alleged Factual Basis.

22          Given these circumstances, the defense may seek recission of the plea

23  agreement, or at least may ask the Court not to grant the government specific

24  enforcement of paragraph 22, asserting contractual defenses such as

25  unconscionability, public policy, undue influence, nondisclosure, or mistake.  *See,*

26  *e.g.*, *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010) ("An agreement or

27  any portion thereof is procedurally unconscionable if 'the weaker party is presented

28  the clause and told to 'take it or leave it' without the opportunity for meaningful

8

1  negotiation.'" (citing *Szetela v. Discover Bank*, 97 Cal.App.4th 1094 (2002)).  But

2  the defense needs a full review of the relevant discovery to evaluate these defenses,

3  and may need an expert report attesting to Puig's ADHD and limited education.  For

4  these reasons, the defense requests that these decisions be deferred until the pretrial

5  period.

6        In addition, the defense may ask the Court to exclude the statement under

7  general evidence standards such as Fed. R. Evid. 403, which would require the

8  Court to determine the admissibility of the statement in the context of other trial

9  evidence.  These would be appropriate questions to evaluate in pre-trial motions.

10        For these reasons, the defense respectfully requests that any determination

11  whether there was a "knowing breach" be addressed, if at all, in pre-trial motions.

12        **D.      The Motion Should be Denied Pursuant to Local Rule 7-3**

13        As a final matter, the government's motion should be denied for failure to meet

14  and confer in violation of Local Rule 7-3.  The Central District of California's local

15  rules require that seven days before moving for relief, "counsel contemplating the

16  filing of any motion must first contact opposing counsel to discuss thoroughly,

17  preferably in person, the substance of the contemplated motion and any potential

18  resolution."  C.D. Cal. Local Rule 7-3.[1]  District courts have discretion to refuse to

19  consider a motion that fails to comply with these requirements.  *See Alcatel-Lucent*

20  *USA, Inc. v. Dugdale Commc'ns, Inc.*, 2009 WL 3346784, at *4 (C.D. Cal. Oct. 13,

21  2009) (Denying motion and stating "[t]he meet and confer requirements of Local

22  Rule 7-3 are in place for a reason . . . nothing short of strict compliance with the local

23  rules" is expected.); *See also Purdue v. CBC Rest. Corp.*, 2019 WL 7166979, at *1-2

24

25

26  [1] If no resolution is reached, Local Rule 7-3 also requires that "counsel for the
    moving party [] include in the notice of motion a statement to the following effect:

27  'This motion is made following the conference of counsel pursuant to L.R. 7-3
    which took place on (date).'"

28

DEFENDANT PUIG'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR
BREACH OF PLEA AGREEMENT

1   (C.D. Cal. Nov. 9, 2019) (denying motion on the basis that it failed to comply with

2   Local Rule 7-3, and disregarded explanations for the failure offered on reply.)

3        Here, the government has failed to meet and confer in violation of the local

4   rules and failed to include the required language in its notice of motion that "[t]his

5   motion is made following the conference of counsel pursuant to L.R. 7-3 which took

6   place on (date)." (*See* Dkts. 33, 36.) As in *Purdue*, anything the government could

7   say on reply to explain this fatal deficiency (and Puig is aware of no such thing)

8   should be disregarded. The meet and confer requirement encourages parties to

9   informally resolve disputes and preserve valuable judicial resources. The

10  government has entirely bypassed this rule—and professional courtesy—by filing the

11  motion with no notice whatsoever, and the issues raised by Puig in this response

12  could have obviated the need for the instant motion practice. *See Purdue,* 2019 WL

13  7166979, at *2 (there are "numerous conflicts manifest in the parties' briefing

14  [which] make clear that many of the parties' disputes were suitable for exactly the

15  type of extensive meet and confer mandated by Local Rule 7-3 before the parties'

16  sought the Court's intervention on each of these issues.").

17        The defense further notes that this is the second time that government counsel

18  has simply disregarded the Local Rules (*see* Dkt. 35) and it should have to at least

19  attempt to follow the rules in good faith like everyone else.

20        The Motion should be denied on this basis alone.

21  **III.**   **CONCLUSION**

22        For the foregoing reasons, Puig respectfully requests that this Court deny the

23  Government's Motion for Breach.

24  DATED:  December 28, 2022      WAYMAKER LLP

25

26                      By:     */s/ Keri Curtis Axel*

                                    KERI CURTIS AXEL

27                                   *Attorneys for Defendant Yasiel Puig Valdes*

28

DEFENDANT PUIG'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR
BREACH OF PLEA AGREEMENT

Case 2:22-cr-00394-DMG   Document 46   Filed 01/04/23   Page 1 of 12   Page ID #:209

1  E. MARTIN ESTRADA
   United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   JEFF MITCHELL (Cal. Bar No. 236225)
4  Assistant United States Attorney
   Major Frauds Section
5  DAN G. BOYLE (Cal. Bar No. 332518)
   Assistant United States Attorney
6  Asset Forfeiture & Recovery Section
       1100/1400 United States Courthouse
7      312 North Spring Street
       Los Angeles, California 90012
8      Telephone: (213) 894-0698/2426
       Facsimile: (213) 894-6269/0141
9      E-mail:   jeff.mitchell@usdoj.gov
                 daniel.boyle2@usdoj.gov
10
   Attorneys for Plaintiff
11 UNITED STATES OF AMERICA

12                UNITED STATES DISTRICT COURT

13             FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 UNITED STATES OF AMERICA,        No. CR 22-394-DMG

15            Plaintiff,            GOVERNMENT'S REPLY TO DEFENDANT'S
                                    OPPOSITION TO MOTION FOR BREACH;
16            v.                    MEMORANDUM OF POINTS AND
                                    AUTHORITIES; DECLARATION; EXHIBTS
17 YASIEL PUIG VALDES,

18            Defendant.

19

20

21      Plaintiff United States of America, by and through its counsel

22 of record, the United States Attorney for the Central District of

23 California and Assistant United States Attorneys Jeff Mitchell and

24 Daniel Boyle, hereby files its reply to defendant's opposition to

25 plaintiff's motion for breach. (Dkt. No. 45.)

26 //

27 //

28

                                                              ER 62

1    This reply is based upon the attached memorandum of points and

2  authorities, the declaration and exhibits,[1] the files and records in

3  this case, and such further evidence and argument as the Court may

4  permit.

5  Dated: January 4, 2022              Respectfully submitted,

6                                      E. MARTIN ESTRADA
                                        United States Attorney
7
                                        SCOTT M. GARRINGER
8                                       Assistant United States Attorney
                                        Chief, Criminal Division
9

10                                           */s/ Jeff Mitchell*
                                        _____
11                                      JEFF MITCHELL
                                        DANIEL BOYLE
                                        Assistant United States Attorney
12
                                        Attorneys for Plaintiff
13                                      UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27  _____

28     [1] The declaration and exhibits will be lodged separately under
    seal.

                                      2

                                                              ER 63

1

<div align="center"><u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u></div>

2  **I.   INTRODUCTION**

3       On December 29, 2022, defendant filed an opposition to the
4  government's motion to find him in breach of his plea agreement (the
5  "Opposition").  Defendant appears to concede that the government
6  should be able to charge him with Obstruction of Justice, but argues
7  that the plea agreement does not prohibit the government from seeking
8  an indictment now, even though it expressly provides otherwise.

9       Defendant also unnecessarily describes the January 27th interview
10  and plea negotiation process; however, defendant's description omits
11  key facts and is thus misleading on several points.  The government
12  briefly provides a more complete factual background below.

13  **II.  FACTUAL BACKGROUND**

14       After several months of negotiating, defendant, through his
15  former counsel, agreed to participate in a voluntarily interview on
16  January 27, 2022, at 1:30 p.m.  After the government advised counsel
17  of the nature of its investigation, counsel indicated that his client
18  was unlikely to have information relevant to the investigation, but
19  nonetheless requested an immunity letter to protect defendant from
20  any incriminating statements.  (Exhibit A.)  The government agreed.
21  The government also advised counsel that defendant was not a target
22  of the investigation.  (Declaration ¶ 2.)

23       In his opposition, and in statements made to the government and
24  to the media,[1] defendant has suggested that he was not adequately
25  prepared for the interview because his attorneys practiced civil, not

26

27

---

28       [1] https://www.latimes.com/california/story/2022-11-23/yasiel-
puig-plea-hearing-delayed-attorneys-explore-possible-defense

<div align="center">ER 64</div>

1  criminal, law and he did not have his own interpreter.  (Opposition

2  at 1.)  These claims are misleading.

3       Defendant's attorney at that time was a former Federal criminal

4  prosecutor from the Southern District of California.  (Declaration

5  ¶ 3.)  Further, defendant's then-counsel advised the government that

6  even though defendant speaks and understands some English, counsel

7  recommended the government retain a professional Spanish-language

8  interpreter, and in particular, one of Cuban descent to avoid any

9  misunderstandings due to the dialect.  (Id. ¶ 6.)  The government

10  agreed, and retained an independent court-certified Spanish language

11  interpreter of Cuban descent for the interview.  (Id.)

12       On January 27, 2022, the government participated in a Webex

13  video conference with defendant, his two defense attorneys, and an

14  independent court-certified Spanish language interpreter of Cuban

15  descent.  (Exhibit B.)  The Webex conference began on time at 1:30

16  p.m., however, defendant was approximately 30 minutes late.  After he

17  arrived, defendant was given time to speak to both of his attorneys

18  and the interpreter outside the presence of the government.  At the

19  beginning of the interview, defendant's attorneys requested that the

20  interview not be recorded.  (Exhibit B.)  The government agreed.  The

21  government then discussed the immunity letter, and the case agent

22  began to admonish defendant that any false statements could result in

23  a criminal prosecution; however, defendant interrupted the agent and

24  asked why the government was wasting his time.  (Id.)  The agent

25  nonetheless finished the admonishment.  (Id.)

26       For the next hour and a half, the government attempted to

27  interview defendant about his knowledge of the Wayne Nix Sports

28  Gambling Organization.  The government showed defendant photos of the

2

1   Sand Island Sports conspirators, copies of the cashier's checks
2   defendant purchased to pay his gambling losses with Sand Island
3   Sports, screen capture images of the Sand Island Sports Website that
4   defendant used to place bets, and even a screen capture image that
5   defendant had taken of his own cell phone and sent to the individual
6   described in the Information as Agent 1.  (Id.)  Defendant, however,
7   denied all knowledge of the organization and its conspirators, except
8   for Agent 1 who he stated that he knew only from baseball.  Towards
9   the end of the interview, defendant indicated that Agent 1 had just
10  sent him a text message, and defendant then began to review his prior
11  text messages with Agent 1.  (Id.)

12      In the Opposition, defendant states that the government
13  terminated the interview while defendant was still refreshing his
14  memory with the older text messages from Agent 1.  (Opposition at 2.)
15  The government disagrees.  Defendant indicated that he found text
16  messages with Agent 1 as far back as May 2019 but indicated that
17  there were no discussions related to unlawful sports gambling.
18  (Exhibit B.)  The government then asked a few additional questions
19  and eventually ended the interview at 3:41 p.m.  (Id.)

20      In the Opposition, defendant also states that the government did
21  not contact defendant's prior counsel after the interview and did not
22  indicate there were any issues with the proffer.  (Opposition at 2.)
23  The government again disagrees.  Multiple times during the interview,
24  the government allowed defendant, his attorneys, and the interpreter
25  to speak outside the presence of the government.  (Exhibit B.)
26  During the final break during the interview, government counsel
27  privately advised defendant's then-counsel that defendant's
28  statements were contrary to the evidence obtained during the

3

1    investigation.  (Id. at 3; Declaration ¶ 9.)  Counsel then conferred

2    with his client, but defendant's recollection did not change after

3    the break.  Immediately after the interview, the government again

4    spoke to counsel privately and advised him that the government

5    believed defendant had provided false statements during the interview

6    and that the government would discuss internally whether to seek an

7    indictment.  (Declaration ¶ 10.)

8          Ultimately, an indictment of defendant was approved and signed

9    by the Chief of the Criminal Division on May 25, 2022.  (Declaration

10   ¶ 11.)  That same day, the government was contacted by defendant's

11   new counsel, Keri Curtis Axel.  (Id.)  The government advised counsel

12   that it was prepared to seek an indictment against defendant alleging

13   Obstruction of Justice and False Statements, but counsel requested

14   that the government delay seeking an indictment and instead attempt

15   to resolve the case pre-indictment.  (Id.)  Counsel indicated that a

16   pre-indictment resolution would be preferable to defendant because it

17   would minimize the amount of negative publicity.  (Id.)  Two days

18   later, before counsel had reviewed any of the evidence, defense

19   counsel advised the government via email that she had "authority to

20   move forward to engage in plea discussions," and requested a reverse

21   proffer to review the evidence.  (Exhibit C.)  The government agreed.

22         On June 6, 2022, the government conducted a reverse proffer and

23   showed defendant and his counsel a 79-slide PowerPoint presentation

24   with defendant's betting history with Sand Island Sports, his text

25   messages with Agent 1 and Wayne Nix, and an audio recording in

26   English sent by defendant, among other evidence.  (Declaration ¶ 12.)

27   Shortly after the reverse proffer, counsel requested a plea agreement

28   that would allow defendant to plead guilty to a single-count

                                         4

1  information charging him with the less serious offense of providing

2  false statements.  (Id. ¶ 13.)  The government agreed.

3      On June 16, 2022, the government extended a plea offer to

4  defendant, and requested a response by June 23rd.  (Exhibit D.)  After

5  several rounds of negotiations, including over the factual basis and

6  potential fine, defendant signed the plea agreement on July 7th.

7  During this time, defense counsel never suggested that defendant was

8  factually innocent and did not request any additional discovery.

9  (Declaration ¶ 14.)

10      In his Opposition, defendant states that he was given only two

11  days to consider the proposed plea, and that he had no choice but to

12  accept a plea agreement because the government provided defendant

13  with an ultimatum: sign a plea agreement or face arrest and

14  extradition in Korea, thereby ruining his baseball season.

15  (Opposition at 2, 8.)  The government disagrees.

16      First, while the government did ask counsel to notify the

17  government relatively quickly whether defendant wanted a pre-

18  indictment resolution, as described above, defendant was given nearly

19  a month to consider successive versions of the proposed plea before

20  defendant ultimately signed the final version of the plea agreement.

21      Second, the government disagrees that defendant or his counsel

22  were given any ultimatum regarding possible arrest and extradition.

23  When defense counsel (not the government) raised the issue of arrest

24  and extradition during a meet and confer, the government truthfully

25  confirmed that arrest warrants are typically issued after an

26  indictment is returned. (Declaration ¶ 15.)  Indeed, Rule 9 of the

27  Federal Rules of Criminal Procedure states that the court "must issue

28  a warrant [] for each defendant named in an indictment. . . ."

5

ER 68

1  (emphasis added.)  Government counsel noted that this could result in

2  a foreign arrest, because after arrest warrants are issued, law

3  enforcement officers are required to submit those warrants to a

4  central database which could trigger a foreign arrest – all facts

5  beyond the control of government counsel.  However, government

6  counsel was simply responding to a topic raised by defense counsel.

7  Moreover, as described above, defendant's current counsel was

8  actively seeking plea negotiations from the earliest interactions

9  with the government, which preceded any discussions of arrest or

10  extradition. (See Exhibit C.)[2]

11      After a plea agreement was negotiated, counsel requested that it

12  be filed under seal and that defendant be allowed to continue playing

13  baseball in Korea.  (Declaration ¶ 17.)  The government initially

14  declined counsel's request, but eventually agreed to both requests

15  for the reasons described in the under-seal declaration.  (Id. ¶ 18.)

16  On at least two occasions, the government advised counsel that it was

17  prepared to unseal the matter, but eventually conceded to counsel's

18  requests to keep the matter sealed and continue defendant's initial

19  appearance to allow defendant to finish the baseball season, and

20  later, to finish the playoffs.  (Id. ¶ 19.)

21      In his opposition, defendant states that in November 2022 he

22  "found evidence suggesting that other individuals had sought to

23  induce him to collude or obstruct the government's investigation but

24  Puig had repeatedly refused – at a minimum contradicting the

25

26  _____

27      [2] Moreover, as a matter of practice in this district, defense
   attorneys often request that clients be permitted to self-surrender
   at the courthouse before any warrants are submitted.  Defense counsel

28  never requested that her client be allowed to self-surrender if the
   government obtained an indictment.  (Declaration ¶ 16.)

6

ER 69

1   government's obstruction allegations."   (Opposition at 3.)   This

2   claim is vague but appears to be inaccurate for two reasons.

3        First, in November 2022, defense counsel contacted the

4   government and stated that she believed that Agent 1 and Individual B

5   entrapped defendant.   (Declaration ¶ 20.)   On November 22, 2022, the

6   government provided counsel additional discovery showing that neither

7   Agent 1 nor Individual B could have legally or factually entrapped

8   defendant, because all of the contemplated charges (False Statements

9   and Obstruction of Justice) stemmed from defendant's January 27th

10  interview, and neither Agent 1 nor Individual B were working at the

11  government's direction at that time.   Defendant's false statements

12  and obstructive conduct are solely his responsibility.

13       Second, the new evidence that defendant claims to have "found"

14  appears to be text messages between defendant and Agent 1 that were

15  sent in March 2022, two months after both offenses occurred during

16  the January 27th interview. In these messages, Agent 1 asked defendant

17  several times what defendant said about Agent 1 during the interview.

18  These text messages show that defendant initially refused to respond

19  to Agent 1 because he feared law enforcement would seize his cell

20  phone, but eventually relayed a message to Agent 1 through the person

21  identified as Individual B in the Information.   In that message,

22  defendant told Individual B to contact Agent 1 and tell him that

23  defendant said "nothing, I not talking. I said that I only know

24  [Agent 1] from baseball. Call [Agent 1] and tell him that[.] not text

25  him."   (Exhibit E.)   These messages are not exculpatory.   Further,

26  they are not new to defendant.   The government presented these

27  messages to defendant and his current counsel during the reverse

28  proffer.   (Declaration ¶ 22; Exhibit E.)

7

ER 70

**III. ARGUMENT**

    **A.   Defendant Breached His Plea Agreement**

Defendant appears to concede that he breached the express terms of his plea agreement by not pleading guilty; however, he argues that he had no choice but to plead guilty because an indictment would have interfered with his baseball season.  (Opposition at 8.)  This is not a defense and is irrelevant to the issues before the Court.

Defendant suggests that the proper procedure here is for the government to violate its obligations in the plea agreement and charge defendant with Obstruction of Justice now, and then allow defendant the opportunity to bring a motion to dismiss the indictment later, which he "might or might not decide to assert." (Opposition at 6-7.)  The government disagrees.  Defendant fails to cite to any authority for his suggested approach, and it is contrary to the explicit terms of the plea agreement.

As defendant concedes, plea agreements are examined by contract law standards.  Here, the filed plea agreement is the governing contract, and expressly outlines the procedures to follow in this situation.  (Plea Agreement ¶¶ 21, 22.)  It states that the government will be relieved of its obligations only after "the USAO declares this agreement breached, <u>and</u> the Court finds such a breach to have occurred." (<u>Id.</u>) (emphasis added.)  Thus, based on the contract in this case, the government is not relieved of its obligations until the Court finds a breach.[3]

---

[3] The plea agreement here also states that the effective date of the plea agreement is upon the signature of the defendant, his counsel, and an Assistant U.S. Attorney.  (Plea Agreement ¶ 20.)  Thus, the plea agreement became effective, and binding on the parties, when the last signature was added on August 29, 2022.

1    Several circuits have held that the government may not

2  unilaterally determine a breach.  See, e.g., United States v. Miller,

3  406 F.3d 323, 334-35 (5th Cir. 2005)(government may not unilaterally

4  declare breach because due process requires that defendant be given

5  notice and an opportunity to debate issue with court); United States

6  v. Cox, 985 F.2d 427, 430 (8th Cir. 1993)(neither government nor

7  defendant may unilaterally declare plea agreement void; only court

8  has that authority); United States v. Sowemimo, 335 F.3d 567, 571-72

9  (7th Cir. 2003)(although government may not unilaterally declare

10  breach of plea agreement, defendant not entitled to evidentiary

11  hearing because he admitted he did not cooperate fully.)

12    **B.   The Government Need Not Prove Civil Damages**

13    In his opposition, defendant also cites to numerous civil cases

14  that indicate that the moving party must show civil damages in a

15  breach of contract case; however, defendant fails to cite to a single

16  criminal case with a similar holding.  Defendant also suggests that

17  the government has not suffered damages because it can seek an

18  indictment now for Obstruction of Justice without a finding by the

19  Court.  (Opposition at 5-6.)  As discussed above, the government

20  disagrees.  Further, defendant fails to recognize the additional time

21  and resources that will be devoted to a trial in this matter, or the

22  substantial resources already expended preparing and producing

23  additional discovery in preparation for trial.

24    Defendant also argues that the motion should be denied because

25  the government did not specify the "exact[] obligation(s) of which it

26  seeks to be relieved."  (Opposition at 5-6.)  The plea agreement,

27  however, contains only one material obligation, i.e., not to charge

28  defendant with Obstruction of Justice.  (Plea Agreement ¶ 3(d).)  Not

1  only did the Government's Motion for Breach cite to its obligation in

2  paragraph 3(d) (Motion at 1-2), but defendant is clearly aware of the

3  government's obligation because he requested it (Exhibit D).

4          **C.   No Objection to Deferring on Paragraph 22**

5          Defendant requests that any adjudication of the issue in

6  paragraph 22, i.e., whether the government can introduce his factual

7  basis at trial, be deferred to pre-trial motions.  (Opposition at 7.)

8  The government does not object to defendant's request.

9          **D.   The Government Provided Notice of Intent to Seek a Breach**

10         In his opposition, defendant argues that the Court should deny

11  the government's motion because the government did not meet and

12  confer and provided defendant "no notice whatsoever," in violation of

13  Local Rule 7-3.[4]  (Opposition at 10.)  The government disagrees.

14         During the hearing on November 23, 2022, the government advised

15  both defendant and the Court that it would seek a breach of the plea

16  agreement if defendant failed to plead guilty.  Later on November 23,

17  2022, the government provided counsel written notice that it would

18  seek a motion for breach if defendant refused to abide by the terms

19  of his plea agreement and plead guilty. (Exhibit F.)  On November

20  28, 2022, the parties met and conferred and defense counsel advised

21  the government that defendant does not intend to plead guilty.  (Dkt.

22  No. 26.)

23  **IV.  CONCLUSION**

24         For all of these reasons, the government requests that the

25  Court make a finding that defendant breached his plea agreement.

26  _____

27         [4] The Court's Criminal Motion & Trial Order required defendant
    to serve the Opposition on the government by 4:30 p.m.; however,
28  defendant filed his opposition late at 10:32 p.m.  The government
    does not object to the late filing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

Page **1** of **3**

| Case No. | CR 22-394-DMG | | Date | January 6, 2023 |
|---|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE |
|---|---|
| Interpreter | N/A |

| Kane Tien | Not Reported | Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendant(s): | Present | Appt. | Ret. |
|---|---|---|---|---|---|---|---|
| Yasiel Puig Valdes | Not | | ✓ | Keri Curtis Axel | Not | | ✓ |

**Proceedings: [IN CHAMBERS] ORDER GRANTING MOTION TO FIND BREACH OF PLEA AGREEMENT [33]**

This action is before the Court on the Government's motion to find Defendant Yasiel Puig Valdes in breach of the plea agreement. [Doc. # 33.] The Government argues that Defendant breached the agreement by failing to plead guilty at his plea hearing on November 23, 2022 and accordingly seeks relief from its obligations under the agreement. *Id.* at 3.[1] The Court **GRANTS** the motion for the reasons set forth below.

**I.**
**BACKGROUND**

On July 7, 2022, Defendant and his attorney signed a plea agreement in which Defendant agreed, among other things, to plead guilty to one count of making false statements in violation of 18 U.S.C. § 1001(a)(2). The alleged false statements occurred during a January 27, 2022 interview with Homeland Security and IRS agents and the U.S. Attorney's Office during an investigation into illegal sports gambling and money laundering. [Doc. # 6 at 9.] The Government agreed not to criminally prosecute Defendant for obstruction of justice, as well as to make certain recommendations at sentencing. *See id.* at 3.

The plea agreement also contained the following provision regarding breach:

Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously

---

[1] Citations to the record are to the CM/ECF pagination.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CRIMINAL MINUTES—GENERAL

Page   **2** of **3**

entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

*Id.* at 15–16. The Government signed and filed the plea agreement on August 29, 2022. *Id.* at 18. On August 29, 2022, Defendant was charged by information with one count of making false statements in violation of 18 U.S.C. § 1001(a)(2). [Doc. # 1.]

Defendant was arraigned on November 15, 2022, and his plea hearing was scheduled for November 23, 2022. [Doc. # 22.] On November 23, the Court granted Defendant's request to continue the hearing to November 29, 2022. [Doc. # 24.] On November 28, the parties informed the Court that Defendant did not intend to enter a guilty plea, and the Court vacated the hearing. [Doc. # 25.] This motion followed.

Trial is currently scheduled to begin on February 14, 2023. [Doc. # 32.]

### II.
### DISCUSSION

As noted, the Government moves the Court to find Defendant in breach, so that the Government is relieved from its obligations in the plea agreement. In response to the Government's motion, Defendant argues there have not yet been any damages, so that the Government cannot meet the elements of a contractual breach, and any request for declaratory relief is not actionable or ripe for adjudication. Opp. at 5 [Doc. # 45.]

"Because important due process rights are involved, plea negotiations must accord a defendant requisite fairness and be attended by adequate 'safeguards to insure the defendant what is reasonably due (in) the circumstances.'" *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir. 1981) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

[O]ne requisite safeguard of a defendant's rights is a judicial determination, based on adequate evidence, of a defendant's breach of a plea bargaining agreement. The question of a defendant's breach is not an issue to be finally determined unilaterally by the government. *United States v. Simmons*, 537 F.2d 1260, 1261-62 (4th Cir. 1976). If the pleadings reveal a factual dispute on the issue of breach, the district court must hold a hearing to resolve the factual issues. If the pleadings reveal no disputed factual issues, no hearing is necessary and the court may determine the issue of breach as a matter of law.

We believe that constitutional principles of fairness also require that once the government acknowledges the existence of an agreement, the government has the burden of establishing a breach by the defendant if the agreement is to be considered unenforceable.

---

CR-11        **CRIMINAL MINUTES - GENERAL**        Initials of Deputy Clerk <u>KT</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

Page   **3** of **3**

*Id.* (cited with approval in *United States v. Packwood*, 848 F.2d 1009, 1011 (9th Cir. 1988)).  The Government must establish a breach by a preponderance of the evidence.  *Packwood*, 848 F.2d at 1011.

Here, Defendant did not plead guilty, despite agreeing to do so as part of his plea, and accordingly breached the agreement.  The Government cannot unilaterally declare Defendant to have breached the plea agreement but must obtain a judicial finding of breach to be relieved of its obligations.  Until the Government is so relieved, it is bound by its obligation not to prosecute Defendant for obstruction of justice.  [*See* Doc. # 6 at 3.]  Defendant is therefore incorrect that "nothing is stopping the government from proceeding with the case, using the regular tools at its disposal to seek an indictment" for the additional charge.  Opp. at 7.  Moreover, as the Government points out, it now faces the "additional time and resources that will be devoted to a trial in this matter" as a direct consequence of Defendant's breach.  Accordingly, the Court disagrees with Defendant's argument that any claim for breach of the plea agreement is not actionable due to a lack of damages or because the request for a finding of breach is not ripe.

Finally, Defendant argues that the Government failed to meet and confer with the defense prior to filing the motion, as required by Local Rule 7-3.  According to the Court's Criminal Motion and Trial Order, the parties' counsel must meet and confer to attempt to resolve the disputed issue before filing a motion.  [Doc. # 28 at 1.]  As long as there is substantial compliance with the "meet and confer" requirement, the Court generally does not require the Local Rule 7-3 certification in criminal motions.  The Government has filed under seal a November 23, 2022 letter from the Government advising Defendant of its intent to seek a finding that Defendant breached the plea agreement.  Presumably, the parties had an opportunity thereafter to confer on the matter prior to the Government's filing of the motion on December 14, 2022 and reached no agreement.  The Court therefore finds that the Government substantially complied with the Court's Order.

The Court finds Defendant in breach of the plea agreement.[2]  The Government therefore is relieved of any obligations it undertook in the plea agreement.

**IT IS SO ORDERED.**

---

[2] Defendant requests, and the Government does not oppose, that the Court defer any finding on whether the breach was "knowing."  Opp. at 8; Reply at 12 [Doc. # 46].  The Court accordingly does not reach that issue at this time.

There is some factual dispute over what happened during the January 27, 2022 interview and the plea negotiation process.  *See* Reply at 3–9.  The factual dispute is not relevant to this motion, and no hearing on the motion is required.  The crucial facts—that Defendant signed the plea agreement and no longer intends to plead guilty and the contents of that plea agreement—are undisputed.  Defendant does not argue that he entered into the plea agreement involuntarily.  [*See* Doc. # 45 at 5.]

**FILED**
CLERK, U.S. DISTRICT COURT

1/20/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ VAV _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2022 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>YASIEL PUIG VALDES,<br><br>            Defendant. | CR 22-394(A)-DMG<br><br>F I R S T<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 1503(a): Obstruction of Justice; 18 U.S.C. § 1001(a)(2): Making False Statements] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1503(a)]

A.    INTRODUCTORY ALLEGATIONS

At times relevant to this First Superseding Indictment:

Major League Baseball and Defendant PUIG

1.    Major League Baseball ("MLB") was a professional baseball organization and the oldest major professional sports league in the world.

2.    MLB players were governed by MLB rules that were presented to players during a number of informational and educational programs. All players were responsible for knowing and adhering to the requirements and expectations of each of these rules.

3.    MLB Rule 21(d)(3) prohibited any player, umpire, or club or league official or employee from placing bets with illegal book makers or agents of illegal book makers.

4.    MLB clubs were required to certify each year that they had instructed their players and staff on Rule 21 and posted copies of Rule 21 in English and Spanish in home and visitor clubhouses.

5.    Defendant YASIEL PUIG VALDES ("PUIG") was a professional baseball player who played for the Los Angeles Dodgers between 2013 and 2018.  The Dodgers traded defendant PUIG to the Cincinnati Reds in December 2018, and the Reds traded defendant PUIG to the Cleveland Indians on July 31, 2019.  As of April 2022, defendant PUIG played for the Kiwoom Heroes of the Korean Baseball Organization League, based in South Korea.

### The Investigation into Illegal Sports Gambling

6.    The Department of Homeland Security, Homeland Security Investigations ("HSI") and the Internal Revenue Service – Criminal Investigation Division ("IRS-CI") in Los Angeles and the United States Attorney's Office ("USAO") for the Central District of California were conducting a federal criminal investigation into federal crimes, including illegal sports gambling and money laundering (the "Federal Investigation").

7.    The operation of a sports gambling business in California was prohibited by 18 U.S.C. § 1955 and California Penal Code § 337a.

2

ER 78

1          The Wayne Nix Illegal Sports Gambling Business

2     8.   Wayne Nix ("Nix") was a resident of Orange County,

3 California.  Nix was a minor league baseball player from 1995 to

4 2001.

5     9.   Sometime after 2001, Nix began operating an illegal

6 bookmaking business in the Los Angeles area that accepted and paid

7 off bets from bettors in California and elsewhere in the United

8 States based on the outcomes of sporting events at agreed-upon odds

9 (the "Nix Gambling Business").  Through contacts he had developed

10 during his own career in professional sports, Nix created a client

11 list of current and former professional athletes, and others.

12     10.  Nix used agents to place and accept bets from others for

13 the Nix Gambling Business, thus expanding the business.

14     11.  Sand Island Sports operated Internet sports gambling

15 websites, including www.sandislandsports.com and www.betprestige.com

16 (hereinafter, the "Sand Island Sports websites"), hosted on servers

17 primarily located outside the United States.  Sand Island Sports also

18 operated toll-free telephone services (the "call center") to

19 facilitate sports betting.  The Sand Island Sports websites and call

20 center facilitated unlawful sports gambling by providing a platform

21 to book makers to track bets placed by their clients.

22     12.  Agent 1 was a former collegiate baseball player and a

23 private baseball coach.  Beginning in 2019, Agent 1 worked for the

24 Nix Gambling Business as an agent.  Agent 1 placed and accepted bets

25 from others and helped Nix maintain the Nix Gambling Business by,

26 among other things, demanding and collecting money owed to the Nix

27 Gambling Business by bettors and others.

28

                                  3

13.  As part of the Nix Gambling Business, Nix and Agent 1 used the Sand Island Sports websites and call center to create accounts through which wagers would be placed and tracked, and to set credit limits for bettors.

14.  Nix provided bettors with account numbers and passwords for the Sand Island Sports websites and directed the bettors to use the Sand Island Sports websites to place bets with the Nix Gambling Business.

15.  Bettors would place bets online through the Sand Island Sports websites, and through Nix, Agent 1, and others working at Nix's direction.

16.  In January 2019, defendant PUIG met Agent 1 at a youth baseball camp, and Agent 1 later assisted defendant PUIG in preparing for the upcoming baseball season.

17.  Individual A was a client of the Nix Gambling Business who, in or about June 2019, was owed at least $200,000 in gambling winnings from the Nix Gambling Business.

18.  Individual B was a private baseball coach who assisted defendant PUIG in placing sports bets with Agent 1 and assisted Agent 1's efforts to collect gambling debts from defendant PUIG.

### Defendant PUIG's Use of the Nix Gambling Business

19.  Beginning no later than May 2019, defendant PUIG began placing bets on sporting events with the Nix Gambling Business through Agent 1.  By June 17, 2019, defendant PUIG owed the Nix Gambling Business $282,900 for sports gambling losses.

20.  Between June 25, 2019, and July 3, 2019, in a series of text messages, Agent 1 and Individual B instructed defendant PUIG to make a check or wire transfer payable to Individual A.

4

ER 80

21.  On June 25, 2019, defendant PUIG withdrew $200,000 from a Bank of America financial center in Glendale, California, and purchased two cashiers' checks for $100,000 each that were made payable to Individual A.

22.  On July 3, 2019, defendant PUIG sent the cashiers' checks to Individual A via the United Parcel Service ("UPS") and sent a photo of the UPS shipping label to Agent 1 and Individual B via text message.

23.  On July 4, 2019, via text message, Nix provided defendant PUIG direct access to the Sand Island Sports websites, assigned defendant PUIG player identification number "R182" and password "yp," and provided defendant PUIG the Sand Island Sports website addresses.

24.  Between July 4, 2019, and September 29, 2019, defendant PUIG placed 899 bets on sporting events through the Nix Gambling Business, Agent 1, and Sand Island Sports.

<u>Investigation into Wayne Nix and Agent 1</u>

25.  On January 27, 2022, defendant PUIG was interviewed in the presence of his attorney by HSI, IRS-CI, and the USAO regarding the Federal Investigation, including the cashiers' checks defendant PUIG sent to Individual A.  Defendant PUIG, through his counsel, requested that HSI not record the interview.

26.  At the beginning of the interview, a Special Agent from HSI admonished defendant PUIG that lying to federal law enforcement agents is a crime, and defendant PUIG stated that he understood.

B.  <u>OBSTRUCTION OF JUSTICE</u>

27.  On or about January 27, 2022, in Los Angeles County, within the Central District of California and elsewhere, defendant PUIG corruptly endeavored to influence, obstruct, and impede the due

1  administration of justice, namely, the Federal Investigation, by

2  providing false information to, and withholding information from,

3  HSI, IRS-CI, and the USAO.  In particular, in a meeting between

4  defendant PUIG and HSI, IRS-CI, and the USAO, defendant PUIG falsely

5  stated that he had never discussed sports gambling with Agent 1 and

6  withheld information about Agent 1's involvement with bets made by

7  defendant PUIG and the payment of defendant PUIG's gambling debts.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                              COUNT TWO

2                        [18 U.S.C. § 1001(a)(2)]

3       28.   The Grand Jury incorporates paragraphs 1 through 26 of this

4  First Superseding Indictment here.

5       29.   On or about January 27, 2022, in Los Angeles County, within

6  the Central District of California, and affecting the Federal

7  Investigation in the Central District of California, and in a matter

8  within the jurisdiction of the executive branch of the government of

9  the United States, namely, HSI, IRS-CI, and the USAO, defendant PUIG

10  knowingly and willfully made the following materially false

11  statements and representations to HSI, IRS-CI, and the USAO, knowing

12  that these statements and representations were untrue:

13          a.   Defendant PUIG falsely stated that he had never

14  discussed or talked about sports betting with Agent 1.  In fact, as

15  defendant PUIG then knew, defendant PUIG discussed and talked about

16  sports betting with Agent 1 via telephone and text messages on

17  numerous occasions, and Agent 1 assisted defendant PUIG in placing at

18  least 899 bets on sporting events between in or about May 2019 and on

19  or about September 29, 2019.

20          b.   Defendant PUIG falsely stated that he had placed a bet

21  online with an unknown person on an unknown website which resulted in

22  a loss of $200,000.  In fact, as defendant PUIG then knew, defendant

23  PUIG placed a series of bets directly through Agent 1 that resulted

24  in the gambling loss, and not through a website.

25          c.   Defendant PUIG falsely stated that he did not know the

26  individual who instructed him to send $200,000 in cashiers' checks to

27  Individual A and that he had never communicated with that person via

28  text message.  In fact, as defendant PUIG then knew, Agent 1 and

                                      7

1   Individual B, who defendant PUIG knew, instructed defendant PUIG via

2   text messages to send $200,000 to Individual A, and defendant PUIG

3   had communicated with Agent 1 and Individual B via text messages on

4   multiple occasions.

5

6                                        A TRUE BILL

7

8                                        ___/S/_____
                                         Foreperson
9

10  E. MARTIN ESTRADA
    United States Attorney
11

12

13  MACK E. JENKINS
    Assistant United States Attorney
14  Chief, Criminal Division

15  RANEE A. KATZENSTEIN
    Assistant United States Attorney
16  Chief, Major Frauds Section

17  ALEXANDER B. SCHWAB
    Assistant United States Attorney
18  Deputy Chief, Major Frauds Section

19  JEFF MITCHELL
    Assistant United States Attorney
20  Major Frauds Section

21  DANIEL BOYLE
    Assistant United States Attorney
22  Asset Forfeiture Section

23

24

25

26

27

28

                                    8

1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   JEFF MITCHELL (Cal. Bar No. 236225)
4  Assistant United States Attorney
   Major Frauds Section
5  DAN G. BOYLE (Cal. Bar No. 332518)
   Assistant United States Attorney
6  Asset Forfeiture & Recovery Section
        1100 United States Courthouse
7       312 North Spring Street
        Los Angeles, California 90012
8       Telephone: (213) 894-0698/2426
        Facsimile: (213) 894-6269/0141
9       E-mail:   jeff.mitchell@usdoj.gov
                  daniel.boyle2@usdoj.gov
10
   Attorneys for Plaintiff
11 UNITED STATES OF AMERICA

12                  UNITED STATES DISTRICT COURT

13               FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 UNITED STATES OF AMERICA,          CR No. 22-394-DMG

15            Plaintiff,              GOVERNMENT'S NOTICE OF MOTION AND
                                      MOTION FOR ORDER RE: DEFENDANT'S
16            v.                      KNOWING BREACH OF PLEA AGREEMENT;
                                      MEMORANDUM OF POINTS AND
17 YASIEL PUIG VALDES,                AUTHORITIES

18            Defendant.             Hearing Date: July 5, 2023
                                     Hearing Time: 2:30 p.m.
19                                   Location:    Courtroom of the
                                                  Hon. Dolly M. Gee
20

21      Plaintiff United States of America, by and through its counsel

22 of record, the United States Attorney for the Central District of

23 California and Assistant United States Attorneys Jeff Mitchell and

24 Dan G. Boyle, hereby moves this Court for an Order finding that

25 defendant Yasiel Puig Valdes knowingly breached his plea agreement

26 with the government in this matter, and accordingly, that the

27

28

                                                               ER 85

government may seek to admit the factual basis of defendant's plea agreement (ECF No. 6) at trial in this matter.

Plaintiff brings this Motion now to allow any attorney-client privilege issues raised by defendant's anticipated response to be resolved sufficiently in advance of trial to avoid affecting the current August 8 trial date.

This Motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Pursuant to the Local Rules and the Court's Individual Practices, the undersigned sought to confer with defense counsel regarding the content of this Motion by letter dated April 20, 2023, and sent by e-mail on that date, but did not receive a response.

Dated: June 1, 2023                Respectfully submitted,

                                   E. MARTIN ESTRADA
                                   United States Attorney

                                   MACK E. JENKINS
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                        /s/
                                   _____
                                   DAN G. BOYLE
                                   JEFF MITCHELL
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

ii

Case 2:22-cr-00394-DMG  Document 110  Filed 06/01/23  Page 3 of 28  Page ID #:898

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................1

TABLE OF AUTHORITIES.............................................2

MEMORANDUM OF POINTS AND AUTHORITIES.............................1

I.    INTRODUCTION...............................................1

II.   BACKGROUND.................................................2

      A.    The Nix Gambling Investigation.......................2

      B.    Defendant's Interview................................2

      C.    Defendant Changes Counsel and Initiates Plea
            Negotiations.........................................3

      D.    The Plea Agreement...................................4

      E.    Defendant Fails to Plead Guilty as Agreed............6

      F.    Relevant Prior Motion Practice.......................7

III.  RELEVANT LAW...............................................8

IV.   ARGUMENT...................................................9

      A.    Defendant Knowingly Breached the Plea Agreement......9

      B.    The Court May Conduct an *In Camera* Inquiry Into Any
            Attorney-Client Discussions or Potential Conflicts..16

CONCLUSION......................................................19

# TABLE OF AUTHORITIES

Cases

Los Angeles Lakers, Inc. v. Fed. Ins. Co.,
    869 F.3d 795 (9th Cir. 2017) .................................. 14
Mannhalt v. Reed,
    847 F.2d 576 (9th Cir. 1988) .................................. 19
Petrosian v. United States,
    661 F. App'x 903 (9th Cir. 2016) ............................. 12
United Stares v. Mezzanatto,
    513 U.S. 196 (1995) .......................................... 12
United States v. Burch,
    156 F.3d 1315 (D.C. Cir. 1998) ............................... 12
United States v. Cha,
    769 F. App'x 435 (9th Cir. 2019) ............................. 12
United States v. Clark,
    218 F.3d 1092 (9th Cir. 2000) ................................ 11
United States v. Cox,
    963 F.3d 915 (9th Cir. 2020) ................................. 14
United States v. Jones,
    381 F.3d 114 (2d Cir. 2004) .................................. 20
United States v. Krasn,
    614 F.2d 1229 (9th Cir.1980) ................................. 11
United States v. McTiernan,
    546 F.3d 1160 (9th Cir. 2008) ................................ 15
United States v. McTiernan,
    No. CR 06-259-DSF (C.D. Cal. July 7, 2010) ......... 15, 16, 17, 19
United States v. Moore,
    164 F.3d 632 (9th Cir. 1998) ................................. 18
United States v. Plascencia-Orozco,
    852 F.3d 910 (9th Cir. 2017) ................................. 12
United States v. Read,
    778 F.2d 1437 (9th Cir. 1985) ................................ 11
United States v. Rebbe,
    314 F.3d 402 (9th Cir. 2002) ................................. 12
United States v. Sylvester,
    583 F.3d 285 (5th Cir. 2009) ................................. 12

Statutes

18 U.S.C. § 1001............................................... 4, 16
18 U.S.C. § 1503............................................... 4, 13

Rules

Federal Rule of Evidence 403..................................... 17
Federal Rule of Evidence 410.......................... 4, 9, 12, 13

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On July 7, 2022, defendant Yasiel Puig Valdes ("defendant") executed an agreement with the United States promising to plead guilty to a violation of 18 U.S.C. § 1001 (False Statements), and in return, the government agreed not to, inter alia, prosecute defendant for a violation of 18 U.S.C. § 1503 (Obstruction of Justice) (the "Plea Agreement"). See ECF No  6. The Plea Agreement was in writing, translated into Spanish for defendant, and also executed by defendant's counsel. In the Plea Agreement, defendant and his counsel each certified that defendant was not promised anything beyond the terms of the Plea Agreement; defendant was not threatened or forced in any way into signing the Plea Agreement; and defendant's decision to sign the Plea Agreement was informed and voluntary. The Plea Agreement also included a provision stating that, if defendant breached the agreement, then the agreed-upon factual basis stated in the Plea Agreement (the "Factual Basis") would be admissible in any subsequent post-breach proceedings against defendant – and included an explicit waiver of Federal Rule of Evidence 410 for that purpose.

Defendant did not plead guilty as agreed and promised, and this Court has already found that in failing to do so, defendant breached the Plea Agreement. See ECF No. 51. In so finding, however, the question of whether defendant's breach was "knowing" for the purposes of the waivers set forth the Plea Agreement was explicitly carved out for future briefing. With defendant now proceeding to trial, the government moves this court to make such a finding: that defendant's breach was "knowing," such that the government may offer the Factual Basis at trial, should the government elect to do so.

1   To be clear, the government is not seeking to introduce

2   defendant's entire Plea Agreement, or to inform the jury in any way

3   that the Factual Basis was part of an agreement to plead guilty.

4   Instead, the government proposes to reference the Factual Basis only

5   as a "written statement agreed to and executed by defendant during

6   this investigation." The government's proposed form of this trial

7   exhibit is attached as Appendix A.[1]

8   **II.   BACKGROUND**

9   **A.    The Nix Gambling Investigation**

10  In 2017, the Department of Homeland Security – Homeland Security

11  investigations ("HSI") and the Internal Revenue Service – Criminal

12  Investigations ("IRS-CI") began investigating an illegal sports

13  gambling business operated by Wayne Nix (the "Nix Gambling

14  Business"). See ECF No. 106 (4/10/23 Order denying Def's Mot. to

15  Compel), at 1. As part of this investigation, Nix's actions to

16  launder his illicit proceeds and hide his income from the IRS came

17  under scrutiny. Id. The associated money trail led investigators to

18  two cashier's checks that defendant purchased from his bank and sent

19  directly to a significant client of the Nix Gambling Business. Id.

20  **B.    Defendant's Interview**

21  Defendant was interviewed by Webex video conference on January

22  27, 2022, with the two undersigned prosecutors, two special agents

23  assigned to the investigation, defendant, defendant's two attorneys,

24  and an independent court-certified Spanish language interpreter of

25  _____

26  [1] Should the Court grant this Motion, the government may seek to
    offer the Factual Basis in its case-in-chief or reserve the Factual

27  Basis to be used on rebuttal or as impeachment evidence. As such,
    this motion seeks a finding of admissibility based the Plea

28  Agreement's terms and Rule 410, not to pre-admit the Factual Basis.

1   Cuban descent, who had been retained by the government,

2   participating. Id. Over the next hour and a half, the government

3   asked defendant about his knowledge of the Nix Gambling Business, and

4   defendant largely denied knowledge of the organization and the

5   persons participating in it, as detailed in the Factual Basis. See

6   Appendix A. During the interview, government counsel spoke privately

7   with defendant's then-counsel and stated that the government believed

8   that defendant was being untruthful, and immediately following the

9   interview, informed defendant's then-counsel that the government was

10   considering whether to seek an indictment.

11       **C.   Defendant Changes Counsel and Initiates Plea Negotiations**

12      In May 2022, the government began preparing to obtain an

13   indictment, but on May 25, 2022 the government was contacted by new

14   counsel for defendant, Keri Curtis Axel, and on May 27, 2022,

15   defendant's new counsel advised the government via email that she had

16   authority to engage in plea discussions and requested a reverse

17   proffer to review the evidence.[2] The government agreed to open plea

18   negotiations rather than seeking an indictment at that time.

19      On June 6, 2022, the government conducted a reverse proffer with

20   defendant and his counsel, presenting extensive evidence of

21   defendant's betting history with the Nix Gambling Business, an audio

22   recording of a voicemail in English sent by defendant, and other

23   evidence. See ECF No. 50, at Ex. E. Shortly after the reverse

24   proffer, defense counsel requested a plea agreement that would allow

25   defendant to plead guilty to a single-count information charging him

26

27      [2] This May 27, 2022 e-mail from defense counsel was previously
submitted to the Court under seal on January 4, 2023. See ECF No. 50,

28 at Ex. C.

                                    3

1   with the offense of providing false statements, rather than

2   obstruction of justice.

3          **D.    The Plea Agreement**

4          On June 16, 2022, the government extended a plea offer to

5   defendant, and requested a response by June 23rd. See ECF No. 50, at

6   Ex. D. The government and defense counsel then exchanged several

7   rounds of edits to the proposed plea agreement (id.), and

8   approximately three weeks later, on July 7, 2022, defendant and his

9   counsel executed a final version of the Plea Agreement. See ECF No.

10  6, at 19, 20.

11         In Paragraph 2(a) of the Plea Agreement, defendant agreed to,

12  inter alia, give up the right to indictment by a grand jury and plead

13  guilty to an information charging a violation of 18 U.S.C. § 1001

14  (False Statements). See ECF No. 6, ¶ 2(a). In support of this

15  agreement, paragraph 9 of the Plea Agreement stated the agreed-upon

16  Factual Basis, which defendant and the government agreed was accurate

17  and sufficient to support a plea of guilty. See ECF No. 6, ¶ 9; see

18  also Appendix A.

19         In return, the government agreed to recommend a reduction under

20  the sentencing guidelines pursuant to USSG § 3E1.1, and to not charge

21  defendant with a violation of 18 U.S.C. § 1503 (Obstruction of

22  Justice) relating to the conduct admitted in the Factual Basis of the

23  Plea Agreement. See ECF No. 6, ¶ 3(c-d).

24         Paragraphs 21-22 of the Plea Agreement addressed the

25  consequences of a breach of the Plea Agreement by defendant. In

26

27

28

particular, paragraph 21 of the Plea Agreement stated that a breach[3] of the Plea Agreement by defendant would relieve the government of its obligations under the Plea Agreement, and paragraph 22 of the Plea Agreement stated as follows:

> Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:
>
> a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant' signing of this agreement and the filing commencing any such action.
>
> b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.
>
> c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

ECF No. 6, at 14-16.

The Plea Agreement stated in paragraph 26 that defendant agreed that, as except as set forth in the Plea Agreement, there were "no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise,

---

[3] The Plea Agreement defined a breach as where "defendant, at any time after the effective date of [the Plea Agreement], knowingly violates or fails to perform any of defendant's obligations under this agreement." ECF No. 6, at 21.

1  understanding, or agreement may be entered into unless in a writing

2  signed by all parties or on the record in court." Id., at 17.

3     The Plea Agreement was signed by both defendant and his counsel,

4  as well as by the attorney for the government. Id. at 18. Defendant

5  further certified in the Plea Agreement that (1) the Plea Agreement

6  had been read to him in his primary language, Spanish; (2) that he

7  had carefully reviewed and considered it; (3) that he voluntarily

8  agreed to the terms of the Plea Agreement; (4) that he had discussed

9  the terms of the Plea Agreement with his counsel; (5) that "no

10 promises, inducements, or representations of any kind" had been made

11 to him other than those in the Plea Agreement; and (6) that "[n]o one

12 has threatened or forced [defendant] in any way to enter into [the

13 Plea Agreement]." Id. at 18-19. Defense counsel similarly certified

14 that she had (1) carefully and thoroughly discussed the Plea

15 Agreement with defendant; (2) that, to her knowledge, no "promises,

16 inducement, or representations of any kind" had been made to

17 defendant other than those in the Plea Agreement; (3) that no one had

18 "threatened or forced" defendant into executing that Plea Agreement;

19 and (4) that defendant voluntarily entered into the Plea Agreement.

20 Id. at 19-20. Finally, the Plea Agreement was signed by the

21 interpreter who translated the Plea Agreement for defendant, who

22 certified that the Plea Agreement had been accurately translated. Id.

23 at 19.

24    **E.   Defendant Fails to Plead Guilty as Agreed**

25     The Plea Agreement was filed with the Court on August 29, 2022.

26 See ECF No. 6. At defendant's request, the Plea Agreement was lodged

27

28

1  under seal.[4] The government moved to unseal the Plea Agreement and

2  Information on November 10, 2022, see ECF No. 13, and this matter was

3  unsealed on November 14, 2022. See ECF No. 14.

4      Defendant appeared for his change of plea on November 23, 2022,

5  but refused to plead guilty in accordance with the plea agreement

6  that he had signed. See ECF No. 24. At defense counsel's request, the

7  Court scheduled a second change-of-plea hearing on November 29, 2022,

8  but defendant again refused to enter a plea of guilty. See ECF No.

9  26. Defendant then stipulated that did not intend to plead guilty and

10 requested a trial date. See Id.

11    **F.   Relevant Prior Motion Practice**

12      On December 14, 2022, the government moved for a finding that

13 defendant had breached the Plea Agreement, so that the government

14 would be relieved of its obligations under the Plea Agreement, and in

15 particular, so that the government could seek a superseding

16 indictment from the grand jury for a violation of 18 U.S.C. § 1503,

17 which the government was prohibited from seeking under the Plea

18 Agreement (the "Breach Motion"). See ECF No. 33. Defendant opposed

19 the Breach Motion on December 28, 2022 on multiple grounds, but as is

20 relevant here, on reply, the government agreed that the Breach Motion

21 did not govern whether defendant had committed a "knowing breach" of

22 the Plea Agreement for the purposes of paragraph 22 of the Plea

23 Agreement. See ECF No. 43. The Court ultimately granted the Breach

24 Motion, holding that "Defendant did not plead guilty, despite

25 agreeing to do so as part of his plea, and accordingly, breached the

26 _____

27      [4] The basis for the under seal filing have been briefed to the
   Court previously, including in the sealed declaration of AUSA Jeff
28 Mitchell dated January 4, 2023. See ECF No. 50, ¶ 17-19.

1    agreement," ECF No. 51, at 3, and the grand jury returned the First

2    Superseding Indictment including a § 1503 count on January 20, 2023.

3    See ECF No. 54.

4         Trial in this matter is presently set to begin on August 8,

5    2023. See ECF No. 105.

6    **III. RELEVANT LAW**

7         Plea agreements are contractual in nature and are measured by

8    contract law standards. See United States v. Krasn, 614 F.2d 1229,

9    1233 (9th Cir.1980). As such, disputes over the terms of a plea

10   agreement are "determined by objective standards." United States v.

11   Read, 778 F.2d 1437, 1441 (9th Cir. 1985) (citing United States v.

12   Travis, 735 F.2d 1129, 1132 (9th Cir. 1984)). When construing the

13   terms of a plea agreement, and the parties' respective obligations

14   under the same, courts employ traditional contract analysis

15   principles. See United States v. Clark, 218 F.3d 1092, 1095 (9th Cir.

16   2000). A court may hold an evidentiary hearing on such a dispute if

17   necessary "to resolve a factual dispute between the parties over what

18   they reasonably understood when entering into a plea agreement" – but

19   need not do so if no factual disputes are raised. United States v.

20   Plascencia-Orozco, 852 F.3d 910, 923 (9th Cir. 2017).

21        While Federal Rule of Evidence 410 generally precludes admission

22   of statements made by a defendant as part of plea discussions, in

23   United Stares v. Mezzanatto, 513 U.S. 196 (1995), the Supreme Court

24   held that a defendant can knowingly and voluntarily waive Rule 410's

25   exclusionary provisions. 513 U.S. at 205, 210-11. Following

26   Mezzanatto, both the Ninth Circuit and other circuit courts have

27   routinely upheld waivers of Rule 410 for plea-related statements.

28

8

1   See, e.g., United States v. Cha, 769 F. App'x 435, 436 (9th Cir.

2   2019) ("A district court's decision to admit proffer statements is a

3   question of law reviewed de novo."); Petrosian v. United States, 661

4   F. App'x 903, 904 (9th Cir. 2016) ("No Ninth Circuit or Supreme Court

5   precedent, moreover, actually prohibited introduction of the [proffer

6   statements] during the government's case-in-chief"); United States v.

7   Sylvester, 583 F.3d 285, 289 (5th Cir. 2009)(upholding introduction

8   of plea statements in government's case-in-chief based upon valid

9   Rule 410 waiver); United States v. Krilich, 159 F.3d 1020, 1026 (7th

10  Cir. 1999) (upholding validity of Rule 410 waiver; United States v.

11  Burch, 156 F.3d 1315, 1322 (D.C. Cir. 1998) (upholding application of

12  Rule 410 waiver and approving introduction of plea statements).

13        Finally, a defendant bears the burden of establishing that a

14  Rule 410 waiver is invalid. See United States v. Rebbe, 314 F.3d 402,

15  407 (9th Cir. 2002) ("[T]he Federal Rules of Evidence and Criminal

16  Procedure are presumptively waivable. The burden is on [defendant] to

17  overcome this presumption by identifying some affirmative basis for

18  concluding that the Federal Rules cannot be waived" (internal

19  citation omitted)).

20  **IV.   ARGUMENT**

21        **A.    Defendant Knowingly Breached the Plea Agreement**

22        In paragraph 22 of the Plea Agreement, defendant agreed that, in

23  the event the Court found a "knowing breach" of the Plea Agreement by

24  defendant, then the "agreed to factual basis statement in [the Plea

25  Agreement] … shall be admissible against defendant in any such action

26  against defendant." ECF No. 6, at 15.

27        Because the Court has already found that defendant breached the

28

9

1   Plea Agreement, see ECF No. 51, and because the Ninth Circuit has

2   expressly found that waivers of Rule 410 such as that in paragraph 22

3   of the Plea Agreement may be enforced, the question currently before

4   the Court is whether defendant's breach was "knowing" under the terms

5   of the Plea Agreement. The Court should find that it was.

6        As noted above, plea agreements are governed by contract law,

7   and when interpreting a contractual term, courts begin with the

8   "ordinary and popular" meaning of such terms. See Los Angeles Lakers,

9   Inc. v. Fed. Ins. Co., 869 F.3d 795, 801 (9th Cir. 2017) ("[C]ourts

10  must give a contract's terms their 'ordinary and popular' meaning,

11  'unless used by the parties in a technical sense or a special meaning

12  is given to them by usage.'" (quoting Palmer v. Truck Ins. Exch., 21

13  Cal.4th 1109 (1999))).

14       To determine ordinary meaning, courts typically look to

15  dictionary definitions. See United States v. Cox, 963 F.3d 915, 920

16  (9th Cir. 2020). Merriam-Webster defines "knowing" as "deliberate" or

17  "having or reflecting knowledge, information, or intelligence." See

18  Knowing, Merriam-Webster.com Dictionary, Merriam-Webster,

19  https://www.merriam-webster.com/dictionary/knowing. In turn, Merriam-

20  Webster defines "deliberate" as "characterized by or resulting from

21  careful and thorough consideration" or "characterized by awareness of

22  the consequences." See Deliberate, Merriam-Webster.com Dictionary,

23  Merriam-Webster, https://www.merriam-webster.com/dictionary/knowing.

24  Similarly, Black's Law Dictionary defines "knowing" as "deliberate"

25  or "having or showing awareness or understanding." See Knowing,

26  Black's Law Dictionary (11th ed. 2019). And Black's Law Dictionary

27  defines "deliberate" as "fully considered," "unimpulsive," or

28

10

ER 98

1    "intentional." <u>See</u> *Deliberate*, Black's Law Dictionary (11th ed.

2    2019). In sum, applying the common and ordinary meaning of "knowing,"

3    defendant's decision to breach the Plea Agreement by failing to plead

4    guilty as agreed was a "knowing breach," if made after consideration,

5    while aware of the potential consequences, and was not the product of

6    mistake, haste, or impulsiveness. There should be little question

7    that defendant's conduct meets this standard.

8         Defendant had nearly five months between the date he signed the

9    Plea Agreement and his decision not to plead guilty, so his breach

10   was not the product of haste or lack of consideration. Defendant was

11   also given multiple opportunities by the Court to enter a plea of

12   guilty, but still elected not to honor the terms of the Plea

13   Agreement, so his decision cannot fairly be described as impulsive.

14   <u>See</u> ECF No. 24 (continuing and resetting guilty plea hearing). While

15   the government has no insight into discussions between defendant and

16   his counsel, defendant certified in the Plea Agreement that he

17   understood the agreement's terms, had enough time to review and

18   consider it, and had "carefully and thoroughly" discussed it with his

19   counsel. <u>See</u> ECF No. 6, at 19-20.[5] And finally, there is no serious

20   argument that defendant mistakenly believed that failing to plead

21   guilty would not result in a breach of an agreement to plead guilty.

22        Judge Fischer's decision in <u>United States v. McTiernan</u>, No. CR

23   06-259-DSF, 2010 WL 11667960 (C.D. Cal. July 7, 2010), is

24   particularly instructive here, as the facts of that case mirror those

25

26        [5] In addition, the detailed letters sent by defense counsel to
     the U.S. Attorney's Office, which are already before the court under
27   seal (<u>see</u> ECF No. 77, at Exs. A, C, D), corroborate that counsel and
     defendant appear to have carefully discussed this matter.
28
                                      11

1   here in many respects. In both cases, the government was

2   investigating an unlawful business where the defendant was a user of

3   an illegal service; in McTiernan,[6] the government was investigating

4   an illegal wiretapping and private intelligence enterprise which

5   McTiernan had engaged to gather information on his business

6   associates, while here, the government was investigating an illegal

7   sports gambling business which defendant used to place wagers on

8   sporting events. In both cases, the defendant was approached and

9   interviewed as a witness, rather than as a target of the

10  investigation. In both cases, the defendant allegedly made false

11  statements regarding his use of the illegal business being

12  investigated, and in both cases the defendant entered into a pre-

13  indictment agreement to plead guilty to a violation of 18 U.S.C. §

14  1001. In both cases, defendant breached his plea agreement,[7] was

15  indicted on additional related charges, and proceeded to trial.

16      In McTiernan, the defendant moved in limine to preclude the

17  government from offering, inter alia, the factual basis from

18  McTiernan's plea agreement at trial, arguing that Rule 410 prohibited

19  introducing such evidence and that the Rule 410 waiver in McTiernan's

20  plea agreement had not been knowingly made, because his prior counsel

21  had allegedly failed to advise him of potential grounds for

22  suppression. See 2010 WL 11667960, at *1. Judge Fischer rejected

23

24      [6] See United States v. McTiernan, 546 F.3d 1160, 1163-64 (9th
    Cir. 2008).

25
        [7] The most relevant distinction between the facts of McTiernan
26  and those here is that McTiernan completed his plea allocution, but
    then moved to withdraw his plea shortly thereafter (leading to an
27  interlocutory appeal), while defendant here simply refused to plead
    guilty as agreed.
28

12

ER 100

1   these arguments, finding that – whatever advice prior counsel had

2   given regarding suppression[8] – the defendant's decision to enter the

3   plea agreement, including the Rule 410 waiver, was "a free and

4   deliberate choice . . . [McTiernan] was not coerced, intimidated, or

5   deceived" and the decision was "made with a full awareness of the

6   nature of the right and the consequences of the decision to abandon

7   it." Id., at *2. These factors "certainly should be sufficient to

8   establish that this Defendant has waived his right not to have

9   certain statements used against him." Id.

10      So too here. Defendant and his counsel certified in writing that

11   defendant had reviewed the terms of the Plea Agreement, understood

12   those terms, and was freely entering into an agreement to plead

13   guilty. See ECF No. 6, at 19-20. And just as McTiernan moved to

14   suppress evidence after breaching his plea agreement (which was

15   denied), defendant here brought a selective prosecution motion after

16   failing to plead guilty (which was denied, ECF No. 106); but as Judge

17   Fischer held, the desire to bring a motion may be grounds to withdraw

18   from a guilty plea, but that does not render the waivers in any such

19   plea agreement invalid. See 2010 WL 11667960, at *1.[9]

20      Based on arguments raised by defendant in his opposition to the

21   Breach Motion, ECF No. 45, the government expects that defendant may

22   argue that his breach was not knowing because he allegedly had little

23

24      [8] In McTiernan, the defendant fired his allegedly-ineffective

25   counsel and disclosed his prior-counsel's allegedly-deficient advice.
     See McTiernan, 546 F.3d 1160, 1164-65.

26      [9] Notably, defendant here never moved to withdraw from his Plea
     Agreement, opting instead to simply breach. See ECF No. 51.

27   Accordingly, the more modest standard for withdrawing a guilty plea
     discussed in McTiernan is irrelevant here.

28
                                      13

1  time to consider the Plea Agreement, felt coerced into signing the

2  Plea Agreement based on a fear of extradition from the Republic of

3  South Korea, and/or even if defendant's breach was knowing, the

4  Factual Basis should be excluded under Federal Rule of Evidence 403.

5  See ECF No. 45, at 8-9. None of these arguments has merit, and the

6  government addresses each briefly in turn.

7       First, as described above, defendant had roughly three weeks to

8  consider various drafts of the proposed plea agreement, and defendant

9  had authorized his counsel to open plea negotiations more than a

10  month earlier. While the government did put time limits on how long

11  defendant had to consider these drafts, this record shows that

12  defendant had ample time to raise any issues he or his counsel

13  identified with the various drafts of the plea as proposed – which

14  they did for three weeks.

15       Second, any argument that defendant felt coerced into signing

16  the Plea Agreement is contradicted by the certifications in the Plea

17  Agreement, executed by defendant and his counsel. As detailed above,

18  in the Plea Agreement, defendant and defense counsel explicitly

19  certified that no one "threatened or forced [defendant] in any way to

20  enter into [the Plea Agreement]." ECF No. 6, at 18-19. This is

21  confirmed by the factual record: defendant authorized his counsel to

22  open plea negotiations as early as May 27, 2022, before the reverse

23  proffer or any plea was extended, and more than a month before he

24  signed the Plea Agreement. The Plea Agreement was not forced on

25  defendant – he affirmatively requested it and engaged in negotiations

26  to edit it to his liking. The Ninth Circuit has held Rule 410 waivers

27  are enforceable under similar circumstances. See United States v.

28

14

1   <u>Moore</u>, 164 F.3d 632 (9th Cir. 1998) (Rule 410 waiver enforceable as

2   voluntary where defendant "initiated contact with the United States

3   Attorney's Office," "arranged to meet with government attorneys," and

4   was accompanied by counsel for each meeting).

5          Finally, Federal Rule of Evidence 403 is inapplicable here, as

6   the Plea Agreement expressly states that defendant waived "any claim

7   under . . . ***any other federal rule***, that the statements or any

8   evidence derived from the statements . . . are inadmissible." ECF No.

9   6, at ¶ 22(c) (emphasis added). But even assuming <u>arguendo</u> that

10  defendant did not waive any admissibility challenges to the Factual

11  Basis under Rule 403, courts have routinely found that introducing

12  prior plea statements under a Rule 410 waiver <u>enhances</u> a trial's

13  truth-seeking functions. <u>See</u> <u>McTiernan</u>, 2010 WL 11667960, at *2

14  ("Defendant's contention that the statements should be excluded as

15  more prejudicial than probative pursuant to Rule 403 of the Federal

16  Rules of Evidence has no merit. To the contrary, introduction of

17  Defendant's admission of guilt will 'enhance the truth-seeking

18  function of the trial.'" (quoting <u>Mezzanatto</u>, 513 U.S. 204)). Nor

19  will admitting the Factual Basis confuse or mislead the jury. As

20  explained above, the government will only refer to the Factual basis

21  as a "statement" executed by the defendant and will not inform the

22  jury that the Factual Basis was part of any plea agreement in its

23  case-in-chief.[10]

24  _____

25       [10] Even if the Factual Basis were to be excluded from the
    government's case-in-chief (for example, on Rule 403 rounds), the
26  government should be permitted to use the Factual Basis for
    impeachment purposes if defendant elects to take the stand in his
27  defense and testifies inconsistently with the admissions stated in
    the Factual Basis. The government respectfully reserves the right to
28                                          *(footnote cont'd on next page)*

                                    15

                                                        ER 103

**B.    The Court May Conduct an *In Camera* Inquiry Into Any Attorney-Client Discussions or Potential Conflicts**

Courts have broad authority to adjudicate questions of privilege or attorney conflicts. See, e.g., Mannhalt v. Reed, 847 F.2d 576, 580 (9th Cir. 1988). As a general matter, attorneys have a duty of loyalty to their clients and "conflicts of interest may arise . . . if the attorney reveals privileged communications." Id.  (discussing successive representation conflicts). The California Rules of Professional Conduct also provide guidance regarding a defendant's right to conflict-free representation; in particular, CRPC 3.7 states that "[a] lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless. . . the lawyer has obtained informed written consent from the client." See also, United States v. Jones, 381 F.3d 114, 121 (2d Cir. 2004)(court's disqualification of counsel was not an abuse of discretion because of risk that counsel would testify at defendant's trial).

Here, the Court may conduct an in camera inquiry into defendant's discussions with counsel regarding his decision to sign the Plea Agreement, including whether these discussions would place defense counsel in the role of a witness. As noted above, in prior filings, defendant has suggested that he only signed the Plea Agreement because he believed he would be promptly arrested and swiftly extradited from Korea to the United States if he did not sign the proposed plea. See, e.g., ECF No. 45, at 8 (arguing that proposed plea agreement "presented the defendant with a Hobson's choice: agree to a plea agreement or face a mid-season arrest and extradition,

---

revisit this issue if this Motion is denied and defendant elects to testify at trial.

16

ruining his season and interfering with his only source of gainful employment. The impossibility of this choice was compounded by the fact that defendant had new counsel, was 17-hours away in a different time zone, has a third-grade education, ADHD, and needed a Cuban translator to understand the government's complex plea agreement and alleged Factual Basis."). In substance, defendant appears to be arguing that the government's plea offer was effectively coercive, and thus, that his decision to sign the Plea Agreement was not truly voluntary.

Assuming that defendant would testify at any hearing on this Motion consistent with these prior arguments, the government would be entitled to cross-examine defendant about his certifications in the Plea Agreement, and specifically, his certification that, "no one has threatened or forced me in any way to enter into this agreement. . . [and] I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason." ECF No. 6, at 18-19. Such questioning, however, could potentially raise issues of attorney-client communications – for example, why defendant believed that he would be promptly extradited if he refused to sign the plea agreement, and why he certified that he was entering the plea free from coercion. More importantly, however, defendant's present counsel also certified that "no one has threatened or forced my client in any way to enter into this agreement; [and] my client's decision to enter into this agreement is an informed and voluntary one." ECF No. 6, at 20. If defendant testifies that he only signed the plea agreement out of

17

1  fear of arrest and extradition, his counsel's certification to the

2  contrary risks placing counsel in the role of an adverse witness.

3      Of course, the government is not privy to defendant's attorney-

4  client communications, nor can the government predict with any

5  certainty whether and in what ways testimony regarding such

6  communications may arise at the hearing on the instant motion or at

7  trial. However, because defendant's opposition to the instant motion

8  or defense at trial may potentially implicate attorney-client

9  communications about the plea agreement and the certifications

10  therein, the government submits that the Court should conduct, in

11  advance of trial, an *in camera* inquiry to ensure that defendant is

12  aware of potential attorney-client privilege and/or conflicts issues

13  that may arise in connection with such communications and that any

14  privilege and/or conflicts waiver by defendant is knowing and

15  voluntary.

18

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court make a finding that defendant's breach of the Plea Agreement constitutes a "knowing breach" under Paragraph 22 of the Plea Agreement, and accordingly, that the government may seek to admit the Factual Basis in the form accompanying this Motion as Appendix A.

Dated: June 1, 2023               Respectfully submitted,

                                  E. MARTIN ESTRADA
                                  United States Attorney

                                  MACK E. JENKINS
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  _____/s/_____
                                  DAN G. BOYLE
                                  JEFF MITCHELL
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

19

ER 107

**Appendix A**

[Proposed Form of Defendant's Statement]


On or about July 7, 2022, defendant executed the following statement, which was translated to him by a Spanish-language interpreter, and defendant agreed in writing that this statement was true and accurate:


The Department of Homeland Security, Homeland Security Investigations ("HSI") and the Internal Revenue Service – Criminal Investigation Division ("IRS-CI") in Los Angeles and the United States Attorney's Office ("USAO") for the Central District of California were conducting a federal criminal investigation into federal crimes, including illegal sports gambling and money laundering (the "Federal Investigation").

Wayne Nix was a minor league baseball player from 1995 to 2001. Sometime after 2001, Nix began operating an illegal bookmaking business in the Los Angeles area that accepted and paid off bets from bettors in California and elsewhere in the United States based on the outcomes of sporting events at agreed-upon odds (the "Nix Gambling Business"). Through contacts he had developed during his own career in professional sports, Nix created a client list of current and former professional athletes, and others. Nix used agents, including Agent 1, to place and accept bets from others for the Nix Gambling Business, thus expanding the business. Agent 1 was a former collegiate baseball player and a private baseball coach. Beginning in 2019, Agent 1 worked for the Nix Gambling Business as an agent. Agent 1 placed and accepted bets from others and helped Nix maintain the

1   Nix Gambling Business by, among other things, demanding and
2   collecting money owed to the Nix Gambling Business by bettors and
3   others.

4         As part of the Nix Gambling Business, Nix and Agent 1 used the
5   Sand Island Sports websites and call center to create accounts
6   through which wagers would be placed and tracked. Nix provided
7   bettors with account numbers and passwords for the Sand Island Sports
8   websites and directed the bettors to use the Sand Island Sports
9   websites to place bets with the Nix Gambling Business. Bettors would
10  place bets online through the Sand Island Sports websites, and
11  through Nix, Agent 1, and others working at Nix's direction.

12        Defendant was a professional baseball player who played for the
13  Los Angeles Dodgers between 2013 and 2018. The Dodgers traded
14  defendant to the Cincinnati Reds in December 2018, and the Reds
15  traded defendant to the Cleveland Indians on July 31, 2019. In
16  January 2019, defendant met Agent 1 at a youth baseball camp, and
17  Agent 1 later assisted defendant in preparing for the upcoming
18  baseball season. Individual B was a private baseball coach who
19  assisted defendant with batting practice, but also assisted defendant
20  in placing sports bets with Agent 1 and assisted Agent 1's efforts to
21  collect gambling debts from defendant.

22        Beginning no later than May 2019, defendant began placing bets
23  on sporting events with the Nix Gambling Business through Agent 1.
24  Defendant called and sent text messages to Agent 1 with wagers on
25  sporting events. After Agent 1 received the wagers from defendant,
26  Agent 1 submitted the bets to the Nix Gambling Business on behalf of
27  defendant. By June 17, 2019, defendant owed the Nix Gambling Business

28

2

ER 109

1  $282,900 for sports gambling losses.

2      Between June 25, 2019, and July 3, 2019, in a series of text

3  messages, Agent 1 and Individual B instructed defendant to make a

4  check or wire transfer payable to Individual A. Individual A was a

5  client of the Nix Gambling Business who, in or about June 2019, was

6  owed at least $200,000 in gambling winnings from the Nix Gambling

7  Business.

8      On June 25, 2019, defendant withdrew $200,000 from a Bank of

9  America financial center in Glendale, California, and purchased two

10  cashiers' checks for $100,000 each that were made payable to

11  Individual A, but did not immediately send the checks due to a

12  dispute over the balance and access to the Sand Island Sports

13  website. Between June 28, 2019, and July 4, 2019, defendant requested

14  direct access to the Sand Island Sports websites, but Nix refused to

15  provide defendant direct access to the websites until defendant paid

16  his gambling debt.

17      On July 3, 2019, defendant sent the cashiers' checks to

18  Individual A via the United Parcel Service ("UPS") and sent a photo

19  of the UPS shipping label to Agent 1 and Individual B via text

20  message. Agent 1 forwarded the photo of the UPS label to Nix as proof

21  that defendant paid his gambling debt.

22      The following day, Nix provided defendant direct access to the

23  Sand Island Sports websites. Specifically, on July 4, 2019, Nix sent

24  defendant a text message and assigned defendant player identification

25  number "R182" and password "yp," and provided defendant the Sand

26  Island Sports website addresses. Between July 4, 2019, and September

27  29, 2019, defendant placed 899 bets on tennis, football, and

28

3

ER 110

1  basketball games through the Sand Island Sports websites.

2      On January 27, 2022, defendant was interviewed in the presence

3  of his attorney by HSI, IRS-CI, and the USAO regarding the Federal

4  Investigation. At the beginning of the interview, a Special Agent

5  from HSI admonished defendant that lying to federal law enforcement

6  agents is a crime, and defendant stated that he understood. During

7  the interview, defendant made several false statements to the agents

8  that were material to the investigation. For example, the agents

9  presented defendant a photo of Agent 1 and asked defendant if he ever

10  discussed sports gambling with Agent 1. Defendant falsely stated that

11  he had never discussed sports betting with Agent 1 and that he knew

12  Agent 1 only from baseball. In fact, as defendant then knew,

13  defendant discussed sports betting with Agent 1 via telephone and

14  text messages on hundreds of occasions. In addition, Agent 1 placed

15  several bets for defendant between May and July 3, 2019, that

16  resulted in defendant paying $200,000 to the Nix Gambling Business,

17  and Agent 1 subsequently assisted defendant obtain an account with

18  Sand Island Sports and place 899 additional bets on sporting events

19  through the website between July 4, 2019, and September 29, 2019. The

20  agents also presented defendant with a copy of one of the cashiers'

21  checks he purchased on June 25, 2019, made payable to Individual A,

22  and asked defendant why he sent the cashier's check. Defendant

23  falsely stated that he had placed a bet online with an unknown person

24  on an unknown website that resulted in a loss of $200,000. In fact,

25  as defendant then knew, defendant placed a series of bets directly

26  through Agent 1 that resulted in the gambling loss. Defendant also

27  falsely stated that he did not know the individual who instructed him

28

4

1  to send $200,000 in cashiers' checks to Individual A and that he had

2  never communicated with that person via text message. In fact, as

3  defendant then knew, Agent 1 and Individual B instructed defendant

4  via text messages to send $200,000 to Individual A, and defendant had

5  communicated with Agent 1 and Individual B on hundreds of occasions

6  related to defendant's gambling with the Nix Gambling Business.

7      On March 14, 2022, defendant sent Individual B an audio message

8  via WhatsApp regarding his January 2022 interview with HSI and IRSCI.

9  During the audio message, defendant told Individual B that he "[sat]

10 over there and listen [to] what these people said and I no said

11 nothing, I not talking. I said that I only know [Agent 1] from

12 baseball."

1   Keri Curtis Axel (Bar No. 186847)
     kaxel@waymakerlaw.com
2   Jose R. Nuño (Bar No. 312832)
     jnuno@waymakerlaw.com
3
    Emily R. Stierwalt (Bar No. 323927)
4     estierwalt@waymakerlaw.com
5   WAYMAKER LLP
    515 S. Flower Street, Suite 3500
6   Los Angeles, California 90071
7   Telephone: (424) 652-7800
    Facsimile:  (424) 652-7850
8

9   *Attorneys for Defendant*
10   *Yasiel Puig Valdes*

11

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| UNITED STATES OF AMERICA, | Case No. CR 22-394-DMG |
|---|---|
| Plaintiff, | **DEFENDANT YASIEL PUIG'S OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER RE ADMISSION OF FACTUAL BASIS** |
| v. | |
| YASIEL PUIG VALDES, | |
| Defendant. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND .......................................2

      A.   Plea Discussions................................................................................2

      B.   Puig's Return to the United States and Fact Discovery.........................5

III.  ARGUMENT .......................................................................................6

      A.   The Plea Agreement Was Never Accepted By This Court and
           Therefore Is Unenforceable ...................................................6

      B.   The Rule 410 Waiver Should Not Be Enforced Because, Under the
           Unique Circumstances Here, It Was Not Knowingly and Intelligently
           Made...............................................................................9

           1.   Legal Standard.............................................................9

           2.   Given Puig's Mental Health Challenges and the Plea Discussion
                Circumstances, the Waiver Was Not Knowing and Intelligent .....11

           3.   In Light of the Subsequently-Discovered Evidence, Puig Did Not
                Understand the Waiver or the Factual Basis and Counsel Lacked
                the Information to Advise Him........................................14

      C.   The Court Should Find That There Was No Knowing Breach Due to
           Later-Discovered Exculpatory Evidence ...............................17

      D.   The Court Should Exclude the Factual Basis Under Rule 403 Because
           It Would Result in a "Trial Within a Trial" Concerning the Plea
           Discussions........................................................................19

           1.   The Factual Basis has Little to No Probative Value. ...................20

           2.   The Dangers Listed in Rule 403 Substantially Outweigh the
                Probative Value of the Factual Basis. ..............................21

IV.   CONCLUSION...................................................................................23

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3
4
*AGA & Titan Inc. v. United Specialty Ins. Co.*,
2012 WL 4783636 (Oct. 12, 2021, C.D. Cal.) ....................................................19

5
*Compare United States v. Wessells*,
936 F.2d 165 (4th Cir. 1991) ...............................................................................10

6
7
*Corbitt v. New Jersey*,
439 U.S. 212, 222 (1978) .....................................................................................21

8
*In re Corrugated Container Antitrust Litigation*,
756 F.2d 411 (5th Cir. 1985) ...............................................................................23

9
10
*In re* Morgan,
506 F.3d 705 (9th Cir. 2007) ...............................................................................10

11
*Mabry v. Johnson*,
467 U.S. 504 (1984) ...............................................................................................6

12
13
*Moran v. Burbine*,
475 U.S. 412 (1986) .............................................................................................10

14
*U.S. v. Newbert (Newbert II)*,
477 F. Supp. 2d 287 (D. Me. 2007)......................................................................18

15
16
*U.S. v. Norris*,
486 F.3d 1045 (8th Cir. 2007) ...............................................................................7

17
*United States v. Alvarez-Tautimez*,
160 F.3d 573 (9th Cir. 1998) .................................................................................6

18
19
*United States v. Barnard*,
490 F.2d 907 (9th Cir. 1973) ...............................................................................19

20
*United States v. Bautista-Avila*,
6 F.3d 1360 (9th Cir. 1993) .................................................................................10

21
22
*United States v. Biaggi*,
909 F.2d 662 (1990) .......................................................................................21, 22

23
*United States v. Cruz-Garcia*,
344 F.3d 951 (9th Cir. 2003) ...........................................................................19, 23

24
25
*United States v. Cutler*,
676 F.2d 1245 (9th Cir. 1982) .............................................................................23

26
*United States v. Delgado*,
903 F.2d 1495 (1990) ...........................................................................................21

27
28
*United States v. DeMarco*,
407 F.Supp. 107 (C.D. Cal. 1975) .......................................................................22

ii

*United States v. Fagan,*
  996 F.2d 1009 (9th Cir. 1993) ................................................................ 6

*United States v. Franco-Lopez,*
  312 F.3d, 984  (9th Cir. 2002) ......................................................... 9, 20

*United States v. Gonzalez,*
  918 F.2d 1129 (3d Cir.1990) ................................................................ 6

*United States v. Hamdi,*
  432 F.3d 115, 122 (2d Cir. 2005) ........................................................ 9

*United States v. Heredia,*
  768 F.3d 1220 (9th Cir. 2014) ............................................................ 20

*United States v. Hyde,*
  520 U.S. 670 (1997) ......................................................................... 6, 7

*United States v. Kuchinski,*
  469 F.3d 853 (9th Cir. 2006) ................................................................ 6

*United States v. Maloof,*
  205 F.3d 819 (5th Cir. 2000) .............................................................. 22

*United States v. McTiernan,*
  2010 WL 11667960 (C.D. Cal. July 7, 2010) ...................................... 7

*United States v. Melancon,*
  972 F.2d 566 (5th Cir. 1992) .............................................................. 11

*United States v. Mezzanatto,*
  513 U.S. 196 (1995) ............................................................................ 16

*United States v. Mutschler,*
  152 F. Supp. 3d 1332 (W.D. Wash. 2016) ................................ 16, 18, 20

*United States v. Newbert (Newbert III),*
  504 F.3d 180 (1st Cir. 2007) ........................................................ 17, 18

*United States v. Ocanas,*
  628 F.2d 353 (5th Cir. 1980) ................................................................ 8

*United States v. Osorto,*
  445 F. Supp. 3d 103 (N.D. Cal. 2020) ...................................... 16, 17, 20

*United States v. Plugh,*
  648 F.3d 118 (2d Cir. 2011) ............................................................... 10

*United States v. Rebbe,*
  314 F.3d 402 (9th Cir. 2002) ............................................................. 10

*United States v. Savage,*
  978 F.2d 1136 (9th Cir. 1992) .......................................................... 6, 8

iii

*United States v. Singh,*
  995 F.3d 1069 (9th Cir. 2021) ................................................................ 19

*United States v. Sua,*
  307 F.3d 1150 (9th Cir. 2002) ................................................................ 20

*United States v. Two Eagle,*
  633 F.2d 93 (8th Cir. 1980) .................................................................... 19

*United States v. Washman,*
  66 F.3d 210 (9th Cir. 1995) ...................................................................... 6

*United States v. Wiggins,*
  905 F.2d 51 (4th Cir.1990) ..................................................................... 10

*United States v. Wood,*
  378 F.3d 342 (4th Cir. 2004) .................................................................... 8

*United States v. Young,*
  248 F.3d 260 (4th Cir. 2001) .................................................................. 23

**Statutes**

Wright & Miller 1A Fed. Prac. & Proc. Crim. § 171 ................................ 7

**Rules**

Fed R. Evid. 613 ....................................................................................... 23

Fed. R. Crim. P. 32 .................................................................................. 18

Fed. R. Evidence 403 ........................................................................ passim

Fed. R. Evid. 410 .............................................................................. passim

Fed. R. Crim. P. 11 ................................................................................ 7, 9

iv

WAYMAKER

1    Defendant Yasiel Puig Valdes ("Puig"), through his counsel Waymaker LLP,

2  respectfully submits his Opposition to the government's Motion for Order (Dkt.

3  110), filed June 1, 2023 ("Mot."), seeking to admit at trial the factual basis of

4  defendant Puig's July 7, 2023 plea agreement.

5  **I.      INTRODUCTION**

6    The Court should not admit the factual basis of defendant Puig's plea

7  agreement in evidence, because it is part of a plea discussion and therefore

8  inadmissible under Fed. R. Evidence 410 ("Rule 410").  The government claims that

9  Puig waived the protection of Rule 410 through paragraph 22 of the plea agreement,

10  and further claims that the factual basis is admissible because Puig has committed a

11  "knowing breach" of the agreement.

12    The government is wrong.  The Ninth Circuit has repeatedly held that a plea

13  agreement that has not been offered in open court and approved by the Court – like

14  the one here -- is unenforceable.  This is rightly so, as a plea agreement such as the

15  one the government reached with Puig must be approved by the Court and, had it

16  been offered in open court, it would not have been accepted until the Court

17  conducted detailed inquiries into whether the waivers were knowing and voluntarily

18  made. Because the plea agreement was not offered in open court and approved by

19  the Court, the government's motion is a non-starter.  Indeed, on this basis alone, the

20  Court can reject the government's motion without even a hearing.

21    Even were it the case that the plea agreement had been accepted, however, the

22  Court could and should reject the admission in evidence of the factual basis because,

23  under the unique circumstances here, the Rule 410 waiver was not knowingly and

24  intelligently made.

25    Puig was working six days a week as a professional baseball player in South

26  Korea when the government indicated that he was immediately going to be indicted

27  and, although the interview in question had occurred only a few months before, the

28  government indicated that it would not wait for his return from Korea to indict him,

1    but it would seek an arrest warrant.  Given that defense counsel was new to the

2    matter, was operating with a 17-hour time difference between Los Angeles and

3    South Korea, and required an interpreter to speak with Puig, and given that Puig

4    suffers from unique mental health issues and cognitive-educational deficits, in

5    retrospect, there simply was insufficient time and opportunity to do a complete

6    analysis of the relevant facts and consider all of Puig's defenses.  When Puig arrived

7    in the United States, however, defense counsel immediately discovered exculpatory

8    evidence that undermined the government's proffered evidence, and ultimately the

9    factual basis itself, demonstrating that Puig's waiver had not been knowing and

10   intelligent at all, as this Court should find.

11          Finally, even if the plea agreement were enforceable (which it is not), and

12   even if the Rule 410 waiver were knowing and intelligent (which it was not), the

13   Court could and should exclude the factual basis under Rule 403, because its

14   admission would devolve into a trial-within-a-trial as to the plea discussions and

15   why Puig would have ever signed the plea agreement in the first place.  This would

16   confuse issues and waste the Court and jury's time.  In these circumstances, the

17   probative value of the factual basis is vastly outweighed by the potential for undue

18   delay and jury confusion, so it should be excluded on this basis as well.

19          The government's motion therefore should be denied.

20   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

21          **A.    Plea Discussions**

22          On May 9, 2022, the U.S. Attorney's Office issued a letter stating that it had

23   determined that Puig was a target of a criminal investigation and stating that he

24   should respond by May 25, 2022.  (Decl. of Keri Curtis Axel ISO Opposition to

25   Government's Motion for Order ("Axel Decl.") ¶ 2, Ex. A).  On May 25, defense

26   counsel called the assigned prosecutor, AUSA Jeff Mitchell, who informed counsel

27   that he had already drafted an indictment which would be submitted to the grand

28   jury the following week.  (*See* January 4, 2023 Declaration of Jeff Mitchell

1  ("Mitchell Decl., Dkt. 50") ¶ 11.)  Indeed, the Chief of the Criminal Division had

2  already approved and signed the indictment.  (*Id*.)

3        Although counsel indicated that Puig was willing to cooperate and be re-

4  interviewed, AUSA Mitchell made clear the die was cast and Puig would be

5  charged.  Counsel then requested an opportunity to engage in pre-indictment

6  resolution discussions.  AUSA Mitchell gave counsel only a pair of days to indicate

7  whether she had authority to engage in plea negotiations; and on May 27, defense

8  counsel responded that she had "authority to move forward to engage in plea

9  discussions," and requested to schedule the reverse proffer the parties had discussed.

10  (*See* Mot. at 3; Mitchell Decl., Dkt. 50 ¶ 11, Ex. C.)

11        On June 6, 2023, AUSA Mitchell gave an attorney proffer summarizing the

12  proposed charges and the evidence the government believed supported them.  (*See*

13  Mot. at 3; Mitchell Decl., Dkt. 50 ¶ 12.)  Present for the defense was the defendant,

14  Ms. Axel and Mr. Nuño, and a Puig representative, Anthony Fernandez, who acted

15  as a translator.  (*See* February 13, 2023 Decl. of Keri Curtis Axel (Dkt. 61) ("Axel

16  Decl. Dkt. 61") ¶ 2.)  The government set forth its plan to indict Puig on two

17  charges and set forth the specific false statements it contended that Puig made, and

18  the evidence the government believed definitively proved Puig's guilt. (*See*

19  Declaration of Anthony Fernandez ("Fernandez Decl.") ¶ 4.)

20        At the conclusion of the proffer, the government indicated that, if Puig was

21  not interested in a plea disposition, they would go forward with indicting him, and

22  DHS would put a warrant for his arrest into the system.  (*See id*. at ¶ 5; Axel Decl.

23  Dkt. 61, ¶ 2.)  The parties then discussed that it would trigger a notice to Interpol,

24  resulting in his arrest in Korea.  As described by Fernandez, "Mitchell said that, if

25  [Puig] did not agree[] to a deal, he would be indicted and the government would get

26  a warrant for his arrest… based on the discussion, I [] pictured Puig being arrested

27  in the middle of a game in Korea and hauled off to jail to be extradited to the United

28  States if he did not make a deal with the government." (Fernandez Decl. ¶ 5.)

3

OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER
RE ADMISSION OF FACTUAL BASIS

1    The government required a response almost immediately. (Mitchell Decl.

2  Dkt. 50, ¶ 12.)  The defense responded promptly requesting a plea offer to the false

3  statements charge only.  (*Id.* ¶ 13.)

4    On June 16, 2022, the government issued a plea offer, attaching a 20-page

5  plea offer with a responsive deadline of June 23, 2022 – one week later.  (Mitchell

6  Decl. Dkt. 50, Ex. D.)  Defense counsel requested certain edits to the factual basis

7  and fine within the shortened period, and, on June 27, the government a revised

8  draft plea agreement; the government clarified the deadline to sign was now only

9  July 1, 2022. (*See* Axel Decl., ¶¶ 3-4, Ex. B.)[1]

10    Throughout the plea negotiations, Puig and the defense team faced daunting

11 procedural obstacles.  Among other things:

12
13    - Puig was in Korea, which is a 17-hour time difference from Los Angeles.  There were very limited windows of time in the morning and late at night that Puig and the defense team could speak.

14
15    - Puig was playing baseball approximately 6 days per week, an intensive work schedule that included regular travel due to his game schedule.

16
17    - In addition, schedules had to be coordinated so that there was an interpreter to translate the plea agreement into Spanish.

18
19
20    - Counsel for Puig had only been retained on May 25 and had no pre-existing knowledge of the facts of the case; and no direct access to Puig or his electronic devices to work through relevant factual materials, such as Puig's phone messages, with Puig.

21

---

22 [1]  The government suggests that Puig had three weeks to consider the plea (Mot. at

23 14), but this is misleading: Puig had initially one week (June 16-June 23, a period in

which he had a travel day and a double-header). (*See* Mitchell Decl. Dkt. 50, Ex. D;

24 Axel Decl. ¶ 5, Ex. C.) Then, after counsel requested some limited edits to the

25 factual basis, the government issued a revised plea agreement with a short deadline

(again conflicting with Puig's work schedule).  (*See id.*)  The defense did not (and

26 believes it would not have been allowed to) request changes after July 1.  The reason

27 the deadline lapsed from July 1 to July 7 was because defense counsel provided the

government with financial documentation relevant to the fine amount, and Mitchell

28 did not revert the revised agreement until July 6. (*Id.* ¶¶ 3-4, Ex. B.)

<div align="center">4</div>

1    (*See* Axel Decl., ¶ 5, Ex. C.)

2        **B.      Puig's Return to the United States and Fact Discovery**

3        Puig returned from Korea on November 13, 2022.  As the defense has

4    previously explained to the Court, the defense only learned of facts supporting his

5    innocence upon Puig's return, after which it requested documents from the

6    government to vet those facts and explore his factual innocence defenses.  On

7    November 15, Puig appeared for an initial appearance and arraignment, waiving his

8    right to an indictment and preliminary hearing; a change of plea proceeding was

9    scheduled for November 23, 2022.  On November 17, 2022, defense counsel

10   requested discovery from the government.  (Dkt. 80-1, Ex. 2).

11       On November 23, only 10 days after his return to the U.S., Puig appeared

12   before this court and counsel requested a continuance to explore a factual innocence

13   defense.  Puig's counsel informed this Court about the procedural history of Puig's

14   charges, the urgency created by the government's haste and the threat of

15   international arrest while Puig was working in South Korea, and the facts that

16   counsel had reviewed and developed with Puig since he returned to the U.S. and

17   could meet with counsel in person.  Specifically, counsel informed the Court that,

18   prior to the hearing, counsel had requested and reviewed interview reports that

19   corroborated some of Puig's statements, casting serious doubt on the government's

20   prosecution theory.

21       Accordingly, counsel requested various additional discovery items from the

22   government to explore Puig's factual defenses with him, as the Court would have

23   required that counsel affirm that they had done under Federal Rules of Criminal

24   Procedure Rule 11 ("Rule 11").  The Court granted a short continuance of the

25   change-of-plea hearing until November 29, and ordered the parties to meet and

26   confer regarding the requested discovery.

27

28

OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER
RE ADMISSION OF FACTUAL BASIS

1  The government subsequently provided some of the items requested, and the

2  defense team finally had time in person with Puig to review those items and to

3  evaluate the context of events with Puig.

4  On November 28, 2022, counsel informed the government that, after

5  reviewing the materials and further exploring the facts with Puig, he did not intend

6  to enter a guilty plea, and counsel together informed this Court.

## III.   ARGUMENT

### A.   The Plea Agreement Was Never Accepted By This Court and Therefore Is Unenforceable

The plea agreement cannot be used against Puig at trial.  The Ninth Circuit

has held that "a plea agreement that has not been entered and accepted by the trial

court does not bind the parties." *United States v. Fagan*, 996 F.2d 1009, 1013 (9th

Cir. 1993) (citing *Mabry v. Johnson*, 467 U.S. 504, 507–08 (1984)); *United States v.*

*Kuchinski*, 469 F.3d 853, 858 (9th Cir. 2006); *United States v. Washman*, 66 F.3d

210, 212 (9th Cir. 1995) (defendant and the government not bound by the plea

agreement until it was accepted by the court)[2]; *United States v. Savage*, 978 F.2d

1136, 1138 (9th Cir. 1992) ("We hold that neither the defendant nor the government

is bound by a plea agreement until it is approved by the court."); *see also United*

*States v. Gonzalez*, 918 F.2d 1129, 1133 (3d Cir.1990) ("It is axiomatic that a plea

agreement is neither binding nor enforceable until it is accepted in open court.").

Here, the Court never took Puig's plea, so the plea agreement is unenforceable.  The

government's argument seeking to enforce paragraph 22 should be a non-starter.

The extensive plea agreement procedures to which the parties and this Court

are accustomed are set forth in Rule 11, which was amended in 1975.  As explained

by Wright & Miller:

---

[2] The Ninth Circuit confirmed in *United States v. Alvarez-Tautimez*, 160 F.3d 573,
576 n.5 (9th Cir. 1998) that the portion of its *Washman* holding relevant here was
not undercut by *United States v. Hyde*, 520 U.S. 670 (1997).

1
2
3

> Significantly, the 1975 amendments, for the first time, gave explicit recognition to the validity of plea bargaining and sought to move the results of the discussions into open court. The changes were 'designed to prevent abuse of plea discussions and agreements by providing appropriate and adequate safeguards.'

4  1A Fed. Prac. & Proc. Crim. § 171 (History of the Rule) (5th ed.) (citing 1975

5  Advisory Committee Notes).   Such safeguards include the District Court's detailed

6  Rule 11(b) colloquy prior to accepting a plea, and its review and discretion to accept

7  or reject a plea agreement under Rule 11(c)(3)(A).

8       The instant plea agreement arises under Rule 11(c)(1)(A) because the

9  agreement includes a charge bargaining agreement (that is, the government's

10  agreement to forego a potential charge in return for a guilty plea).  Under Rule

11  11(c)(3), where a plea agreement arises under Rule 11(c)(1)(A) – just like under

12  Rule 11(c)(1)(C) --  the court may accept the agreement, reject it, or defer a decision

13  until the review of the presentence report.   As explained by the Supreme Court:

14
15
16
17
18
19

> Rule 11 "envision[s] a situation in which the defendant performs his side of the bargain (the guilty plea) before the Government is required to perform its side (here, the motion to dismiss four counts). If the court accepts the agreement and thus the Government's promised performance, then the contemplated agreement is complete and the defendant gets the benefit of his bargain. But if the court rejects the Government's promised performance, then the agreement is terminated and the defendant has the right to back out of his promised performance (the guilty plea), just as a binding contractual duty may be extinguished by the nonoccurrence of a condition subsequent." (citation omitted).

20  *Hyde*, 520 U.S. at 677–78 (1997).

21       Here, Puig gave notice to the Court that he was not prepared to enter a guilty

22  plea, resulting in the plea agreement never being presented to the Court in open

23  court to accept or to reject.[3]  Under such circumstances, the agreement is simply not

24  enforceable.  *See generally U.S. v. Norris*, 486 F.3d 1045, 1048-51 (8th Cir. 2007)

---

25
26
27
28

[3]  In this respect, and as the government itself recognizes (Mot. at 12, n.7), this case is wholly distinguishable from *United States v. McTiernan*, 2010 WL 11667960 (C.D. Cal. July 7, 2010) because, in *McTiernan*, the defendant underwent the rigors of a Rule 11 hearing while Puig did not and could not for reasons discussed at Puig's change of plea hearing.

OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER
RE ADMISSION OF FACTUAL BASIS

1  (en banc) (to treat a plea agreement as simply a contract between two parties would

2  impermissibly "ignore[] the presence of a 'contractual' condition completely

3  independent of the defendant and the Government—the district court's independent

4  power under [Rule] 11 to accept or reject the defendant's associated plea"); *accord*

5  *United States v. Wood*, 378 F.3d 342, 348 (4th Cir. 2004) (plea agreement "not

6  simply a contract between two parties" but "necessarily implicates the integrity of

7  the criminal justice system and requires the courts to exercise judicial authority in

8  considering the plea agreement and in accepting or rejecting the plea")(cleaned up).

9          The Ninth Circuit's precedents leave no doubt that Puig's plea agreement is

10  not enforceable, yet the government failed to bring these cases to the Court's

11  attention.[4]  Indeed, and as applicable here, the Ninth Circuit has expressly endorsed

12  the Fifth Circuit's reasoning that:

13          the realization of whatever expectations the prosecutor and defendant have as
        a result of their bargain depends entirely on the approval of the trial court.
14      Surely neither party contemplates any benefit from the agreement unless and
        until the trial judge approves the bargain and accepts the guilty plea. Neither
15      party is justified in relying substantially on the bargain until the trial court
        approves it. We are therefore reluctant to bind them to the agreement until
16      that time. As a general rule, then, we think that either party should be entitled
        to modify its position and even withdraw its consent to the bargain until the
17      plea is tendered and the bargain as it then exists is accepted by the court.

18  *Savage*, 978 F.2d at 1138 (quoting *United States v. Ocanas*, 628 F.2d 353, 358 (5th

19  Cir. 1980)).  Similarly, since Puig withdrew his consent to the agreement and did

20  not plead guilty, the agreement is unenforceable.[5]

21

22  [4] The defense was unaware of the above case law, but told the Court at the time of
    the prior breach motion that there was no breach and that the government's motion
23  was premature and unripe because it did not present an actionable form of relief.
24  The prior breach motion was also distinct because it did not seek to hold Puig to any
    promise made in the disregarded agreement, but merely asked the Court for
25  permission to do something that it needed no permission to do.

26
27  [5] Although the defense believes that the Ninth Circuit precedent is clear that the plea
    agreement is unenforceable against Puig even without any formal withdrawal notice
28  because it was not entered in open court and accepted by this Court, out of an

8

WAYMAKER

1   For this reason too, the defense respectfully asks the Court to amend its prior

2   order finding breach.  There can be no breach because the plea agreement is

3   unenforceable.  Because neither party is bound by any purported commitment in the

4   agreement, the government was permitted to supersede the indictment, as the

5   defense recognized at the time; thus, the defense has no issue with the relief that the

6   Court ordered, but the basis should be amended.

7   **B.    The Rule 410 Waiver Should Not Be Enforced Because, Under the**

8   **Unique Circumstances Here, It Was Not Knowingly and**
    **Intelligently Made**

9   Even if the plea agreement had been proffered to this Court in open court and

10  accepted under Rule 11(e) in a guilty plea proceeding, the Court would not be

11  required to enforce the Rule 410 waiver and it should not do so, because the waiver

12  was not knowingly and intelligently made under the unique circumstances presented

13  here.  Specifically, the combination of the government's haste and strict timelines,

14  Puig's difficult schedule and language differences, and Puig's mental health and

15  cognitive-educational deficits, created a perfect storm in which he did not have the

16  ability to knowingly and intelligently waive his Rule 410 right, nor did counsel have

17  sufficient information to advise him as to the waiver of such right.

18  1.   Legal Standard

19  As the government recognized, courts look to principles of contract law to

20  interpret plea agreements.  But waivers of constitutional and statutory rights are to

21  be interpreted narrowly.  *United States v. Hamdi*, 432 F.3d 115, 122–123 (2d Cir.

22  2005).  Ultimately, when construing plea agreements, a court "determine[s] what

23  [defendant] reasonably believed to be the terms of the plea agreement at the time of

24  the plea."  *United States v. Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002).

25

26

27  _____

    abundance of caution and so the record is clear, Puig is filing herewith a formal
28  notice of withdrawal.

9

OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER
RE ADMISSION OF FACTUAL BASIS

1    While the prohibitions on the use of plea evidence in Rule 410 may be

2  waived, such waiver must be knowing, voluntary, and intelligent.  *United States v.*

3  *Rebbe*, 314 F.3d 402, 406 (9th Cir. 2002).  The Court's analysis of whether a waiver

4  is valid will depend "on the totality of the circumstances, including the background,

5  experience, and conduct of defendant." *United States v. Bautista-Avila*, 6 F.3d

6  1360, 1365 (9th Cir. 1993); *see also United States v. Plugh*, 648 F.3d 118, 127 (2d

7  Cir. 2011) (waiver "must be determined on the particular facts and circumstances"

8  "including the background, experience, and conduct of the accused" (citation

9  omitted)).

10    A waiver is knowing and intelligent if, under the totality of the circumstances,

11  it is made with a "full awareness of both the nature of the right being abandoned and

12  the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412,

13  421 (1986).  If the defendant meets his burden of showing that a waiver was neither

14  voluntary, knowing, nor intelligent, the Court must not enforce it. *See United States*

15  *v. Rebbe*, 314 F.3d 402, 407 (9th Cir. 2002).

16    Even when a plea agreement has been offered in open court and accepted,

17  courts have found insufficient evidence that all waivers in such an agreement were

18  knowing and intelligent waiver where the Court did not specifically advise a

19  defendant as to the right allegedly waived. *Compare United States v. Wessells*, 936

20  F.2d 165, 167 (4th Cir. 1991) (declining to enforce appellate waiver where district

21  court did not confirm wavier during Rule 11 inquiry) and *United States v. Wiggins*,

22  905 F.2d 51 (4th Cir.1990) (affirming appellate waiver where district court went to

23  "elaborate lengths" "to ascertain that the defendant did indeed understand the

24  meaning of the waiver" and that defendant "understood the implications of his

25  decision to waive his right to appeal or challenge his sentence.").

26    The Court has complete discretion to reject the Rule 410 waiver. *See In re*

27  Morgan, 506 F.3d 705, 708 (9th Cir. 2007) ("We have noted in various contexts the

28  broad discretion that district courts enjoy when choosing to accept or reject plea

OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER
RE ADMISSION OF FACTUAL BASIS

1  agreements."); *see also United States v. Melancon*, 972 F.2d 566, 568 (5th Cir.

2  1992).

3          2.  <u>Given Puig's Mental Health Challenges and the Plea Discussion</u>

4             <u>Circumstances, the Waiver Was Not Knowing and Intelligent</u>

        Evaluating the Rule 410 waiver in this case under the totality of the

5  circumstances, including the timing and logistics of Puig's consideration of the plea

6  agreement, and through the lens of Puig's background and experience, this Court

7  should find that the waiver was not knowingly or intelligently made.

8          From the minute Puig's counsel first spoke with the government, the decision

9  had already been made to indict Puig on two charges and to seek his arrest from

10  Korea, Puig's options were limited, and his decisions were placed on a tight

11  timeline.  When counsel contacted AUSA Mitchell on May 25, the final response

12  date listed in the target letter, she was told that charges were written up, approved,

13  and would imminently be submitted to the grand jury.  The only way to avoid this

14  imminent result was by entering into plea discussions.

15          At the government's June 6, 2022 proffer, the government presented what it

16  characterized as overwhelming evidence of his guilt, and gave Puig a two-day

17  deadline to indicate his willingness to discuss a plea. (*See* Axel Decl. Dkt. 61 at ¶ 2.)

18  A plea offer was then made on June 16, with a one-week response deadline.  (*See*

19  Mitchell Decl. Dkt. 50, Ex. D.)

20          In retrospect, and given the unique circumstantial and Puig's personal

21  challenges, these time periods were simply too short for the defense to do a

22  complete analysis of the facts, even of the text messages at issue, much less the two-

23  and-a-half years of gambling and payment history that serves as the basis of Puig's

24  purported falsehoods. To this day, the government continues to operate under the

25  flawed belief that the case comes down to a two-hour interview and is but "a

26  relatively-straightforward false statement and obstruction case." (*See* Dkt. No. 121

27  at 2.)  But the charges put at issue not only what was said in the interview itself but

28

OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER
RE ADMISSION OF FACTUAL BASIS

1   what Puig remembered, which in turn puts at issue his course of conduct regarding

2   gambling over the two-and-a-half years before the interview.

3        Despite this reality, the government gave Puig exactly one week to

4   understand and to agree to the plea agreement's terms, including the lengthy factual

5   basis. As Puig was weighing his options, he was also enduring a grinding work

6   schedule 17 hours across the world in Korea and faced with the challenges of

7   booking meetings with counsel between the challenging time zones, and having to

8   have a Spanish translator lined up for each meeting.

9        Under these circumstances, it would have been hard for any average

10  American to have understood the nuances of the complex plea agreement, much less

11  the attenuated waiver section buried within the plea.  But Puig is not an average

12  American: Puig suffers from PTSD, ADHD, and executive function deficits, and has

13  a limited educational background (even in Spanish). (*See* Sealed Declaration of Dr.

14  Paola Suarez ("Suarez Decl.") ¶¶ 5-7.)  While more detail is provided under seal, the

15  fact of Puig's ADHD means that he is highly distractible and has difficulty paying

16  attention and following complex verbal directions or discussions.  Given this

17  condition, he simply could not remain focused and attentive for the lengthy

18  translation of, and discussion of, the government's plea agreement over the phone

19  while in Korea, and his counsel and translator would have had no ability to tell when

20  he was not focusing.  In addition, Puig's executive functioning deficit, and limited

21  education, cause him to be highly concrete in his understanding, rendering it

22  impossible for him to evaluate and appreciate the nuance of the waiver and the

23  factual basis to which he was purportedly agreeing. (*Id.*)

24        Ultimately, for someone with Puig's concrete mentality and limited

25  education, the decision to enter the plea agreement came down to a harsh and

26  immediate Hobson's choice: fight the charges, which would likely result in a foreign

27  arrest and subsequent extradition proceedings, which would be sure to sully his

28  professional reputation forever, or accept the government's plea offer.  The Hobson-

12

1  esque nature of these two "options" was magnified by Puig's mental condition and

2  the post-traumatic stress disorder ("PTSD") he suffers related to his effective

3  kidnapping by a Mexican drug cartel to be smuggled out of Cuba.  (*See* Suarez Decl.

4  ¶ 7.)  When confronted with a choice of possible international arrest and extradition

5  reminiscent of his PTSD trigger, and signing an agreement that would avoid the

6  trigger altogether, there was no choice at all.

7          To that end, the government's contention that Puig's attorney-client privilege

8  should be invaded is misplaced.  There is more than sufficient evidence without an

9  *in camera* review of Puig's attorney-client communications to find that, on June 6,

10  2022, the government made clear that if Puig was not interested in a plea

11  disposition, the government would go forward with the already- approved grand jury

12  indictment, and that DHS would put a warrant for his arrest into the system resulting

13  in his international arrest.  (*See* Axel Decl. Dkt. 61 ¶ 2; Fernandez Decl. ¶ 5

14  ("[b]ased on the discussion, I literally pictured Puig being arrested in the middle of a

15  game in Korea and hauled off to jail to be extradited to the United States").  That the

16  government's rush to indictment presented genuine threat of international arrest and

17  extradition is an ineluctable conclusion based on the undisputed facts, as AUSA

18  Mitchell has himself acknowledged.   (*See* Mitchell Decl. (Dkt. 50) ¶ 15 ("I

19  confirmed . . . that an indictment could result in a foreign arrest and extradition".[6]

20

_____

21  [6] The government also cannot escape from the fair inference it created by suggesting

22  that Puig's counsel should have tried to bargain around his foreign arrest.  (*Cf.*
    Mitchell Decl. Dkt. 50 ¶ 16.)  As discussed above, the defense's bargaining power

23  is limited when the government controls the power of the state (and sometimes the
    power of a foreign state), and must carefully balance when and how it can ask for

24  anything at all.  Further, given that DOJ does not control South Korea's Justice

25  Department, or even the foreign affairs practices of its own constituent agencies (*see
    id*. ¶ 15 (Homeland Security "is required to enter arrest warrants in a central

26  database shortly after they receive a warrant")), it is far from clear that the

27  government could have promised anything that would have avoided a foreign arrest

28  if an indictment had been announced, even if it attempted to do so.

OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER
RE ADMISSION OF FACTUAL BASIS

1 | Given the credible threat of foreign arrest, coupled with the other unique issues

2 | raised above, the Court should find that he could not have knowingly and

3 | intelligently waived Rule 410.

4 |         3.      <u>In Light of the Subsequently-Discovered Evidence, Puig Did Not</u>

5 |                 <u>Understand the Waiver or the Factual Basis and Counsel Lacked</u>
                    <u>the Information to Advise Him</u>

6 |         The fact that Puig did not fully understand the Rule 410 waiver, and its

7 | consequences – which could include the use of the factual basis at trial – is further

8 | evidenced by the fact that he could not and did not in fact understand the factual

9 | basis itself, and defense counsel lacked the information adequately to advise him.

10 |        As an initial matter, while the government seeks to introduce the factual basis

11 | as alleged statements against interest, in fact, the factual basis is littered with

12 | statements for which Puig has no personal knowledge and therefore could neither

13 | confirm nor deny.  For example, the factual basis states that "Wayne Nix was a

14 | minor league baseball player from 1995 to 2001."  It further states that, "[s]ometime

15 | after 2001, Nix began operating an illegal bookmaking business" and created a

16 | client list "[t]hrough contacts he had developed during his own career in

17 | professional sports." (*See* Mot., Appx. A.)  These are facts that Puig could not have

18 | sworn were true or not true.  Having included information in the factual basis that is

19 | beyond a defendant's purview, it would be quite natural for any defendant to simply

20 | tune out to the details. But here particularly, given the linguistic and cognitive issues

21 | discussed above, including his ADHD, as well as the rushed schedule, it should not

22 | be surprising that Puig did not have the ability, educational background, critical

23 | thinking skills, or even the time, to begin to pick apart the government's lengthy

24 | statements.[7]

25 | _____

26 | [7] The government attempts to hold the defendant to the statement in his certification
that defendant had "carefully and thoroughly discussed [the plea agreement] with

27 | counsel."  (Mot. at 11.)  This statement can be true and nevertheless, given the

28 | unique circumstances discussed above, with the government exerting pressure to

WAYMAKER

1    Moreover, the factual basis contains purported "facts" that Puig can now

2    disprove. (*See* March 2, 2023 *In Camera* Submission at pp. 4-9.)  This proves two

3    things: (1) that Puig did not knowingly and intelligently agree to the Rule 410

4    waiver and factual basis; and (2) that his counsel lacked information sufficient to

5    advise him as to such waiver.  Defense counsel certainly would not have advised

6    Puig to agree to inaccurate or disputable statements, but, at the time of the plea

7    discussions, counsel lacked access to the information necessary to disprove them.

8    As set forth below, upon Puig's return to the United States, and with direct access to

9    Puig to help him focus on the details, to refresh his recollection with his own

10   records, and to investigate the government's claims, the defense discovered

11   exculpatory evidence.  The defense then asked the government for additional

12   evidence, which further undermined the factual basis and supported Puig's defenses,

13   at which time he concluded that he could not enter a guilty plea.[8]  Understanding

14   that, in this case, the issue must be evaluated in retrospect, it is clear that counsel

15   would not have advised Puig to agree to the factual basis as written.  Because

16   counsel did not have the information necessary to advise the defendant,[9] the

17

_____

18   make a quick decision while threatening immediate indictment, and evaluated
     against the backdrop of this defendant's location, work, and unique personal
19   characteristics, the specific waiver in paragraph 22 and the factual basis itself were
20   not adequately understood.

21   [8] To support its claim that the plea agreement was knowing, the government cites
     certain defense letters to the USAO requesting dismissal or diversion, arguing the
22   letters prove that "counsel and defendant" "carefully discussed this matter."  (Mot at
     11 n. 5, citing Dkt. 73).  But the defense letter from November 22, 2022 (*id.*, 73-1,
23   Ex. C) proves exactly the opposite: as the letter expressly states, the evidence it
24   references had only just come to the defense's attention upon Puig's return.  Once
     the defense learned of the facts, it promptly requested dismissal.  (*Id.*; *see also* Axel
25   Decl. Dkt. 61 ¶ 4.)
26

27   [9] The government here too attempts to rely on counsel's certification that she had
28   "carefully and thoroughly discussed the plea agreement with the defendant." (Mot.

15

1   defendant could not have been adequately advised.  Under these circumstances, the

2   Court should find that there was not a knowing and intelligent waiver.

3          Relatedly, the government's assertion that Puig was able to "engage in

4   negotiations and edit [the plea agreement] to his liking" (Mot. at 14) is detached

5   from reality and "does not reflect the reality of the bargaining table." *United States*

6   *v. Osorto*, 445 F. Supp. 3d 103, 109 (N.D. Cal. 2020); *see United States v.*

7   *Mezzanatto*, 513 U.S. 196, 216 (1995) (Souter, J., dissenting ) ("As the Government

8   conceded… defendants are generally in no position to challenge demands for these

9   waivers, and the use of waiver provisions as contracts of adhesion has become

10  accepted practice.").  In *United States v. Mutschler*, 152 F. Supp. 3d 1332, 1335-37

11  (W.D. Wash. 2016), the court accepted the plea agreement but refused to enforce the

12  provision that waived defendant's appellate rights as offending the basic principles

13  of fair play.  Recognizing the adhesive nature of waivers in plea agreements, the

14  court reasoned that "the unilateral waiver at issue was neither specifically negotiated

15  nor, in any real sense, optional." *Id.* at 1335.

16         This is decidedly true here.  The Rule 410 waiver was non-negotiable, as were

17  the alleged false statements charged, given that the government already had drafted

18  its indictment.  The defense effectively had one week to raise any issue with the plea

19  agreement and factual basis, and it knew only limited changes to the factual basis

20  would even be considered.  The government's feigned ignorance as to the

21  defendant's unequal bargaining power is transparent. As succinctly put by Judge

22  Breyer:

23  _____

24  at 6, 11.)  But given the limited information available, and the government's
    certainty as to its charges and the facts supporting them, counsel could truthfully and

25  in good faith make this statement in July 2022, only to later realize – in November

26  2022 – that Puig's defenses had not been adequately explored.  Again, the point of
    the November 22 letter and email to the USAO (Dkt. 73-1, Ex. C; Dkt. 80, Ex. 3)

27  was to seek relief given that new facts undermined the premises on which counsel

28  had relied in signing the certification and recommending that defendant plead guilty.

OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER
RE ADMISSION OF FACTUAL BASIS

> It is no answer to say that [defendant] is striking a deal with the Government, and could reject this term if he wanted to, because that statement does not reflect the reality of the bargaining table. (Citations omitted). . . . . [P]lea agreements are contracts of adhesion. The Government offers the defendant a deal, and the defendant can take it or leave it. *Id.* ("American prosecutors . . . choose whether to engage in plea negotiations and the terms of an acceptable agreement."). If he leaves it, he does so at his peril. And the peril is real, because on the other side of the offer is the enormous power of the United States Attorney to investigate, to order arrests, to bring a case or to dismiss it, to recommend a sentence or the conditions of supervised release, and on and on.

*Osorto*, 445 F. Supp. 3d at 109-110 (citations omitted).  As Judge Breyer concluded, as this Court should as well, "[t]hat Faustian choice is not really a choice at all for a man in the defendant's shoes. But the Court has a choice, and it will not approve the bargain."  (*Id.*)

Here, too, under the unique circumstances presented in this case, and evaluated under the totality of the circumstances as to this defendant, the defendant did not knowingly and intelligently agree to the waiver, and the Court should not enforce the Rule 410 waiver.

**C.     The Court Should Find That There Was No Knowing Breach Due to Later-Discovered Exculpatory Evidence**

The Court also has discretion not to enforce the waiver because the defendant would not have signed it had he known of the exculpatory evidence that was not discovered until November 2022.  Again, the government's motion should be rejected because the plea agreement was never entered in open court and accepted by this Court.  But even if defendant had entered a guilty plea and the Court had accepted the plea agreement, this Court could decline to enforce the Rule 410 waiver against him on the basis of new exculpatory evidence.

This is precisely what happened in *United States v. Newbert (Newbert III)*, 504 F.3d 180 (1st Cir. 2007).  After entering a guilty plea pursuant to an agreement, the defendant withdrew his plea based on new evidence of innocence, and the government claimed he was in breach of his plea agreement and thus had waived

17

1  Rule 410.  *Id.* at 183 (citing *U.S. v. Newbert (Newbert II)*, 477 F. Supp. 2d 287, 292

2  (D. Me. 2007)).  The Court of Appeals affirmed the district court's ruling that the

3  Rule 410 waiver in the plea agreement was unenforceable, finding that withdrawal

4  of a plea due to post-plea evidence of innocence does not constitute a breach.  *Id.* at

5  187; *see also Newbert II*, 477 F. Supp. 2d at 292 (if circumstances "present at least a

6  plausible claim of actual innocence from evidence obtained after the guilty plea…

7  the defendant cannot have breached the plea agreement by [withdrawal]).[10]

8          Here, as in *Newbert*, Puig and the defense team only determined that he could

9  not go through with the plea agreement after learning facts that substantially

10  affected the basis upon which he agreed to plead guilty.  Because Puig did not enter

11  a plea, the facts here are indeed stronger than *Newbert*, where the Court had

12  accepted the plea agreement and nevertheless set it aside. Here, Puig had merely

13  signed an agreement that he never would have signed "since this new evidence

14  would likely have substantially affected his decision to enter the plea agreement in

15  the first place." *Newbert II,* 477 F. Supp. 2d at 293.[11]  As the court affirmed there,

16  and as this court also should find, there was no knowing breach, and there should be

17

18  _____

[10] Similarly, in *Mutschler*, the Court struck the unilateral waiver from the plea
19  agreement holding that it could not conclude that defendant "'voluntarily,
   knowingly, and intelligently' waiv[ed] his right to appeal the sentence" reasoning
20  that prospective waivers are inherently unknowing.  152 F. Supp. 3d at 1338-39, 41.
   Here too, the facts in control of the government that were later revealed to provide
21  Puig with factual innocence defense renders the purported waiver unknowing.
22

23  [11] The First Circuit in *Newbert* rejected the government's overzealous argument that
   if there is no sanction against a defendant who withdraws a guilty plea, the
24  government would not enter into pleas and take every case to trial. *Newbert III,* 504
   F.3d at 187.  This case differs from *Newbert* in this respect because Puig never
25  entered a plea so the "fair and just" standard under Fed.R.Civ.P. 32(e) is not at issue.
26  Like *Newbert*, however, the defense has shown newly-discovered evidence it did not
   have at the time of the plea agreement.  (*See* March 2, 2023 *In Camera* Submission
27  at pp. 4-9, Attachments 2-4).

28

OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER
RE ADMISSION OF FACTUAL BASIS

1    no Rule 410 waiver:  "Ultimately, because a man's reputation and freedom hang in

2    the balance… the better course is to allow a jury to determine whether he is guilty—

3    as he admitted he was—or not guilty—as he now insists he is." *Newbert I*, 471 F.

4    Supp. 2d at 199.

5
6    **D.**    **The Court Should Exclude the Factual Basis Under Rule 403 Because It Would Result in a "Trial Within a Trial" Concerning the Plea Discussions**

7          Federal Rule of Evidence 403 ("Rule 403") gives the Court discretion to

8    "exclude relevant evidence if its probative value is substantially outweighed by a

9    danger of . . . confusing the issues, misleading the jury, undue delay, wasting time,

10    or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Where evidence

11    would cause a trial within a trial that would waste time and confuse the jury, it can

12    be excluded.  *United States v. Singh*, 995 F.3d 1069, 1080-81 (9th Cir. 2021) (cross-

13    examination precluded that would "confus[e] the issues before the jury and wast[e]

14    time with a mini-trial"); *AGA & Titan Inc. v. United Specialty Ins. Co.*, 2012 WL

15    4783636, at *4 (Oct. 12, 2021, C.D. Cal.) (evidence excluded under Rule 403

16    because it risked creating a "case-within-a-case" that would waste time); *United*

17    *States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973) (evidence excluded because it

18    might "produce a trial within a trial" on "a collateral but still an important matter").

19          The government maintains that Rule 403 is "inapplicable" because Puig

20    waived his right to "any claim under . . . any other federal rule, that the statements

21    or any evidence derived from the statements . . . are inadmissible."  (Mot. at 15,

22    citing plea agreement ¶ 22).  But Rule 403 is not a rule of admissibility; rather, the

23    rule permits a district court to exclude even otherwise admissible and relevant

24    evidence.  *United States v. Cruz-Garcia*, 344 F.3d 951, 956 (9th Cir. 2003)

25    (explaining that "even though evidence is admissible under 404(b), it may

26    nonetheless be excluded under Rule 403's balancing test"); *United States v. Two*

27    *Eagle*, 633 F.2d 93, 96 (8th Cir. 1980) ("Evidence otherwise admissible under Rule

28

OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER
RE ADMISSION OF FACTUAL BASIS

ER 136

1  404(b) may be excluded, under Fed.R.Evid. 403").  Therefore, Rule 403 is not

2  encompassed within the waiver in paragraph 22 of the plea agreement.

3          Indeed, the defense believes that the government can never exact a bargain

4  that would deprive a Court of its plenary discretion under Rule 403, as the plea

5  agreement itself recognizes by referencing only rules of admissibility.  But to the

6  extent the government nevertheless argues that Rule 403 is encompassed in

7  paragraph 22, the Court may also reject the government's argument on the basis that

8  the paragraph does not cite Rule 403 and ambiguities are construed in the

9  defendant's favor.  *United States v. Heredia*, 768 F.3d 1220, 1230 (9th Cir. 2014);

10  *United States v. Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002) (the government

11  ordinarily assumes "responsibility for any lack of clarity").

12          1.      The Factual Basis has Little to No Probative Value.

13          Contrary to the government's claim, the probative value of the factual basis is

14  extremely minimal.  The factual basis is clearly a document that the government

15  drafted and reflects their view of events. It will be clear to any reasonable juror that

16  it was a contract of adhesion.  *See Osorto*, 445 F.Supp.3d at 109 ("Plea agreements

17  are contracts of adhesion."); *Mutschler*, 152 F.Supp.3d at 1335 (same).  Unlike a

18  spontaneous confession, or a defendant's written or oral statement, the factual basis

19  is not from defendant's own words and clearly does not represent the way he would

20  talk or what he would say -- in tone, words, or substance.  As to the three alleged

21  false statements, the jury will know that defendant disputes them, and will hardly

22  find it persuasive of his guilt on those same alleged false statements that he signed

23  onto a government form to avoid foreign arrest.

24          *United States v. Sua,* 307 F.3d 1150, 1153 (9th Cir. 2002), is instructive

25  regarding the probative value of plea agreements.  In *Sua*, a co-defendant had agreed

26  to plead guilty in exchange for the dismissal of counts.  *Id.* at 1152.  Defendant Sua

27  then sought to introduce the co-defendant's plea agreement to show "that the plea

28  agreement was an admission by the government that [the co-defendant] was not

OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER
RE ADMISSION OF FACTUAL BASIS

1  guilty" of the dismissed counts.  *Id.*  The court found the plea agreement was

2  properly excluded under Rule 403 "because its low probative value is substantially

3  out-weighed by 'confusion of the issues, or misleading the jury, or by considerations

4  of undue delay.'"  *Id.* at 1153.  As part of this analysis, the court explained that

5  "many factors influence the government's decision to plea bargain."  *Id.*; *see also*

6  *United States v. Delgado*, 903 F.2d 1495, 1499 (1990).

7         Many factors also influence a defendant's decision to plea bargain.  *See, e.g.,*

8  *Corbitt v. New Jersey*, 439 U.S. 212, 222 n.12 (1978) (collecting reasons).  Here,

9  evidence would show that Puig's decision to attest to the statements within the

10  factual basis was due to (1) the government's messaging that he needed to sign or

11  face international arrest, and (2) the short window of time the government set that,

12  given the unique circumstances of Puig's foreign residence, job, mental health

13  issues and learning disabilities, eliminated a meaningful opportunity to vet plausible

14  defenses.  The jury, when shown evidence that contradicts the "facts" in the factual

15  basis, will be able to easily infer Puig's reasons for signing.  Like *Sua*, the factual

16  basis here then has low probative value on the issue of guilt or innocence as to the

17  charged offenses.

18             2.    The Dangers Listed in Rule 403 Substantially Outweigh the
                     Probative Value of the Factual Basis.
19
       The government suggests that the dangers listed in Rule 403 do not
20
   substantially outweigh the factual basis's probative value.  The government
21
   contends that the factual basis would not confuse or mislead the jury because "the
22
   government will not inform the jury that the [f]actual [b]asis was part of any plea
23
   agreement in its case-in-chief."  (Mot. at 15.)  But the defense would offer the
24
   context of the factual basis to explain it, as Rule 410(a) expressly permits.  Rule
25
   410(a) ("In a civil or criminal case, evidence of the following is not admissible
26
   *against the defendant* who made the plea or participated in the plea discussions.")
27
   (emphasis added); *United States v. Biaggi*, 909 F.2d 662, 690 (1990) ("[P]lea
28

WAYMAKER

negotiations are inadmissible 'against the defendant' . . . and it does not necessarily follow that the Government is entitled to a similar shield."); *United States v. Maloof*, 205 F.3d 819, 824-25 (5th Cir. 2000) (affirming admission of testimony offered by the defendant to show that he rejected offers of immunity because Rule 410 does not shield the government).[12]

Accordingly, should the government offer the factual basis, Puig would not be precluded from offering plea discussion evidence, which is highly probative value of his mental state during such discussions. *See, e.g.*, *Biaggi*, 909 F.2d at 690. It would take considerable time to give the jury context of why Puig signed, and would waste the jury's time and cause confusion over the issues the jury must resolve. Relevant aspects of this "mini-trial" would include statements attorneys made across the bargaining table, which would not be desirable and would cause the jury confusion. *See, e.g. United States v. DeMarco*, 407 F.Supp. 107, 114 (C.D. Cal. 1975) (excluding evidence because it "would involve the testimony of three attorneys in the case" that would lead to the lawyers arguing for their own credibility in closing arguments, and "[n]othing could be more likely to distract the jury from a focus on the evidence"). The defense might also need additional fact witnesses, and would need to prepare a different line of expert inquiry to apply Puig's unique mental health and cognitive issues to the plea discussion context.

As such, a trial-within-a-trial would be created over one piece of evidence that carries little weight, distracting from the jury's primary job of resolving the charges presented, and would considerably lengthen the trial. *See e.g.*, *AGA &*

---

[12] Rule 410 further provides that, if one statement made during plea discussions is admitted, other statements made during the plea discussions are also admissible. Fed. R. Evid. 410(b)(1) ("The court may admit a statement described in Rule 410(a)(3) or (4) . . . in any proceeding in which another statement made during the same plea or plea discussions has been introduced, if in fairness the statements ought to be considered together.").

OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER
RE ADMISSION OF FACTUAL BASIS

1    *Titan*, 2012 WL 4783636 at *4 (excluding evidence under Rule 403 because it

2    would risk creating a "case-within-a-case" that would waste time). The dangers

3    associated with admitting the factual basis therefore substantially outweigh any

4    probative value the factual basis has.

5         These problems would not be avoided were the Court to restrict the use of the

6    evidence to impeachment.  For example, under Fed R. Evid. 613(b), if the factual

7    basis is used to impeach Puig, Puig must be "given an opportunity to explain or

8    deny the statement and an adverse party is given an opportunity to examine the

9    witness about it."  *See United States v. Cutler*, 676 F.2d 1245, 1249 (9th Cir. 1982)

10   ("Rule 613(b) requires that . . . the opposite party must be afforded the opportunity

11   to interrogate him thereon[.]") (cleaned up); *In re Corrugated Container Antitrust*

12   *Litigation*, 756 F.2d 411, 415 (5th Cir. 1985) (same)  As such, even if only utilized

13   to impeach, admitting the factual basis would still lead to a trial-within-a-trial.

14        Whether used affirmatively or for impeachment, the Court has discretion to

15   exclude otherwise admissible evidence under Rule 403, *United States v. Cruz-*

16   *Garcia*, 344 F.3d 951, 956 (9th Cir. 2003) ("403 is, in a sense, incorporated into *all*

17   other rules of evidence"); *United States v. Young*, 248 F.3d 260, 268 (4th Cir. 2001)

18   (impeachment evidence subject to Rule 403), and should use such discretion here.

19   **IV.    CONCLUSION**

20        For the reasons discussed above, Puig respectfully requests that this Court

21   find that the plea agreement is unenforceable, which ends the issue.  In the

22   alternative, Puig requests that the Court find that he did not knowingly waive Rule

23

24

25

26

27

28

OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER
RE ADMISSION OF FACTUAL BASIS

1    410, or knowingly breach the plea agreement and/or exclude the factual basis from

2    evidence pursuant to Rule 403.

3    DATED:  July 5, 2023                    WAYMAKER LLP

4

5

6    By: _____

7        KERI CURTIS AXEL
         JOSE R. NUÑO
8        EMILY R. STIERWALT
         *Attorneys for Defendant Yasiel Puig Valdes*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Keri Curtis Axel (Bar No. 186847)
2    kaxel@waymakerlaw.com
   Jose R. Nuño (Bar No. 312832)
3    jnuno@waymakerlaw.com
4  Emily R. Stierwalt (Bar No. 323927)
     estierwalt@waymakerlaw.com
5  WAYMAKER LLP
   515 S. Flower Street, Suite 3500
6  Los Angeles, California 90071
7  Telephone: (424) 652-7800
   Facsimile:  (424) 652-7850
8

9  *Attorneys for Defendant*
10 *Yasiel Puig Valdes*

11            **UNITED STATES DISTRICT COURT**

12   **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

13

14
   UNITED STATES OF AMERICA,        Case No. CR 22-394-DMG
15
                 Plaintiff,         **DECLARATION OF KERI CURTIS
16                                  AXEL IN SUPPORT OF YASIEL
17        v.                        PUIG'S OPPOSITION TO
                                    GOVERNMENT'S MOTION FOR
18 YASIEL PUIG VALDES,              ORDER RE ADMISSION OF
19                                  FACTUAL BASIS**
                 Defendant.
20

21

22

23

24

25

26

27

28



---

DECL. OF KERI CURTIS AXEL ISO OPPOSITION TO GOV'T MOTION RE FACTUAL BASIS

ER 142

<u>DECLARATION OF KERI CURTIS AXEL</u>

I, Keri Curtis Axel, declare as follows:

1.      I am an attorney licensed to practice in the State of California.  I am a partner with Waymaker LLP, counsel to Defendant Yasiel Puig Valdes ("Puig") in this action.  I make this Declaration in support of Puig's Opposition to the Government's Motion for Order Re: Admission of Factual Basis in the above-captioned matter.  I have personal knowledge of the facts set forth herein and if called as a witness I could and would testify competently thereto.

2.      When I was retained to represent Puig, I received a copy of a May 9, 2022 letter from the U.S. Attorney's Office stating that they viewed Puig to be the target of a criminal investigation involving false statements to law enforcement officers and obstruction of justice.  Attached hereto as Exhibit A is a true and correct copy of the May 9, 2022 letter.

3.      On June 27, the government issued a revised plea agreement.  AUSA Mitchell initially set a deadline of Friday, July 1, but suspended the deadline, among other reasons, to review financial information submitted by the defense relating to the fine amount.

4.      On July 6, 2022, Mitchell emailed me a further revised plea agreement reducing the proposed fine based on information provided to the government related to the proposed fine amount.  Attached hereto as Exhibit B is a true and correct copy of the July 6, 2022, email (without attachments) from Mitchell.

5.      During the plea negotiations, Puig was playing baseball in Korea for the Kiwoom Heroes, on a schedule that often included 6 games per week.  Attached

1 | as Exhibit C is a excerpted copy of Puig's Korean baseball schedule and game

2 | results from May 24, 2022 through July 9, 2022 that I obtained from the internet.

3 |      I declare under penalty of perjury under the laws of the United States of

4 | America that the foregoing is true and correct.

5 |       Executed on this 5th day of July, 2023, at Los Angeles, California.

6

7

8 | Keri Curtis Axel

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECL. OF KERI CURTIS AXEL ISO OPPOSITION TO GOV'T MOTION RE FACTUAL BASIS

# EXHIBIT A



# United States Department of Justice

## United States Attorney's Office
## Central District of California

*Jeff Mitchell*
*Phone: (213) 894-0698*
*E-mail: jeff.mitchell@usdoj.gov*

*1100 United States Courthouse*
*312 North Spring Street*
*Los Angeles, California  90012*

May 9, 2022

VIA E-MAIL

Yasiel Puig
c/o Scott Lesowitz
Lesowitz Gebelin LLP
8383 Wilshire Boulevard, Suite 800
Beverly Hills, California 90211

Re:    **Federal Criminal Investigation**

Dear Mr. Puig:

This letter is to inform you that you are the target of a federal criminal investigation being conducted by the Department of Homeland Security, the Internal Revenue Service-Criminal Investigations, and the United States Attorney's Office for the Central District of California.  The investigation involves false statements to law enforcement officers, in violation of 18 U.S.C. § 1001; and obstruction of justice, in violation 18 U.S.C. § 1503(a).

If you have any questions or would like to further discuss this matter, please contact us or ask your attorney to contact us by May 25, 2022.

Very truly yours,

JEFF MITCHELL
Assistant United States Attorney
Major Frauds Section

ER 146

# EXHIBIT B

| | |
|---|---|
| **From:** | Keri Axel |
| **To:** | Riley Smith |
| **Subject:** | Fw: Factual Basis/Fine |
| **Date:** | Monday, June 26, 2023 10:45:15 AM |
| **Attachments:** | image001.png |
| | Plea Agreement_Puig_v3_second revised_07062022.pdf |
| | Puig Exhibit.pdf |

---

**From:** Mitchell, Jeff (USACAC) 5 <Jeff.Mitchell@usdoj.gov>
**Sent:** Wednesday, July 6, 2022 3:51 PM
**To:** Keri Axel <kaxel@waymakerlaw.com>
**Cc:** Boyle, Daniel (USACAC) <Daniel.Boyle2@usdoj.gov>
**Subject:** RE: Factual Basis/Fine

Hi Keri.  Please find attached a newly revised plea agreement that incorporates your requests from last month and a lower fine amount ($55,000).  This plea offer will expire at the close of business on Friday.

---

**From:** Mitchell, Jeff (USACAC) 5
**Sent:** Monday, June 27, 2022 3:55 PM
**To:** Keri Axel <kaxel@waymakerlaw.com>
**Subject:** RE: Factual Basis/Fine

Hi Keri.  Please find attached a revised plea agreement that incorporates most of your requests, including the portion of the factual basis that described Mr. Puig's statements about "wasting his time."

---

**From:** Keri Axel <kaxel@waymakerlaw.com>
**Sent:** Friday, June 24, 2022 8:45 AM
**To:** Mitchell, Jeff (USACAC) 5 <jmitchell5@usa.doj.gov>
**Subject:** [EXTERNAL] Factual Basis/Fine

Hi Jeff:  Per our conversation, here are requested edits to the Factual Basis and Information.  Let's discuss after you review.

As to the fine, we request a mid-range Guidelines fine.  Even if you apply the guidelines range that would be applicable to 1503, at most the range is $5500-$55,000.  We request a mid-point fine of $30,250.

We also need to further discuss cooperation.  Let me know when you are available.

ER 148

Thank you.  Best, Keri

**Keri Curtis Axel**
Partner



Waymaker LLP
o  +1 424.652.7800
m +1 213 314 5284
kaxel@waymakerlaw.com  |  waymakerlaw.com

*****************************************************************
This message was sent from Waymaker LLP and is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
*****************************************************************

# EXHIBIT C

## MyKBO Stats

Teams ▾     Schedule     Statistics     Foreign Players          Search for player

# KBO Schedule & Results

← | Kiwoom Hero ▾ | 05/24/2022 📅 | →

## Tuesday May 24, 2022

Kiwoom Heroes      **6 : 4**
Final          LG Twins

## Wednesday May 25, 2022

Kiwoom Heroes      **10 : 5**
Final          LG Twins

## Thursday May 26, 2022

Kiwoom Heroes      **12 : 5**
Final          LG Twins

## Friday May 27, 2022

Kiwoom Heroes      **8 : 0**
Final          Lotte Giants

## Friday May 27, 2022

Kiwoom Heroes      **6 : 3**
Final/10          Lotte Giants

## Saturday May 28, 2022

Kiwoom Heroes      **4 : 0**
Final          Lotte Giants

ER 151

## MyKBO Stats    Teams ▾    Schedule    Statistics    Foreign Players    🔍 Search for player

# KBO Schedule & Results

← | Kiwoom Hero ▾ | 05/31/2022 📅 | →

## Tuesday May 31, 2022



Samsung Lions  **2 : 3**  Kiwoom Heroes
Final

## Wednesday June 1, 2022



Samsung Lions  **4 : 2**  Kiwoom Heroes
Final

## Thursday June 2, 2022



Samsung Lions  **5 : 6**  Kiwoom Heroes
Final

## Friday June 3, 2022



Kiwoom Heroes  **2 : 14**  Hanwha Eagles
Final

## Saturday June 4, 2022



Kiwoom Heroes  **4 : 3**  Hanwha Eagles
Final/10

## Sunday June 5, 2022



Kiwoom Heroes  **Canceled**  Hanwha Eagles
Rained Out

ER 152



# KBO Schedule & Results



## Tuesday June 7, 2022

KT Wiz          **0 : 3**          Kiwoom Heroes
                   Final

## Wednesday June 8, 2022

KT Wiz          **5 : 5**          Kiwoom Heroes
                  Final/12

## Thursday June 9, 2022

KT Wiz          **7 : 1**          Kiwoom Heroes
                   Final

## Friday June 10, 2022

Kiwoom Heroes          **10 : 6**          Kia Tigers
                         Final

## Saturday June 11, 2022

Kiwoom Heroes          **2 : 5**          Kia Tigers
                         Final

## Sunday June 12, 2022

Kiwoom Heroes          **10 : 8**          Kia Tigers
                         Final

ER 153

Case: 23-3214, 01/12/2024, DktEntry: 19.3, Page 143 of 291 (143 of 291)

7/5/23, 2:57 PM Case 2:22-cr-00394-DMG Document 128-4 Filed 07/05/23 | Page 5 of 8 Page ID #:1242
2023 KBO League Game Schedule | MyKBO Stats

MyKBO Stats | Teams ▾ | Schedule | Statistics | Foreign Players | Search for player

# KBO Schedule & Results



### Tuesday June 14, 2022

Doosan Bears **0 : 2** Kiwoom Heroes
Final

≡ ← Schedule 🏠 ⟳ ⋮

← Kiwoom Her... ▾ 06/14/2022 📅 →

### Thursday June 16, 2022

Doosan Bears **2 : 6** Kiwoom Heroes
Final

### Friday June 17, 2022



LG Twins **4 : 2** Kiwoom Heroes
Final/10

### Friday June 17, 2022

LG Twins **0 : 2** Kiwoom Heroes
Final

### Saturday June 18, 2022



LG Twins **4 : 2** Kiwoom Heroes
Final/10

MyKBO Stats    Teams ▾    Schedule    Statistics    Foreign Players    Search for player

# KBO Schedule & Results

← | Kiwoom Herc ▾ | 06/21/2022 📅 | →

## Tuesday June 21, 2022



Kiwoom Heroes    **4 : 3**
Final    Samsung Lions

## Wednesday June 22, 2022



Kiwoom Heroes    **6 : 0**
Final    Samsung Lions

## Thursday June 23, 2022



Kiwoom Heroes    **6 : 1**
Final    Samsung Lions

## Friday June 24, 2022



Kiwoom Heroes    **1 : 5**
Final    Lotte Giants

## Saturday June 25, 2022



Kiwoom Heroes    **13 : 5**
Final    Lotte Giants

## Sunday June 26, 2022



Kiwoom Heroes    **9 : 4**
Final    Lotte Giants

ER 155



ER 156

# MyKBO Stats

Teams ▾    Schedule    Statistics    Foreign Players    Search for player

# KBO Schedule & Results

## Tuesday July 5, 2022

Kiwoom Heroes 

**4 : 3**
Final

Doosan Bears

≡    ← Schedule    🏠  ⟳  ⋮

←    Kiwoom Herc ▾    07/05/2022 📅    →

## Thursday July 7, 2022

Kiwoom Heroes    **2 : 4**
Final    Doosan Bears

## Friday July 8, 2022

NC Dinos     **2 : 3**
Final    Kiwoom Heroes

## Friday July 8, 2022

NC Dinos     **1 : 10**
Final    Kiwoom Heroes

## Saturday July 9, 2022

NC Dinos     **0 : 2**
Final    Kiwoom Heroes

ER 157

Keri Curtis Axel (Bar No. 186847)
  kaxel@waymakerlaw.com
Jose R. Nuño (Bar No. 312832)
  jnuno@waymakerlaw.com
Emily R. Stierwalt (Bar No. 323927)
  estierwalt@waymakerlaw.com
WAYMAKER LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (424) 652-7800
Facsimile:  (424) 652-7850

*Attorneys for Defendant*
*Yasiel Puig Valdes*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 22-394-DMG |
| Plaintiff, | **DECLARATION OF ANTHONY FERNANDEZ RE GOVERNMENT'S MOTION FOR ORDER RE ADMISSION OF FACTUAL BASIS** |
| v. | |
| YASIEL PUIG VALDES, | |
| Defendant. | |

## DECLARATION OF ANTHONY FERNANDEZ

I, Anthony Fernandez, declare as follows:

1.     I am the director of All-Star Sports & Entertainment Group, a business management group for professional athletes.  One of my clients is Yasiel Puig.  I have personal knowledge of the facts set forth herein and if called as a witness I could and would testify competently thereto.

2.     On or about June 6, 2022, acting as an agent/advisor for Puig and as a translator to assist Puig and his attorneys, I participated in a Zoom meeting with Assistant United States Attorney (AUSA) Jeff Michell; AUSA Dan Boyle; HSI Special Agent Jason Canty; and IRS Special Agent Chris Seymour.  Also in attendance were attorneys Keri Curtis Axel, and Jose R. Nuño from Waymaker Law on behalf of Puig.

3.     At the time of the meeting, Puig played baseball in Korea and did not reside in the United States.  He was present via Zoom.

4.     During this meeting, AUSA Mitchell explained that the government was prepared to indict Puig on several charges based on an interview Puig had with the government in January 2022.  The government accused Puig of making three false statements during the interview, and it indicated that it intended to indict Puig for obstruction of justice as well as making false statements.   AUSA Mitchell gave a presentation as to the charges he intended to bring and the evidence that he alleged supported them.

5.     At the end of the meeting, AUSA Mitchell said he would wait a few days to indict the case so that Puig could discuss with his attorneys whether to try to negotiate a plea resolution of the case before he was indicted.  AUSA Mitchell said that, if he Puig did not agreed to a deal, he would be indicted and the government would get a warrant for his arrest.  I do not recall the exact words that he used but I have a clear recollection of the image that it left in my mind.  Based on the discussion, I literally pictured Puig being arrested in the middle of a game in Korea

1 | and hauled off to jail to be extradited to the United States if he did not make a deal
2 | with the government.
3 |       I declare under penalty of perjury under the laws of the United States of
4 | America that the foregoing is true and correct.
5 |       Executed on this **21** day of December, 2022, at Miami, Florida.
6 |
7 |                                                      _____
8 |                                                      Anthony Fernandez
9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

2

1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   JEFF MITCHELL (Cal. Bar No. 236225)
4  Assistant United States Attorney
   Major Frauds Section
5  DAN G. BOYLE (Cal. Bar No. 332518)
   Assistant United States Attorney
6  Environmental Crime and
   Consumer Protection Section
7      1100 United States Courthouse
       312 North Spring Street
8      Los Angeles, California 90012
       Telephone: (213) 894-0698/2426
9      Facsimile: (213) 894-6269/0141
       E-mail:   jeff.mitchell@usdoj.gov
10               daniel.boyle2@usdoj.gov

11 Attorneys for Plaintiff
   UNITED STATES OF AMERICA
12

13                  UNITED STATES DISTRICT COURT

14            FOR THE CENTRAL DISTRICT OF CALIFORNIA

15 UNITED STATES OF AMERICA,          CR No. 22-394(A)-DMG

16          Plaintiff,                GOVERNMENT'S REPLY IN FURTHER
                                      SUPPORT OF NOTICE OF MOTION AND
17          v.                        MOTION FOR ORDER RE: DEFENDANT'S
                                      KNOWING BREACH OF PLEA AGREEMENT
18 YASIEL PUIG VALDES,
                                      Hearing Date: July 19, 2023
19          Defendant.               Hearing Time: 2:30 p.m.
                                      Location:    Courtroom of the
20                                                 Hon. Dolly M. Gee

21

22      Plaintiff United States of America, by and through its counsel

23 of record, the United States Attorney for the Central District of

24 California and Assistant United States Attorneys Jeff Mitchell and

25 Dan G. Boyle, hereby files this Reply in further support of its

26 Motion for an Order finding that defendant Yasiel Puig Valdes

27 knowingly breached his plea agreement with the government in this

28 matter.

1

2       This Reply is based upon the attached memorandum of points and

3   authorities, the files and records in this case, and such further

4   evidence and argument as the Court may permit.

5

6   Dated: July 12, 2023              Respectfully submitted,

7                                     E. MARTIN ESTRADA
                                      United States Attorney
8
                                      MACK E. JENKINS
9                                     Assistant United States Attorney
                                      Chief, Criminal Division
10

11                                    _____/s/_____
                                      DAN G. BOYLE
12                                    JEFF MITCHELL
                                      Assistant United States Attorneys
13
                                      Attorneys for Plaintiff
14                                    UNITED STATES OF AMERICA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                      ii

1

**TABLE OF CONTENTS**

2

3  MEMORANDUM OF POINTS AND AUTHORITIES................................1

4  I.   INTRODUCTION...............................................1

5  II.  ARGUMENT...................................................1

6        A.   The Law of the Case Doctrine Bars Defendant's Attempt
             to Retroactively Withdraw from the Plea Agreement.........1
7
        B.   Defendant's New Arguments Ignore Intervening Supreme
8            Court Precedent..........................................4

9        C.   Defendant has Failed to Rebut the Certifications of
             Voluntariness he Signed in the Plea Agreement............7
10
        D.   Defendant Has Not Identified Any Purported
11           "Exculpatory Evidence"..................................10

12       E.   Defendant's Evidentiary Objections Lack Merit...........12

13  III. CONCLUSION................................................15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Cases**

3

Askins v. U.S. Dep't of Homeland Sec.,
4
   899 F.3d 1035 (9th Cir. 2018) .................................. 2
Bordenkircher v. Hayes,
5
   434 U.S. 357 (1978) ........................................... 9
East Bay Sanctuary Covenant v. Trump,
6
   950 F.3d 1242 (9th Cir. 2020) ................................. 3
Mabry v. Johnson,
7
   467 U.S. 504 (1984)) .......................................... 5
Matter of Requested Extradition of Kirby,
8
   106 F.3d 855 (9th Cir. 1996) .................................. 9
Puckett v. United States,
9
   556 U.S. 129 (2009) ........................................ 5, 6
Thomas v. Bible,
10
   983 F.2d 152 (9th Cir. 1993) .................................. 3
United States v. Fagan,
11
   996 F.2d 1009 (9th Cir. 1993) ................................. 4
United States v. Grant,
12
   117 F.3d 788 (5th Cir. 1997) .................................. 6
United States v. Hyde,
13
   520 U.S. 670 (1997) ........................................... 5
United States v. Mitchell,
14
   633 F.3d 997 (10th Cir. 2011) ................................ 13
United States v. Newbert,
15
   504 F.3d 180 (1st Cir. 2007) ................................. 10
United States v. Ocanas,
16
   628 F.2d 353 (5th Cir. 1980) .................................. 5
United States v. Savage,
17
   978 F.2d 1136 (9th Cir. 1992) ................................. 5
United States v. Sua,
18
   307 F.3d 1150 (9th Cir. 2002) ................................ 13
United States v. Sylvester,
19
   583 F.3d 285 (5th Cir. 2009) ................................. 13
United States v. McTiernan,
20
   2010 WL 11667960 (C.D. Cal. July 7, 2010) ................. 11, 12

21

22

**Statutes**

23

24

18 U.S.C. § 3501............................................... 14

25

**Rules**

26

Federal Rule of Evidence 403................................... 12

27

28

iv

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

This Court held months ago that defendant breached his agreement with the government in this matter (the "Plea Agreement"), a holding which is the law of the case. Now defendant seeks to revisit that law of the case and argue that the Plea Agreement, and accordingly, the Court's order finding him in breach, are actually null and void – without so much as acknowledging the law of the case doctrine. Alternately, he argues that his execution of the Plea Agreement was not voluntary, but instead of offering a declaration from defendant himself, he seeks to evade cross-examination by offering declarations from others (his manager and a retained expert) as to what defendant *might* have been thinking at the time he agreed to plead guilty. But third-party speculation is no substitute for defendant's own testimony, and certainly does not overcome defendant's certifications included in the Plea Agreement. He should be held to the agreement and waivers he signed – and benefitted from – and the government's motion should be granted.

**II.   ARGUMENT**

 **A.    The Law of the Case Doctrine Bars Defendant's Attempt to Retroactively Withdraw from the Plea Agreement**

On January 6, 2023, this Court found that "[d]efendant did not plead guilty, despite agreeing to do so as part of his plea, and accordingly, breached the [Plea Agreement]." ECF No. 51, at 3. While defendant opposed the government's motion for a finding of breach at that time (see ECF No. 41), at no point did defendant ever suggest that the Plea Agreement was non-binding or had been withdrawn. To the contrary, defendant strenuously argued that the Plea Agreement

continued to bind the government:

- "A plea agreement is a contract, to which the Court is not a party. Like any other party to a contract, to merit the Court's intervention, the government must prove the elements of a breach of contract…" (ECF No. 41, at 1);

- "If the government were to seek a superseding indictment, defendant Puig would possibly have a breach motion because he would have damages . . . Like any party to a contract, however, Puig might or might not decide to assert such breach, in which case the Court might never be asked to intervene" (id., at 6-7);

- "[T]he defense may seek recission of the plea agreement, or at least may ask the Court not to grant the government specific enforcement of paragraph 22, asserting contractual defenses such as unconscionability, public policy, undue influence, nondisclosure, or mistake." Id. at 8.

In sum, defendant argued that (1) contract law governed the Plea Agreement, (2) the Court was not a party to the Plea Agreement, and (3) that the government remained bound by the Plea Agreement until it could establish the elements of a breach. The Court agreed with defendant in part, for example, agreeing that "[u]ntil the Government is so relieved, it is bound by its obligation not to prosecute Defendant for obstruction of justice" (ECF No. 51, at 3), but ultimately held that defendant had breached the plea Agreement. Id. Accordingly, that holding is the law of the case here.

The law of the case doctrine "generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Askins v. U.S. Dep't of Homeland Sec., 899 F.3d 1035, 1042 (9th Cir. 2018) (cleaned up). Under the doctrine, courts are "generally precluded

1   from reconsidering an issue that has already been decided by the same

2   court, or a higher court in the identical case, absent a material

3   change in circumstances." Thomas v. Bible, 983 F.2d 152, 154 (9th

4   Cir. 1993). "For the doctrine to apply, the issue in question must

5   have been decided either expressly or by necessary implication in the

6   previous disposition." Id. (internal quotation marks and alterations

7   omitted). If an issue has already been decided, then reconsideration

8   of the order is permitted only where "the prior decision is 'clearly

9   erroneous' and enforcing it would create 'manifest injustice';

10  intervening, controlling authority encourages reconsideration; or

11  substantially different evidence is produced at a later merits

12  trial." East Bay Sanctuary Covenant v. Trump, 950 F.3d 1242, 1262

13  (9th Cir. 2020).

14      Defendant ignores the law of the case doctrine, and instead,

15  suggests that the Court should "amend" its prior order. See Opp. at

16  9. Defendant does not address the standard for revisiting the law of

17  the case, or argue how he has met this standard,[1] but even if he had,

18  defendant could not show a manifest injustice here. First, as

19  addressed herein, defendant's new argument that the Plea Agreement

20  was non-binding are not "intervening, controlling law," because they

21  long predate the Court's breach order and ignore subsequent and

22  binding Supreme Court precedent. See Section II. B, infra. Second,

23  defendant cannot show a manifest injustice in adhering to the law of

24  the case here, because he received at least some of the benefit of

25

26      [1] Defendant suggests in a footnote that his counsel simply
27  didn't know about this case law at the time (Opp. at 8 n.4), but does
    not explain why his counsel's purported ignorance of the law would
28  satisfy the law of the case doctrine.

                              3

the bargain he sought through the Plea Agreement. As discussed below, see Section II.C, infra, defendant's primary contention is that he faced a "Hobson's choice" (Opp. at 12) between going to trial or accepting a plea agreement that would allow him to finish his professional baseball season in South Korea without fear of arrest or extradition. See Opp. at 12-13. Of course, defendant was able to complete his baseball season without arrest because he signed the Plea Agreement and, as detailed in prior filings, persuaded the government to keep the matter under seal until his voluntary return. But once the baseball season was complete, defendant changed his position and refused to plead guilty as he had promised to do – leading to the Court's finding of breach. There is no manifest injustice in refusing to allow defendant to change his position after he already received one of the very benefits he sought.

**B.   Defendant's New Arguments Ignore Intervening Supreme Court Precedent**

Separate from the law of the case doctrine, defendant's new attempt to invalidate the waivers in the Plea Agreement relies on prior law which has since been undermined by intervening Supreme Court precedent.

In his Opposition, defendant now argues that "[t]he Ninth Circuit has repeatedly held that a plea agreement that has not been offered in open court and approved by the Court – like the one here – is unenforceable." Opp. at 1. Defendant largely relies on two earlier Ninth Circuit cases for this proposition: United States v. Fagan, 996 F.2d 1009, 1013 (9th Cir. 1993) and United States v. Savage, 978 F.2d 1136, 1138 (9th Cir. 1992). A close reading of this

4

precedent, and intervening Supreme Court jurisprudence, shows that the Fagan/Savage line of cases does not support defendant's position.

For example, as defendant recognizes, Fagan explicitly rested on the Supreme Court's decision in Mabry v. Johnson, 467 U.S. 504, 507–08 (1984)). See Opp. at 6. What defendant omits, however, is that Mabry was largely relegated to dicta and implicitly overruled by the Supreme Court in Puckett v. United States, 556 U.S. 129, 138 (2009) ("We disavow any aspect of the Mabry dictum that contradicts our holding today."). In Puckett, the Supreme Court forcefully reiterated that plea agreements – including failures to perform – are governed by contract law:

> Although the analogy may not hold in all respects, plea bargains are essentially contracts. When the consideration for a contract fails—that is, when one of the exchanged promises is not kept—we do not say that the voluntary bilateral consent to the contract never existed, so that it is automatically and utterly void; we say that the contract was broken. The party injured by the breach will generally be entitled to some remedy, which might include the right to rescind the contract entirely, but that is not the same thing as saying the contract was never validly concluded.

Puckett, 556 U.S. at 137 (internal citations omitted). The government respectfully submits that Puckett is binding here: where a defendant refuses to plead guilty as agreed, the contract has been breached – it does not become "automatically and utterly void." Id.[2] While the

---

[2] Similarly, defendant's reliance on Savage is misplaced. As defendant acknowledges, Savage adopted the Fifth Circuit's reasoning in United States v. Ocanas, 628 F.2d 353 (5th Cir. 1980). See Opp. at 8. Again, defendant omits key subsequent history: Ocanas was recognized by the Fifth Circuit as overruled by the Supreme Court's decision in United States v. Hyde, 520 U.S. 670 (1997). See United States v. Grant, 117 F.3d 788, 791 n.4 (5th Cir. 1997) ("[M]ore importantly, [Ocanas] is undermined by the Supreme Court's decision in Hyde.").

*(footnote cont'd on next page)*

5

ER 169

1    non-breaching party may opt to "rescind the contract entirely," that

2    is merely one remedy available. Id.

3        Read in context with Puckett, the Fagan/Savage line of cases

4    stand for the narrower proposition that "a court cannot force a

5    defendant to plead guilty because of a promise in a plea agreement."

6    Savage, 978 F.2d 1136, 1137 (9th Cir. 1992)(internal citation

7    omitted). Of course, that is not the issue here, where the question

8    is whether terms of a plea agreement ancillary to the agreement to

9    plead guilty remain in force.

10       Furthermore, the circumstances expressed in Savage – that

11   "neither party contemplates any benefit from the agreement unless and

12   until the trial judge approves the bargain and accepts the guilty

13   plea" (978 F.2d at 1138) – are not present with defendant's plea

14   agreement. Here, the Plea Agreement states that "that the Court and

15   the United States Probation and Pretrial Services Office are not

16   parties to this agreement," and that the Plea Agreement is effective

17   "upon signature and execution of all required certifications by

18   defendant, defendant's counsel, and an Assistant United States

19   Attorney." See ECF 6 ¶¶ 20, 23. In other words, however the

20   Fagan/Savage line of cases may be construed, defendant here

21   specifically agreed that terms of the Plea Agreement would be binding

22   upon signing. He should be held to the terms he agreed to.

23

24

25   _____

26       Defendant actually cites to Hyde, but fails to grasp the
     significance of its holding; in Hyde the Supreme Court held that a
27   rejected plea is not void ab initio, but rather gives the defendant
     "the right to back out of his promised performance." See Opp. at 7
28   (citing Hyde, 520 U.S. 677-78).

                                    6

**C.   Defendant has Failed to Rebut the Certifications of Voluntariness he Signed in the Plea Agreement**

As an initial matter, defendant largely evades the principle question of whether his breach of the Plea Agreement was knowing. See generally, Mot. at 10-11. Defendant has offered no direct evidence of his state of mind or identified any specific provisions of the plea agreement that he claims he did not comprehend. Instead, defendant largely attacks the Plea Agreement and included waivers generally, arguing that his "mental health and cognitive-educational deficits, created a perfect storm in which he did not have the ability to knowingly and intelligently waive his Rule 410 right." Opp. at 9. Accordingly, to the extent the Court finds that defendant voluntarily entered the Plea Agreement and included waivers, defendant has offered no facts or evidence to dispute that his breach was "knowing" under Paragraph 22 of the same.

Not only has defendant failed to offer any evidence to suggest that he did not fully comprehend or appreciate the plea agreement, defendant and his counsel certified in writing that defendant had reviewed the terms of the Plea Agreement, that he understood those terms, and that he was freely entering into an agreement to plead guilty, and that no one had "threatened or forced [defendant] in any way to enter into [the Plea Agreement]." See ECF No. 6, at 19-20. In his Opposition, defendant does not dispute that he signed the Plea Agreement or the accompanying certifications. Nor does he dispute that that Plea Agreement and certifications were accurately translated for him. And most notably, defendant does not offer any declaration of his own contradicting these certifications – or any

7

1    declaration at all.[3]

2        Instead of offering a declaration from defendant, or any direct

3    evidence of defendant's state of mind at the time he signed the plea

4    agreement, defendant's Opposition includes statements from other

5    persons offering their opinions that defendant might not have entered

6    the Plea Agreement voluntarily. For example, defendant offers a

7    declaration from his manager, Anthony Fernandez, stating that he

8    "literally pictured Puig being arrested in the middle of a game in

9    Korea and hauled off to jail to be extradited to the United States if

10   he did not make a deal with the government." See ECF No. 128-5, at

11   ¶ 5. But defendant's manager is not the defendant and cannot testify

12   to defendant's mental state – and notably, Mr. Fernandez says nothing

13   about any conversations he may have had with defendant on this point,

14   only his own subjective impression, and Mr. Fernandez does not (and

15   cannot) state that he was present for all conversations between the

16

17        [3] Defendant's decision not to offer any testimony of his own
     appears calculated to avoid cross-examination on the assertions
18   offered by others in his place. For example, in the Opposition,
     defendant argues that he "is highly distractible and has difficulty
19   paying attention and following complex verbal directions or
     discussions." Opp. at 12. However, at least two of defendant's former
20   hitting coaches have expressed that they had no difficulty
     communicating with or instructing defendant. See Decl. of AUSA Dan
21   Boyle, Exs. A, B.

22        As another example, defendant asserts that he had insufficient
     time to consider the proposed plea agreement because he only had
23   "initially one week (June 16-June 23), a period in which he had a
     travel day and a double-header" to consider it. See Opp. at 4, n.1.
24   However, the same publicly available Korean Baseball League database
     cited by defendant (MyKBOstats.com) shows that defendant was only on
25   the game roster for a single game during this period (June 16, 2022),
     and did not actually play that day. See Decl. of AUSA Dan Boyle, Ex.
26   C. For each other game during this period (including the mentioned
     double-header), these records indicate that defendant did not play at
27   all. According to defendant's own cited source, the first game he
     appeared for after June 16, 2022 was on July 7, 2022 – roughly the
28   same day he signed the Plea Agreement. See Boyle Decl. ¶ 4.

1  government and defense counsel where the Plea Agreement was

2  discussed.[4]

3      Similarly, the Opposition attaches a declaration from Dr. Paola

4  Suarez, stating that, based on her examination, defendant "suffers

5  from PTSD, ADHD, and executive function deficits, and has a limited

6  educational background." Opp. at 12. Dr. Suarez, however, does not

7  opine that defendant did not understand the plea agreement or that

8  his signature was not voluntary. Dr. Suarez merely diagnoses

9  defendant and opines that people with his condition are easily

10  distracted and may have difficulty following conversations. Further,

11  Dr. Suarez's declaration, and the Opposition as a whole, fail to

12  identify any specific provisions of the Plea Agreement that defendant

13  did not comprehend. Whatever the strength of Dr. Suarez' diagnosis,

14  however, her opinion of how defendant might have reacted is no

15  substitute for defendant's own testimony – particularly where

16  defendant already signed certifications to the contrary.

17      Defendant also argues that the Plea Agreement presented him a

18  "Hobson's choice" between accepting a plea or potentially losing his

19  lucrative contract playing professional baseball in South Korea.[5] See

20  Opp. at 12-13. But difficult choices are virtually always part of the

21  _____

22      [4] For example, while Mr. Fernandez might have initially feared
defendant would be promptly extradited upon indictment, defense

23  counsel was certainly aware that even uncontested extraditions are
lengthy processes, and any threat of a prompt arrest and extradition

24  would not be credible. See, e.g., Matter of Requested Extradition of
Kirby, 106 F.3d 855, 863 (9th Cir. 1996), as amended (Feb. 27, 1997)

25  (discussing the "highly probable lengthy delays" as a result of
"extradition proceedings themselves and the appeals therefrom," in

26  context of bail pending extradition). Furthermore, Mr. Fernandez was
not present for later calls with the government during the plea

27  negotiation process.

      [5] Notably, defendant never claims that he requested more time to

28  consider the Plea Agreement, or that any such request was rejected.

9

1  plea process, and do not render a plea agreement involuntary. <u>See</u>

2  <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 364 (1978) ("[I]mposition of

3  these difficult choices is an inevitable—and permissible—attribute of

4  any legitimate system which tolerates and encourages the negotiation

5  of pleas." (quoting <u>Chaffin v. Stynchcombe</u>, 412 U.S. 17 (1973))).

6  This choice was not forced on defendant by the government – his

7  counsel requested to plea negotiations, and by agreeing to the plea,

8  defendant was successful in keeping this matter out of the public eye

9  long enough to finish his professional baseball season in South

10  Korea.[6] Indeed, it was only after he achieved his objective of

11  finishing the baseball season that defendant indicated that he might

12  not be willing to follow through with his agreement to plead guilty.

13      **D.   Defendant Has Not Identified Any Purported "Exculpatory**
14          **Evidence"**

15      Defendant also argues that his plea could not have been

16  voluntary because he subsequently discovered what he contends to be

17  exculpatory evidence – which he does not detail.[7] <u>See</u> Opp. at 17.

18  Defendant cites to out-of-circuit precedent, <u>United States v.</u>

19  ──────────────

20      [6] Defendant argues that the government represented that it would
    not wait until defendant's return to the United States to seek an
21  arrest warrant, but provides no citation or other proof of this
    assertion – which the government disputes. Counsel does not offer any
22  declaration on this point (<u>see generally</u>, ECF No. 128-1), nor does
    counsel attach any contemporaneous notes of these discussions which
23  might support this version of events.

    [7] Defendant appears to allege that this allegedly exculpatory
24  evidence "demonstrates that Puig's waiver had not been knowing and
    intelligent." Opp. at 2. Defendant, however, fails to advise the
25  government of what this alleged exculpatory evidence consists of, and
    as such, the government cannot effectively respond. Defendant does
26  not have a right to proceed by ambush, and the Court should not
    consider any such argument unless defendant details what this
27  purported evidence consists of and gives the government an
    opportunity to respond.
28

10

1  Newbert, 504 F.3d 180 (1st Cir. 2007) in support of this argument,

2  but Newbert does not support him here. First, as defendant

3  recognizes, Newbert explicitly did not address a plea that had been

4  breached, see Opp. at 18 (describing Newbert's holding as "withdrawal

5  of a plea due to post-plea evidence of innocence does not constitute

6  a breach"), while here, the Court has already found defendant in

7  breach. The time for defendant to raise Newbert as a defense to

8  breach was before the Court found a breach of the Plea Agreement.[8] In

9  any event, as Judge Fischer found in United States v. McTiernan, in

10  circumstances similar to those here, Newbert is inapplicable. As

11  Judge Fischer explained:

> In United States v. Newbert, 504 F.3d 180, 183 (1st Cir.
> 2007), for example, the district court found that
> defendant's plea was knowing, intelligent, and voluntary,
> but that there was nevertheless a "fair and just reason" to
> allow him to withdraw it. There, the alleged breach was
> based only on Defendant's request to withdraw, and the
> language of the plea agreement was narrow and somewhat
> circular. The Court found that defendant's withdrawal did
> not breach the agreement. Here, the breach is also based on
> Defendant's lack of truthfulness - a fact he apparently
> does not contest.

19  McTiernan, No. CR 06-259-DSF, 2010 WL 11667960, at *1 (C.D. Cal. July

20  7, 2010).[9] In sum, defendant has not explained what his purported

---

[8] Defendant explicitly states that he found this undefined
exculpatory evidence *before* he was scheduled to change his plea (see
Opp. at 18), so there is no reason why defendant failed to raise this
argument before the Court found him in breach.

[9] As the Newbert court recognized, the right to withdraw a plea
while avoiding a breach is narrow and a defendant's burden is high; a
defendant must show that he "could not, acting with due diligence,
have discovered the evidence before entering into the guilty plea,
that the evidence establishes a plausible basis for concluding that
the defendant was not guilty of the crime to which he pleaded guilty,
and that the evidence would have materially affected his decision as
*(footnote cont'd on next page)*

11

1  exculpatory evidence consists of, or why he did not raise it when

2  opposing the government's motion for a finding of breach, and even if

3  he had, his cited out-of-circuit authority does not hold that

4  exculpatory evidence renders a plea agreement involuntary.

5          **E.   Defendant's Evidentiary Objections Lack Merit**

6          Finally, defendant asserts numerous evidentiary objections to

7  the admission of the Factual Basis, and while these some of these

8  arguments may be addressed at trial, none merit denying the

9  government's motion at this stage.

10         First, defendant objects that the Factual Basis should be

11 excluded pursuant to Federal Rule of Evidence 403, because the

12 Factual Basis would have little probative value. See Opp. at 19-23.

13 Defendant is incorrect. Courts have routinely found that admission of

14 a defendant's statements during the plea process enhances a trial's

15 truth-seeking functions. See McTiernan, 2010 WL 11667960, at *2

16 ("Defendant's contention that the statements should be excluded as

17 ─────────────

18 to whether to plead guilty." Newbert, 504 F.3d at 187. The Court
   simply cannot make such a finding here, as defendant has not
   explained what his purportedly exculpatory evidence consists of, why

19 his counsel could not have discovered it with ordinary diligence, or

20 that this undefined evidence provides a plausible basis for believe
   him to be innocent.

21         Here, defendant's own recitation of the facts suggests that his

22 counsel did not even begin investigating these facts until after
   defendant returned to the United States, months after he signed the

23 Plea Agreement. See Opp. at 15 ("[U]pon Puig's return to the United
   States, and with direct access to Puig to help him focus on the

24 details, to refresh his recollection with his own records, and to
   investigate the government's claims, the defense discovered

25 exculpatory evidence."). At most, defendant suggests that he was
   simply too busy continuing his lucrative career "playing baseball

26 approximately 6 days per week" (see Opp. at 4), but defendant does
   not explain why this investigation could not occur while defendant

27 was working overseas (for example by defense counsel flying to South

28 Korea) during the months the matter remained under seal.

                                   12

more prejudicial than probative pursuant to Rule 403 of the Federal Rules of Evidence has no merit. To the contrary, introduction of Defendant's admission of guilt will 'enhance the truth-seeking function of the trial.'" (quoting Mezzanatto, 513 U.S. 204)); United States v. Mitchell, 633 F.3d 997, 1005 (10th Cir. 2011) ("Even if the district court determines a guilty plea should be withdrawn, a waiver of Rule 410 only means a trial will contain more evidence"); United States v. Sylvester, 583 F.3d 285, 294 (5th Cir. 2009) ("[T]o ignore relevant evidence of culpability simply because that evidence was discovered during the course of plea negotiations would arguably undermine the truth-seeking function of our criminal justice system. While in theory an innocent defendant might execute such a waiver (and thus inject false statements into the admissible record), the benefit of evaluating as much relevant evidence as possible outweighs the mere possibility of such danger, and will, on balance, enhance the reliability of a fact-finder's conclusions.").[10]

Second, defendant suggests that allowing the government to use the Factual Basis – even simply for impeachment – would lead to a "trial-within-a-trial," because defendant "would not be precluded from offering plea discussion evidence, which is highly probative value of his mental state during such discussion." Opp. at 21-23. But

---

[10] Defendant cites to United States v. Sua, 307 F.3d 1150 (9th Cir. 2002), but Sua dealt with a co-defendant's statements rather than those by the defendant himself, and in that case it was the defendant seeking to admit his codefendant's plea agreement as a purported admission by the government. Id. at 1153. ("[A] district court may properly exclude, under Fed. R. Evid. 403, a plea agreement offered for the purpose of establishing the government's belief in a person's innocence."). Sua says nothing about the weight of a defendant's own admission.

13

1    this is true for virtually any confession or statement made by a

2    defendant and admitted at trial. Indeed, the Ninth Circuit's Model

3    Jury Instruction 3.1 addresses this situation, stating that "[w]hen

4    voluntariness of a confession is an issue, the instruction is

5    required by 18 U.S.C. § 3501(a), providing that after a trial judge

6    has determined a confession to be admissible, the judge shall permit

7    the jury to hear relevant evidence on the issue of voluntariness and

8    shall instruct the jury to give such weight to the confession as the

9    jury feels it deserves under all the circumstances." In other words,

10   a defendant seeking to contextualize an alleged admission of guilt to

11   law enforcement is hardly unique, and certainly not so confusing as

12   to warrant preclusion under Rule 403. By defendant's logic, every

13   confession would need to be excluded because introducing such a

14   statement would naturally trigger a "trial within a trial" into the

15   circumstances of the confession. Not so. If defendant wishes to open

16   the door in front of the jury and explain that the Factual Basis was

17   part of a since-breached agreement to plead guilty, then that is his

18   choice to make. In any event, if the Factual Basis is admitted at

19   trial, or used as impeachment, the Court is certainly capable of

20   applying 18 U.S.C § 3501(a) and appropriately admitting or limiting

21   evidence of voluntariness.

22   ///

23   ///

24

25

26

27

28

14

**III. CONCLUSION**

     For the foregoing reasons, and those stated in the Motion, the government respectfully requests that this Court find that defendant's breach of the Plea Agreement constitutes a "knowing breach" under Paragraph 22 of the Plea Agreement and permit the introduction of the factual basis at trial.


 Dated: July 12, 2023          Respectfully submitted,

                               E. MARTIN ESTRADA
                               United States Attorney

                               MACK E. JENKINS
                               Assistant United States Attorney
                               Chief, Criminal Division


                                  /s/
                               _____
                               DAN G. BOYLE
                               JEFF MITCHELL
                               Assistant United States Attorneys

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

15

## **DECLARATION OF DAN G. BOYLE**

I, Dan G. Boyle, declare and state as follows:

1.   I am an Assistant United States Attorney at the United States Attorney's Office for the Central District of California assigned this matter.  I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2.   Attached as Exhibits A and B are true and correct redacted versions of memorandums of interview with two of defendant's previous baseball hitting coaches.

3.   Attached as Exhibit C is a of a true and correct version of a compilation of pages from the website MyKBOstats.com, for baseball games played by the Kiwoom Heroes between and including June 16, 2022 and June 24, 2022.

4.   According to MyKBOstats.com, defendant did not appear in any games for the Kiwoom Heroes between and including June 17, 2022 and July 6, 2023. See MyKBOstats.com, "Yasiel Puig, Kiwoom Heroes #66," available at https://mykbostats.com/players/2312.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on July 12, 2023.

_____
DAN G. BOYLE

# EXHIBIT A



# DEPARTMENT OF HOMELAND SECURITY

## HOMELAND SECURITY INVESTIGATIONS

### REPORT OF INVESTIGATION

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

---

07/12/2023 12:29 EDT                                                          Page 1 of 2

**CASE NUMBER**

███████████

**CASE OPENED**

9/12/2017

**CURRENT CASE TITLE**

Matthew Funke, et. al.

**REPORT TITLE**

████████ Interview

**SYNOPSIS**

On September 6, 2017, the United States Attorney's Office, Central District of California, contacted Home and Security Investigations (HSI) Los Angeles regarding the existence of an illegal online sports gambling website, "Sandisandsports.com." At least some staff of the website, including Matthew FUNKE, work in the Los Angeles, CA area to sign up users to the website and to collect debts and pay out winnings to the site's users. As a result, HSI Los Angeles opened an investigation into FUNKE's potential violations of 18 United States Code, Section 1084 (Transmission of Wagering Information).

This report details the interview of ███████████ on 02/15/2023.

**REPORTED BY**

Jason Canty

SPECIAL AGENT

**APPROVED BY**

Matthew Stocks

SPECIAL AGENT

**DATE APPROVED**

2/21/2023

---

| Current Case Title | ROI Number | Date Approved |
|---|---|---|
| Matthew Funke, et. al. | ███████████ | 2/21/2023 |

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

ER 182



# DEPARTMENT OF HOMELAND SECURITY

## HOMELAND SECURITY INVESTIGATIONS

### REPORT OF INVESTIGATION



OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

07/12/2023 12:29 EDT                                                                 Page 2 of 2

## DETAILS OF INVESTIGATION

On September 6, 2017, the Un ted States Attorney's Off ce, Centra  D str ct of Ca  forn a,
contacted Home and Secur ty Invest gat ons (HSI) Los Ange es regard ng the ex stence of an
  ega  on ne sports gamb ng webs te, "Sand s andsports.com." At  east some staff of the
webs te,  nc ud ng Matthew FUNKE, work  n the Los Ange es, CA area to s gn up users to the
webs te and to co  ect debts and pay out w nn ngs to the s te's users. As a resu t, HSI Los
Ange es opened an  nvest gat on  nto FUNKE's potent a  v o at ons of 18 Un ted States Code,
Sect on 1084 (Transm ss on of Wager ng Informat on).



At approx mate y 09:45 AM, SA's Canty and Seymour attempted a knock and ta k at ███████
███████████ , the res dence of █████████ former h tt ng Coach of the Dodger's Major
League Baseba   team from 2013 2015 to speak to ██████ regard ng h s  nteract ons w th Yas e
PUIG.  After SA Canty rang the doorbe   an un dent f ed fema e answered the door.  SA Canty
 nformed her, that we wou d   ke to speak to ██████  A coup e of m nutes  ater, ██████ came
to the door.  The agents then  dent f ed themse ves, and  nformed ██████ that they wanted to
speak to h m regard ng h s  nteract ons w th Yas e  PUIG.  ██████ stated that he d d not want
to speak w th the agents at the moment but stated that he wou d ca   SA Seymour back.

At approx mate y 3:00PM on February 15, 2023, ██████ contact SA Seymour te ephon ca  y who  n
turn contacted SA Canty v a te ephone to conduct the  nterv ew.  Dur ng the quest on ng, ██████
stated that he was ab e to commun cate w th PUIG us ng a Span sh trans ator to convey coach ng
 deas to PUIG.  ██████ stated that he had no reason to be  eve that PUIG was unab e to
understand ██████ and that PUIG was ab e to  ncorporate the  nstruct ons that ██████ was
convey ng through the trans ator.  The  nterv ew was term nated at approx mate y 3:20pm.

Th s report prov des a summary of the  nterv ew.  For further deta  s refer to the aud o
record ng of the  nterv ew that w    be ma nta ned  n the e ectron c case f  e.

Th s  nvest gat on cont nues.

| Current Case Title | ROI Number | Date Approved |
|---|---|---|
| Matthew Funke, et. al. | ██████████████ | 2/21/2023 |

OFFICIAL USE ONLY | LAW ENFORCEMENT SENSITIVE

This document is loaned to you for official use only and remains the property of the Department of Homeland Security. Any further request for disclosure of
this document or information contained herein should be referred to HSI Headquarters together with a copy of the document.

ER 183

# **EXHIBIT B**



**DEPARTMENT OF THE TREASURY**
**Internal Revenue Service**
**Criminal Investigation**

**Memorandum of Conversation**

---

| | | | |
|---|---|---|---|
| **Investigation #:** | ███████ | **Location:** | Telephonic |
| **Investigation Name:** | PUIG, YASIEL | | ███████ |
| **Date:** | July 7, 2023 | | |
| **Time:** | From approximately 8:27 am to 8:34 am | | |
| **Participants:** | ███████, Witness | | |
| | Jason Canty, Special Agent, HSI | | |
| | Chris Seymour, Special Agent, IRS-CI | | |

On the above date and time Special Agents with IRS Criminal Investigation Chris Seymour (SA Seymour), and Homeland Security Investigations Special Agent Jason Canty (SA Canty) spoke with ███████████████, the hitting coach for the Cleveland Guardians.

Rodriguez provided consent to record the phone call and a copy of the recording is attached to this memorandum (███████████████).

SA Seymour reviewed Title 18 United States Code Section 1001 regarding False Statements with ███████ and he stated that he understood. The following information was discussed:

1. ███████ believed he met YASIEL PUIG in 2018 or 2019. Although he showed up late, PUIG was a hitter and came in every day to prepare for the games. ███████ spoke in Spanish with PUIG and had no problems with talking with PUIG.

2. ███████ described his job as being available to help PUIG. ███████ did not notice PUIG having any learning impediments or problems with understanding. ███████ described PUIG as quiet and respectful. Most of the players were Spanish speakers that year and ███████ did not notice any problems with PUIG understanding them.

3. During the month and a half or two months PUIG was there ███████ spent at least 10 minutes every day with PUIG. In addition, during the games, ███████ provided a game report discussing what ███████ knew about the pitcher and about information such as how the pitcher threw the ball and how fast the pitcher threw the ball. PUIG was quick to understand.

4. ███████ was not aware of any disciplinary action. PUIG may not have run to first base one time and the manager handled it, and it never happened again.

ER 185

5. ███████████ – now with the Boston Red Socks was an outfield coach that may have interacted with PUIG when he was there.

6. ███████████ confirmed that his answers were honest and truthful to the best of his ability.

SA Seymour and SA Canty thanked ███████████████ for his time and the interview was concluded at approximately 8:34 AM.

I prepared this memorandum on July 11, 2023, after refreshing my memory from notes made during and immediately after the interview with ██████████████.

*Chris Seymour*

Chris Seymour
Special Agent

Attachments:        Audio File ████████████████████

████████████
████████████
████████████

# EXHIBIT C

7/12/23, 12:36 PM

MyKBO Stats          Teams ▾   Schedule   Statistics   Foreign Players        Search for player        More ▾        Accour

# Doosan Bears   2 : 6   Kiwoom Heroes

### June 16, 2022 2:30am



**June 16, 2022 Game List**

| Kia Tigers | **4 : 2** | NC Dinos |
| W: Lee Eui-lee | Final | L: Kim Young-kyu |
| SV: Jung Hai-young | | |
| Lotte Giants | **3 : 0** | Hanwha Eagles |
| W: Sparkman | Final | L: Jang Min-je |
| SV: Choi Jun-yong | | |
| Doosan Bears | **2 : 6** | Kiwoom Heroes |
| L: Park Chi-guk | Final | W: Kim Jae-woong |
| SSG Landers | **6 : 0** | KT Wiz |
| W: Oh Won-seok | Final | L: Bae Je-seong |
| Samsung Lions | **1 : 2** | LG Twins |
| L: Baek Jung-hyun | Final | W: Kelly |
| | | SV: Go Woo-suk |



↓ Games

Doosan Bears            |  |  | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 0 |  |  | 2
Kiwoom Heroes           |  |  | 0 | 0 | 1 | 0 | 0 | 4 | X | 6 | 7 | 0 | 8

W: Kim Jae-woong          L: Park Chi-guk

Video Links

Watch Highlights

https://mykbostats.com/games/9904-Doosan-vs-Kiwoom-20220616

1/6

ER 188

7/12/23, 12:36 PM

2/6

MyKBO Stats    Teams ▾    Schedule    Statistics    Foreign Players    More ▾    ⚙    Accour

Doosan Bears vs Kiwoom Heroes - Tue 06/21 19:30 pm KBO Stats | MyKBOStats.314

| Doosan | Pos | BA | AB | R | H | HR | RBI | BB | SO | HBP |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 An Gweon-su #8 | RF | .275 | 3 | 1 | 0 | 0 | 0 | 1 | 0 | 0 |
| 2 Fernández #9 | 1B | .000 | 2 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| ↳ Jo Soo-haeng #51 | PR | .157 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ↳ Kwon Min-seok #7 | 1B | .000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 Kim In-tae #39 | LF | .273 | 3 | 1 | 1 | 0 | 0 | 1 | 0 | 0 |
| 4 Kim Jae-hwan #32 | DH | .244 | 4 | 0 | 2 | 0 | 2 | 0 | 1 | 0 |
| 5 Kang Seung-ho #23 | 2B | .257 | 4 | 0 | 0 | 0 | 0 | 0 | 3 | 0 |
| 6 Park Sei-hyok #10 | C | .215 | 4 | 0 | 1 | 0 | 0 | 0 | 1 | 0 |
| 7 Jung Soo-bin #31 | CF | .274 | 3 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| 8 Kim Jae-ho #52 | 3B | .291 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 9 An Jae-seok #3 | SS | .173 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | 0 |
| ↳ Park Gye-beom #14 | PH | .234 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ↳ Seo Ye-il #16 | 3B | .222 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| Kiwoom | Pos | BA | AB | R | H | HR | RBI | BB | SO | HBP |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Kim Woong-bin #1 | DH | .200 | 3 | 0 | 0 | 0 | 1 | 2 | 2 | 0 |
| 2 Song Sung-mun #24 | 3B | .256 | 5 | 1 | 3 | 1 | 3 | 0 | 0 | 0 |
| 3 Lee Jung-hoo #51 | CF | .311 | 5 | 0 | 1 | 0 | 1 | 1 | 1 | 0 |
| 4 Puig #66 | RF | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

ER 189

MyKBO Stats    Teams ▾    Schedule    Statistics    Foreign Players    More ▾    ⚙    Accour

| | Pos | AVG | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Kim Jun-hwan #14 | FD | .223 | | | | 0 | 0 | 0 | 1 | 1 | 0 | 0 |
| 5 Kim Hye-seong #3 | 2B | .329 | 2 | 1 | 1 | 0 | 0 | 4 | 2 | 0 | | 0 |
| 6 Kim Su-hwan #31 | 1B | .152 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | | 0 |
| Jeon Byeong-woo #13 | PH | .125 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 |
| 7 Park Ju-hong #57 | LF | .159 | 3 | 1 | 1 | 0 | 0 | 0 | 1 | 1 | | 0 |
| 8 Lee Ji-young #56 | C | .258 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | | 0 |
| 9 Kim Whee-jip #33 | SS | .253 | 2 | 2 | 2 | 1 | 0 | 0 | 2 | 1 | | 0 |
| Sin Jun-woo #5 | SS | .111 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 |

## Pitching

| Doosan | ERA | IP | NP | R | ER | H | HR | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Gwak Been #47 | 1.80 | 5 | 95 | 1 | 1 | 4 | 0 | 4 | 4 | 0 | 55 |
| Jeong Cheol-won #65 | 0.00 | 1 ⅓ | 22 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | |
| Lee Hyun-seung #48 | 13.50 | 0 ⅔ | 12 | 1 | 1 | 1 | 1 | 2 | 0 | 0 | |
| Park Chi-guk #1 | 54.00 | 0 ⅔ | 25 | 4 | 4 | 1 | 0 | 1 | 3 | 0 | |
| Jang Won-jun #28 | 0.00 | 0 ⅓ | 10 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | |

| Kiwoom | ERA | IP | NP | R | ER | H | HR | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Choi Won-tae #20 | 3.60 | 5 | 91 | 2 | 2 | 2 | 0 | 5 | 2 | 1 | 57 |
| Kim Tae-hoon #17 | 0.00 | 1 | 9 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | |

https://mykbostats.com/games/9904-Doosan-vs-Kiwoom-20220616

ER 190

7/12/23, 12:36 PM

MyKBO Stats

Teams ▾    Schedule    Statistics    Foreign Players          More ▾          ⚙          Accour

| Moon Sung-hyun #21 | 0.00 | 1 | 16 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |

# Plays

- 1st Inning
- 2nd Inning
- 3rd Inning
- 4th Inning
- 5th Inning
- 6th Inning
- 7th Inning
- 8th Inning
- 9th Inning

| **Deciding Hit** | none |
| --- | --- |
| **HR** | Song Sung-mun (#6, 7th inning off Lee Hyun- |

7/12/23, 12:36 PM     Case 2:22-cr-00394-DMG Doosan Bears vs Kiwoom Heroes - Full Box Score - Game Stats - MyKBO Stats

MyKBO Stats    Teams ▾    Schedule    Statistics    Foreign Players    More ▾    ⚙    Accour

| Statistics | |
|---|---|
| 2B | Kim Jae-hwan (1st inning), Park Sei-hyok (2nd inning) |
| SB | Kim Hye-seong (2nd inning) |
| OOB | Kim In-tae (6th inning) |
| GIDP | Kim Jae-hwan (8th inning) |
| WP | Park Chi-guk (8th inning) |
| Umpires | Koo Myung-hwan, Moon Dong-gyoon, Lee Ki-joong, Won Hyun-shik |
| Venue | Gocheok Sky Dome |
| Attendance | 2349 |
| Duration | 3:38 |

This site is created for fans, by fans, and is *not affiliated with the KBO League (KBO 리그)* or the Korea Baseball Organization (한국야구위원회). All information presented here should be considered *unofficial*. Player photos and official team logos are the property of their respective teams.

Apple, the Apple logo, and iPhone are trademarks of Apple Inc., registered in the U.S. and other countries. App Store is a service mark of Apple Inc. Android, Google Play, and the Google Play logo are trademarks of Google Inc. Weather data provided by ___Weather.

MyKBO Stats v2 — Build 513 (2023-06-29)

Powered by Elixir and the Phoenix Framework.

MyKBO Stats

Teams ▾   Schedule   Statistics   Foreign Players

Search for player

More ▾   ⚙   Accour

1/6

# LG Twins     4 : 2     Kiwoom Heroes

## June 17, 2022 2:30am

### June 17, 2022 Game List

| | | |
|---|---|---|
| Hanwha Eagles | **1 : 1** Final/12 | NC Dinos |
| KT Wiz W: Ko Young-pyo SV: Kim Jae-yoon | **4 : 2** Final | Doosan Bears L: Choi Seung-yong |
| LG Twins W: Kim Jin-sung SV: Go Woo-suk | **4 : 2** Final/10 | Kiwoom Heroes L: Ha Yeong-min |
| SSG Landers W: Font | **6 : 2** Final | Lotte Giants L: Park Se-woong |
| Samsung Lions L: Won Tae-in | **3 : 5** Final | Kia Tigers W: Yang Hyeon-jong SV: Jung Hai-young |

|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | R | H | E | B |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LG Twins | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 3 | 4 | 12 | 0 | 3 |
| Kiwoom Heroes | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 2 | 9 | 3 | 5 |

W: Kim Jin-sung     SV: Go Woo-suk     L: Ha Yeong-min

Video Links     Watch Highlights

ER 193

7/12/23, 12:32 PM

MyKBO Stats    Teams ▾    Schedule    Statistics    Foreign Players    More ▾    ⚙    Accour

2/6

| LG | Pos | BA | AB | R | H | HR | RBI | BB | SO | HBP |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Hong Chang-ki #51 | RF | .330 | 5 | 0 | 1 | 0 | 0 | 0 | 1 | 0 |
| 2 Park Hae-min #17 | CF | .288 | 4 | 2 | 1 | 0 | 0 | 1 | 0 | 0 |
| 3 Kim Hyeon-su #22 | LF | .296 | 5 | 1 | 3 | 1 | 4 | 0 | 1 | 0 |
| 4 Chae Eun-seong #55 | 1B | .290 | 4 | 0 | 1 | 0 | 0 | 0 | 1 | 1 |
| ↳ Kim Min-sung #16 | 3B | .288 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 5 Oh Ji-hwan #10 | SS | .259 | 5 | 0 | 1 | 0 | 0 | 0 | 1 | 0 |
| 6 Moon Sung-ju #8 | DH | .314 | 4 | 0 | 2 | 0 | 0 | 0 | 0 | 0 |
| ↳ Lee Chun-woong #32 | PH | .750 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7 Moon Bo-gyeong #35 | 3B | .284 | 3 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| 8 Son Ho-young #50 | 2B | .308 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ↳ Lee Sang-ho #2 | PH | .167 | 2 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| 9 Hur Do-hwan #30 | C | .167 | 3 | 0 | 1 | 0 | 0 | 0 | 1 | 0 |
| ↳ Song Chan-eui #66 | PR | .059 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ↳ Yoo Kang-nam #27 | C | .237 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |

| Kiwoom | Pos | BA | AB | R | H | HR | RBI | BB | SO | HBP |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Kim Jun-wan #14 | RF | .218 | 3 | 1 | 0 | 0 | 0 | 2 | 0 | 0 |
| 2 Song Sung-mun #24 | 3B | .250 | 5 | 0 | 2 | 0 | 1 | 0 | 0 | 0 |
| 3 Lee Jung-hoo #51 | CF | .317 | 5 | 0 | 3 | 0 | 0 | 0 | 0 | 0 |

7/12/23, 12:32 PM

MyKBO Stats

Case 2:22-cr-00394-DMG ...

| | Pos | AVG | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 Kim Woong-bin #1 | DH | .192 | 5 | 1 | 0 | 0 | 0 | 1 | 1 | 0 |  |
| 6 Park Ju-hong #57 | LF | .159 | 3 | 0 | 1 | 0 | 0 | 0 | 1 | 0 |  |
| ↳ Park Jun-tae #23 | PR | .200 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 1 |  |
| 7 Lee Ji-young #56 | C | .263 | 4 | 0 | 1 | 0 | 0 | 0 | 1 | 0 |  |
| ↳ Kim Jae-hyun #32 | C | .333 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 |  |
| 8 Kim Ju-hyung #6 | 2B | .152 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |  |
| ↳ Kim Hye-seong #3 | PH | .327 | 1 | 0 | 0 | 0 | 0 | 2 | 0 | 0 |  |
| 9 Kim Whee-jip #33 | SS | .251 | 4 | 1 | 1 | 0 | 0 | 0 | 2 | 0 |  |

## Pitching

| LG | ERA | IP | NP | R | ER | H | HR | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kim Yun-sik #57 | 1.42 | 6 ⅓ | 90 | 1 | 1 | 5 | 0 | 3 | 1 | 0 | 62 |
| Yi Jung-yong #31 | 0.00 | 0 ⅔ | 10 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | |
| Jin Hae-soo #21 | 0.00 | 1 | 13 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | |
| Kim Dae-yu #69 | 0.00 | 0 ⅓ | 10 | 0 | 0 | 1 | 0 | 1 | 0 | 0 | |
| Kim Jin-sung #42 | 0.00 | 0 ⅔ | 10 | 0 | 0 | 0 | 0 | 2 | 1 | 0 | |
| Go Woo-suk #19 | 9.00 | 1 | 31 | 1 | 1 | 2 | 0 | 2 | 1 | 1 | |
| **Kiwoom** | ERA | IP | NP | R | ER | H | HR | SO | BB | HB | GS |

ER 195

7/12/23, 12:32 PM

MyKBO Stats　　Teams ▾　Schedule　Statistics　Foreign Players　More ▾　⚙　Accour

4/6

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Lee Jeung-ho #77 | 0.00 | 1 | 12 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Kim Tae-hoon #17 | 0.00 | 1 | 9 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 |
| Kim Jae-woong #28 | 0.00 | 1 | 13 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 1 |
| Moon Sung-hyun #21 | 0.00 | 1 | 11 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| Ha Yeong-min #50 | 40.50 | 0 ⅔ | 25 | 3 | 3 | 4 | 1 | 0 | 0 | 0 | 0 | 0 |
| Lee Myeong-jong #97 | 0.00 | 0 ⅓ | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

## Plays

| 1st Inning |
|---|
| 2nd Inning |
| 3rd Inning |
| 4th Inning |
| 5th Inning |
| 6th Inning |
| 7th Inning |
| 8th Inning |
| 9th Inning |

ER 196

7/12/23, 12:32 PM

MyKBO Stats

Case 2:22-cr-00394-DMG Two-Run Wealth 18-6-3 Jun 17, 2022 (2:40) at Rangers at Gos... | MyKBO Star... : 1322

5/6

| | |
|---|---|
| **Deciding Hit** | Kim Hyun-soo (10th inning, 1 out, runners on 1,3, RF wall HR) |
| **HR** | Kim Hyun-soo (#13, 10th inning off Ha Yeong-min, 3 run) |
| **2B** | Park Ju-hong (7th inning), Park Jun-tae (9th inning) |
| **E** | Lee Ji-young (3rd, 5th inning), Song Sung-mun (9th inning) |
| **SB** | Park Hae-min (3rd, 5th inning) |
| **CS** | Chae Eun-seong (8th inning), Lee Sang-ho (9th inning) |
| **OOB** | Moon Sung-ju (9th inning) |
| **GIDP** | Kim Ju-hyung (3rd inning), Hong Chang-ki (7th inning) |
| **PB** | Lee Ji-young (9th inning) |
| **Umpires** | Yoon Sang-won, Kim Ik-su, Lee Min-ho, Chun Il-soo |
| **Venue** | Gocheok Sky Dome |

ER 197

7/12/23, 12:31 PM          MyKBO Stats

Case 2:22-cr-00394-DMG Two vs Kiwoom 18 06 S... Jun 18 2022 12:00 pm Rangers 0:0 9:4... | Page 3... #:1323

Teams ▾   Schedule   Statistics   Foreign Players   Search for player   More ▾   Accour

# LG Twins       0 : 2       Kiwoom Heroes

## June 17, 2022 10:00pm

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | R | H | E | B |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LG Twins | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 3 |
| Kiwoom Heroes | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | X | 2 | 9 | 1 | 1 |

W: Han Hyun-hee     SV: Lee Seung-ho     L: Im Chan-kyu

---

**June 18, 2022 Game List**

| | | |
|---|---|---|
| LG Twins | **0 : 2** | Kiwoom Heroes |
| L: Im Chan-kyu | Final | W: Han Hyun-hee |
| | | SV: Lee Seung-ho |
| Hanwha Eagles | **2 : 3** | NC Dinos |
| L: Kim Jong-soo | Final | W: Kim Si-hoon |
| KT Wiz | **0 : 5** | Doosan Bears |
| L: Despaigne | Final | W: Stock |
| SSG Landers | **10 : 5** | Lotte Giants |
| W: Kim Kwang-hyun | Final | L: Lee In-bok |
| Samsung Lions | **6 : 2** | Kia Tigers |
| W: Buchanan | Final | L: Han Seung-hyuk |

Video Links          Watch Highlights

MyKBO Stats    Teams ▾   Schedule   Statistics   Foreign Players    More ▾   ⚙   Accour

| LG | Pos | BA | AB | R | H | HR | RBI | BB | SO | HBP |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Hong Chang-ki #51 | RF | .328 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 2 Park Hae-min #17 | CF | .286 | 3 | 0 | 0 | 0 | 0 | 1 | 1 | 0 |
| 3 Kim Hyeon-su #22 | LF | .290 | 4 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| 4 Chae Eun-seong #55 | 1B | .290 | 4 | 0 | 1 | 0 | 0 | 0 | 1 | 0 |
| 5 Oh Ji-hwan #10 | SS | .261 | 3 | 0 | 1 | 0 | 0 | 1 | 1 | 0 |
| 6 Moon Sung-ju #8 | DH | .312 | 3 | 0 | 1 | 0 | 0 | 1 | 0 | 0 |
| 7 Moon Bo-gyeong #35 | 3B | .290 | 4 | 0 | 2 | 0 | 0 | 0 | 1 | 0 |
| 8 Yoo Kang-nam #27 | C | .230 | 4 | 0 | 0 | 0 | 0 | 0 | 2 | 0 |
| 9 Son Ho-young #50 | 2B | .308 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 0 |
| ↳ Song Chan-eui #66 | PH | .056 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| Kiwoom | Pos | BA | AB | R | H | HR | RBI | BB | SO | HBP |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Kim Jun-wan #14 | RF | .226 | 3 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| 2 Song Sung-mun #24 | 3B | .239 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 Lee Jung-hoo #51 | CF | .319 | 3 | 0 | 3 | 0 | 1 | 1 | 0 | 0 |
| 4 Kim Hye-seong #3 | 2B | .330 | 4 | 0 | 2 | 0 | 0 | 0 | 2 | 0 |
| 5 Park Ju-hong #57 | LF | .136 | 3 | 0 | 0 | 0 | 0 | 0 | 2 | 0 |
| ↳ Park Jun-tae #23 | RF | .133 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 |
| 6 Kim Jae-hyun #32 | C | .250 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

ER 199

|  | PO | AVG | | R | | H | | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ⌊ Kim Su-hwan #31 | PH | .159 | 1 | 1 | 0 | 1 | 0 | 0 | 1 | 0 |
| 8 Jeon Byeong-woo #13 | 1B | .148 | 3 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| 9 Kim Whee-jip #33 | SS | .253 | 2 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |

# Pitching

| LG | ERA | IP | NP | R | ER | H | HR | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Im Chan-kyu #1 | 3.60 | 5 | 80 | 2 | 2 | 8 | 1 | 4 | 0 | 0 | 47 |
| Choi Dong-hwan #13 | 0.00 | 1 | 8 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Choi Sung-hoon #56 | 0.00 | 1 | 16 | 0 | 0 | 1 | 0 | 1 | 1 | 0 | 0 |
| Kim Dae-yu #69 | 0.00 | 1 | 11 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 |

| Kiwoom | ERA | IP | NP | R | ER | H | HR | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Han Hyun-hee #63 | 0.00 | 6 | 98 | 0 | 0 | 5 | 0 | 3 | 1 | 0 | 64 |
| Lee Young-jun #64 | 0.00 | 1 | 13 | 0 | 0 | 1 | 0 | 1 | 0 | 0 | 0 |
| Lee Myeong-jong #97 | 0.00 | 1 | 16 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| Lee Seung-ho #47 | 0.00 | 1 | 23 | 0 | 0 | 0 | 0 | 3 | 1 | 0 | 0 |

7/12/23, 12:31 PM

MyKBO Stats

Teams ▾   Schedule   Statistics   Foreign Players   More ▾   ⚙   Accour

| | |
|---|---|
| 1st Inning | |
| 2nd Inning | |
| 3rd Inning | |
| 4th Inning | |
| 5th Inning | |
| 6th Inning | |
| 7th Inning | |
| 8th Inning | |
| 9th Inning | |

| Deciding Hit | |
|---|---|
| HR | Lee Jung-hoo (1st inning, 1 out, runner on 3rd, CF-RF gap single) |
| | Kim Woong-bin (#1, 2nd inning off Im Chan-kyu, 1 run) |
| 3B | Kim Jun-wan (1st inning) |
| 2B | Kim Hyun-soo (1st inning), Moon Sung-ju (4th inning) |

4/6

ER 201

MyKBO Stats

| Statistics | Foreign Players |
|---|---|
| SB | Oh Ji-hwan (2nd inning) |
| OOB | Oh Ji-hwan (4th inning) |
| GIDP | Yoo Kang-nam (5th inning) |
| WP | Lee Myeong-jong (8th inning) |
| Umpires | Lee Min-ho, Chun Il-soo, Kim Ik-su, Song Soo-geun |
| Venue | Gocheok Sky Dome |
| Attendance | 8705 |
| Duration | 2:53 |

This site is created for fans, by fans, and is *not affiliated* with the KBO League (KBO 리그) or the Korea Baseball Organization (한국야구위원회). All information presented here should be considered *unofficial*. Player photos and official team logos are the property of their respective teams.

Apple, the Apple logo, and iPhone are trademarks of Apple Inc., registered in the U.S. and other countries. App Store is a service mark of Apple Inc. Android, Google Play, and the Google Play logo are trademarks of Google Inc. Weather data provided by __Weather.__

MyKBO Stats v2 — Build 513 (2023-06-29)

Powered by Elixir and the Phoenix Framework.

Privacy Policy / Terms of Service

7/12/23, 12:33 PM

MyKBO Stats    Teams ▾    Schedule    Statistics    Foreign Players    Search for player    More ▾    ⚙    Accour

# LG Twins    4 : 2    Kiwoom Heroes

## June 18, 2022 10:00pm

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | R | H | E | B |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LG Twins | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 3 | 4 | 7 | 0 | 2 |
| Kiwoom Heroes | 0 | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 2 | 6 | 0 | 0 |

W: Jin Hae-soo    SV: Go Woo-suk    L: Kim Tae-hoon

### June 19, 2022 Game List

| | | | |
|---|---|---|---|
| LG Twins<br>W: Jin Hae-soo<br>SV: Go Woo-suk | **4 : 2**<br>Final/10 | Kiwoom Heroes<br>L: Kim Tae-hoon | |
| Hanwha Eagles<br>L: Kim Jae-young | **3 : 6**<br>Final | NC Dinos<br>W: Ryou Jin-oug<br>SV: Lee Yong-chan | |
| KT Wiz<br>W: So Hyeong-jun | **7 : 1**<br>Final | Doosan Bears<br>L: Choi Won-joon | |
| SSG Landers<br>L: Kim Taek-hyeong | **4 : 7**<br>Final | Lotte Giants<br>W: Kim Do-gyu<br>SV: Choi Jun-yong | |
| W: Suarez | Final | L: Williams | |

Video Links    Watch Highlights

1/5

ER 203

MyKBO Stats     Teams ▾     Schedule     Statistics     Foreign Players          More ▾     ⚙     Accour

2/5

| LG | Pos | BA | AB | R | H | HR | RBI | BB | SO | HBP |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Hong Chang-ki #51 | RF | .327 | 5 | 0 | 0 | 0 | 0 | 0 | 1 | 0 |
| 2 Park Hae-min #17 | CF | .288 | 4 | 0 | 1 | 0 | 1 | 1 | 0 | 0 |
| 3 Kim Hyeon-su #22 | DH | .289 | 5 | 0 | 1 | 0 | 1 | 0 | 0 | 0 |
| 4 Chae Eun-seong #55 | 1B | .294 | 4 | 1 | 2 | 1 | 2 | 0 | 1 | 0 |
| ↳ Hur Do-hwan #30 | C | .133 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 5 Oh Ji-hwan #10 | SS | .255 | 5 | 0 | 0 | 0 | 0 | 0 | 1 | 0 |
| 6 Moon Sung-ju #8 | LF | .310 | 4 | 0 | 1 | 0 | 0 | 0 | 1 | 0 |
| 7 Song Chan-eui #66 | 2B | .050 | 3 | 0 | 0 | 0 | 0 | 0 | 2 | 0 |
| ↳ Lee Sang-ho #2 | PH | .170 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| 8 Yoo Kang-nam #27 | C | .236 | 2 | 0 | 1 | 0 | 1 | 0 | 0 | 0 |
| ↳ Son Ho-young #50 | PR | .364 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| ↳ Moon Bo-gyeong #35 | 1B | .287 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 9 Kim Min-sung #16 | 3B | .283 | 3 | 1 | 0 | 0 | 0 | 0 | 2 | 0 |

| Kiwoom | Pos | BA | AB | R | H | HR | RBI | BB | SO | HBP |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Kim Jun-wan #14 | LF | .224 | 4 | 0 | 1 | 0 | 0 | 0 | 2 | 0 |
| 2 Park Jun-tae #23 | RF | .111 | 4 | 0 | 0 | 0 | 0 | 0 | 2 | 0 |
| 3 Lee Jung-hoo #51 | CF | .312 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 0 |
| 4 Kim Hye-seong #3 | 2B | .324 | 4 | 0 | 0 | 0 | 0 | 0 | 1 | 0 |

ER 204

7/12/23, 12:33 PM

MyKBO Stats   Teams ▾   Schedule   Statistics   Foreign Players   More ▾   ⚙   Accour

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 7 Kim Woong-bin #1 | DH | .216 | 4 | 4 | 0 | 1 | 0 | 0 | 3 | 0 | 2 | 0 |
| 8 Jeon Byeong-woo #13 | 1B | .179 | 4 | 4 | 1 | 2 | 1 | 1 | 1 | 0 | 0 | 0 |
| 9 Lee Ji-young #56 | C | .259 | 3 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Park Ju-hong #57 | PH | .143 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 |

## Pitching

| LG | ERA | IP | NP | R | ER | H | HR | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Plutko #45 | 1.29 | 7 | 89 | 1 | 1 | 4 | 1 | 9 | 0 | 0 | 74 |
| Yi Jung-yong #31 | 0.00 | 1 | 24 | 0 | 0 | 1 | 0 | 1 | 0 | 0 | 0 |
| Jin Hae-soo #21 | 0.00 | 1 | 11 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Go Woo-suk #19 | 9.00 | 1 | 18 | 1 | 1 | 1 | 1 | 3 | 0 | 0 | 0 |

| Kiwoom | ERA | IP | NP | R | ER | H | HR | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Jokisch #43 | 1.29 | 7 | 95 | 1 | 1 | 4 | 1 | 7 | 0 | 0 | 72 |
| Kim Jae-woong #28 | 0.00 | 1 | 15 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| Moon Sung-hyun #21 | 0.00 | 1 | 14 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| Kim Tae-hoon #17 | 40.50 | 0⅔ | 26 | 3 | 3 | 2 | 0 | 1 | 1 | 0 | 0 |
| Yang Hyun #39 | 0.00 | 0⅓ | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

https://mykbostats.com/games/9919-LG-vs-Kiwoom-20220619

ER 205

7/12/23, 12:33 PM

MyKBO Stats　　Teams ▾　Schedule　Statistics　Foreign Players　　More ▾　　⚙　　Accour

4/5

1st Inning

2nd Inning

3rd Inning

4th Inning

5th Inning

6th Inning

7th Inning

8th Inning

9th Inning

10th Inning

| | |
|---|---|
| **Deciding Hit** | Park Hae-min (10th inning, 1 out, bases loaded walk) |
| **HR** | Lee Jung-hoo (#11, 4th inning off Plutko, 1 run), Chae Eun-seong (#4, 7th inning off Jokisch, 1 run), Jeon Byeong-woo (#5, 10th inning off Go Woo-suk, 1 run) |

ER 206

7/12/23, 12:33 PM

MyKBO Stats

Teams ▾    Schedule    Statistics    More ▾    ⚙    Accour

| Statistics | Foreign Players |
| --- | --- |
| **WP** | Yi Jung-yong (8th inning) |
| **Umpires** | Kim Ik-su, Song Soo-geun, Chun Il-soo, Yoon Sang-won |
| **Venue** | Gocheok Sky Dome |
| **Attendance** | 7849 |
| **Duration** | 3:09 |

This site is created for fans, by fans, and is *not affiliated* with the KBO League (KBO 리그) or the Korea Baseball Organization (한국야구위원회). All information presented here should be considered *unofficial*. Player photos and official team logos are the property of their respective teams.

Apple, the Apple logo, and iPhone are trademarks of Apple Inc., registered in the U.S. and other countries. App Store is a service mark of Apple Inc. Android, Google Play, and the Google Play logo are trademarks of Google Inc. Weather data provided by __Weather.__

MyKBO Stats v2 – Build 513 (2023-06-29)

Powered by Elixir and the Phoenix Framework.

Privacy Policy / Terms of Service







7/12/23, 12:33 PM                Kiwoom Heroes vs Samsung Lions Jun 21 2022 | Box Score - Player #1333 | MyKBO Stats

MyKBO Stats

Teams ▾    Schedule    Statistics    Foreign Players    Search for player    More ▾    Accour

# Kiwoom Heroes    **4 : 3**    Samsung Lions

## June 21, 2022 2:30am

↓ Games

|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | R | H | E | B |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Kiwoom Heroes | 0 | 0 | 0 | 2 | 0 | 1 | 1 | 0 | 0 | 4 | 11 | 0 | 6 |
| Samsung Lions | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 13 | 0 | 2 |

W: Lee Myeong-jong    SV: Moon Sung-hyun    L: Lee Seung-hyun

---

**June 21, 2022 Game List**

| | | |
|---|---|---|
| Hanwha Eagles | **4 : 10** | LG Twins |
| L: Ramirez | Final | W: Lee Min-ho |
| Lotte Giants | **5 : 6** | Kia Tigers |
| L: Barnes | Final | W: Im Gi-yeong |
| | | SV: Jung Hai-young |
| NC Dinos | **1 : 8** | KT Wiz |
| L: Lee Jae-hak | Final | W: Um Sang-back |
| Doosan Bears | **16 : 2** | SSG Landers |
| W: Lee Young-ha | Final | L: Lee Geun-wook |
| Kiwoom Heroes | | |

---

Video Links    Watch Highlights

https://mykbostats.com/games/9926-Kiwoom-vs-Samsung-20220621          1/6

ER 208

7/12/23, 12:33 PM

MyKBO Stats    Teams ▾    Schedule    Statistics    Foreign Players    More ▾    ⚙    Accour

Kiwoom Dodgers vs Samsung Lions 2022-07-12 20:06 Page 573 Game 1 Miyagi ID #:1334

| Kiwoom | Pos | BA | AB | R | H | HR | RBI | BB | SO | HBP |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1 Kim Jun-wan #14 | LF | .215 | 5 | 0 | 0 | 0 | 1 | 0 | 0 | 0 |
| 2 Song Sung-mun #24 | 3B | .244 | 5 | 0 | 1 | 0 | 1 | 0 | 1 | 0 |
| 3 Lee Jung-hoo #51 | CF | .316 | 3 | 0 | 2 | 0 | 0 | 2 | 0 | 0 |
| 4 Kim Hye-seong #3 | 2B | .330 | 4 | 0 | 2 | 0 | 0 | 1 | 0 | 0 |
| 5 Kim Woong-bin #1 | DH | .192 | 5 | 0 | 0 | 0 | 0 | 0 | 3 | 0 |
| 6 Kim Su-hwan #31 | 1B | .170 | 4 | 1 | 1 | 0 | 0 | 0 | 2 | 0 |
| ↳ Jeon Byeong-woo #13 | 1B | .120 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7 Lee Ji-young #56 | C | .268 | 4 | 1 | 2 | 0 | 1 | 1 | 0 | 0 |
| 8 Park Jun-tae #23 | RF | .176 | 3 | 1 | 1 | 0 | 0 | 2 | 2 | 0 |
| 9 Kim Whee-jip #33 | SS | .256 | 4 | 1 | 2 | 0 | 1 | 0 | 0 | 0 |

| Samsung | Pos | BA | AB | R | H | HR | RBI | BB | SO | HBP |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1 Kim Hyeon-joon #41 | CF | .314 | 5 | 1 | 2 | 0 | 0 | 0 | 0 | 0 |
| 2 Oh Sun-jin #3 | 3B | .244 | 4 | 1 | 2 | 0 | 0 | 1 | 0 | 0 |
| ↳ Kim Hun-gon #34 | PR | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 Pirela #63 | LF | .278 | 5 | 0 | 1 | 0 | 1 | 0 | 1 | 0 |
| 4 Oh Jae-il #44 | 1B | .185 | 3 | 1 | 1 | 0 | 0 | 1 | 0 | 0 |
| 5 Kang Min-ho #47 | DH | .306 | 4 | 0 | 1 | 0 | 0 | 0 | 1 | 0 |
| 6 Kim Jae-seong #48 | C | .259 | 4 | 0 | 3 | 0 | 1 | 0 | 0 | 0 |
| ↳ Choi Young-jin #32 | PR | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

https://mykbostats.com/games/9926-Kiwoom-vs-Samsung-20220621

ER 209

MyKBO Stats   Teams ▾   Schedule   Statistics   Foreign Players   More ▾   ⚙   Accour

Case 2:22-cr-00394-DMG Document 585-3 Filed 07/12/23 Page 574 of 641 Page ID #:1335

| | | | AVG | | R | H | | HR | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ↳ Park Seung-kyu #65 | RF | .000 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 8 Lee Hae-seung #67 | SS | .375 | 4 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 9 An Ju-hyeong #14 | 2B | .244 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ↳ Kim Tae-gun #42 | PH | .262 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

## Pitching

| Kiwoom | ERA | IP | NP | R | ER | H | HR | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Eppler #8 | 9.00 | 3 | 65 | 3 | 3 | 9 | 0 | 2 | 0 | 0 | 31 |
| Yang Hyun #39 | 0.00 | 2 | 30 | 0 | 0 | 1 | 0 | 1 | 0 | 0 | 0 |
| Lee Myeong-jong #97 | 0.00 | 2 | 28 | 0 | 0 | 1 | 0 | 1 | 1 | 0 | 0 |
| Kim Jae-woong #28 | 0.00 | 1 | 20 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 |
| Moon Sung-hyun #21 | 0.00 | 1 | 17 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |

ER 210

MyKBO Stats  Teams ▾  Schedule  Statistics  Foreign Players  More ▾  ⚙  Accour

4/6

Case 2:22-cr-00394-DMG Kwoom vs Samsung Schedule 2022 Box Score Stats 41 | Myagosku #:1336

| Player | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Woo Kyu-min #2 | 0.00 | 0 | 10 | 1 | 1 | 2 | 0 | 0 | 1 | 0 |
| Jang Pill-joon #26 | 0.00 | 1 | 14 | 0 | 0 | 0 | 0 | 0 | 1 | 0 |
| Lee Seung-hyun #20 | 9.00 | 1 | 18 | 1 | 1 | 2 | 0 | 2 | 0 | 0 |
| Lee Seung-hyun #54 | 0.00 | 1 | 19 | 0 | 0 | 2 | 0 | 2 | 0 | 0 |
| Choi Chung-yeon #51 | 0.00 | 1 | 15 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |

## Plays

1st Inning

2nd Inning

3rd Inning

4th Inning

5th Inning

6th Inning

7th Inning

8th Inning

9th Inning

ER 211

7/12/23, 12:33 PM

MyKBO Stats

5/6

| Statistics | Foreign Players |
| --- | --- |
| 2B | Kim Whee-jip (4th inning), Lee Ji-young (6th inning), Kim Su-hwan (7th inning) |
| CS | Kim Hyun-jun (2nd inning) |
| OOB | Park Jun-tae (6th inning), Kim Hun-gon (9th inning) |
| GIDP | Kim Tae-gun (8th inning) |
| WP | Kim Jae-woong (8th inning) |
| Umpires | Park Joong-chul, Kwon Young-chul, Lee Gye-sung, Na Gwang-nam |
| Venue | Daegu Samsung Lions Park |
| Attendance | 5936 |
| Duration | 3:27 |

This site is created for fans, by fans, and is not affiliated with the KBO League (KBO 리그) or the Korea Baseball Organization (한국야구위원회). All information presented here should be considered unofficial. Player photos and official team logos are the property of their respective teams.

Apple, the Apple logo, and iPhone are trademarks of Apple Inc., registered in the U.S. and other countries. App Store is a service mark of Apple Inc. Android, Google Play, and the Google Play logo are trademarks of Google Inc. Weather data provided by   Weather.

ER 212



MyKBO Stats

Teams ▾ Schedule Statistics Foreign Players Search for player

# Kiwoom Heroes    **6 : 0**    Samsung Lions

## June 22, 2022 2:30am

**June 22, 2022 Game List**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | R | H | E | B |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Kiwoom Heroes | 2 | 0 | 0 | 0 | 0 | 0 | 3 | 1 | 0 | 6 | 13 | 1 | 5 |
| Samsung Lions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7 | 0 | 3 |

W: Choi Won-tae    L: Baek Jung-hyun

| | | |
|---|---|---|
| Hanwha Eagles | **5 : 6** | LG Twins |
| L: Yun Dae-kyung | Final | W: Kelly |
| | | SV: Go Woo-suk |
| Lotte Giants | **7 : 5** | Kia Tigers |
| W: Choi Jun-yong | Final/10 | L: Jung Hai-young |
| NC Dinos | **11 : 0** | KT Wiz |
| W: Koo Chang-mo | Final | L: Bae Je-seong |
| Doosan Bears | **5 : 6** | SSG Landers |
| L: Hong Geon-hui | Final/10 | W: Seo Dong-min |
| Kiwoom Heroes | **6 : 0** | Samsung Lions |

**Video Links**

**Watch Highlights**

← Games

ER 213

MyKBO Stats    Teams ▾    Schedule    Statistics    Foreign Players          More ▾    ⚙    Accour

| Kiwoom | Pos | BA | AB | R | H | HR | RBI | BB | SO | HBP |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Kim Jun-wan #14 | RF | .233 | 3 | 1 | 2 | 0 | 1 | 2 | 0 | 0 |
| 2 Song Sung-mun #24 | 3B | .244 | 5 | 1 | 1 | 0 | 0 | 0 | 1 | 0 |
| 3 Lee Jung-hoo #51 | CF | .317 | 5 | 1 | 3 | 1 | 3 | 0 | 0 | 0 |
| 4 Kim Hye-seong #3 | 2B | .328 | 3 | 0 | 1 | 0 | 0 | 1 | 1 | 0 |
| ↳ Park Jun-tae #23 | RF | .133 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 5 Lee Yong-kyu #19 | LF | .261 | 4 | 0 | 2 | 0 | 0 | 0 | 0 | 0 |
| ↳ Sin Jun-woo #5 | 2B | .105 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 6 Kim Su-hwan #31 | 1B | .152 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| ↳ Jeon Byeong-woo #13 | 1B | .125 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7 Lee Ji-young #56 | C | .263 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| ↳ Kim Jae-hyun #32 | C | .500 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 8 Kim Woong-bin #1 | DH | .220 | 3 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| 9 Kim Whee-jip #33 | SS | .257 | 3 | 1 | 2 | 1 | 2 | 1 | 0 | 0 |

| Samsung | Pos | BA | AB | R | H | HR | RBI | BB | SO | HBP |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Kim Hyeon-joon #41 | CF | .310 | 4 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| ↳ Park Seung-kyu #65 | CF | .000 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 |
| 2 Oh Sun-jin #3 | 3B | .233 | 4 | 0 | 1 | 0 | 0 | 0 | 1 | 0 |
| ↳ Kim Ho-jae #8 | 3B | .185 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

ER 214

7/12/23, 12:34 PM

MyKBO Stats   Teams ▼   Schedule   Statistics   Foreign Players   More ▼   ⚙   Accour

3/6

Case 2:22-cr-00394-DMG Document ... Samsung Lions Jul 21 2020 6:30pm KBO vs Kiwoom ... | Mykbo's ID #:1340

| # Player | Pos | AVG | AB | R | H | HR | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|
| Song Sung-... #32 | LF | .239 | | | | | | | | 0 |
| 4 Oh Jae-il #44 | 1B | .179 | 4 | 0 | 0 | 0 | 0 | 0 | 1 | 0 |
| ↳ Choi Young-jin #32 | 1B | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 5 Kim Jae-seong #48 | DH | .214 | 2 | 0 | 0 | 0 | 0 | 0 | 2 | 1 | 0 |
| 6 Kim Tae-gun #42 | C | .277 | 4 | 0 | 3 | 0 | 0 | 0 | 0 | 0 |
| 7 An Ju-hyeong #14 | 2B | .262 | 4 | 0 | 1 | 0 | 0 | 0 | 1 | 0 |
| 8 Lee Hae-seung #67 | SS | .250 | 4 | 0 | 1 | 0 | 0 | 0 | 2 | 0 |
| 9 Kim Hun-gon #34 | RF | .000 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

## Pitching

| Kiwoom | ERA | IP | NP | R | ER | H | HR | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Choi Won-tae #20 | 0.00 | 5 | 86 | 0 | 0 | 3 | 0 | 5 | 2 | 1 | 63 |
| Kim Tae-hoon #17 | 0.00 | 1 | 15 | 0 | 0 | 2 | 0 | 2 | 0 | 0 | 0 |
| Lee Seung-ho #47 | 0.00 | 1 | 13 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| Kim Seon-gi #49 | 0.00 | 2 | 17 | 0 | 0 | 1 | 0 | 2 | 0 | 0 | 0 |

| Samsung | ERA | IP | NP | R | ER | H | HR | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Baek Jung-hyun #29 | 5.68 | 6 ⅓ | 96 | 4 | 4 | 11 | 2 | 0 | 1 | 0 | 35 |
| Lee Sang-min #59 | 13.50 | 0 ⅔ | 19 | 1 | 1 | 1 | 0 | 2 | 1 | 0 | |
| Park Jung-jun #66 | 9.00 | 1 | 27 | 1 | 1 | 1 | 0 | 0 | 2 | 1 | |

ER 215

7/12/23, 12:34 PM

MyKBO Stats　Teams ▾　Schedule　Statistics　Foreign Players　More ▾　⚙　Accour

4/6

## Plays

| 1st Inning |
| 2nd Inning |
| 3rd Inning |
| 4th Inning |
| 5th Inning |
| 6th Inning |
| 7th Inning |
| 8th Inning |
| 9th Inning |

| Deciding Hit | Lee Jung-hoo (1st inning, 1 out, runner on 2nd, RF wall HR) |
| HR | Lee Jung-hoo (#12, 1st inning off Baek Jung-hyun, 2 run), Kim Whee-jip (#1, 7th inning off Baek Jung-hyun, 2 run) |

ER 216

7/12/23, 12:34 PM

MyKBO Stats          Teams ▾   Schedule   Statistics   Foreign Players   More ▾        ⚙        Accour

| Statistics | Foreign Players |
|---|---|
| | bin (8th inning) |
| E | Kim Whee-jip (3rd inning) |
| SB | Kim Hyun-jun (5th inning) |
| CS | Kim Hye-seong (1st inning) |
| OOB | Kim Jun-wan (1st inning), Lee Jung-hoo (3rd inning), Lee Yong-kyu (6th inning), Kim Tae-gun (8th inning) |
| Umpires | Lee Gye-sung, Na Gwang-nam, Kwon Young-chul, Jung Jong-su |
| Venue | Daegu Samsung Lions Park |
| Attendance | 6500 |
| Duration | 3:06 |

This site is created for fans, by fans, and is not affiliated with the KBO League (KBO 리그) or the Korea Baseball Organization (한국야구위원회). All information presented here should be considered unofficial. Player photos and official team logos are the property of their respective teams.

Apple, the Apple logo, and iPhone are trademarks of Apple Inc., registered in the U.S. and other countries. App Store is a service mark of Apple Inc. Android, Google Play, and the Google Play logo are trademarks of Google Inc. Weather data provided by   Weather.

MyKBO Stats v2 — Build 513 (2023-06-29)

https://mykbostats.com/games/9931-Kwoom-vs-Samsung-20220622

5/6

ER 217



# Kiwoom Heroes    6 : 1    Samsung Lions

### June 23, 2022 2:30am

**June 23, 2022 Game List**

| | | |
|---|---|---|
| Hanwha Eagles | Canceled Rained Out | LG Twins |
| Lotte Giants L: Na Gyun-an | **4 : 7** Final | Kia Tigers W: Kim Jae-yeol SV: Jeon Sang-hyun |
| NC Dinos | Canceled Rained Out | KT Wiz |
| Doosan Bears | Canceled Rained Out | SSG Landers |
| Kiwoom Heroes W: An Woo-jin | **6 : 1** Final | Samsung Lions L: Won Tae-in |

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | R | H | E | B |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

W: An Woo-jin    L: Won Tae-in

ER 218

MyKBO Stats    Teams ▾    Schedule    Statistics    Foreign Players    More ▾    ⚙    Accour

2/5

| Kiwoom | Pos | BA | AB | R | H | HR | RBI | BB | SO | HBP |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Kim Jun-wan #14 | RF | .224 | 4 | 1 | 1 | 0 | 1 | 1 | 0 | 0 |
| 2 Kim Whee-jip #33 | SS | .252 | 3 | 0 | 1 | 0 | 0 | 1 | 1 | 1 |
| 3 Lee Jung-hoo #51 | CF | .314 | 5 | 0 | 2 | 0 | 2 | 0 | 0 | 0 |
| 4 Kim Hye-seong #3 | 2B | .326 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| 5 Song Sung-mun #24 | DH | .245 | 4 | 1 | 1 | 0 | 0 | 0 | 1 | 0 |
| 6 Kim Su-hwan #31 | 1B | .156 | 2 | 0 | 0 | 0 | 0 | 0 | 2 | 0 |
| ↳ Jeon Byeong-woo #13 | 1B | .120 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7 Lee Ji-young #56 | C | .265 | 3 | 1 | 1 | 0 | 0 | 1 | 0 | 0 |
| 8 Lee Byung-gyu #9 | LF | .250 | 3 | 1 | 1 | 0 | 3 | 0 | 1 | 0 |
| ↳ Sin Jun-woo #5 | SS | .105 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 9 Lee Jae-hong #4 | 3B | .500 | 2 | 0 | 1 | 0 | 0 | 0 | 1 | 0 |
| ↳ Lee Yong-kyu #19 | PH | .250 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| ↳ Park Jun-tae #23 | RF | .143 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 1 |

| Samsung | Pos | BA | AB | R | H | HR | RBI | BB | SO | HBP |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Kim Hyeon-joon #41 | CF | .316 | 4 | 0 | 2 | 0 | 1 | 0 | 0 | 0 |
| 2 Oh Sun-jin #3 | 3B | .227 | 2 | 0 | 0 | 0 | 0 | 1 | 1 | 0 |
| ↳ Kim Jae-seong #48 | PH | .236 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| ↳ An Ju-hyeong #14 | PR | .263 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

ER 219

7/12/23, 12:34 PM

Case 2:22-cr-00394-DMG  Kiwoom vs Samsung  Player Stats  MyKBOstats ID #:1345

| Player | Pos | AVG | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 Choi Jae-il #44 | 1B | .193 | 3 | 0 | 0 | 0 | 0 | 0 | – | 2 | 0 |
| 5 Park Seung-kyu #65 | PR | | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| 5 Kang Min-ho #47 | C | .306 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 6 Kim Tae-gun #42 | DH | .257 | 4 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| 7 Song Jun-suk #52 | RF | .273 | 3 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| 8 Lee Hae-seung #67 | SS | .143 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 9 Kim Ho-jae #8 | 2B | .193 | 3 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |

## Pitching

| Kiwoom | ERA | IP | NP | R | ER | H | HR | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| An Woo-jin #41 | 1.23 | 7 ⅓ | 100 | 1 | 1 | 5 | 0 | 4 | 1 | 0 | 68 |
| Kim Jae-woong #28 | 0.00 | 0 ⅔ | 9 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | |
| Kim Tae-hoon #17 | 0.00 | 1 | 10 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | |

| Samsung | ERA | IP | NP | R | ER | H | HR | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Won Tae-in #18 | 7.50 | 6 | 95 | 5 | 5 | 8 | 0 | 5 | 3 | 1 | 37 |
| Lee Seung-hyun #54 | 0.00 | 1 | 10 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | |
| Park Jung-jun #66 | 0.00 | 1 | 6 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Choi Chung-yeon #51 | 9.00 | 1 | 19 | 1 | 1 | 1 | 0 | 0 | 1 | 1 | 1 |

https://mykbostats.com/games/9936-Kiwoom-vs-Samsung-20220623

ER 220

7/12/23, 12:34 PM

MyKBO Stats   Teams ▾   Schedule   Statistics   Foreign Players   More ▾   ⚙   Accour

Case 2:22-cr-00394-DMG Kiwoom vs Samsung, June 23, 2022 Box Score Stats | MyKBO Stats #:1346

| 1st Inning |
| 2nd Inning |
| 3rd Inning |
| 4th Inning |
| 5th Inning |
| 6th Inning |
| 7th Inning |
| 8th Inning |
| 9th Inning |

| | |
|---|---|
| **Deciding Hit** | Lee Jung-hoo (1st inning, no out, runners on 1,2, RF single) |
| 3B | Lee Byung-kyu (6th inning) |
| E | Kim Su-hwan (3rd inning), Oh Sun-jin (4th inning) |
| OOB | Kim Whee-jip (1st inning) |

ER 221

7/12/23, 12:34 PM        Kwoom Heroes vs. Samsung Lions - July 21, 2022 - Box Score - MyKBO Stats | MyKBO Stats #:1347

MyKBO Stats      Teams ▾   Schedule   Statistics      More ▾      ⚙      Accour

| Statistics | Foreign Players |
| --- | --- |
| GIDP | Song Jun-suk (2nd inning), Lee Jung-hoo (3rd inning), Pirela (8th inning), Kim Tae-gun (9th inning), Kim Whee-jip (9th inning) |
| Umpires | Kwon Young-chul, Jung Jong-su, Na Gwang-nam, Park Joong-chul |
| Venue | Daegu Samsung Lions Park |
| Attendance | 4959 |
| Duration | 2:36 |

This site is created for fans, by fans, and is *not* affiliated with the KBO League (KBO 리그) or the Korea Baseball Organization (한국야구위원회). All information presented here should be considered *unofficial*. Player photos and official team logos are the property of their respective teams.

Apple, the Apple logo, and iPhone are trademarks of Apple Inc., registered in the U.S. and other countries. App Store is a service mark of Apple Inc. Android, Google Play, and the Google Play logo are trademarks of Google Inc. Weather data provided by   Weather.

MyKBO Stats v2 – Build 513 (2023-06-29)

Powered by Elixir and the Phoenix Framework.

Privacy Policy / Terms of Service





5/5

https://mykbostats.com/games/9936-Kiwoom-vs-Samsung-20220623

ER 222



MyKBO Stats Teams Schedule Statistics Foreign Players Search for player More Accour

# Kiwoom Heroes 1 : 5 Lotte Giants

## June 24, 2022 2:30am

**June 24, 2022 Game List**

| | | |
|---|---|---|
| Kia Tigers<br>W: Kim Jeong-bin<br>SV: Jang Hyun-sik | **4 : 3**<br>Final | Doosan Bears<br>L: Jeong Cheol-won |
| LG Twins<br>L: Jung Woo-young | **6 : 9**<br>Final | KT Wiz<br>W: Ju Kwon<br>SV: Kim Jae-yoon |
| NC Dinos<br>L: Rucinski | **2 : 14**<br>Final | SSG Landers<br>W: Font |
| Samsung Lions<br>L: Buchanan | **0 : 3**<br>Final | Hanwha Eagles<br>W: Jang Min-je<br>SV: Jang Si-hwan |
| L: Han Hyun-hee | Final | SV: Kim Won-jung |

Games

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | R | H | E | B |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Kiwoom Heroes | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 8 | 0 | 4 |
| Lotte Giants | 2 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | X | 5 | 11 | 1 | 5 |

W: Lee In-bok SV: Kim Won-jung L: Han Hyun-hee

**Video Links** **Watch Highlights**

7/12/23, 12:34 PM

MyKBO Stats

Teams ▾    Schedule    Statistics    Foreign Players    More ▾    ⚙    Accour

2/6

| Kiwoom | Pos | BA | AB | R | H | HR | RBI | BB | SO | HBP |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Kim Jun-wan #14 | RF | .222 | 5 | 0 | 1 | 0 | 0 | 0 | 2 | 0 |
| 2 Lee Yong-kyu #19 | LF | .239 | 4 | 0 | 0 | 0 | 0 | 0 | 2 | 0 |
| ↳ Kim Whee-jip #33 | SS | .250 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 0 |
| 3 Lee Jung-hoo #51 | CF | .316 | 3 | 0 | 2 | 0 | 0 | 1 | 0 | 0 |
| 4 Kim Hye-seong #3 | 2B | .325 | 3 | 1 | 0 | 0 | 0 | 1 | 0 | 0 |
| 5 Song Sung-mun #24 | 3B | .247 | 3 | 0 | 1 | 0 | 1 | 1 | 0 | 0 |
| 6 Kim Woong-bin #1 | DH | .235 | 4 | 0 | 2 | 0 | 0 | 0 | 1 | 0 |
| 7 Kim Jae-hyun #32 | C | .400 | 3 | 0 | 1 | 0 | 0 | 0 | 1 | 0 |
| ↳ Kim Su-hwan #31 | PH | .163 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| ↳ Lee Ji-young #56 | C | .263 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 8 Jeon Byeong-woo #13 | 1B | .143 | 4 | 0 | 1 | 0 | 0 | 0 | 1 | 0 |
| 9 Sin Jun-woo #5 | SS | .100 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 0 |
| ↳ Lee Byung-gyu #9 | PH | .211 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 0 |

| Lotte | Pos | BA | AB | R | H | HR | RBI | BB | SO | HBP |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 An Chi-hong #13 | 1B | .286 | 4 | 2 | 2 | 0 | 1 | 1 | 0 | 0 |
| 2 Hwang Seong-bin #40 | CF | .239 | 2 | 1 | 1 | 0 | 1 | 0 | 0 | 0 |
| ↳ Lee Dae-ho #10 | PH | | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| ↳ Shin Yoon-hoo #3 | PR | .056 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

ER 224

7/12/23, 12:34 PM

MyKBO Stats

Case 2:22-cr-00394-DMG Document 106 Giants Filed 07/12/23 Page 214 of 291 Page ID #:1350

| Teams ▾ | Schedule | Statistics | Foreign Players | More ▾ | ⚙ | Accour |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | LF | .273 | 5 | 1 | 1 | 0 | 1 | 3 | 1 | 0 | 0 |
| 5 Lee Ho-yeon #4 | 3B | .315 | 4 | 0 | 3 | 0 | 1 | 0 | 1 | 0 | 0 |
| 6 Peters #26 | RF | .000 | 3 | 0 | 0 | 0 | 0 | 0 | 1 | 2 | 0 |
| 7 An Joong-yeol #1 | C | .167 | 3 | 1 | 1 | 0 | 1 | 0 | 1 | 0 | 0 |
| ↳ Kim Min-soo #63 | PR | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ↳ Jeong Bo-keun #42 | C | .280 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 8 Park Seung-wook #53 | SS | .272 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 9 Bae Seong-geun #2 | 2B | .500 | 4 | 0 | 2 | 0 | 0 | 0 | 0 | 1 | 0 |

# Pitching

| Kiwoom | ERA | IP | NP | R | ER | H | HR | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Han Hyun-hee #63 | 9.00 | 5 | 86 | 5 | 5 | 9 | 0 | 3 | 1 | 0 | 31 |
| Kim Seon-gi #49 | 0.00 | 1 | 19 | 0 | 0 | 1 | 0 | 0 | 2 | 0 | |
| Lee Young-jun #64 | 0.00 | 1 | 19 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | |
| Park Seung-joo #42 | 0.00 | 1 | 16 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | |

| Lotte | ERA | IP | NP | R | ER | H | HR | SO | BB | HB | GS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lee In-bok #35 | 1.50 | 6 | 99 | 1 | 1 | 6 | 0 | 4 | 2 | 0 | 58 |
| Na Gyun-an #43 | 0.00 | 1 | 19 | 0 | 0 | 1 | 0 | 2 | 0 | 0 | |
| Koo Seung-min #22 | 0.00 | 0 ⅔ | 22 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | |

https://mykbostats.com/games/9941-Kiwoom-vs-Lotte-20220624

ER 225

7/12/23, 12:34 PM

Case 2:22-cr-00394-DMG Document 110-1 Filed 10/16/23 Page 10 of 44 Page ID #:1351

MyKBO Stats

Teams ▾ Schedule Statistics Foreign Players More ▾ ⚙ Accour

4/6

## Plays

| | 1st Inning |
| | 2nd Inning |
| | 3rd Inning |
| | 4th Inning |
| | 5th Inning |
| | 6th Inning |
| | 7th Inning |
| | 8th Inning |
| | 9th Inning |

| Deciding Hit | Jeon Jun-woo (1st inning, 2 out, runner on 3rd, LF-CF gap single) |
| 2B | Lee Ho-yeon (1st, 3rd inning), An Chi-hong (2nd inning), Kim Jae-hyun (2nd inning), Kim Jun-wan (5th inning), Lee Jung-hoo (8th inning) |

https://mykbostats.com/games/9941-Kiwoom-vs-Lotte-20220624

ER 226

7/12/23, 12:34 PM

Kiwoom Heroes vs Lotte Giants Live Score and Stats | 2023-06-13 | MyKBO Stats

MyKBO Stats    Teams ▾    Schedule    Statistics    Foreign Players    More ▾    ⚙    Accour

| Statistics | Foreign Players |
|---|---|
| **SB** | Hwang Seong-bin (2nd inning), Lee Ho-yeon (5th inning), Kim Hye-seong (6th, 8th inning) |
| **GIDP** | Kim Jae-hyun (4th inning), Han Dong-hui (6th inning), Lee Ho-yeon (7th inning), An Chi-hong (8th inning) |
| **Umpires** | Koo Myung-hwan, Moon Dong-gyoon, Lee Young-jae, Choi Young-joo |
| **Venue** | Sajik Baseball Stadium |
| **Attendance** | 3769 |
| **Duration** | 3:10 |

This site is created for fans, by fans, and is *not affiliated* with the KBO League (KBO 리그) or the Korea Baseball Organization (한국야구위원회). All information presented here should be considered *unofficial*. Player photos and official team logos are the property of their respective teams.

Apple, the Apple logo, and iPhone are trademarks of Apple Inc., registered in the U.S. and other countries. App Store is a service mark of Apple Inc. Android, Google Play, and the Google Play logo are trademarks of Google Inc. Weather data provided by Weather.

MyKBO Stats v2 – Build 513 (2023-06-29)

Powered by Elixir and the Phoenix Framework.

Privacy Policy / Terms of Service

5/6

https://mykbostats.com/games/9941-Kiwoom-vs-Lotte-20220624

ER 227

1  | E. MARTIN ESTRADA
   | United States Attorney
2  | MACK E. JENKINS
   | Assistant United States Attorney
3  | Chief, Criminal Division
   | JEFF MITCHELL (Cal. Bar No. 236225)
4  | Assistant United States Attorney
   | Major Frauds Section
5  | DAN G. BOYLE (Cal. Bar No. 332518)
   | Assistant United States Attorney
6  | Environmental Crime and
   | Consumer Protection Section
7  |     1100 United States Courthouse
   |     312 North Spring Street
8  |     Los Angeles, California 90012
   |     Telephone: (213) 894-0698/2426
9  |     Facsimile: (213) 894-6269/0141
   |     E-mail:   jeff.mitchell@usdoj.gov
10 |               daniel.boyle2@usdoj.gov

11 | Attorneys for Plaintiff
   | UNITED STATES OF AMERICA

12 |

13 |          UNITED STATES DISTRICT COURT

14 |        FOR THE CENTRAL DISTRICT OF CALIFORNIA

15 | UNITED STATES OF AMERICA,         CR No. 22-394-DMG

16 |          Plaintiff,              GOVERNMENT'S NOTICE OF MOTION AND
   |                                  MOTION FOR PARTIAL RECONSIDERATION
17 |          v.                      AND CLARIFICATION

18 | YASIEL PUIG VALDES,              Hearing Date: October 11, 2023
   |                                  Hearing Time: 2:30 p.m.
19 |          Defendant.              Location:   Courtroom of the
   |                                              Hon. Dolly M. Gee
20 |

21 |

22 |      Plaintiff United States of America, by and through its counsel

23 | of record, the United States Attorney for the Central District of

24 | California and Assistant United States Attorneys Jeff Mitchell and

25 | Dan G. Boyle, hereby files this Notice of Motion and Motion for

26 | Partial Reconsideration, or in the alternative, for Clarification, of

27 | this Court's August 10, 2023 Order (the "8/10 Order") denying the

28 |

government's Motion[1] for a judicial finding of a knowing breach of defendant's plea agreement in this action. See ECF No. 110. This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

    Pursuant to the Court's standing Criminal Trial Order, the government contacted defense counsel to set a briefing schedule on this motion. The parties agreed to the following briefing schedule, which is set forth in the concurrently-filed stipulation and proposed order:

- Government's motion filed on August 24, 2023;
- Defendant's opposition to be filed by September 20, 2023;
- Government's reply to be filed by September 27, 2023; and
- Motion hearing, if any, on October 11, 2023.

Dated: August 24, 2023          Respectfully submitted,

                                E. MARTIN ESTRADA
                                United States Attorney

                                MACK E. JENKINS
                                Assistant United States Attorney
                                Chief, Criminal Division


                                      /s/
                                _____
                                DAN G. BOYLE
                                JEFF MITCHELL
                                Assistant United States Attorneys

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

---

[1] All capitalized terms have the same meaning as used in the government's Motion. See ECF No. 110.

ii

1

2                 **MEMORANDUM OF POINTS AND AUTHORITIES**

3 **I.   The Court Should Reconsider Its 8/10 Order[1]**

4       The Court's 8/10 order proceeded from the assumption that the

5 contents of a Plea Agreement are "statement[s] made during plea

6 discussions" under Federal Rule of Evidence 410(a)(4). That

7 assumption is mistaken – plea agreements are contracts, not plea

8 discussions.  United States v. Allen, 434 F.3d 1166,nah 1174 (9th

9 Cir. 2006) ("A plea agreement is a contract and is enforced as

10 such.").  Therefore, Rule 410 does not apply to any part of a plea

11 agreement, including its Factual Basis.[2]  And even if Rule 410 were

12 applicable, defendant waived his rights under the rule in the Plea

13 Agreement.

14       **A.   Rule 410 Does Not Apply to Plea Agreements**

15       The plain meaning of the word "discussion" demonstrates that a

16 plea agreement is not a plea discussion.  The term "discussion" means

17 "[t]he act of exchanging views on something" or "a debate."

18 DISCUSSION, Black's Law Dictionary (11th ed. 2019).  But a plea

19 agreement is not a debate or an exchange of views.  It is an offer by

20 the government that a defendant may choose to either accept or

21 reject.  While plea agreements may result from discussions, they are

22 not discussions themselves.

23

24      [1] While this Motion for Partial Reconsideration raises specific

25 arguments in support of reconsideration the 8/10 Order, the
government is not waiving or forfeiting any other previously made
arguments regarding the 8/10 Order, or waiving any right to appeal,

26 including under 18 U.S.C. § 3731.

27      [2] Defendant's Opposition to the Motion did not address what part
of Rule 410 would bar admission of the Factual Basis, and the

28 government submits that this narrow ground for reconsideration
complies with Local Civil Rule 7-18.  See ECF No. 110, at 15, n.10.

1      Equating plea agreements with plea discussions would be as

2 erroneous as equating contracts with contract negotiations. And

3 contract law has recognized a bright line between the terms of an

4 agreement and preceding negotiations, as illustrated by the

5 principles governing parol evidence. See, e.g., United States v.

6 Nunez, 223 F.3d 956, 958 (9th Cir. 2000) (court interpreting plea

7 agreements "apply contract principles, including the parol evidence

8 rule"); United States v. Pacheco-Osuna, 23 F.3d 269, 271 (9th Cir.

9 1994) ("[W]e have previously eschewed the invitation to consider

10 parol evidence for the purpose of adding terms to or changing the

11 terms of an integrated plea agreement."). Indeed, here the Plea

12 Agreement itself recognized this distinction in the included merger

13 clause. See ECF No. 6, ¶ 26.

14      Federal Rule of Criminal Procedure 11 also supports the

15 distinction between plea agreements and plea discussions. It says

16 that "[a]n attorney for the government and the defendant's attorney,

17 or the defendant when proceeding pro se, may discuss and reach a plea

18 agreement"--indicating that a plea agreements may result from plea

19 discussions but are not plea discussions themselves. Fed. R. Crim.

20 P. 11(c)(1) (emphasis added). The rule also says that a "court must

21 not participate" in plea discussions, but with respect to plea

22 agreements, the opposite is true: a court is required to address and

23 carefully consider the terms of any plea agreement. See Fed. R. Crim

24 P. 11(c)(3); see also Fed. R. Crim. P. 11, Notes of Advisory

25 Committee on Rules—1974 Amendment ("The amendment makes clear that

26 the judge should not participate in plea discussions leading to a

27 plea agreement. It is contemplated that the judge may participate in

28

1  such discussions as may occur when the plea agreement is disclosed in

2  open court.").  If a plea agreement were a "plea discussion," a court

3  would run afoul of its Rule 11 obligations.[3]

4       Decisions from other courts also demonstrate that plea

5  agreements result from plea discussions, but are not discussions

6  themselves.  See, e.g., United States v. Knight, 867 F.2d 1285, 1288

7  (11th Cir. 1989)("Once a plea contract is formed, the policy behind

8  Rule 11(e)(6)--to allow a defendant to freely negotiate without fear

9  that statements will be used against him--is no longer applicable.");

10 United States v. Lloyd, 43 F.3d 1183, 1186 (8th Cir. 1994) ("Once

11 Lloyd signed the agreement, negotiations terminated and Rule 11(e)(6)

12 by its terms no longer required exclusion of his subsequent

13 statements."); United States v. Davis, 617 F.2d 677, 685 (D.C. Cir.

14 1979) (rejecting application of the predecessor to Rule 410 to post-

15 agreement statements because "[e]xcluding testimony made after and

16 pursuant to the agreement would not serve the purpose of encouraging

17 compromise").

18      Finally, finding that a plea agreement constitutes plea

19 "discussions" under Rule 410 does not accord with the policy

20 underlying the rule. Both Rule 410 and its prior Rule 11 counterpart

21 were crafted in order to facilitate the open discussion during

22 confidential plea negotiations. See Davis, 617 F.2d at 683 (Rule

23 intended to foster "free and open discussion between the prosecution

24

25

26 ─────────────

        [3] This distinction is also recognized in the Plea Agreement,
27 where the parties agreed that "the Court and the United States
   Probation and Pretrial Services Office are not parties to this
28 agreement." ECF No.6, ¶ 23.

                                    3

1  and the defense during attempts to reach a compromise.").[4] While this

2  end may be served by exclusion of plea discussions, protection of

3  plea agreements does not serve this purpose; plea agreements are

4  carefully negotiated and word-smithed by the parties and are intended

5  to be public and judicially scrutinized.

6      **B.   Defendant Validly Waived Protections under Rule 410.**

7      As explained above, Rule 410 does not apply to plea agreements.

8  But even if it did, defendant validly waived his right to exclude the

9  Plea Agreement under Rule 410. See ECF No. 6, at ¶ 21-22.

10      "A plea agreement is a contract and is enforced as such."

11  United States v. Allen, 434 F.3d 1166, 1174 (9th Cir. 2006).  In

12  accordance with this principle, both the Supreme Court and Ninth

13  Circuit agreements that waive Rule 410 protections.  In United States

14  v. Mezzanatto, the defendant wanted to resolve his case through

15  cooperation, and he signed a proffer agreement that allowed the

16  government to use "statements he made during the meeting could be

17  used to impeach any contradictory testimony he might give at trial."

18  513 U.S. 196, 198 (1995).  When the defendant failed to provide

19  truthful information during the proffer, the government terminated

20  the proffer session, and the parties proceeded to trial, during which

21  the government used his proffer statements for impeachment.  Id., at

22  199.  The Supreme Court concluded that the defendant validly waived

23  the protection of Rule 410 and that nothing prohibited him from doing

24  so.  Id. at 200-06.  United States v. Rebbe is consistent with

25  ────────────────

26      [4] Both Rule 410 and prior Rule 11(e)(6) were actually intended
by Congress to narrow, not expand, the scope of protection afforded
to plea negotiations. See United States v. Marks, 209 F.3d 577, 582

27  (6th Cir. 2000) ("Congress amended Rule 11(e)(6) in 1979; it did so
in part to abrogate decisions . . . [that] manifested what Congress
thought was a too-broad view of the plea negotiation process.").

28   

1    Mezzanatto: the defendant there wanted to discuss a plea with the

2    government, and he signed a proffer agreement allowing the government

3    to use his statements not only for impeachment but also as rebuttal

4    evidence.  314 F.3d 402, 404 (2002).  The Ninth Circuit upheld that

5    agreement.  Id., at 407-08.  If a defendant can waive Rule 410 in a

6    proffer agreement made for the purpose of resolving a case, a

7    defendant can also waive that protection in a Plea Agreement made for

8    the purpose of resolving a case.

9         Other courts have routinely held broad Rule 410 waivers in plea

10   agreements. See United States v. Hahn, 58 F.4th 1009, 1011 (8th Cir.

11   2023) (upholding Rule 410 waiver in plea agreement that allowed

12   government to use factual basis as substantive evidence at trial);

13   United States v. Elbeblawy, 899 F.3d 925, 934-36 (11th Cir. 2018)

14   (same).  These cases applied Mezzanatto, which made clear that

15   defendants can validly enter into contracts, like plea agreements,

16   and waive the protections of Rule 410 without prior court approval.

17   To the extent that United States v. Savage, 978 F.2d 1136 (9th Cir.

18   1992), suggests otherwise, it has been abrogated.

19        Regardless, the Plea Agreement would still be enforceable under

20   Savage, which recognizes that plea agreements are binding prior to

21   court approval if a party reasonably relies on the agreement.  978

22   F.2d at 1138 ("The general rule, however, is subject to a detrimental

23   reliance exception.").  Here, the government had no way of knowing

24   that defendant would go back on his promise to plead guilty, and the

25   government shaped its actions around that promise.  For instance, had

26   the government known that defendant would not plead guilty, the

27   government would certainly have sought a separate proffer from

28

                                     5

                                                        ER 234

1   defendant memorializing the admissions set forth in the Factual

2   Basis, which unquestionably could have been used against defendant.

3   See Rebbe, 314 F.3d at 408.  This reliance on the plea agreement

4   makes it enforceable.

   C.   **Refusing to Enforce Plea Agreements Before a Rule 11
        Colloquy Would Harm Defendants**

7        Enforcing defendant's Plea Agreement is not only correct as a

   matter of law but also good policy.  If no plea agreement exists

   until the Rule 11 colloquy, as the Court's 8/10 Order suggests, the

   government would also be able to withdraw a plea agreement any time

   before the Rule 11 colloquy.  Fortunately, the law does not sanction

   such changes of heart: just like a defendant, the government must

   follow through on its promises once a plea agreement is signed and

   give a defendant the benefit of the bargain.

**II.  If Reconsideration is Denied, the Court Should Clarify how the
      Factual Basis May Be Used for Impeachment**

16       During argument on the Motion, the government requested that the

17   Court reserve decision on the question whether the Factual Basis

18   could be used for impeachment purposes. See 7/19/23 Hr'g Tr., at

19   7:16-8:4.  The Court agreed, and the 8/10 Order does not address this

20   issue. If the Court does not grant reconsideration, it should clarify

21   that the government may use the Plea Agreement to impeach defendant

22   at trial if defendant takes the stand and testifies inconsistently

23   with the Factual Basis.

24       Specifically, the Court should allow the government to (1) ask

25   defendant if he executed a written statement during the course of

26   this case, (2) ask him if he understood that statement, (3) ask him

27   if his counsel assisted him in reviewing that statement, and

28
                                6

1  (4) confront him with any portion of the Factual Basis inconsistent

2  with his testimony.[5]  This use of the Plea Agreement's Factual Basis

3  is supported by the evidentiary rules, circuit and Supreme Court

4  precedent, and notions of fundamental fairness.

5      First, the Federal Rules of Evidence allow for this impeachment.

6  Rules 607 permits impeachment by contradiction.  See United States v.

7  Castillo, 181 F.3d 1129, 1133 (9th Cir. 1999).  In fact, parties can

8  use extrinsic evidence of a prior inconsistent statement for

9  impeachment.  Because defendant's Factual Basis is a party-opponent

10  statement under Rule 801(d)(2), the statement would be admissible

11  regardless of whether it met the requirements of Rule 613(b).  See

12  Fed. R. Evid. 613(b) (allowing extrinsic evidence "if the witness is

13  given an opportunity to explain or deny the statement and an adverse

14  party is given an opportunity to examine the witness about it, or if

15  justice so requires"); United States v. Jackson, 882 F.2d 1444, 1449

16  (9th Cir. 1989).  Regardless, the government would seek to use the

17  Factual Basis for impeachment only if defendant chooses to testify,

18  so the requirements of Rule 613(b) would be met anyway.  And as

19  discussed above, Federal Rule of Evidence 410 is not applicable to

20  plea agreements, and even if it were, defendant waived its

21  protections by signing his Plea Agreement.

22      Second, this use of the Plea Agreement's Factual Basis for

23  impeachment also is also supported by case law that provides a remedy

24  for a breach of a plea agreement.  For example, the Supreme Court

25  noted in Puckett v. United States, 556 U.S. 129 (2009), that a "party

---

27  [5] As described in the Motion, the government would refer to the

   Factual Basis only as a "written statement executed during the course

   of this investigation" and not reference the existence of any plea

28  agreement.

7

ER 236

1  injured by [a] breach [of contract] will generally be entitled to

2  some remedy," including where the contract in question is a plea

3  agreement.  Id. at 137.  "When a defendant agrees to a plea bargain,

4  the Government takes on certain obligations," and "[i]f those

5  obligations are not met, the defendant is entitled to seek a remedy."

6  Id.  While a defendant may rescind a plea agreement when the

7  government breaches it, that is not the "only possible remedy"; for

8  example, "specific performance of the contract" is another option.

9  Id.  Similarly, when a defendant breaches a plea agreement, the

10  government may rescind the agreement, but it may elect another

11  remedy.  Use of the Plea Agreement for impeachment is contemplated by

12  the Plea Agreement as a reasonable remedy for a breach.  See ECF No.

13  6, at 22.

14       The election of a remedy other than rescission is consistent

15  with Mabry v. Johnson, 467 U.S. 504, 507 (1984), which the Court

16  cited in its 8/10 Order.  In that case, the Supreme Court noted that

17  a "plea bargain" is an "executory agreement."  Id.  And the Ninth

18  Circuit has consistently held that executory contracts are voidable,

19  not void ad initio, which means that the non-breaching party has some

20  remedy for the breach.  See, e.g., In re Robert L. Helms Constr. &

21  Dev. Co., Inc., 139 F.3d 702, 705 (9th Cir. 1998).  Allowing the use

22  of the Factual Basis for impeachment would not trigger the

23  constitutional concerns raised in Mabry, and would accord with how

24  this circuit treats executory contracts.

25       Use of the Plea Agreement for impeachment is also consistent

26  with the Supreme Court's decision in Mezzanatto and the Ninth

27  Circuit's decision in Rebbe.  Those decisions upheld agreements that

28

8

ER 237

1  waived Rule 410 and permitted the use of a defendant's statements for

2  impeachment, with Rebbe allowing statements for use as rebuttal

3  evidence as well.  At minimum, Mezzanatto and Rebbe require that the

4  government be able to impeach defendant with his Factual Basis.

5       Third, using defendant's statements in the Plea Agreement is

6  supported by case law governing Miranda.  The Factual Basis is a de

7  facto confession, much like one in a law-enforcement interview; it is

8  a written statement, affirmed by the defendant, admitting the conduct

9  for which he has been charged.  In cases applying Miranda, courts

10 have held that voluntary confessions may be used for impeachment

11 purposes even when barred from use in the government's case in chief.

12 See, e.g., Petrocelli v. Baker, 869 F.3d 710, 724 (9th Cir. 2017), as

13 amended (Aug. 23, 2017) ("[T]he rule is well established that a

14 voluntary statement taken in violation of the Fifth or Sixth

15 Amendment may be used for impeachment"); see also Oregon v. Hass, 420

16 U.S. 714, 723-24 (1975).[6]  It would be illogical if a defendant's

17 confession without a lawyer present in violation of Miranda could be

18 used for impeachment, but not one signed while advised by counsel.

19      Finally, permitting use of the Factual Basis for impeachment

20 only would strike a fair middle-ground compromise and would not

21

22      [6] The voluntariness of the Plea Agreement is not seriously in
   dispute, and the Court can assess any dispute based on the record
23 from this motion sequence.  A statement may be deemed involuntary
   only if a defendant demonstrates coercion.  See Colorado v. Connelly,
24 479 U.S. 157, 167 (1986); United States v. Dominguez-Caicedo, 40
   F.4th 938, 955 (9th Cir. 2022); see also United States v. Harper, 729
25 F.2d 1216, 1223 (9th Cir. 1984) (even a plea entered to avoid a
   possible death sentence is "not coerced or involuntary" and that
26 remains so even if the death provision later proves to have been
   unconstitutional). Here, defendant was assisted by counsel, had the
27 opportunity to edit the Factual Basis, had weeks to consider the Plea
   Agreement, and certified that his signing the Plea Agreement was
28 knowing and voluntary.  There was no coercion here.

                                    9

1   impinge on defendant's constitutional rights.  A defendant has no

2   constitutional right to lie to a jury.  See Walder v. United States,

3   347 U.S. 62, 65, (1954) ("[T]here is hardly justification for letting

4   the defendant affirmatively resort to perjurious testimony in

5   reliance on the Government's disability to challenge his

6   credibility."); Pollard v. Galaza, 290 F.3d 1030, 1033 (9th Cir.

7   2002) ("If a defendant exercises his right to testify on his own

8   behalf, he assumes a reciprocal 'obligation to speak truthfully and

9   accurately.").  The government is not seeking to use the Factual

10  Basis in its case-in-chief, and defendant may elect to take the stand

11  and testify truthfully and consistent with the Factual Basis. But if

12  defendant chooses to testify inconsistently with the Factual Basis,

13  he will open the door for impeachment.[7]

14  //

15  //

16

17

18

19

20

21

22

23

24

25

26  ────────────────────

27  [7] To the extent defendant testifies regarding any other
    statements related to the plea or purported cooperation (such as his
    other gambling), fairness would permit admission, not just
28  impeachment. See Fed.R.Evid. 410(b)(1).

10

**III. CONCLUSION**

The government respectfully requests that this Court reconsider the 8/10 Order, or alternately, permit the use of the Factual Basis for cross-examination of defendant as described herein.

Dated: August 24, 2023          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


_____/s/_____
DAN G. BOYLE
JEFF MITCHELL
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

11

ER 240

1   Keri Curtis Axel (Bar No. 186847)
      kaxel@waymakerlaw.com
2   Jose R. Nuño (Bar No. 312832)
      jnuno@waymakerlaw.com
3
    Emily R. Stierwalt (Bar No. 323927)
4     estierwalt@waymakerlaw.com
5   Riley P. Smith (Bar No. 337598)
      rsmith@waymakerlaw.com
6   WAYMAKER LLP
7   515 S. Flower Street, Suite 3500
    Los Angeles, California 90071
8   Telephone: (424) 652-7800
9   Facsimile:  (424) 652-7850

10  *Attorneys for Defendant*
11  *Yasiel Puig Valdes*

12

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:22-cr-00394-DMG |
| Plaintiff, | **DEFENDANT YASIEL PUIG'S OPPOSITION TO MOTION FOR PARTIAL RECONSIDERATION** |
| v. | |
| YASIEL PUIG VALDES, | |
| Defendant. | |

1

## **<u>TABLE OF CONTENTS</u>**

I.    INTRODUCTION ................................................................................ 1

II.   ARGUMENT .................................................................................... 2

     A.    The Government Fails to Meet the Standards for a Motion for Reconsideration ................................................................. 2

     B.    The Government Presents no Reason the Court Should Revisit the 8/10 Order ......................................................................... 4

          1.    The Government's New Claim that Rule 410 Does Not Apply to Plea Agreements Is Wrong and Beside the Point ....................... 4

          2.    The Court's 8/10 Order Did Not Reach the Issue Whether Puig Validly Waived Rule 410, So There Is Nothing for this Court to Reconsider ...................................................................... 8

          3.    The Government Fails to Understand Rule 11 and Seeks to Deny the Court Its Gatekeeping Role in the Plea Process ................... 11

     C.    The Plea Agreement's Factual Basis Cannot Be Used for Impeachment ...................................................................... 13

III.  CONCLUSION ............................................................................... 16



DEFENDANT YASIEL PUIG VALDES' OPPOSITION TO MOTION FOR PARTIAL RECONSIDERATION

## TABLE OF AUTHORITIES

**Cases**

*Carroll v. Nakatani,*

   342 F.3d 934 (9th Cir. 2003) ................................................................. 3

*Gov't of Virgin Islands v. Scotland,*

   614 F.2d 360 (3d Cir. 1980) ................................................................ 11

*Navajo Nation v. Confederated Tribes and Bands of Yakama Indian Nation,*

   331 F.3d 1041 (9th Cir. 2003) ............................................................... 2

*People v. Rhoden,*

   75 Cal. App. 4th 1346, Cal. Rptr. 2d 819 (1999) ................................ 11

*Pro Water Solution, Inc. v. Angie's List, Inc.,*

   457 F. Supp. 3d 845 (C.D. Cal. 2020) ................................................ 14

*Puckett v. United States,*

   556 U.S. 129 (2009) .............................................................................. 7

*Santobello v. New York,*

   404 U.S. 257 (1971) .............................................................................. 5

*United States v. Acosta-Ballardo,*

   8 F.3d 1532 (10th Cir. 1993) .............................................................. 15

*United States v. Alvarez-Tautimez,*

   160 F.3d 573, 576 (9th Cir. 1998) ........................................................ 9

*United States v. Bautista-Avila,*

   6 F.3d 1360 (9th Cir. 1993) .................................................................. 8

*United States v. Cutler,*

   676 F.2d 1245 (9th Cir. 1982) ............................................................ 16

*United States v. Elbeblawy,*

   899 F.3d 925 (11th Cir. 2018) ........................................................... 8, 9

*United States v. Gonzalez,*

   918 F.2d 1129 (3d Cir. 1990) ............................................................. 11

DEFENDANT YASIEL PUIG VALDES' OPPOSITION TO MOTION FOR PARTIAL RECONSIDERATION

1  *United States v. Hahn,*
2    58 F.4th 1009 (8th Cir. 2023) ........................................................................ 7, 8, 9
3  *United States v. Kuchinski,*
4    469 F.3d 853 (9th Cir. 2006) ................................................................................ 12
5  *United States v. Lawson*,
6    683 F.2d 688 (2d. Cir. 1982) ................................................................................. 15
7  *United States v. McGovern,*
8    822 F.2d 739  (8th Cir. 1987) ............................................................................... 10
9  *United States v. Mezzanatto,*
10    513 U.S. 196 (1995) ................................................................................ 5, 7, 8, 15
11  *United States v. Mezzanatto,*
12    998 F.2d 1452 (9th Cir. 1993) .............................................................................. 15
13  *United States v. Mitchell*,
14    633 F.3d 997 (10th Cir. 2011) ................................................................................ 7
15  *United States v. Munoz,*
16    455 F. App'x 772 (9th Cir. 2011) ......................................................................... 10
17  *United States v. Ocanas*,
18    628 F.2d 353 (5th Circuit 1980) ........................................................................... 13
19  *United States v. Olano*,
20    507 U.S. 725 (1993) ............................................................................................... 15
21  *United States v. Osorto,*
22    445 F. Supp. 3d 103 (N.D. Cal. 2020) .................................................................... 5
23  *United States v. Papaleo,*
24    853 F.2d 16 (1st Cir. 1988) ............................................................................... 9, 10
25  *United States v. Plugh,*
26    648 F.3d 118 (2d Cir. 2011) ................................................................................... 8
27  *United States v. Rebbe,*
28    314 F.3d 402, 406 (9th Cir. 2002) .......................................................................... 9

*United States v. Saecho,*
   73 F. App'x 1000 (9th Cir. 2003) .......................................................... 11

*United States v. Savage*,
   978 F.2d 1136 (9th Cir. 1992) ........................................................ 9, 12

*United States v. Solorio-Gonzalez*,
   188 F. App'x 631 (9th Cir. 2006) .......................................................... 10

*United States v. Washman*,
   66 F.3d 210 (9th Cir. 1995) ................................................................ 12

*United States v. Wood*,
   879 F.2d 927, 937 (D.C. Cir. 1989) ...................................................... 15

**Statutes**

18 U.S.C. § 1503 .......................................................................................... 10

**Treatises**

Wright & Miller:1A Fed. Prac. & Proc. Crim. § 171 ................................... 13

Federal Practice and Procedure: Evidence § 5349 at 416 (1980) ............................. 15

**Rules**

Federal Rule of Criminal Procedure Rule 11 ..................................................... passim

Federal Rule of Evidence Rule 403 ..................................................................... 16

Federal Rule of Evidence 410 ............................................................................. passim

Federal Rule of Evidence 613(b) ..................................................................... 14, 16

Federal Rule of Evidence 607 ............................................................................. 14

Federal Rule of Evidence 801(d)(2) ................................................................. 13, 14

DEFENDANT PUIG'S OPPOSITION TO MOTION FOR PARTIAL RECONSIDERATION

## I.      INTRODUCTION

The government's motion for reconsideration ("Motion") is not well taken and the Court should give it short shrift.  Failing once again to address the Ninth Circuit's clear and controlling authority cited in this Court's Order, the government makes claims that are wrong on the law, misapprehending Federal Rule of Evidence 410, Federal Rule of Criminal Procedure Rule 11, and the USAO's own plea agreement.

The government does not even attempt to satisfy the well-established standard that there be new fact or law to support its Motion, paying lip service to the requirement by claiming in a footnote that there is a "narrow ground for reconsideration" because defendant's opposition "did not address what part of Rule 410 would bar admission of the factual basis." (Mot. at 1, n.2.)  This is a false excuse, as the government's Motion makes clear that its proffered grounds for reconsideration have nothing to do with which part of Rule 410 is at issue.

Rather than address the controlling authorities on which the Court relied in finding the plea agreement unenforceable, the government's Motion presents a grab bag of ill-conceived policy arguments and inapposite authorities that stand for general propositions such as the fact that plea agreements are contracts.

Most troublingly, the government's Motion is rife with claims that are legally wrong –such as the assertion that Rule 410 does not apply to the factual basis statements in plea agreements, or the claim that the government cannot withdraw from the plea agreement before a defendant enters his plea.  If this were a civil case, the government could be sanctioned for presenting frivolous legal contentions not warranted by existing law.  Fed. R. Civ. P. 11(b)(c).  Here, the government has abdicated its role in a criminal case to provide the Court accurate information as to the law and to avoid error.  The Motion should be rejected.

/ / /

/ / /

DEFENDANT YASIEL PUIG VALDES' OPPOSITION TO MOTION FOR PARTIAL RECONSIDERATION

## II.    ARGUMENT

### A.    The Government Fails to Meet the Standards for a Motion for Reconsideration

As a threshold matter, the government fails to set forth a new or intervening fact or law, or show a manifest failure to consider material facts, to meet the standard for a motion for reconsideration.  Following well-established standards, Local Rule 7-18 states that, to support a motion for reconsideration, the moving party must show: (1) "a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the [moving] party at the time the Order was entered," (2) "new material facts or a change of law occurr[ed] after the Order was entered," or (3) "a manifest showing of a failure to consider material facts presented to the Court before the Order was entered."  L.R. 7-18.  The government does not even try to meet one of these three grounds, as it offers no intervening law, no new facts, and does not explain why it would be manifestly unjust if the Court does not revisit its Order.  *See Navajo Nation v. Confederated Tribes and Bands of Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) ("Reconsideration is indicated in the face of the existence of new evidence, an intervening change in the law, or as necessary to prevent manifest injustice.").

The government proffers only one reason for reconsideration, stating in a footnote that, "Defendant's Opposition to the Motion did not address what part of Rule 410 would bar admission of the Factual Basis[.]"  (Mot. at 3, n.2.)  This is a red herring.  There was no confusion regarding which portion of Rule 410 applied in this case, and that remains true, as there is no argument in the government's Motion that suggests any confusion on this point.  The government does not in fact intend to quibble about what portion of Rule 410 applies; rather, the government seeks to present a brand new argument – that Rule 410 does not apply at all.

DEFENDANT PUIG'S OPPOSITION TO MOTION FOR PARTIAL RECONSIDERATION

1   The government's attempt to raise this argument now is improper.  A motion

2   for reconsideration "may not be used to raise arguments or present evidence for the

3   first time when they could reasonably have been raised earlier in the litigation."

4   *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).  The entire purpose of the

5   government's original motion to admit the factual basis (*see* Dkt. 110)[1] was to

6   invoke the "knowing breach" language in paragraph 22 of the plea agreement and

7   seek to enforce the Rule 410 waiver in that same paragraph.  Whether the Rule 410

8   waiver was enforceable and valid was raised and thoroughly briefed.  (*See* Original

9   Mot. at 9-15, Original Opp. at 1, 6-9, 9-17; Original Reply at 4-6.  The government

10  now attempts to present a new argument on the same subject – that Rule 410 does

11  not apply to plea agreements.  In support of this new argument, the government

12  presents no intervening law, no new facts, and provides no basis for reconsideration.

13  The government also violates the rule prohibiting the repetition of prior

14  arguments.  A motion for reconsideration cannot "in any manner repeat any oral or

15  written argument made in support of, or in opposition to, the original motion."  L.R.

16  7-18.  But the government dedicates an entire section of its Motion rearguing that

17  defendant "validly waived" protections under Rule 410.  (*See* Mot. at 4-6.)  This

18  argument exactly repeats the government's prior claim.  (*See* Original Mot. at 9-10,

19  12-13 (arguing that Rule 410 waivers are enforceable and that Puig knowingly

20  waived Rule 410 protections); Original Reply at 7-10 (arguing Puig knowingly and

21  voluntarily signed the plea agreement and agreed to the Rule 410 waiver therein).)

22  The government's Motion therefore directly contravenes Local Rule 7-18.

23

24  _____

[1] Puig refers to the government's motion (Dkt. 110) as the "Original Motion,"

25  Puig's opposition (Dkt. 128) as the "Original Opposition," and the government's

26  reply (Dkt. 135) as the "Original Reply." Puig refers to the Court's August 10, 2023
    Order Denying Motion to Find Knowing Breach of Plea Agreement and Amending

27  Order Granting Motion to Find Breach of Plea Agreement (Dkt. 143) as the "8/10

28  Order."

1    Finally, buried under the guise of its Motion for "partial" reconsideration is a

2  request that the Court reach a new issue that it expressly reserved at the

3  government's request: whether the factual basis may be used for impeachment at

4  trial.  The government's flip-flopping and sloppy presentation of issues is confusing,

5  but Puig has no qualms with dispensing of this issue ahead of trial. As explained

6  below, the logic of the court's 8/10 Order applies in full force to the government's

7  request to use the factual basis as impeachment evidence.

8    **B.    The Government Presents No Reason the Court Should Revisit the**
         **8/10 Order**

9

10    **1.    The Government's New Claim that Rule 410 Does Not Apply**
              **to Plea Agreements Is Wrong and Beside the Point**

11    As an initial matter, the government's claim regarding Rule 410 does not rely

12  on new law or new fact, and could have been raised in its Original Motion or

13  Original Reply, or at oral argument.  It therefore is not a proper basis for a motion

14  for reconsideration and the Court should reject it on that basis.  L.R. 7-18.

15    The claim is also an irrelevant one, in that the Court's ruling does not turn on

16  whether Rule 410 applies to plea agreements.  The Court's ruling is that "until the

17  Court accepts and enters a guilty plea, a plea agreement is not binding on the

18  parties." (8/10 Order at 3.)  Accordingly, under this Court's ruling, the entire

19  agreement is unenforceable, which would render all parts of the agreement –

20  including paragraph 2(b), where the defendant agreed not to contest facts in the

21  agreement – unenforceable.  Under the Court's ruling, defendant simply has not

22  agreed to the factual basis in any respect.  Accordingly, to the extent the government

23  has attempted to circumvent Rule 410 and the operation of Rule 11 through the

24  "knowing breach" language of paragraph 22, that provision, too, is unenforceable

25  because the parties are not "bound by their promises in the agreement." (8/10 Order

26  at 5.)

27    Viewed through this lens, it does not matter whether Rule 410 applies to the

28  factual basis of a plea agreement.  Here, the statement at issue is not a verbal

DEFENDANT PUIG'S OPPOSITION TO MOTION FOR PARTIAL RECONSIDERATION

1    statement by the defendant – it is a fact statement written by the government into the

2    plea agreement.[2]  The only thing connecting the defendant to that statement are the

3    obligations in the plea agreement, which the Court has found nonbinding.  (8/10

4    Order at 5 ("there are no binding obligations")).  Accordingly, the Court need not

5    decide, as a general matter, whether Rule 410 applies to fact statements in plea

6    agreements.

7        In any event, the government is wrong that Rule 410 does not apply to the

8    factual basis, which is a "plea statement" under Rule 410 and Fed. R. Crim. P. 11(f).

9    The government cites no case that has found that Rule 410 does not apply to the fact

10   statements in a plea agreement, suggesting instead that the Court should simply rely

11   on the Black's Law Dictionary definition of the word "discussion" and the parole

12   evidence rule to find that Rule 410 does not apply.  (*See* Mot. at 6-7.)

13

14

_____

15   [2] The government's claim that the factual basis is "carefully negotiated and word-

16   smithed" by the parties (Opp. at 4) simply "does not reflect the reality of the
     bargaining table."  *United States v. Osorto*, 445 F. Supp. 3d 103, 109 (N.D. Cal.

17   2020); *see United States v. Mezzanatto*, 513 U.S. 196, 216 (1995)(Souter, J.,
     dissenting ) ("As the Government conceded… defendants are generally in no

18   position to challenge demands for these waivers, and the use of waiver provisions as
     contracts of adhesion has become accepted practice.")  In this district, the factual

19   basis section of the plea agreement has gone far beyond the function provided for it

20   by Rule 11 and the Supreme Court that "the sentencing judge . . .  develop, on the
     record, the factual basis for the plea, as, for example, by having the accused describe

21   the conduct that gave rise to the charge." *Santobello v. New York*, 404 U.S. 257, 261

22   (1971).  Rather, the government drafts a robust and often lengthy narrative of what
     facts it believes it would offer at trial – purported facts that go far beyond what is

23   necessary to satisfy the elements and would more appropriately be called – as some

24   judges refer to it – the "government's offer of proof."  The government then asks the
     defendant to accede to the government's narrative statement, and the defendant has

25   limited leverage to change it.  A defendant's agreement to the statement therefore

26   reflects no more than what the provisions of the plea agreement say: that the
     defendant agreed to it for purposes of the plea, agreed not to contest it, and agreed

27   that it met the elements of the offense.

28

DEFENDANT PUIG'S OPPOSITION TO MOTION FOR PARTIAL RECONSIDERATION

1   The government is incorrect in claiming that the text of Rule 11 "supports the

2   distinction between plea agreements and plea discussions." (Mot. at 2.)  Citing only

3   Rule 11 (c)(1) and (3), the government ignores the applicable portion of Rule 11 –

4   Rule 11(f) – which broadly includes "a plea, a plea discussion, and any related

5   statement" within the ambit of statements protected by Rule 410.  Contrary to the

6   government's contention,[3] the Advisory Committee Notes to Rule 11 make clear

7   that Rule 11(f) (formerly Rule 11(e)(6)(C)) was intended to exclude as inadmissible

8   any statement made in the course of plea discussions with the prosecution, including

9   "admissions by the defendant when he makes his plea in court" and "also

10  *admissions made to provide the factual basis*," and this rule "is not limited to

11  statements made in court." Fed. R. Crim. P. 11, Advisory Committee Notes, 1979

12  Amendments (emphasis added).  The Advisory Committee further cited with

13  approval Commentary from the ALI stating that the "fact that the defendant or his

14  counsel and the prosecuting attorney engaged in plea discussion or made a plea

15  agreement should not be received in evidence," and that the rule applies "to

16  discussion *and agreements* with the prosecuting attorney." *Id*. (emphasis added).

17  Rule 410 is similarly expansive, covering not only initial discussions (which

18  the government defines to be an "exchange of views" (Mot. at 1) but also evidence

19  of (1) a guilty plea that was later withdrawn; (2) a nolo contendere plea; (3) a

20  statement made during a proceeding on either of those pleas under Federal Rule of

21  Criminal Procedure 11; and (4) a statement made during plea discussions.  Rule

22  410(a).[4]  Thus, temporally speaking, Rule 11(f) and Rule 410 include the whole

23

---

24  [3] To the extent that the 1979 Amendments narrowed Rule 11(e)(6), it was not, as the
    government contends (Mot. at 4, n.4) to "narrow the scope of protection" over plea
25  negotiations generally, but specifically to cabin the application of the rule
    where there were "confrontations between suspects and law enforcement agents."
26

27  [4] The government cites no authority for the claim that "contract law" recognizes a
28  "bright line between the terms of an agreement and preceding negotiations" (Opp. at

DEFENDANT PUIG'S OPPOSITION TO MOTION FOR PARTIAL RECONSIDERATION

1   process – from initial discussions through the colloquy at a plea hearing.  In

2   *Mezzanatto*, 513 U.S. at 200 , the Supreme Court referred to Rule 410 and Rule

3   11(f) together as the "plea-statement Rules," and all plea statements –including plea

4   agreements – fall under them.  The government's unsupported claim that there is a

5   temporal line between "plea discussions" and a "plea agreement" therefore does not

6   hold water (*see* Opp. at 2) and the Court should reject the government's claim that

7   Rule 410 does not apply to plea agreements.

8          Finally, the government's argument ignores its own cited cases.  Later in its

9   brief, the government cites two cases for the proposition that courts have upheld

10  Rule 410 waivers in plea agreements. (Opp. at 5.)  Of course, the fact that the plea

11  agreements in these cases included Rule 410 waivers – as does the USAO's plea

12  agreement – itself proves that Rule 410 applies to the plea agreement statements.

13  The issue presented in *United States v. Elbeblawy*, 899 F.3d 925, 935 (11th Cir.

14  2018) was whether the court had erred in admitting parts of the plea agreement at

15  trial; the defendant argued that the plea statements were subject to, and barred by,

16  Rule 410.  The fact that the government sought to enforce the waiver, rather than

17  challenge the applicability of Rule 410 to the statements, was a concession that the

18  plea agreement was otherwise subject to Rule 410.  *See also United States v. Hahn,*

19  58 F.4th 1009, 1012 (8th Cir. 2023) (enforcing Rule 410 waiver to admit parts of

20  plea agreement); *United States v. Mitchell*, 633 F.3d 997, 1006 (10th Cir. 2011)

21  (analyzing admissibility of "statements from the plea agreement and plea colloquy"

22  in light of Rule 410 waiver).  The discussion in each of these cases refutes the

23  notion that Rule 410 does not apply to statements in plea agreements.

24

25

26  2) but in any event that claim fails when the agreement at issue is a plea agreement
    in a criminal case that is subject to Rule 11 and Rule 410.  As the Supreme Court

27  has said, while plea agreements are "essentially contracts," "the analogy may not

28  hold in all respects."  *Puckett v. United States*, 556 U.S. 129, 137 (2009).

WAYMAKER

1
2

## 2.  The Court's 8/10 Order Did Not Reach the Issue Whether Puig Validly Waived Rule 410, So There Is Nothing for this Court to Reconsider

3    In the next section, the government argues that the 8/10 Order should be

4  reconsidered because the defendant "validly waived" Rule 410's protections.

5  Whether Puig's waiver was valid turns on whether his waiver was "knowing and

6  voluntary," which depends on "the totality of the circumstances, including the

7  background, experience, and conduct of defendant." *United States v. Bautista-*

8  *Avila*, 6 F.3d 1360, 1365 (9th Cir. 1993); *see also United States v. Plugh*, 648 F.3d

9  118, 127 (2d Cir. 2011)).

10    This issue was fully briefed by the defense in the Original Opposition, with

11 supporting evidence.  (*See* Original Opp. at 9-17, and Declarations of Anthony

12 Fernandez (Dkt. 128-5) and Dr. Paola Suarez (Dkt. 132).)  The government also had

13 a full opportunity to respond to the issue of whether the waiver was knowing and

14 voluntary. (Original Reply at 7-10.)  The Court ultimately decided not to reach this

15 issue, so there is nothing for this Court to reconsider.

16    Although the government presents the issue as one of validity of the waiver,

17 the government fails to address Puig's particular arguments concerning validity,

18 citing instead three new cases – *Mezzanatto*, *Elbeblawy*, and *Hahn* – for the general

19 proposition that some courts have upheld Rule 410 waivers to permit plea

20 statements to be introduced at trial.  None of these cases represents "a change of

21 law" that occurred "after the [Court's 8/10] Order was entered" (L.R. 7-18) and they

22 therefore should be disregarded.  They also do not alter this Court's conclusion that

23 neither party has "located any Ninth Circuit authority holding that Puig is bound by

24 his Rule 410 waiver even if his plea is not accepted by the Court." (8/10 Order at

25 5.)[5]  Further, these cases do not shed any light on whether the Rule 410 waiver in

26

27 [5] *Mezzanatto* involved a proffer interview statement, not a plea agreement statement

28 (513 U.S. 199), so there was no issue of court acceptance or enforceability.  (The

8

WAYMAKER

1  Puig's plea agreement was knowing and voluntary based on his background,

2  experience, and conduct, so they do not address the validity issue presented here.

3        The government also argues that the Rule 410 waiver in the agreement should

4  be enforced because the government claims it relied on the agreement.  (Mot. at 5.)

5  This point also has nothing whatsoever to do with whether the waiver is valid and is

6  therefore under the wrong heading.  What the government is in fact arguing is that

7  the plea agreement should be enforced due to detrimental reliance – a new argument

8  about the enforceability of the plea agreement, rather than an argument about the

9  validity of the waiver.  This is yet another argument that the government could have

10  made before and therefore should be barred on reconsideration.  L.R. 7-18.

11        In any event, the government is wrong here, too:  there are many cases that

12  discuss detrimental reliance in the context of a plea agreement, and the government

13  fails to apply them because they do not support it.  *See United States v. Savage*, 978

14  F.2d 1136, 1138 (9th Cir. 1992) (finding that defendant did not detrimentally rely

15  where he did not "plead guilty based on the agreement" or "provide any information

16  or other benefit to the government based on the agreement."); *United States v.*

17  *Papaleo*, 853 F.2d 16, 18 (1st Cir. 1988) (permitting government to unilaterally

18  withdraw from plea agreement where it had not been approved by the court nor

19  _____

20  same is true for *United States v. Rebbe*, 314 F.3d 402, 406 (9th Cir. 2002) (Mot. at
   6).)  *Mezzanatto* also predates *United States v. Alvarez-Tautimez*, 160 F.3d 573, 576

21  (9th Cir. 1998), on which this Court relied.  (8/10 Order at 4.)  In both *Elbeblawy*
   and *Hahn*, however, the Eleventh and Eight Circuits, respectively, affirmed the

22  admission of a factual basis pursuant to a Rule 410 waiver even though the court

23  had not accepted the defendant's plea. These holdings are at odds with the Ninth

24  Circuit's rule that plea agreements are "not binding on the parties until [the Court's]
   approval."  (8/10 Order at 5 (citing cases).)  These cases may also be distinguishable

25  on other bases: it is unclear whether the defendants challenged the enforceability of

26  the plea agreement – rather than its voluntariness, which both defendants disputed –
   and it is unclear whether the plea agreements were Rule 11(c)(1)(A) (rather than

27  (c)(1)(B)) agreements, which under Rule 11(c)(3)(A) the court first must consider

28  and accept.  In any event, the Ninth Circuit cases control.

1  relied upon by the defendant; no detrimental reliance where defendant did not enter

2  a plea, forgo a jury trial or otherwise detrimentally rely on government's promise to

3  drop two charges); *United States v. McGovern*, 822 F.2d 739, 746 (8th Cir. 1987)

4  (even though defendant was not placed "in the status quo in the sense that he could

5  retrieve his year of cooperation with the United States Attorney" the court

6  nevertheless found no detrimental reliance as defendant's cooperation was not

7  referenced at trial); *United States v. Munoz*, 455 F. App'x 772, 773 (9th Cir. 2011)

8  (finding the defendant had not established detrimental reliance where he did not

9  enter a plea or provide information, and the government received no benefit); *United*

10  *States v. Solorio-Gonzalez*, 188 F. App'x 631, 635 (9th Cir. 2006) (parties' oral plea

11  agreement was not binding because it was not approved byt the court and defendant

12  did not detrimentally rely, as his confession and proffer preceded the agreement).

13       Considering these examples, the government's claim that it relied on the plea

14  agreement fails.  The government was not detrimentally prejudiced by Puig's

15  decision to withdraw.  In the agreement, the government had limited obligations:

16  agreeing not to contest the facts, not to charge defendant with a violation of 18

17  U.S.C. § 1503, and to recommend a two-level reduction in the Sentencing

18  Guidelines.  (Plea Agreement ¶ 3.)  But the government, just like Puig, has been

19  "relieved of its obligations under the Agreement" (8/10 Order at 5) and the

20  government has now charged Puig with a violation of Section 1503.[6]  Accordingly,

21  like the defendant in *Papaleo*, the government is in no "worse position than if no

22  offer had ever been made by the government."  853 F.2d 16 at 18.  The parties have

23  been returned to the status quo ante;[7] thus, there is no reliance.

---

[6] The government also added additional facts not in the factual basis or information included with the plea agreement.  (*See* Ind. ¶ 3.)

[7] The government claims that, had it known that defendant was not going to plead guilty, the government would have sought a proffer from the defendant.  (Mot. at 5-6.)  This is not a reliance claim; rather, it is mere speculation about how the

### 3. The Government Fails to Understand Rule 11 and Seeks to Deny the Court Its Gatekeeping Role in the Plea Process

Finally, without a single citation to authority, the government makes an ill-conceived policy argument that refusing to enforce a plea agreement prior to a Rule 11 colloquy would hurt defendants, because the government could then back out. (Mot. at 6.) The government clearly has done no research on this point, as it glibly asserts that "the law does not sanction such changes of heart" when in fact the law is clear that both the government and the defendant can back out of a Rule 11(c)(1)(A) plea agreement if it has not been accepted by the Court. *See United States v. Saecho,* 73 F. App'x 1000, 1001 (9th Cir. 2003) (district court did not err by granting the government's motion to withdraw from plea agreement and refusing specific enforcement); *Gov't of Virgin Islands v. Scotland*, 614 F.2d 360, 362 (3d Cir. 1980) (declining to order specific performance where government changed terms of plea offer after defendant agreed to initial offer); *United States v. Gonzalez*, 918 F.2d 1129, 1133 (3d Cir. 1990) (permitting government to withdraw from package deal plea agreement when co-defendant refused to plead and refusing defendant's request for specific enforcement of the withdrawn plea agreement); *see generally People v. Rhoden*, 75 Cal. App. 4th 1346, 1352, 89 Cal. Rptr. 2d 819 (1999) (collecting cases) ("The great weight of case law supports the position that a prosecutor may withdraw from a plea bargain before a defendant pleads guilty with court approval or otherwise detrimentally relies on that bargain.").

---

government could have structured the plea negotiation process differently to lock defendant into the Rule 410 waiver even though he withdrew from the agreement. The government's speculation fails to take into account that the defendant may not have agreed to a proffer, and, even if he had done so, his own statements certainly would not have been co-extensive with the government's factual basis narrative. In any event, the government's complaint is that it did not receive a benefit under the agreement, but that is not reliance – it is simply the result of fact that the parties are not "bound by their promises in the Agreement."  (8/10 Order at 5.)

1      Indeed, the government fails even to acknowledge the very authorities this

2  Court relied upon in the 8/10 Order that make it clear that the parties' ability to

3  withdraw is reciprocal.  The Ninth Circuit stated clearly in *United States v. Savage*,

4  978 F.2d 1136 (9th Cir. 1992): "Neither the defendant ***nor the government*** is bound

5  by a plea agreement until it is approved by the court."  978 F.2d at 1138 (emphasis

6  added); *see also United States v. Kuchinski,* 469 F.3d 853, 857 (9th Cir. 2006)

7  ("Kuchinski insists that once the government entered into a plea agreement, it was

8  absolutely bound to the agreement's terms, even before the district court accepted

9  the agreement. He is wrong."); *United States v. Washman*, 66 F.3d 210, 212–13 (9th

10  Cir. 1995), abrogated in part on other grounds by *United States v. Hyde*, 520 U.S.

11  670 (1997) ("Either party should be entitled to modify its position and even

12  withdraw its consent to the bargain until the plea is tendered and the bargain as it

13  then exists is accepted by the court." (citing *Savage* (internal quotation omitted)).

14      Further, the government's conclusory and unsupported policy arguments

15  prove that it does not understand Rule 11 and the policies behind it.  As discussed in

16  Puig's Original Opposition, the extensive plea agreement procedures to which the

17  parties and this Court are accustomed are set forth in Rule 11, amended in 1975 to

18  give "explicit recognition to the validity of plea bargaining" and to "move the

19  results of the discussions into open court.  The changes were 'designed to prevent

20  abuse of plea discussions and agreements by providing appropriate and adequate

21  safeguards.'"  Wright & Miller: 1A Fed. Prac. & Proc. Crim. § 171 (History of the

22  Rule) (5th ed.) (citing 1975 Advisory Committee Notes).  These safeguards include

23  the District Court's detailed Rule 11(b) colloquy prior to accepting a plea, and its

24  review and discretion to accept or reject a plea agreement under Rule 11(c)(3)(A).

25      The instant plea agreement arises under Rule 11(c)(1)(A) because the

26  agreement includes a charge bargaining agreement (that is, the government's

27  agreement to forego a potential charge in return for a guilty plea).  Under Rule

28

DEFENDANT PUIG'S OPPOSITION TO MOTION FOR PARTIAL RECONSIDERATION

1  11(c)(3), the Court may accept the agreement, reject it, or defer a decision until the

2  review of the presentence report.   As explained by the Supreme Court, Rule 11:

> envision[s] a situation in which the defendant performs his side of the bargain (the guilty plea) before the Government is required to perform its side (here, the motion to dismiss four counts). If the court accepts the agreement and thus the Government's promised performance, then the contemplated agreement is complete and the defendant gets the benefit of his bargain. But if the court rejects the Government's promised performance, then the agreement is terminated and the defendant has the right to back out of his promised performance (the guilty plea), just as a binding contractual duty may be extinguished by the nonoccurrence of a condition subsequent.

*Hyde*, 520 U.S. at 677–78 (1997) (citation omitted).  The defense respectfully

submits that Rule 11, which provides the Court a "critical role in the process,"

*United States v. Ocanas*, 628 F.2d 353, 358 (5th Circuit 1980), has the incentives

right and is good policy.

### C.   The Plea Agreement's Factual Basis Cannot Be Used for Impeachment

At oral argument for the Original Motion, the government asked the Court to

expressly reserve ruling on the use of the factual basis as impeachment evidence for

the motion *in limine* stage, and the Court agreed.  Now, embedded in its Motion, the

government asks the Court to rule on whether the factual basis can be used for

impeachment.  The answer is "no" for the same reasons the factual basis cannot be

used in the government's case in chief – Rule 410 and 11(f) bar its use for

impeachment.

As an initial matter, this Court has found the plea agreement unenforceable as

a matter of law.  (8/10 Order at 5.)  Given that the contract is unenforceable, then

there is in fact no "statement" of Puig at all to use for impeachment.  Under Fed. R.

Evid. 801(d)(2), a "statement" is a person's oral statement, written assertion, or

nonverbal conduct, if the person intended it as an assertion."  But Puig did not write

the factual statement in the plea agreement and, as discussed above, the only basis to

contend that he adopted the statement was by virtue of the provisions in the plea

1   agreement.  *See* Fed. R. Evid. 801(d)(2)(B).  If those provisions are not enforceable,

2   there is no other basis to attribute the statement to him.

3        The government seeks to relitigate the Court's enforceability ruling through

4   its argument that the use of the factual basis for impeachment is a reasonable

5   remedy for breach.  (Mot. at 7-8.)  This merely repeats the argument in the

6   government's Original Motion, in which it asked this Court to find a "knowing

7   breach" and apply paragraph 22 of the Plea Agreement.  (Original Motion (Dkt.

8   110) at 9.)  But this Court has found that neither party is " bound by their promises

9   in the Agreement"  (8/10 Order at 5), and thus there can be no breach.  As this Court

10  stated, " [i]mplicit in [its initial breach] ruling was a finding that the parties were

11  bound by their promises in the Agreement—a finding that was erroneous under the

12  clear and binding authority cited above."  (*Id.*)  Without a finding of breach, there is

13  nothing to remedy.  *Pro Water Solution, Inc. v. Angie's List, Inc.*, 457 F. Supp. 3d

14  845, 850-51 (C.D. Cal. 2020) (defendant's breach is an essential element for breach

15  of contract claim).

16       The third argument the government raises is that the Federal Rules of

17  Evidence, specifically Rules 607, 613, and 801(d)(2), permit impeaching Puig with

18  the factual basis.  (Mot. at 7.)  This is incorrect; Rule 410 – which does apply to plea

19  statements (*see supra* at 5-7), is a rule of exclusion that bars the admission of

20  otherwise admissible evidence under the Rules.  *See* Fed. R. Evid. 410, Advisory

21  Committee Notes, 1972 Proposed Rules (Rule 410 is an "exclusionary rule"

22  applicable only "against the accused").

23       The case law makes clear that the factual basis cannot be introduced to

24  impeach Puig because Rule 410 bars the use of plea statements for impeachment

25  purposes.  In *Mezzanatto*, for example, the Supreme Court held that a defendant can

26  waive Rule 410's protections barring evidence of plea for impeachment.  513 U.S. at

27  204.  Implicit in that ruling is that Rule 410 does in fact bar the use of plea

28  statements for that purpose because the purpose of waivers is to abandon a right.

1   *United States v. Olano*, 507 U.S. 725, 733 (1993) ("[W]aiver is the intentional

2   relinquishment or abandonment of a known right.") (citation omitted).  In fact, in the

3   Ninth Circuit's opinion in *Mezzanatto*, the court explicitly held that Rule 410 bars

4   the use of plea negotiation statements to impeach a defendant.  *United States v.*

5   *Mezzanatto*, 998 F.2d 1452, 1454 (9th Cir. 1993) (reversed on other grounds by

6   *Mezzanatto*, 513 U.S. 196 (1995)) (the text and legislative history of Rule 410 and

7   Rule 11 establish that plea statements cannot be used for impeachment).  The

8   Supreme Court reversed only on the narrow ground that Rule 410 protections can be

9   contracted around.  515 U.S. at 204.  The Second, Tenth, and D.C. Circuits all agree

10  that Rule 410 bar the use of plea discussions for impeachment.  *See United States v.*

11  *Lawson*, 683 F.2d 688, 693 (2d. Cir. 1982); *United States v. Acosta-Ballardo*, 8 F.3d

12  1532, 1536 (plea statements are inadmissible as impeachment under Rule 11);

13  *United States v. Wood*, 879 F.2d 927, 937 (D.C. Cir. 1989) (without a waiver, plea

14  statements are inadmissible as impeachment evidence under Rule 410 and Rule 11).

15  In sum, Rule 410 applies with full force the Factual Basis and commands the

16  exclusion of it for impeachment.

17           In fact, as explained in *Acosta-Ballardo*:

18           Commentators agree that Rule 410 and Rule 11 prohibit use of statements
             made in the course of plea discussions for impeachment purposes. "[T]he
19           legislative history makes it clear beyond any doubt that Congress, in deleting
             the impeachment provision from the original rule, intended that Rule 410
20           should bar the use of pleas and plea related statements for impeachment." 23
             Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and
21           Procedure: Evidence § 5349 at 416 (1980) (footnotes omitted). "Statements
             made by a defendant in connection with a plea or an offer to plead may not be
22           used substantively or for impeachment in any civil or criminal proceeding
             against the person who made the plea or offer." 2 Jack B. Weinstein and
23           Margaret A. Berger, Weinstein's Evidence ¶ 410[02] at 410–30 (1992)
             (footnotes omitted).

24

25  8 F.3d at 1535; *see also Lawson*, 683 F.2d at 693 (Congress expressly intended "to

26  preclude use of statements made in plea negotiations for impeachment purposes . .

27  .[;] [t]heir inadmissibility under Rules 410 and 11(e)(6) is thus beyond serious

28  dispute"); *see also Wood*, 879 F.2d at 936-37 ("In considering these rules, Congress

1  had debated and rejected proposals that statements made in connection with an offer

2  to plead guilty be available for impeachment purposes.").

3       The factual basis should be rejected as impeachment evidence on Rule 403

4  grounds as well because, as discussed in the Original Opposition, if admitted for that

5  purpose, the inevitable result is a trial-within-a-trial about the circumstances

6  surrounding the plea.  Rule 613(b) commands that Puig must be "given an

7  opportunity to explain or deny the statement . . . ."  Fed. R. Evid. 613(b); *see United*

8  *States v. Cutler*, 676 F.2d 1245, 1249 (9th Cir. 1982) ("Rule 613(b) requires that . . .

9  the opposite party must be afforded the opportunity to interrogate him thereon[.]")

10  (cleaned up).  Here, there is a lot to explain for the jury to properly understand why

11  the factual basis exists.  The evidence involved will likely be additional fact

12  witnesses, additional lines of expert inquiry regarding Puig's mental state, and even

13  statements attorneys made across the bargaining table.  The result will be a trial

14  where the jury is focused on the veracity of one piece of evidence rather than

15  resolving the factual issues relevant to each essential element of the charged crimes.

16  Admission of the factual basis for any purpose would likely double the length of the

17  trial, unduly burdening the jury, the Court, and the parties.

18  **III.   CONCLUSION**

19       For the reasons stated herein, the government's motion for reconsideration

20  should be denied as procedurally barred, or, in the alternative, denied on its merits.

21  DATED:  September 20, 2023       WAYMAKER LLP

22

23

24       By: * /s/ Keri Curtis Axel*

25           KERI CURTIS AXEL
         JOSE R. NUÑO

26           EMILY R. STIERWALT

27           RILEY P. SMITH
         *Attorneys for Defendant Yasiel Puig*

28

DEFENDANT PUIG'S OPPOSITION TO MOTION FOR PARTIAL RECONSIDERATION

```
 1  E. MARTIN ESTRADA
    United States Attorney
 2  MACK E. JENKINS
    Assistant United States Attorney
 3  Chief, Criminal Division
    JEFF MITCHELL (Cal. Bar No. 236225)
 4  Assistant United States Attorney
    Major Frauds Section
 5  DAN G. BOYLE (Cal. Bar No. 332518)
    Assistant United States Attorney
 6  Environmental Crime and
    Consumer Protection Section
 7       1100/1300 United States Courthouse
         312 North Spring Street
 8       Los Angeles, California 90012
         Telephone: (213) 894-0698/2426
 9       Facsimile: (213) 894-6269/0141
         E-mail:    jeff.mitchell@usdoj.gov
10                  daniel.boyle2@usdoj.gov

11  Attorneys for Plaintiff
    UNITED STATES OF AMERICA
12
13                   UNITED STATES DISTRICT COURT

14              FOR THE CENTRAL DISTRICT OF CALIFORNIA

15  UNITED STATES OF AMERICA,        CR No. 22-394-DMG

16            Plaintiff,             GOVERNMENT'S REPLY IN SUPPORT OF
                                     NOTICE OF MOTION AND MOTION FOR
17            v.                     PARTIAL RECONSIDERATION AND
                                     CLARIFICATION
18  YASIEL PUIG VALDES,
                                     Hearing Date: October 4, 2023
19            Defendant.             Hearing Time: 2:30 p.m.
                                     Location:     Courtroom of the
20                                                 Hon. Dolly M. Gee

21

22

23       Plaintiff United States of America, by and through its counsel

24  of record, the United States Attorney for the Central District of

25  California and Assistant United States Attorneys Jeff Mitchell and

26  Dan G. Boyle, hereby files this Reply in Further Support of its

27  Motion for Partial Reconsideration, or in the alternative, for

28  Clarification (the "Reconsideration Motion"), see ECF No. 148, of
```

ER 262

this Court's August 10, 2023 Order (the "8/10 Order") denying the
government's Motion for a judicial finding of a knowing breach of
defendant's plea agreement in this action. See ECF No. 143. This
reply is based upon the attached memorandum of points and
authorities, the files and records in this case, and such further
argument as the Court may permit.


 Dated: September 27, 2023        Respectfully submitted,

                                  E. MARTIN ESTRADA
                                  United States Attorney

                                  MACK E. JENKINS
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  _____/s/_____
                                  DAN G. BOYLE
                                  JEFF MITCHELL
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

ii

1

2                    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

3   **I.    Introduction**

4        There is nothing frivolous about the Reconsideration Motion, and

5   defense counsel should avoid bandying about words like "sanction[s]"

6   when confronting arguments that are supported by the plain text of

7   the Federal Rules. <u>See</u> Opp., at 1. Briefs are filed for the court,

8   not the media, and parties should resist the temptation to substitute

9   rhetoric for legal argument. Nor is it appropriate to make sweeping

10  and unsupported accusations about the change of plea practices in

11  this district – which impugn both counsel and the courts. <u>See</u> Opp. at

12  5, n.2. Such categorical assertions do not advance defendant's

13  position or the Court's consideration of this significant issue.

14       On the merits, defendant's arguments against reconsideration are

15  not persuasive. His position boils down to the claim that the

16  purported absence of a binding contract makes the document he signed

17  and words he adopted simply disappear. No such magic exists. Whether

18  or not the Plea Agreement[1] has binding effect, defendant adopted its

19  Factual Basis in writing. That Factual Basis is therefore an

20  admissible, non-hearsay statement by a party opponent that the

21  government should be permitted to introduce at trial. The ability or

22  inability to invoke a contractual remedy has no bearing on the

23  admissibility of defendant's adopted statement. However, treating the

24  plea agreement as a nullity is also error. The Supreme Court has left

25  no doubt that plea agreements are contracts, and neither defendant

26  nor this Court has the authority to unilaterally nullify the contract

27  _____

28       [1] All capitalized terms have the same meaning as used in the
    government's original motion. <u>See</u> ECF No. 110

1  defendant signed. Under either the rules of evidence or the rules of

2  contract law, this Court should reconsider its prior ruling. At a

3  minimum, the Court should clarify that the government will be

4  permitted to admit the Factual Basis of the Plea Agreement for

5  purposes of impeachment.

6  **II.  Argument**

7  **A.   The Government Has Met the Standard for Reconsideration**

8  As addressed in the government's Reconsideration Motion, on

9  January 6, 2023, the Court issued an order finding that defendant had

10  breached the Plea Agreement. See ECF No. 51 (the "Breach Order").

11  Defendant has conceded that he did not raise the Fagan/Savage line of

12  cases in the motion practice preceding the Breach Order (ECF No. 128,

13  at 8, n.4), nor did he argue that the Plea Agreement was

14  unenforceable at that time. To the contrary, he made numerous

15  assertions that were inconsistent with his current position that the

16  Plea Agreement was and is a legal nullity. See ECF No. 135, at 1-2

17  (summarizing argument). As such, the government's motion seeking a

18  finding of a knowing breach (ECF No. 110) proceeded from the

19  reasonable position that a breach of the Plea Agreement had already

20  been found – because that is exactly what the Breach Order held.

21  When defendant first raised the Fagan/Savage line of cases in

22  his opposition to the government's motion, the government responded

23  and addressed this authority directly, but was limited to responding

24  to the contents of defendant's Opposition. It is black-letter law

25  that a party cannot raise new arguments on reply. See United States

26  v. Zamarron, 2014 WL 683826, at *1 n.2 (C.D. Cal. Feb. 21, 2014)

27  ("The Ninth Circuit has consistently held that where new arguments

28

2

1   and new evidence is submitted for the first time in a reply brief,

2   the arguments and evidence may be stricken."); In re Hansen Natural

3   Corp. Securities Litig., 527 F. Supp. 2d 1142, 1149 n.2 (C.D. Cal.

4   2007) ("[T]he Court will not consider new evidence presented for the

5   first time in a Reply."). Accordingly, questions such as the scope of

6   Rule 410 were not addressed, as they were not raised in the

7   defendant's Opposition, and thus not subject to discussion in the

8   government's reply.

9        **B.    The Court Should Grant the Government's Motion**

10            **1.   Federal Rule of Evidence 410 is Not Applicable Here**

11       As explained in the Reconsideration Motion, Rule 410 does not

12   apply to plea agreements. See Reconsideration Motion, at 1-3.

13   Defendant responds with the incorrect assertion that "it does not

14   matter whether Rule 410 applies to the factual basis of a plea

15   agreement." Opp. at 4. This is plainly incorrect – the applicability

16   of Rule 410 is central here, because if Rule 410 does not apply to

17   plea agreements – in contrast to statements made during plea

18   negotiations – then there is nothing barring the use of the Factual

19   Basis for impeachment at trial.

20       The Plea Agreement is a document signed by the defendant which

21   includes an inculpatory statement (i.e., the Factual Basis). The

22   Federal Rules of Evidence treat statements that an opposing party

23   either "made" or "adopted or believed to be true" or that were made

24   by one whom the party "authorized to make a statement on the subject"

25   as non-hearsay. See Fed. R. Evid. 801(d)(2)(A)-(C). Such statements

26   are thus presumptively admissible. Defendant obviously made or

27   adopted the statements in the Factual Basis, which he and his counsel

28

<center>3</center>

<center>ER 266</center>

both agreed to and signed. See Plea Agreement, at ¶ 9 ("Defendant and the USAO agree to the statement of facts provided below…"); id., at 18-19 (defendant's signature and translator's certification). A defendant signing a plea agreement "adopt[s]" the facts therein. See United States v. Vera, 893 F.3d 689, 693 (9th Cir. 2018). That is why the terms of the plea agreement may later be used to evaluate what a defendant "admitted." See Shepard v. United States, 544 U.S. 13, 25 (2005).

Because defendant made or adopted statements in the Factual Basis, it is incumbent on the defense to explain why that admissible evidence should be excluded. Whether the plea agreement created an enforceable contract makes no difference insofar as the government is seeking to admit evidence, not to enforce a contractual right. Defendant's Opposition fails to grasp this fundamental proposition; instead, he claims that because the Plea Agreement is purportedly unenforceable, he therefore made no statement at all. See Opp. 13 ("Given that the contract is unenforceable, then there is in fact no 'statement' of Puig at all to use for impeachment"). Not so. The fact that a contract may be deemed unenforceable does not erase the words written therein or the parties' adoption of those words. The rules of evidence thus permit the government to introduce the Factual Basis.

The Plea Agreement is only relevant to this analysis because it includes a broad waiver provision which also references Rule 410. See Plea Agreement, at ¶ 22(c). That waiver is enforceable and should be enforced, as the government has previously argued. See ECF Nos. 135, at 4-5; 148, at 4-6. But irrespective of the waiver, if Rule 410 does not apply to plea agreements, then there is no basis to exclude the

4

statements defendant adopted therein.[2] As such, this question is relevant.

Defendant's response on this point is not persuasive. Defendant argues that the reference to Rule 410 in the Plea Agreement's waiver provision must be evidence that Rule 410 applies to plea agreements. See Opp. at 7. Not so - parties routinely protect against claims that lack merit.[3] The Plea Agreement's waiver provision is expansive and prophylactic. See Plea Agreement at ¶ 22(c)(waiving "any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule"). By its terms, the waiver provision of the Plea Agreement reaches far beyond the Plea Agreement itself, and thus encompasses material that may be protected by Rule 410. For example, Rule 410(a)(3) addresses any "statement made during a proceeding on [a guilty plea] under Federal Rule of Criminal Procedure 11," while the waiver provision includes "any statements made by defendant, under oath, at the guilty plea hearing." Plea Agreement, ¶ 22(c). At the same time, the waiver provision also addresses "evidence derived from such statements," id., but such evidence is plainly not Rule 410 material. In sum, the waiver

---

[2] Of course, if the Plea Agreement were unenforceable, the remainder of the waivers stated in the Plea Agreement's waiver provision, such as waivers of Rule 403, would not be enforceable, and thus defendant could seek to exclude the Factual Basis under Rule 403. This Court, however, did not rule on the basis of Rule 403.

[3] Nor is it relevant whether the government has challenged the applicability of Rule 410 to plea agreements in other cases. This is not "a concession that the plea agreement was otherwise subject to Rule 410." Opp. at 7. Rather, this is an argument that in other instances may have been overlooked or waived.

5

provision broadly addresses material both within and outside Rule
410's scope.

    Defendant also relies on Federal Rule of Criminal Procedure
11(f), but that provision only fortifies the government's argument
that there is a distinction between plea discussions and plea
agreements. Rule 11(f) says that "a plea, a plea discussion, and any
related statement is governed by Federal Rule of Evidence 410." Like
Rule 410, Rule 11(f) makes no reference to a "plea agreement." <u>See</u>
<u>Botosan v. Paul McNally Realty</u>, 216 F.3d 827, 832 (9th Cir. 2000)
("The incorporation of one statutory provision to the exclusion of
another must be presumed intentional under the statutory canon of
*expressio unius*."). The drafters of Rule 11 knew how to include
references to plea *agreements* when they meant to. <u>See, e.g.,</u> Fed. R.
Crim. P. 11(c)(1) ("An attorney for the government and the
defendant's attorney . . . may discuss and reach a plea agreement.").
Because neither Rule 410 nor Rule 11(f) addresses "plea agreements,"
the plain text controls: "plea discussions" are not "plea
agreements."

    Defendant also cites to the 1979 Advisory Committee Notes of
Rule 11, which states as follows:

> If there has been a plea of guilty later withdrawn or a
> plea of nolo contendere, subdivision (e)(6)(C) makes
> inadmissible statements made "in the course of any
> proceedings under this rule" regarding such pleas. This
> includes, for example, admissions by the defendant when
> he makes his plea in court pursuant to rule 11 and also
> admissions made to provide the factual basis pursuant to
> subdivision (f).

Fed. R. Crim. P. 11, 1979 Adv. Comm. Notes. Again, defendant's
citation actually supports the government's position: the Advisory
Committee note addresses statements made during a guilty plea

6

ER 269

1  hearing: "admissions by the defendant *when he makes his plea in court*
2  pursuant to rule 11 and also admissions made to provide the factual
3  basis." Id. (emphasis added). Such statements are explicitly
4  encompassed by Rule 410(a)(3) as "statements made during a proceeding
5  on [a guilty plea]" — not under Rule 410(a)(4), which addresses plea
6  discussions. Defendant never proceeded to a change of plea hearing,
7  so Rule 410(a)(3) is plainly inapplicable, and thus the Advisory
8  Committee Notes provide no support for his arguments.

9       Finally, while defendant generally argues that "Rule 410 is
10  similarly expansive" (Opp. at 6), he does not address the
11  government's cited precedent from three separate circuit courts
12  defining when the plea negotiation process ends – with a signed plea
13  agreement. See United States v. Knight, 867 F.2d 1285, 1288 (11th
14  Cir. 1989)("Once a plea contract is formed, the policy behind Rule
15  11(e)(6)--to allow a defendant to freely negotiate without fear that
16  statements will be used against him--is no longer applicable.");
17  United States v. Lloyd, 43 F.3d 1183, 1186 (8th Cir. 1994) ("Once
18  Lloyd signed the agreement, negotiations terminated and Rule 11(e)(6)
19  by its terms no longer required exclusion of his subsequent
20  statements."); and United States v. Davis, 617 F.2d 677, 685 (D.C.
21  Cir. 1979) (rejecting application of the predecessor to Rule 410 to
22  post-agreement statements because "[e]xcluding testimony made after
23  and pursuant to the agreement would not serve the purpose of
24  encouraging compromise").

25          2.   Even If Rule 410 Were Applicable, the Government Has
                 Shown Detrimental Reliance
26
27       Defendant also argues that the government's reliance arguments
28  are "mere speculation" (Opp. at 9-10, n.7) but defendant does not

<center>7</center>

address the applicable standard. The government has articulated what it would have been done differently, which is all the law requires to establish detrimental reliance. See United States v. Gamboa-Cardenas, 508 F.3d 491, 504 (9th Cir. 2007) (defendant established detrimental reliance where he argued that he would have testified at trial but for the government's assurance).

**C.     If Reconsideration is Denied, the Court Should Permit the Factual Basis to Be Used for Impeachment**

As stated in the Reconsideration Motion, the government submits that, if defendant testifies at trial and does so inconsistently with the Factual Basis, then the Court should allow the government to (1) ask defendant if he executed a written statement during the course of this case, (2) ask him if he understood that statement, (3) ask him if his counsel assisted him in reviewing that statement, and (4) confront him with any portion of the Factual Basis inconsistent with his testimony. In response, defendant offers a range of arguments, none of which is persuasive.

First, defendant repeats – with no cited case law at all – that an unenforceable contract cannot contain a statement. As explained above, this simply confuses contract law with the rules of evidence. Whether or not the parties can enforce the Plea Agreement, it is a document signed by defendant (and his counsel), which explicitly adopts a statement of facts. Documents need not be enforceable in court in order to contain adopted statements. Indeed, the Rule 801(d)(2)(B) standard is far broader. See Transbay Auto Serv., Inc. v. Chevron USA Inc., 807 F.3d 1113, 1119-21 (9th Cir. 2015). A party adopts statements merely by "use of a document supplied by another" even if, unlike here, the party "is only vaguely aware of the

8

1    contents of [the] document." Id. at 1120. Defendant's claim that he

2    "simply has not agreed to the factual basis in any respect" is

3    nonsense.[4]

4         By agreeing that the Factual Basis was accurate, defendant did

5    not adopt it as metaphysically true solely for the purposes of

6    contract law. Defendant nearly implies that he signed what he

7    contends is a false statement, solely for the purposes of pleading

8    guilty. See Opp. at 5, n.2 ("defendant's agreement to the statement

9    therefore reflects no more than what the provisions of the plea

10   agreement say: that the defendant agreed to it for purposes of the

11   plea [and] agreed not to contest it"). This is not how Rule 11

12   operates, and certainly not the Court's practice.

13        Finally, permitting the use of the Factual Basis for impeachment

14   would not create a "trial-within-a-trial about the circumstances

15   surrounding the plea." Opp. at 16. Though not legally required, the

16   government has proposed to avoid informing the jury that the Factual

17   Basis was part of a plea agreement and to reference it only as a

18   "statement." See, e.g., ECF No. 148, at 7, n.5. Defendant has not

19   identified any circumstances which meaningfully distinguish these

20   facts from the myriad other cases in which defendants make statements

21   to law enforcement that are used against them at trial. As the

22   government has noted, the Ninth Circuit's model jury instructions

23   specifically govern such situations. See Ninth Circuit Model Jury

---

24

25        [4] Defendant's argument is also defeated by Mabry v. Johnson, 467
     U.S. 504, 507-08 (1984), as applied in this Court's 8/10 Order. While
26   the government maintains that Mabry has been implicitly overruled by
     Puckett v. United States, 556 U.S. 129, 138 (2009), even if a plea
     bargain "is a mere executory agreement" without constitutional
27   significance until embodied in the judgment of a court, see Mabry,
     467 U.S. at 507, that executory agreement would still contain adopted
28   statements subject to contractual remedies for breach.

9

1    Instruction 3.1. If anything, defendant is in a better position that

2    the average defendant who has made an inculpatory statement, as the

3    government is only seeking to use the Factual Basis for impeachment,

4    if defendant testifies and does so inconsistently with the Factual

5    Basis. Defendant has no right to take the stand and commit perjury.

6    He swore to the accuracy of the Factual Basis, and if he testifies

7    inconsistently with that statement, this inconsistency should be put

8    before the jury. If defendant wishes to tell the jury that he

9    knowingly signed a false statement in order to preserve his lucrative

10   professional baseball career, that is his choice to make.

11   **III. CONCLUSION**

12       For the reasons stated herein and in the Reconsideration Motion,

13   the government respectfully requests that this Court reconsider the

14   8/10 Order, or alternately, permit the use of the Factual Basis for

15   cross-examination of defendant as described herein.

16

17    Dated: September 27, 2023        Respectfully submitted,

18                                     E. MARTIN ESTRADA
                                       United States Attorney
19
                                       MACK E. JENKINS
20                                     Assistant United States Attorney
                                       Chief, Criminal Division
21

22                                          /s/
                                       _____
23                                     DAN G. BOYLE
                                       JEFF MITCHELL
24                                     Assistant United States Attorneys

25                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

26

27

28
                                       10

Name  AUSA Jeff Mitchell

Address  312 N. Spring St.

City, State, Zip  Los Angeles, CA 90012

Phone  (213) 894-0698

Fax  (213) 894-0141

E-Mail  jeff.mitchell@usdoj.gov

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☐ Retained

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | CASE NUMBER: |
|---|---|
| PLAINTIFF(S), | CR 22-394(A)-DMG |
| v. | |
| YASIEL PUIG VALDES | **NOTICE OF APPEAL** |
| DEFENDANT(S). | |

NOTICE IS HEREBY GIVEN that _____United States of America_____ hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**                          ~~**Civil Matter**~~

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]       ☒ Order (specify):
☐ Conviction and Sentence                         Order Denying Motion for Partial Reconsideration;
☐ Sentence Only (18 U.S.C. 3742)                  CR No. 161; Filed on 10/5/23
☐ Pursuant to F.R.Cr.P. 32(j)(2)              ☐ Judgment (specify):
☐ Interlocutory Appeals
☐ Sentence imposed:
                                              ☒ Other (specify):
                                                  Order Denying Breach Motion;
☐ Bail status:                                    CR No. 143; Filed on 8/10/23

Imposed or Filed on _____10/5/23; 8/10/23_____. Entered on the docket in this action on _10/5/23; 8/10/23_____.

A copy of said judgment or order is attached hereto.

_11-1-23_____          s/ Jeff Mitchell_____
Date                               Signature
                                   ☐ Appellant/ProSe   ☐ Counsel for Appellant   ☐ Deputy Clerk

**Note:**   The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the
            attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number
            of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

ER 274

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

| | | |
|---|---|---|
| Case No.   CR 22-394(A)-DMG | Date | October 5, 2023 |

| | | | |
|---|---|---|---|
| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE | Page | 1 of 4 |

| Kane Tien | Not Reported | Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendant(s): | Present | Appt. | Ret. |
|---|---|---|---|---|---|---|---|
| Yasiel Puig Valdes | Not | | ✓ | Keri Axel | Not | | ✓ |

**Proceedings:  [IN CHAMBERS]  ORDER  DENYING  MOTION  FOR  PARTIAL RECONSIDERATION [148]**

The Government moves for "partial reconsideration and clarification" of the Court's August 10, 2023 Order denying the Government's motion to find a knowing breach of the plea agreement in this criminal action against Yasiel Puig Valdes.  MFR [Doc. # 148].  The Government argues that the Court's reasoning was erroneous in two regards and requests clarification that the factual basis in Puig's plea agreement can be used for impeachment.  For the reasons discussed below, the motion is **DENIED**.

**I.**

**BACKGROUND**

Puig was scheduled to plead guilty at a hearing on November 23, 2022 [*see* Doc. # 22] and signed a plea agreement filed with this Court on August 29, 2022.  [Doc. # 6.]  He ultimately did not plead guilty, and the Court did not hold a plea hearing.  On December 14, 2022, the Government filed a motion for breach of the plea agreement.  [Doc. # 33.]  The Court granted the motion on January 6, 2023, finding Puig breached the agreement but deferring any ruling on the issue of whether the breach was knowing. [Doc. # 51.]

On June 1, 2023, the Government moved to find the breach of the plea agreement had been "knowing."  [Doc. # 110.]  If the breach was knowing, according to the Government, the breach implicated a provision of the plea agreement in which Puig waived any arguments that Fed. R. Evid. 410 barred the admission of the factual basis in the agreement as evidence against him.  *Id.* at 5.[1]  On August 10, 2023, the Court denied the Government's motion.  [Doc. # 143.]  Based on case law that had not been considered at the time the Court granted the Government's motion for breach of the plea agreement, the Court found that because it had not held a plea hearing, and thus had never formally accepted Puig's guilty plea, the agreement was unenforceable.  Terms regarding the consequences of a "knowing" breach were accordingly not binding.  [Doc. # 143 at 2.]  The Court therefore denied the Government's motion and amended its January 6, 2023 Order to reflect that the agreement had not been breached, but was unenforceable.  *Id.* at 6.

---

[1] Citations to the record are to the CM/ECF pagination.

| CR-11 | **CRIMINAL MINUTES - GENERAL** | Initials of Deputy Clerk <u>KT</u> |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

| Case No. | CR 22-394(A)-DMG | | Date | October 5, 2023 |
|---|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE | Page | 2 of 4 |
|---|---|---|---|

On August 24, 2023, the Government filed the MFR.  Briefing on the MFR is complete and, on October 3, 2023, the Court took the matter under submission.  [Doc. ## 148, 154, 155, 157.]

**II.**
**DISCUSSION**

**A.    Reconsideration**

Local Rule 7-18 sets forth the permissible grounds for a motion for reconsideration:

A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered. No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion.

The MFR advances alternative arguments: (1) Fed. R. Evid. 410 does not apply to plea agreements or (2) the Court erred when concluding that Puig's waiver of 410 was not binding.  The MFR thus argues alternatively that Rule 410 does not apply and, if it does apply, Puig waived arguments relying on the rule.[2]

In support of the first argument, the Government asserts Fed. R. Evid. 410(a)(4)[3] does not apply to a factual basis in a plea agreement, reasoning that plea "agreements" (including the factual bases therein) are not plea "discussions."  MFR at 1.  The Court's implicit ruling that Rule 410 otherwise would

---

[2] Of course, the Government may take inconsistent positions in its briefing.  But in its briefing on the motion to find a knowing breach, the Government took only the position that Rule 410 would otherwise bar the admission of a factual basis in a plea agreement (albeit never clarifying which subsection of Rule 410 it believed compelled such an outcome).  [See Doc. # 110 at 16–17, 23.]  Now that the Government's strategy proved unavailing, it seeks reconsideration on the basis that Rule 410 never applied in the first place.  A motion for reconsideration is not a vehicle for the Government to take multiple proverbial bites of the apple until it finds a winning argument.  And while the Government argues that it was limited in its ability to address Rule 410's applicability because Puig first asserted the agreement was not binding in his opposition brief, the Government could have requested to expand the scope of its reply brief or raised the issue at oral argument.  What the Government should have done was wait until after an adverse ruling to raise new issues in a motion for reconsideration.

[3] That subsection disallows the admission of "a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea."  Fed. R. Evid. 410(a)(4).  The Court did not specifically find that Rule 410(a)(4), as opposed to another section of Rule 410, applied to the factual basis in its August 10, 2023 Order.

---

**CRIMINAL MINUTES - GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

| Case No. | CR 22-394(A)-DMG | | Date | October 5, 2023 |

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE | Page | 3 of 4 |

bar admission of the factual basis rests on well-trodden ground, as explained by, *inter alia*, the Fifth Circuit: "Courts have read Rules 410(a) and 11(f) to include statements made in the defendant's written plea agreement because such statements constitute evidence of the withdrawn guilty plea itself, *see* Fed. R. Evid. 410(a)(1) & (a)(3), and are "related" to a withdrawn guilty plea, Fed. R. Crim. P. 11(f)." *United States v. Escobedo*, 757 F.3d 229, 232 (5th Cir. 2014) (discussing authorities). The plain text of Rule 11(f) makes clear that Rule 410 covers more than just plea discussions. *See* Fed. R. Crim. P. 11(f) ("The admissibility or inadmissibility of a plea, a plea discussion, *and any related statement* is governed by Federal Rule of Evidence 410." (Emphasis added)).

The Court declines to further address the Government's arguments. The Court never ruled and neither party has maintained until now that Rule 410*(a)(4)* (the basis for the Government's first argument) applies to factual bases in plea agreements. The Government fails to show that its arguments about Rule 410(a)(4) fit within any of the grounds for reconsideration—or even to meaningfully address L.R. 7-18. *See* MFR at 3 n.2. As the Government itself acknowledges, Rule 410 arguments can be waived. *See* Reply at 7 n3.

The Government's second argument also merits little discussion, as the Court has already considered the parties' briefing and oral arguments on this issue and issued a detailed minute order explaining why the Court finds the Government's position unpersuasive. *See* L.R. 7-18; Doc. ## 141, 143. The Government cites to additional cases that do not constitute a change in the law following the Court's Order or otherwise meet the standard for appropriate arguments in a motion for reconsideration. *See* MFR at 6–7. The Government also, for the first time, attempts to argue that the plea agreement should be binding under the exception for a party's detrimental reliance on the agreement set forth in, *e.g.*, *United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir. 1992). This argument, based on longstanding Ninth Circuit authority, should not have first appeared in a motion for reconsideration and will not be considered by the Court. The Court does not further address the Government's arguments for reconsideration.

**B.     Impeachment**

The Government requests that the Court allow it to use the factual basis for impeachment, if Puig takes the stand and testifies inconsistently with the statement. MFR at 8. Specifically, the Government seeks to "(1) ask defendant if he executed a written statement during the course of this case, (2) ask him if he understood that statement, (3) ask him if his counsel assisted him in reviewing that statement, and (4) confront him with any portion of the Factual Basis inconsistent with his testimony." *Id.* at 8–9.

If Rule 410 applies to a given statement, it cannot be used for impeachment. *See United States v. Mezzanatto*, 998 F.2d 1452, 1454 (9th Cir. 1993) (Rule 410 does not include an exception for use of the evidence as impeachment), *reversed on other grounds*, 513 U.S. 200 (1995) (allowing a plea agreement to include a Rule 410 waiver). The Government points to no binding case law holding that there is an exception from the rule when evidence is used for impeachment, as opposed to some other purpose.

---

CR-11                            **CRIMINAL MINUTES - GENERAL**                  Initials of Deputy Clerk KT

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

| Case No. | CR 22-394(A)-DMG | | Date | October 5, 2023 |
|---|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE | Page | 4 of 4 |
|---|---|---|---|

Because the Court declines to reconsider its conclusion that Rule 410 applies to the factual basis and because the Government identifies no binding authority allowing evidence implicating Rule 410 to be admitted for impeachment, the Government's motion in this respect is also denied.

**III.**
**CONCLUSION**

The MFR is respectfully **DENIED.**

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CR 22-394(A)-DMG | Date | August 10, 2023 |

| | | | |
|---|---|---|---|
| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE | Page | 1 of 6 |

| Kane Tien | Not Reported | Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendant(s): | Present | Appt. | Ret. |
|---|---|---|---|---|---|---|---|
| Yasiel Puig Valdes | Not | | ✓ | Keri Axel | Not | | ✓ |

**Proceedings:  [IN CHAMBERS] ORDER DENYING MOTION TO FIND KNOWING BREACH OF PLEA AGREEMENT [110] AND AMENDING ORDER GRANTING MOTION TO FIND BREACH OF PLEA AGREEMENT [51]**

On July 7, 2022, Defendant Yasiel Puig Valdes executed a plea agreement ("the Agreement") agreeing to plead guilty to making false statements (*see* 18 U.S.C. § 1001(a)(2)) during an investigation into the Wayne Nix sports gambling ring, as set forth in the original indictment in this action.  *See* Plea Agr. [Doc. # 6.]  The Court never accepted this plea.  Rather, Puig decided not to plead guilty, and on January 6, 2023, the Court granted the Government's motion to find Puig had breached the Agreement in order that the Government could be relieved of any obligations it had undertaken in that Agreement.  The Court deferred any finding on whether the breach was "knowing."  [Doc. # 51.]

The Government now moves to find that the breach was "knowing," so that it may rely on the factual basis of the Agreement as trial evidence.  [Doc. # 110.]  The motion is fully briefed.  [Doc. ## 128, 135, 140.]  Because the Agreement was never accepted by the Court, the Court finds that its terms were unenforceable and, on that basis, **DENIES** the Government's motion.  The Court also amends its prior order finding that Puig had breached the Agreement and instead finds the Agreement unenforceable for the reasons stated herein, such that the Government was relieved of its obligations under that Agreement. [Doc. # 51.]

**I.**
**BACKGROUND**

**A.    The Charges**

The January 20, 2023 first superseding indictment ("FSI") adds one count of obstruction of justice (18 U.S.C. § 1503(a)) to the original charge of making false statements.  [Doc. # 54.]  According to the FSI, Puig is a former professional baseball player who placed bets through the Nix gambling business beginning no later than May 2019, owing $282,900 for sports gambling losses by June 17, 2019.  *Id.* ¶ 19.  To repay his losses, individuals identified in the information as "Agent 1" and "Individual B" allegedly both instructed Puig to pay amounts to "Individual A," and Puig accordingly purchased two cashiers' checks for $100,000 each, payable to that person, mailing the checks and texting Agent 1 and Individual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

| Case No. | CR 22-394(A)-DMG | | Date | August 10, 2023 |
|---|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE | | Page | 2 of 6 |
|---|---|---|---|---|

B confirmation. *Id.* ¶ 20–22. Puig then allegedly regained access to Nix's gambling websites and placed 899 bets on sporting events, including by placing bets through Agent 1. *Id.* ¶ 23–24.

The FSI further alleges that the Department of Homeland Security, Internal Revenue Service, and U.S. Attorney's Office interviewed Puig on January 27, 2022, as part of their investigation into illegal sports gambling and money laundering. *Id.* ¶¶ 6–7, 25. Puig was admonished against lying yet nevertheless allegedly made the following false statements: that he had never discussed sports betting with Agent 1, that he had placed a bet online "with an unknown person on an unknown website" that resulted in the $200,000 loss, and that he did not know the person who instructed him to send cashiers' checks to Individual A and had never communicated with that person via text message. *Id.* ¶ 29. Further, he allegedly obstructed justice by falsely stating that he had never discussed sports gambling with Agent 1 and withholding information about Agent 1's involvement in sports gambling. *Id.* ¶ 27.

**B.     Plea Discussions, Agreement, and Breach**

Defense attorney Keri Axel states that she contacted AUSA Jeff Mitchell on May 27, 2022 and requested to schedule a reverse proffer, which occurred June 6, 2022. 2/10/23 Axel Decl. ¶ 2 [Doc. # 59-1]; Decl. of Anthony Fernandez ¶ 4 [Doc. # 128-5]. After negotiations (the details of which are not relevant here), Puig ultimately signed a revised plea agreement on July 7, 2022. Plea Agr. That Agreement includes the following consequence for a "knowing" breach of the Agreement, "should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement"—

> Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) *the agreed to factual basis statement in this agreement*; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

Plea Agr. ¶ 22 (emphasis added). The Agreement also includes a paragraph stating that it is effective upon signature (*id.* ¶ 20) and, in the breach of agreement section, refers to breaches "at any time after the effective date." *Id.* ¶ 21.

On November 23, 2022, Puig appeared for his plea hearing and moved to continue the hearing. [Doc. # 24.] Defense counsel subsequently notified the Government that Puig did not intend to plead guilty, and on November 28, 2022, the Court vacated the plea hearing scheduled for November 29. [*See*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | CR 22-394(A)-DMG | | Date | August 10, 2023 |

| | | | | |
|---|---|---|---|---|
| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE | | Page | 3 of 6 |

Doc. # 26 at 3.[1]]  On December 2, 2022, the parties filed a stipulation requesting a trial date.  *Id.*  As noted above, the Court found Puig in breach of the Agreement but has yet to rule on whether the breach was "knowing."  [Doc. # 51.]

**II.**
**DISCUSSION**

Puig argues that because the Court did not hold a plea hearing (and thus has not formally accepted the plea), the plea is unenforceable, so that terms he agreed to regarding the consequences of a "knowing" breach are not binding.  Opp. at 11.

Puig is correct as a matter of law.  The Ninth Circuit has repeatedly held that until the Court accepts and enters a guilty plea, a plea agreement is not binding on the parties and either party may withdraw.  *See United States v. Kuchinski*, 469 F.3d 853, 858 (9th Cir. 2006) (Defendant "insists that once the government entered into a plea agreement, it was absolutely bound to the agreement's terms. . . .  He is wrong."); *United States v. Fagan*, 996 F.2d 1009, 1013 (9th Cir. 1993); *see also United States v. Savage*, 978 F.2d 1136, 1137 (9th Cir. 1992) ("'Unless and until a court accepts a guilty plea, a defendant is free to renege on a promise to so plead.'" (quoting *United States v. Papaleo*, 853 F.2d 16, 19 (1st Cir. 1988)); *cf. United States v. Washman*, 66 F.3d 210, 211 (9th Cir. 1995) ("Because we find that the district court had not accepted the agreement at the time [Defendant] attempted to withdraw, we hold that the district court erred in refusing to allow him to withdraw."); Fed. R. Crim P. 11(d)(1) (a defendant may withdraw a guilty plea before the court accepts the plea "for any reason or no reason").

The Government argues that this line of cases has been overruled by *Puckett v. United States*, 556 U.S. 129, 138 (2009), a case addressing the standard of review for a claim that the prosecutor breached the plea agreement, a claim which the defendant failed to contemporaneously raise.  *See id.* at 133.  *Puckett* does not concern the enforceability of a plea agreement where the plea was never accepted by the court. Nor does it implicitly overrule the cases cited above.  Rather, the most relevant part of *Puckett*'s holding is that the breach of a plea agreement *after the court accepts the plea* does not retroactively give rise to a claim that the opposing party's agreement to the plea was coerced or induced by fraud.  *Id.* at 137.[2]

---

[1] Citations to the record are to the CM/ECF pagination.

[2] *Fagan*, cited *supra*, relied on *Mabry v. Johnson*, 467 U.S. 504, 507 (1984), when it stated that "[a] plea bargain standing alone is without constitutional significance; in itself *it is a mere executory agreement* which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest."  (Emphasis added.)  Contrary to the Government's arguments, nothing in the Supreme Court's later opinion in *Puckett* calls this language from *Mabry* into question.  *See* Reply at 9.  Although the Government cites to a footnote in *Puckett* disavowing "any aspect of the *Mabry*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

| Case No. | CR 22-394(A)-DMG | | Date | August 10, 2023 |
|---|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE | Page | 4 of 6 |
|---|---|---|---|

The Government also argues that *Savage*'s language, specifically its reliance on certain Fifth Circuit authority that "neither the defendant nor the government is bound by a plea agreement until it is approved by the court," is no longer an accurate statement of the law. *See* Reply at 9 n.2; *see also Savage*, 978 F.2d at 1138 (quoting *United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir. 1980)). According to the Government, *United States v. Hyde*, 520 U.S. 670 (1997), overrules this reasoning. The Court disagrees. Although *Hyde* required a defendant to show a "fair and just reason" to withdraw a plea, it was in the context of a guilty plea *that had been accepted*. The district court had deferred decision on whether to accept the plea agreement after taking the guilty plea. *Id.* at 671; *see also* Fed. R. Crim P. 11(c)(3)(A) (allowing a court to accept a plea but defer a decision on whether to accept a binding plea agreement for certain types of pleas until after the court reviewed the presentence report). The opinion distinguishes between the acceptance of a guilty plea and the acceptance of a plea agreement—a distinction that is beside the point here.

Post-*Hyde*, the Ninth Circuit has affirmed the rule that parties are not bound by a plea agreement until the court accepts the plea. *See United States v. Alvarez-Tautimez*, 160 F.3d 573, 576 (9th Cir. 1998) (holding the defendant "had the absolute right to withdraw his plea before it was accepted by the district court" and that *Washman*'s holding on this point "has not been undercut by" *Hyde*); *United States v. Fernandez*, 65 F. App'x 144, 146 (9th Cir. 2003). In *Fernandez*, the Court reasoned as follows:

> The District Court properly considered whether an enforceable plea agreement existed and whether Fernandez detrimentally relied on a governmental plea offer. *United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir. 1992). Fernandez's reliance on *United States v. Hyde*, 520 U.S. 670, 670–73[](1997), is misplaced. *Hyde* dealt with when a plea of guilty could be withdrawn from the Court, it did not change the rule that a plea agreement could be withdrawn by either party before being submitted to and accepted by the Court. *Hyde*, 520 U.S. at 670–73. The District Court did not clearly err in concluding that no enforceable plea agreement existed because a signed agreement had not been submitted to and accepted by the Court. . . .

65 F. App'x at 146. As such, the law in the Ninth Circuit is clear: until the Court accepts a plea, the plea agreement does not bind the parties, and Puig is not bound by the terms of the Agreement here, including his Rule 410 waiver and acknowledgment that the factual basis of the plea could be introduced as evidence if he did not plead guilty.

---

dictum that contradicts our holding today" (556 U.S. at 138 n.1), this footnote does not concern the "executory agreement" discussion in *Puckett* cited above. *See Mabry*, 467 U.S. at 509. *Puckett* was concerned primarily with the suggestion that the prosecutor's breach of a promise in a plea agreement renders the plea unknowing or involuntary.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CR 22-394(A)-DMG | Date | August 10, 2023 |

| | | | |
|---|---|---|---|
| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE | Page | 5 of 6 |

  The Government alternatively argues that the Court is bound by the law of the case to its previous ruling that Puig breached the Plea Agreement. Reply at 5. In the briefing on the Government's motion to find a breach of the Agreement, neither side alerted the Court to the case law discussed *supra*. Rather, the Government argued that it should be relieved from its obligations under the Agreement because Puig failed to plead guilty [Doc. # 33], and Puig responded that based on contract law principles, the Government had suffered no injury and could not claim breach of the Agreement. [Doc. # 45.] Puig also argued that the Government's requested relief was unspecified, overbroad, and not ripe. *Id.* The Court found that Puig breached the Agreement by failing to plead guilty, so that the Government was relieved of its obligation not to prosecute Puig for obstruction of justice. [Doc. # 51.] Implicit in this ruling was a finding that the parties were bound by their promises in the Agreement—a finding that was erroneous under the clear and binding authority cited above. The law of the case does not apply where a decision is clearly erroneous and its enforcement would work a manifest injustice. *Grand Canyon Trust v. Provencio*, 26 F.4th 815, 821 (9th Cir. 2022). Moreover, the Court is always free to correct its own errors of law. Having now been apprised of the applicable case law, the Court corrects its prior order insofar as it relieved the Government of its obligations on the basis of Puig's purported breach—the Government is still relieved of its obligations under the Agreement, but on the ground that the Agreement is unenforceable given that the Court had not yet accepted Puig's plea.

  Finally, the Government argues that Puig's plea agreement includes language that Puig specifically agreed to be bound by the Agreement upon signing. Reply at 10. But neither the Government nor the Court has located any Ninth Circuit authority holding that Puig is bound by his Rule 410 waiver even if his plea is not accepted by the Court. The Government's argument is contrary to the rule in this Circuit (as set forth above) that plea agreements are "implicitly conditioned on court approval" (*see United States v. Alvarado-Arriola*, 742 F.2d 1143, 1145 (9th Cir. 1984)) and are not binding on the parties until such approval. *See Savage*, 978 F.2d at 1138. *Cf. United States v. Floyd*, 1 F.3d 867, 870–71 (9th Cir. 1993) (Where parties may have intended to modify a plea agreement after acceptance, but no Rule 11 hearing was held regarding the modification, the defendant was "deprived of the safeguards Rule 11 was enacted to impose" with respect to the modification; *Washman*, 66 F.3d at 212 & n.5 (explaining that a plea agreement is not binding until it is accepted by the Court and that "[i]ncluded in the promises [the defendant] was free to reject was his waiver of the right to appeal.").

  Moreover, even if the inclusion of language purporting to render the Agreement effective upon signature could transform the executory nature of the Agreement, making some portions of the Agreement immediately enforceable, that language would need to be knowing, voluntary, clear and unambiguous. *See United States v. Lo*, 839 F.3d 777, 783 (9th Cir. 2016). Paragraph 22 of the Agreement, which includes the Rule 410 waiver, refers to the Court's finding of a "knowing breach." The Agreement does not specifically state that Defendant gives up his right to argue against admission of the factual basis even if the Court does not accept the plea and notwithstanding the general rule that there are no binding obligations that can be breached until the Court accepts the plea.

---

| | | |
|---|---|---|
| CR-11 | **CRIMINAL MINUTES - GENERAL** | Initials of Deputy Clerk KT |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

| Case No. | CR 22-394(A)-DMG | | Date | August 10, 2023 |
|---|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE | Page | 6 of 6 |
|---|---|---|---|

In light of the authority cited above, the Court is not convinced that an agreement to be bound at the time of the signing of the agreement has any more force than the remainder of the agreement, until the plea has been accepted.  Further, the Court is not inclined to enforce language in the Agreement that effectively subverts established binding case law.

**III.**
**CONCLUSION**

The motion to admit the factual basis is **DENIED**.  [Doc. # 110.]  The order finding a breach of the plea agreement is hereby **AMENDED** to reflect that the Agreement was not breached, but was unenforceable for the reasons stated herein, such that the Government was relieved of its obligations under that Agreement.  [Doc # 51.]

**IT IS SO ORDERED.**

<u>CERTIFICATION OF UNITED STATES ATTORNEY</u>

I hereby certify that this appeal is not taken for purpose of delay and that the evidence excluded is substantial proof of a fact material in the proceeding.

DATED: November 3, 2023

_____
E. MARTIN ESTRADA
United States Attorney

<u>AMENDED CERTIFICATION OF UNITED STATES ATTORNEY</u>

I hereby certify that the appeal filed on November 1, 2023, at Docket Number 165, is not taken for purpose of delay and that the evidence excluded is substantial proof of a fact material in the proceeding.

DATED: November 7, 2023

_____
E. MARTIN ESTRADA
United States Attorney

1/10/24, 2:42 PM                        CM/ECF - California Central District

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CRIMINAL DOCKET FOR CASE #: 2:22-cr-00394-DMG-1

Case title: USA v. Puig Valdes                        Date Filed: 08/29/2022

Other court case number:  2:22-cr-00080 DMG

---

Assigned to: Judge Dolly M. Gee

Appeals court case number: 23-3214 9th
CCA

### Defendant (1)

**Yasiel Puig Valdes**                    represented by   **Keri Curtis Axel**
REG 31827-510                                             Waymaker LLP
                                                          515 South Flower Street Suite 3500
                                                          Los Angeles, CA 90071
                                                          424-652-7800
                                                          Fax: 424-652-7850
                                                          Email: kaxel@waymakerlaw.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Retained*

                                                          **Emily Rebecca Megan Stierwalt**
                                                          Waymaker LLP
                                                          515 South Flower Street Suite 3500
                                                          Los Angeles, CA 90071
                                                          424-652-7800
                                                          Fax: 424-652-7850
                                                          Email: estierwalt@waymakerlaw.com
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Retained*

                                                          **Jose R Nuno**
                                                          Waymaker LLP
                                                          515 South Flower Street Suite 3500
                                                          Los Angeles, CA 90071
                                                          424-652-7800
                                                          Fax: 424-652-7850
                                                          Email: jnuno@waymakerlaw.com
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Retained*

                                                          **Riley Portz Smith**
                                                          Waymaker LLP
                                                          515 South Flower Street, Suite 3500
                                                          Los Angeles, CA 90071

ER 287

424-652-7800
Email: rsmith@waymakerlaw.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Pending Counts**                                   **Disposition**

18:1001(a)(2) MAKING FALSE
STATEMENTS
(1)

18:1503(a) OBSTRUCTION OF JUSTICE
(1s)

18:1001(a)(2) MAKING FALSE
STATEMENTS
(2s)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                       **Disposition**

None

---

**Plaintiff**

**USA**                          represented by  **Jeff P Mitchell**
                                                 AUSA - Office of US Attorney
                                                 Major Frauds Section
                                                 312 North Spring Street 11th Floor
                                                 Los Angeles, CA 90012
                                                 213-894-0698
                                                 Fax: 213-894-3713
                                                 Email: jeff.mitchell@usdoj.gov
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*
                                                 *Designation: Assistant US Attorney*

                                                 **Daniel G. Boyle**
                                                 AUSA - Office of US Attorney
                                                 General Crimes Section
                                                 312 North Spring Street 14th Floor
                                                 Los Angeles, CA 90012
                                                 213-894-2426
                                                 Fax: 213-894-0142

Email: daniel.boyle2@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/29/2022 | 1 | INFORMATION filed as to Yasiel Puig Valdes (1) count(s) 1. Offense occurred in Los Angeles. (cio) (Entered: 09/02/2022) |
| 08/29/2022 | 2 | CASE SUMMARY filed by AUSA Jeff Mitchell as to Defendant Yasiel Puig Valdes; defendants Year of Birth: 1990 (cio) (Entered: 09/02/2022) |
| 08/29/2022 | 6 | PLEA AGREEMENT filed by Plaintiff USA as to Defendant Yasiel Puig Valdes (cio) (Entered: 09/02/2022) |
| 08/29/2022 | 7 | NOTICE of Related Case(s) filed by Plaintiff USA as to Defendant Yasiel Puig Valdes Related Case(s): CR 22-80-DMG, (cio) (Entered: 09/02/2022) |
| 08/29/2022 | 8 | GOVERNMENT'S EX PARTE APPLICATION FOR ORDER SEALING INFORMATION AND RELATED DOCUMENTS; DECLARATION OF JEFF MITCHELL (cio) (Entered: 09/02/2022) |
| 09/02/2022 | 9 | ORDER by Judge Josephine L. Staton: granting 8 EX PARTE APPLICATION to Seal Case as to Yasiel Puig Valdes (1) (cio) (Entered: 09/02/2022) |
| 09/07/2022 | 10 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 21-01 Related Case filed. Related Case No: 2:22-cr-00080 DMG. Case, as to Defendant Yasiel Puig Valdes, transferred from Judge Josephine L. Staton to Judge Dolly M. Gee for all further proceedings. The case number will now reflect the initials of the transferee Judge 2:22-cr-00394 DMG. Signed by Judge Dolly M. Gee (rn) (Entered: 09/07/2022) |
| 11/10/2022 | 13 | EX PARTE APPLICATION to Unseal Case Filed by Plaintiff USA as to Defendant Yasiel Puig Valdes. (ja) (Entered: 11/14/2022) |
| 11/14/2022 | 14 | ORDER by Judge Dolly M. Gee granting 13 EX PARTE APPLICATION to Unseal Case as to Yasiel Puig Valdes (1) (ja) (Entered: 11/14/2022) |
| 11/15/2022 | 16 | NOTICE OF REQUEST FOR DETENTION filed by Plaintiff USA as to Defendant Yasiel Puig Valdes (cio) (Entered: 11/17/2022) |
| 11/15/2022 | 17 | MINUTES OF SUMMONS ON INFORMATION HEARING held before Magistrate Judge Patricia Donahue as to Defendant Yasiel Puig Valdes. Defendant states true name as charged. Attorney: Keri Curtis Axel for Yasiel Puig Valdes, Retained, present. Special Appearance made by attorney Jose Nuno. Court orders bail set as: Yasiel Puig Valdes (1) Person Recognizance, (Signature Only). PIA held; see separate PIA minutes. Waiver of Indictment filed. (SPANISH) Interpreter required. Court Smart: CS 11/15/2022. (cio) (Entered: 11/17/2022) |
| 11/15/2022 | 18 | WAIVER OF INDICTMENT by Defendant Yasiel Puig Valdes before Magistrate Judge Patricia Donahue (cio) (Entered: 11/17/2022) |
| 11/15/2022 | 19 | ADVISEMENT OF STATUTORY & CONSTITUTIONAL RIGHTS filed by Defendant Yasiel Puig Valdes. (cio) (Entered: 11/17/2022) |
| 11/15/2022 | 20 | WAIVER of Preliminary Examination or Hearing by Defendant Yasiel Puig Valdes (cio) (Entered: 11/17/2022) |
| 11/15/2022 | 22 | MINUTES OF POST-INDICTMENT ARRAIGNMENT: held before Magistrate Judge Patricia Donahue as to Defendant Yasiel Puig Valdes (1) Count 1. Defendant arraigned, |

ER 289

states true name is the name on the charging document. Attorney: Keri Curtis Axel and Jose Nuno, Retained present. Case assigned to Judge Dolly M. Gee.( The guilty plea is set for 11/23/2022 02:30 PM before Judge Dolly M. Gee.), (Spanish) INTERPRETER Required as to Defendant Yasiel Puig Valdes. If there is a plea agreement in the case, a courtesy copy of the plea agreement shall be delivered to the Clerk's Office Window on the 4th floor @ 350 West 1st Street, Attention: Kane G. Tien, Clerk to Judge Gee, within two days of the PIA hearing. Court Smart: CS 11/15/2022. (tba) (Entered: 11/19/2022)

| Date | No. | Description |
|------|-----|-------------|
| 11/16/2022 | 15 | NOTICE OF APPEARANCE OR REASSIGNMENT of AUSA Daniel G. Boyle on behalf of Plaintiff USA. Filed by Plaintiff USA. (Attorney Daniel G. Boyle added to party USA(pty:pla))(Boyle, Daniel) (Entered: 11/16/2022) |
| 11/16/2022 | 21 | BOND AND CONDITIONS OF RELEASE filed as to Defendant Yasiel Puig Valdes conditions of release: Personal Recognizance (Signature Only) approved by Magistrate Judge Patricia Donahue. (cio) (Entered: 11/17/2022) |
| 11/18/2022 | 23 | NOTICE OF CLERICAL ERROR, as to Defendant Yasiel Puig Valdes: Due to clerical error the document was filed on the wrong case Re: NOTICE OF REQUEST FOR DETENTION filed by Plaintiff USA as to Defendant Yasiel Puig Valdes 16 (ja) (Entered: 11/21/2022) |
| 11/23/2022 | 24 | MINUTES OF Status Conference Re Guilty Plea Hearing held before Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Defendant orally move to continue thehearing. The Court hears argument. The matter is continued to 11/29/2022 03:30 PM before Judge Dolly M. Gee. Court Reporter: Judy Moore. (gk) (Entered: 11/23/2022) |
| 11/28/2022 | 25 | IN CHAMBERS) ORDER by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Pursuant to the parties' request, the Court hereby VACATES the guilty plea hearing on November 29, 2022. IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kti) TEXT ONLY ENTRY (Entered: 11/28/2022) |
| 12/02/2022 | 26 | STIPULATION for Order Requesting Trial Date filed by Plaintiff USA as to Defendant Yasiel Puig Valdes (Attachments: # 1 Proposed Order)(Mitchell, Jeff) (Entered: 12/02/2022) |
| 12/02/2022 | 27 | ORDER SETTING TRIAL DATE by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Jury Trial set for 1/10/2023 08:30 AM before Judge Dolly M. Gee. Pretrial Conference set for 12/13/2022 02:00 PM before Judge Dolly M. Gee. (gk) (Entered: 12/02/2022) |
| 12/02/2022 | 28 | CRIMINAL MOTION AND TRIAL ORDER by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Jury Trial set for 1/10/2023 08:30 AM before Judge Dolly M. Gee. Pretrial Conference set for 12/13/2022 02:00 PM before Judge Dolly M. Gee. See document for further details. (gk) (Entered: 12/02/2022) |
| 12/02/2022 | 29 | NOTICE OF CLERICAL ERROR, as to Defendant Yasiel Puig Valdes Re: Criminal Motion and Trial Order by Judge Dolly M. Gee filed 12/2/2022 28 . Due to clerical error, attachments are missing from the PDF. See corrected document attached hereto. (Attachments: # 1 Corrected Order) (gk) (Entered: 12/02/2022) |
| 12/05/2022 | 30 | WAIVER of Defendants Presence filed by Defendant Yasiel Puig Valdes (Axel, Keri) (Entered: 12/05/2022) |
| 12/12/2022 | 31 | STIPULATION to Continue Trial Date from 1-10-23 to 2-14-23 filed by Plaintiff USA as to Defendant Yasiel Puig Valdes (Attachments: # 1 Proposed Order)(Mitchell, Jeff) (Entered: 12/12/2022) |
| 12/12/2022 | 32 | ORDER CONTINUING TRIAL DATE AND FINDINGS REGARDING EXCLUDABLE TIME PERIODS PURSUANT TO SPEEDY TRIAL ACT by Judge |

| | | |
|---|---|---|
| | | Dolly M. Gee as to Defendant Yasiel Puig Valdes. Jury Trial is continued to 2/14/2023 08:30 AM before Judge Dolly M. Gee. Pretrial Conference is continued to 2/1/2023 02:30 PM before Judge Dolly M. Gee. (gk) (Entered: 12/12/2022) |
| 12/14/2022 | 33 | NOTICE OF MOTION AND MOTION for Order for GOVERNMENTS MOTION FOR BREACH OF PLEA AGREEMENT Filed by Plaintiff USA as to Defendant Yasiel Puig Valdes. (Mitchell, Jeff) (Entered: 12/14/2022) |
| 12/15/2022 | 34 | Notice of Appearance or Withdrawal of Counsel: for attorney Jose R Nuno counsel for Defendant Yasiel Puig Valdes. Filed by Defendant Yasiel Puig Valdes. (Attorney Jose R Nuno added to party Yasiel Puig Valdes(pty:dft))(Nuno, Jose) (Entered: 12/15/2022) |
| 12/15/2022 | 35 | EX PARTE APPLICATION for Protective Order Filed by Plaintiff USA as to Defendant Yasiel Puig Valdes. (Attachments: # 1 Proposed Order) (Boyle, Daniel) (Entered: 12/15/2022) |
| 12/16/2022 | 36 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Document RE: NOTICE OF MOTION AND MOTION for Order for GOVERNMENTS MOTION FOR BREACH OF PLEA AGREEMENT 33 . The following error(s) was/were found: Local Rule 7-3 compliance statement missing. Hearing information is missing, incorrect, or untimely. Proposed document was not submitted or was not submitted as a separate attachment. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (gk) (Entered: 12/16/2022) |
| 12/16/2022 | 37 | (IN CHAMBERS) ORDER by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Defendant shall file any opposition to the Government's ex parte application 35 by December 19, 2022. IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kti) TEXT ONLY ENTRY (Entered: 12/16/2022) |
| 12/16/2022 | 38 | NOTICE OF LODGING filed by Plaintiff USA as to Defendant Yasiel Puig Valdes (Attachments: # 1 Proposed Order)(Mitchell, Jeff) (Entered: 12/16/2022) |
| 12/19/2022 | 39 | (IN CHAMBERS) ORDER by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Defendant shall file any opposition to the Government's Motion for Breach of Plea Agreement 33 by December 28, 2022. The Government shall file any reply in support of the motion by January 4, 2023. Thereafter, the matter will stand submitted. IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kti) TEXT ONLY ENTRY (Entered: 12/19/2022) |
| 12/19/2022 | 40 | OBJECTION to EX PARTE APPLICATION for Protective Order 35 , filed by Defendant Yasiel Puig Valdes (Axel, Keri) (Entered: 12/19/2022) |
| 12/19/2022 | 41 | DECLARATION of Keri Curtis Axel filed by Defendant Yasiel Puig Valdes (Attachments: # 1 Exhibit A)(Axel, Keri) (Entered: 12/19/2022) |
| 12/19/2022 | 42 | OPPOSITION to EX PARTE APPLICATION for Protective Order 35 filed by Defendant Yasiel Puig Valdes. (Attachments: # 1 Proposed Order)(Axel, Keri) (Entered: 12/19/2022) |
| 12/20/2022 | 43 | REPLY in Support of EX PARTE APPLICATION for Protective Order 35 (Boyle, Daniel) (Entered: 12/20/2022) |
| 12/21/2022 | 44 | PROTECTIVE ORDER REGARDING DISCOVERY CONTAINING CONFIDENTIAL INFORMATION 35 by Judge Dolly M. Gee as to Yasiel Puig Valdes. (lom) (Entered: 12/21/2022) |
| 12/28/2022 | 45 | OPPOSITION to NOTICE OF MOTION AND MOTION for Order for GOVERNMENTS MOTION FOR BREACH OF PLEA AGREEMENT 33 filed by |

ER 291

| | | Defendant Yasiel Puig Valdes. (Axel, Keri) (Entered: 12/28/2022) |
|---|---|---|
| 01/04/2023 | 46 | REPLY to Opposition to Motion (CR) 45 , filed by Plaintiff USA as to Defendant Yasiel Puig Valdes (Mitchell, Jeff) (Entered: 01/04/2023) |
| 01/04/2023 | 47 | NOTICE of Manual Filing of Under Seal Documents filed by Plaintiff USA as to Defendant Yasiel Puig Valdes (Mitchell, Jeff) (Entered: 01/04/2023) |
| 01/05/2023 | 48 | SEALED - GOVERNMENT'S EX PARTE APPLICATION FOR ORDER SEALING DOCUMENT; DECLARATION OF JEFF MITCHELL (bm) (Entered: 01/05/2023) |
| 01/05/2023 | 49 | ORDER SEALING DOCUMENT 47 by Judge Dolly M. Gee granting 48 EX PARTE APPLICATION as to Yasiel Puig Valdes (1) (bm) (Entered: 01/05/2023) |
| 01/05/2023 | 50 | SEALED - NOTICE OF LODGING OF DECLARATION AND EXHIBITS IN SUPPORT OF GOVERNMENT'S MOTION FOR BREACH OF PLEA AGREEMENT (bm) (Entered: 01/05/2023) |
| 01/06/2023 | 51 | MINUTES (IN CHAMBERS) ORDER GRANTING MOTION TO FIND BREACH OF PLEA AGREEMENT by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. The Court GRANTS the Government's Motion 33 . The Court finds that the Government substantially complied with the Court's Order. The Court finds Defendant in breach of the plea agreement. The Government therefore is relieved of any obligations it undertook in the plea agreement. (gk) (Entered: 01/06/2023) |
| 01/17/2023 | 52 | STIPULATION to Continue Trial Date from February 14, 2023 to April 25, 2023 filed by Plaintiff USA as to Defendant Yasiel Puig Valdes (Attachments: # 1 Proposed Order) (Mitchell, Jeff) (Entered: 01/17/2023) |
| 01/19/2023 | 53 | ORDER CONTINUING TRIAL DATE AND FINDINGS REGARDING EXCLUDABLE TIME PERIODS PURSUANT TO SPEEDY TRIAL ACT by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Jury Trial is continued to 4/25/2023 08:30 AM before Judge Dolly M. Gee. Pretrial Conference is continued to 4/12/2023 02:00 PM before Judge Dolly M. Gee. (gk) (Entered: 01/20/2023) |
| 01/20/2023 | 54 | FIRST SUPERSEDING INDICTMENT Filed as to Yasiel Puig Valdes (1) count(s) 1s, 2s. (cio) (Entered: 01/20/2023) |
| 01/20/2023 | 55 | CASE SUMMARY filed by AUSA Jeff Mitchell as to Defendant Yasiel Puig Valdes; defendants Year of Birth: 1990 (cio) (Entered: 01/20/2023) |
| 01/20/2023 | 56 | TRANSCRIPT filed as to Defendant Yasiel Puig Valdes for proceedings held on 11/23/22 2:33 p.m.. Court Reporter: JUDY K MOORE, CRR, RMR, Email: JUDYMOORE9@GMAIL.COM. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Electronic Court Recorder before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 2/10/2023. Redacted Transcript Deadline set for 2/21/2023. Release of Transcript Restriction set for 4/20/2023.(ha) (Entered: 01/23/2023) |
| 01/20/2023 | 57 | NOTICE OF FILING TRANSCRIPT filed as to Defendant Yasiel Puig Valdes for proceedings 11/20/23 @ 2:33 p.m. re Transcript 56 THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (ha) TEXT ONLY ENTRY (Entered: 01/23/2023) |
| 01/24/2023 | 58 | TRANSCRIPT ORDER as to Defendant Yasiel Puig Valdes for Court Reporter. Order for: Criminal Non Appeal. Court will contact Alexis Galindo at agalindo@waymakerlaw.com with further instructions regarding this order. Transcript preparation will not begin until payment has been satisfied with the court reporter.(Axel, Keri) (Entered: 01/24/2023) |

ER 292

| | | |
|---|---|---|
| 02/10/2023 | 59 | NOTICE OF MOTION AND MOTION to Compel Discovery *YASIEL PUIGS NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY REGARDING SELECTIVE PROSECUTION* Filed by Defendant Yasiel Puig Valdes. Motion set for hearing on 3/15/2023 at 08:30 AM before Judge Dolly M. Gee. (Attachments: # 1 Declaration of Keri Axel ISO Mot to Compel Discovery re Selective Prosecution) (Axel, Keri) (Entered: 02/10/2023) |
| 02/10/2023 | 60 | NOTICE of Manual Filing of Under Seal Pleadings; Ex Parte Application to Seal; Proposed Order to Seal filed by Defendant Yasiel Puig Valdes (Axel, Keri) (Entered: 02/10/2023) |
| 02/10/2023 | 71 | MINUTES OF POST-INDICTMENT ARRAIGNMENT: held before Magistrate Judge Pedro V. Castillo as to Defendant Yasiel Puig Valdes (1) Count 1,1s,2s. Defendant arraigned, states true name is the name on the charging document. Defendant entered not guilty plea to all counts as charged. Attorney: Keri Curtis Axel, Retained present. Case assigned to Judge Dolly M. Gee.( Jury Trial set for 4/25/2023 08:30 AM before Judge Dolly M. Gee., Pretrial Conference set for 4/12/2023 02:00 PM before Judge Dolly M. Gee.), (Spanish) INTERPRETER Required as to Defendant Yasiel Puig Valdes Court Smart: CS 02/10/2023. (tba) (Entered: 02/15/2023) |
| 02/13/2023 | 61 | DECLARATION of Keri C. Axel filed by Defendant Yasiel Puig Valdes RE: NOTICE OF MOTION AND MOTION to Compel Discovery *YASIEL PUIGS NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY REGARDING SELECTIVE PROSECUTION 59 AMENDED DECLARATION OF KERI CURTIS AXEL IN SUPPORT OF DEFENDANT YASIEL PUIG VALDES MOTION TO COMPEL DISCOVERY RE SELECTIVE PROSECUTION WITH EXHIBITS* (Axel, Keri) (Entered: 02/13/2023) |
| 02/14/2023 | 62 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Document RE: NOTICE OF MOTION AND MOTION to Compel Discovery *YASIEL PUIGS NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY REGARDING SELECTIVE PROSECUTION 59* . The following error(s) was/were found: Proposed document was not submitted or was not submitted as a separate attachment. Hearing information is missing, incorrect, or untimely. The filer set this matter for hearing on 3/15/2023 at 8:30 AM. Judge Gee hears criminal motions on Wednesdays at 2:30 PM. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (gk) (Entered: 02/14/2023) |
| 02/14/2023 | 63 | SEALED - DEFENDANT YASIEL PUIG VALDES' EX-PARTE APPLICATION FOR ORDER SEALING EXCERPTS OF PUIG'S MOTION TO COMPEL DISCOVERY RE SELECTIVE PROSECUTION AND DECLARATION OF JOSE R. NUNO IN SUPPORT OF MOTION TO COMPEL (bm) (Entered: 02/14/2023) |
| 02/14/2023 | 64 | SEALED - DECLARATION OF JOSE R. NUNO IN SUPPORT OF DEFENDANT YASIEL PUIG VALDES' APPLICATION TO SEAL (bm) (Entered: 02/14/2023) |
| 02/14/2023 | 65 | ORDER GRANTING DEFENDANT YASIEL PUIG VALDES' EX PARTE APPLICATION FOR ORDER SEALING EXCERPTS OF PUIG'S MOTION TO COMPEL DISCOVERY RE SELECTIVE PROSECUTION AND DECLARATION OF JOSE R. NUNO IN SUPPORT OF MOTION TO COMPEL 60 by Judge Dolly M. Gee granting 63 EX PARTE APPLICATION as to Yasiel Puig Valdes (1) (bm) (Entered: 02/14/2023) |
| 02/14/2023 | 66 | SEALED - YASIEL PUIG'S NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY REGARDING SELECTIVE PROSECUTION (bm) (Entered: 02/14/2023) |

| | | |
|---|---|---|
| 02/14/2023 | 67 | SEALED - DECLARATION OF JOSE R. NUNO IN SUPPORT OF DEFENDANT YASIEL PUIG VALDES' MOTION TO COMPEL DISCOVERY RE SELECTIVE PROSECUTION (bm) (Entered: 02/14/2023) |
| 02/14/2023 | 68 | SEALED DOCUMENT - UNDER SEAL (bm) (Entered: 02/14/2023) |
| 02/14/2023 | 69 | WAIVER of Defendants Presence filed by Defendant Yasiel Puig Valdes (Axel, Keri) (Entered: 02/14/2023) |
| 02/14/2023 | 70 | PROOF OF SERVICE of 1. YASIEL PUIG'S NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY REGARDING SELECTIVE PROSECUTION; 2. DECLARATION OF JOSE R. NUNO IN SUPPORT OF DEFENDANT YASIEL PUIG VALDES' MOTION TO COMPEL DISCOVERY RE SELECTIVE PROSECUTION, served on 2/10/2023, by Defendant Yasiel Puig Valdes re MOTION 66 , Declaration 67 . (bm) (Entered: 02/14/2023) |
| 02/22/2023 | 72 | (IN CHAMBERS) ORDER by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. The Court sua sponte continues Defendant's motion to compel discovery regarding selective prosecution 59 on March 15, 2023 from 8:30 a.m. to 2:30 p.m. IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kti) TEXT ONLY ENTRY (Entered: 02/22/2023) |
| 02/22/2023 | 73 | OPPOSITION to NOTICE OF MOTION AND MOTION to Compel Discovery *YASIEL PUIGS NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY REGARDING SELECTIVE PROSECUTION* 59 , NOTICE OF MOTION AND MOTION for Order for 66 filed by Plaintiff USA as to Defendant YASIEL PUIG VALDES. (Attachments: # 1 Declaration of AUSA Jeff Mitchell, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K)(Boyle, Daniel) (Entered: 02/22/2023) |
| 02/22/2023 | 74 | NOTICE of Manual Filing of Application to Seal Exhibits filed by Plaintiff USA as to Defendant Yasiel Puig Valdes (Boyle, Daniel) (Entered: 02/22/2023) |
| 02/22/2023 | 75 | SEALED - GOVERNMENT'S EX PARTE APPLICATION FOR ORDER SEALING DOCUMENTS; DECLARATION OF JEFF MITCHELL (bm) (Entered: 02/22/2023) |
| 02/22/2023 | 76 | SEALED - ORDER SEALING DOCUMENT 74 (bm) (Entered: 02/22/2023) |
| 02/22/2023 | 77 | SEALED - NOTICE OF LODGING OF EXHIBITS IN SUPPORT OF GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY (bm) (Entered: 02/22/2023) |
| 03/01/2023 | 78 | NOTICE of Manual Filing of Under Seal Pleadings; Ex Parte Application to Seal; Declaration ISO Application to File Under Seal; Proposed Order to Seal filed by Defendant Yasiel Puig Valdes (Axel, Keri) (Entered: 03/01/2023) |
| 03/01/2023 | 79 | NOTICE of Manual Filing of Application for In Camera Review; Declaration ISO Application for In Camera Review; Proposed Order Granting In Camera Review filed by Defendant Yasiel Puig Valdes (Axel, Keri) (Entered: 03/01/2023) |
| 03/01/2023 | 80 | DECLARATION of Keri Curtis Axel re NOTICE OF MOTION AND MOTION to Compel Discovery *YASIEL PUIGS NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY REGARDING SELECTIVE PROSECUTION* 59 filed by Defendant Yasiel Puig Valdes. (Attachments: # 1 Exhibit EXHIBITS 2-6 ATTACHED TO REPLY DECLARATION OF KERI CURTIS AXEL ISO DEFENDANT YASIEL PUIGS REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY REGARDING SELECTIVE PROSECUTION)(Axel, Keri) (Entered: 03/01/2023) |

ER 294

| 03/01/2023 | 81 | REPLY Reply in Support of NOTICE OF MOTION AND MOTION to Compel Discovery *YASIEL PUIGS NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY REGARDING SELECTIVE PROSECUTION* 59 filed by Defendant Yasiel Puig. (Nuno, Jose) (Entered: 03/01/2023) |
| --- | --- | --- |
| 03/02/2023 | 82 | SEALED - DEFENDANT YASIEL PUIG VALDES' EX-PARTE APPLICATION FOR ORDER SEALING EXHIBITS 2-6 ATTACHED TO REPLY DECLARATION OF KERI CURTIS AXEL (bm) (Entered: 03/02/2023) |
| 03/02/2023 | 83 | SEALED - DECLARATION OF JOSE R. NUNO IN SUPPORT OF DEFENDANT YASIEL PUIG VALDES' APPLICATION TO SEAL (bm) (Entered: 03/02/2023) |
| 03/02/2023 | 84 | SEALED - PROOF OF SERVICE (bm) (Entered: 03/02/2023) |
| 03/02/2023 | 85 | SEALED - ORDER GRANTING DEFENDANT YASIEL PUIG VALDES' EX PARTE APPLICATION FOR ORDER SEALING EXHIBITS 2-6 ATTACHED TO REPLY DECLARATION OF KERI CURTIS AXEL 78 (bm) (Entered: 03/02/2023) |
| 03/02/2023 | 86 | SEALED - DEFENDANT YASIEL PUIG VALDES' EXHIBITS 2-6 (bm) (Entered: 03/02/2023) |
| 03/08/2023 | 91 | EX PARTE APPLICATION for Leave to File Sur-Reply. Filed by Plaintiff USA as to Defendant Yasiel Puig Valdes. (Attachments: # 1 Proposed Order, # 2 Proposed Sur-Reply, # 3 Declaration of AUSA Jeff Mitchell, # 4 Exhibit L) (Boyle, Daniel) (Entered: 03/08/2023) |
| 03/08/2023 | 92 | NOTICE of Manual Filing of of Sealing Application filed by Plaintiff USA as to Defendant Yasiel Puig Valdes (Boyle, Daniel) (Entered: 03/08/2023) |
| 03/10/2023 | 93 | Notice of Appearance or Withdrawal of Counsel: for attorney Emily Rebecca Megan Stierwalt counsel for Defendant Yasiel Puig Valdes. Adding Emily R. Stierwalt as counsel of record for Yasiel Puig Valdes for the reason indicated in the G-123 Notice. Filed by Defendant Yasiel Puig Valdes. (Stierwalt, Emily) (Entered: 03/10/2023) |
| 03/10/2023 | 94 | ORDER RE EX PARTE APPLICATION FOR LEAVE TO FILE A SUR-REPLY by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. IT IS HEREBY ORDERED that the Government's Ex Parte Application 91 is GRANTED. The Government may file forthwith a sur-reply, in the form attached by the Government to the Government's ex parte application. (gk) (Entered: 03/10/2023) |
| 03/10/2023 | 95 | SEALED - GOVERNMENT'S EX PARTE APPLICATION FOR ORDER SEALING DOCUMENT; DECLARATION OF JEFF MITCHELL (bm) (Entered: 03/10/2023) |
| 03/10/2023 | 96 | SEALED - ORDER SEALING DOCUMENT 92 (bm) (Entered: 03/10/2023) |
| 03/10/2023 | 97 | SEALED - NOTICE OF LODGING OF EXHIBIT IN SUPPORT OF GOVERNMENT'S SUR-REPLY TO DEFENDANT'S MOTION TO COMPEL DISCOVERY (bm) (Entered: 03/10/2023) |
| 03/10/2023 | 98 | SEALED - EXHIBIT L (bm) (Entered: 03/10/2023) |
| 03/10/2023 | 99 | Supplemental MEMORANDUM in Opposition to NOTICE OF MOTION AND MOTION to Compel Discovery *YASIEL PUIGS NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY REGARDING SELECTIVE PROSECUTION* 59 (Attachments: # 1 Declaration of AUSA Jeff Mitchell)(Boyle, Daniel) (Entered: 03/10/2023) |
| 03/13/2023 | 100 | (IN CHAMBERS) ORDER by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Due to the Court's trial calendar, Defendant's motion to compel discovery regarding selective prosecution 59 66 is hereby continued from March 15, 2023 to March 17, 2023 |

ER 295

| | | |
|---|---|---|
| | | at 3:00 p.m. IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kti) TEXT ONLY ENTRY (Entered: 03/13/2023) |
| 03/15/2023 | 101 | (IN CHAMBERS) ORDER by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. The Court sua sponte continues Defendant's motion to compel discovery regarding selective prosecution 59 66 from March 17, 2023 to March 24, 2023 at 3:00 p.m. IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kti) TEXT ONLY ENTRY (Entered: 03/15/2023) |
| 03/22/2023 | 102 | (IN CHAMBERS) ORDER by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Pursuant to Defendant's unopposed request, the Court hereby continues Defendant's motion to compel discovery regarding selective prosecution 59 66 from March 24, 2023 to April 5, 2023 at 2:30 p.m. IT IS SO ORDERED. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (kti) TEXT ONLY ENTRY (Entered: 03/22/2023) |
| 04/05/2023 | 103 | STIPULATION to Continue Trial Date from April 25, 2023 to August 8, 2023 filed by Plaintiff USA as to Defendant Yasiel Puig Valdes (Attachments: # 1 Proposed Order) (Mitchell, Jeff) (Entered: 04/05/2023) |
| 04/05/2023 | 104 | MINUTES OF DEFENDANT'S MOTION TO COMPEL DISCOVERY REGARDING SELECTIVE PROSECUTION 59 66 held before Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Following oral argument, the Court advises counsel that the motion shall be taken under submission and a written order will issue. Taking under advisement 59 MOTION to Compel as to Yasiel Puig Valdes (1); Taking under advisement 66 MOTION for Order for TO COMPEL DISCOVERY REGARDING SELECTIVE PROSECUTION as to Yasiel Puig Valdes (1) Court Reporter: Miranda Algorri. (rolm) (Entered: 04/06/2023) |
| 04/07/2023 | 105 | ORDER CONTINUING TRIAL DATE AND FINDINGS REGARDING EXCLUDABLE TIME PERIODS PURSUANT TO SPEEDY TRIAL ACT by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Jury Trial is continued to 8/8/2023 08:30 AM before Judge Dolly M. Gee. Pretrial Conference is continued to 7/26/2023 02:00 PM before Judge Dolly M. Gee. (gk) (Entered: 04/07/2023) |
| 04/10/2023 | 106 | MINUTES (IN CHAMBERS) ORDER DENYING DEFENDANT'S MOTION TO COMPEL 59 66 by Judge Dolly M. Gee as to Yasiel Puig Valdes (1). Because Puig has not come forward with some credible evidence of discriminatory intent and effect, the Court respectfully DENIES the motion to compel. IT IS SO ORDERED. (See order for details.) (kti) (Entered: 04/10/2023) |
| 04/25/2023 | 107 | NOTICE of Manual Filing of Under seal documents filed by Plaintiff USA as to Defendant Yasiel Puig Valdes (Mitchell, Jeff) (Entered: 04/25/2023) |
| 04/25/2023 | 108 | SEALED - EX PARTE APPLICATION (bm) (Entered: 04/25/2023) |
| 04/25/2023 | 109 | SEALED - ORDER (bm) (Entered: 04/25/2023) |
| 06/01/2023 | 110 | NOTICE OF MOTION AND MOTION for Order for Regarding Knowing Breach of Plea Agreement Filed by Plaintiff USA as to Defendant Yasiel Puig Valdes. Motion set for hearing on 7/5/2023 at 02:30 PM before Judge Dolly M. Gee. (Boyle, Daniel) (Entered: 06/01/2023) |
| 06/12/2023 | 116 | EX PARTE APPLICATION to Strike Government's Motion for Order re Knowing Breach of Plea Agreement, or in the Alternative, to Continue Hearing Date and Briefing Schedule *(ECF No. 110)* Filed by Defendant Yasiel Puig Valdes. (Attachments: # 1 Declaration of Jose R. Nuno, # 2 Proposed Order) (Nuno, Jose) (Entered: 06/12/2023) |
| 06/13/2023 | 117 | OPPOSITION to EX PARTE APPLICATION to Strike Government's Motion for Order re Knowing Breach of Plea Agreement, or in the Alternative, to Continue Hearing Date and |

| | | Briefing Schedule *(ECF No. 110)* [116](#) filed by Plaintiff USA as to Defendant YASIEL PUIG VALDES. (Boyle, Daniel) (Entered: 06/13/2023) |
|---|---|---|
| 06/14/2023 | 118 | ORDER CONTINUING HEARING DATE AND BRIEFING SCHEDULE ON GOVERNMENT'S MOTION RE DEFENDANT'S KNOWING BREACH OF PLEA AGREEMENT by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Upon Defendant's Ex Parte Application for an order striking the Government's 6/1/2023 Motion for Order re: Defendant's Knowing Breach of Plea Agreement or in the alternative, an order continuing the hearing date and briefing schedule 116 , IT IS HEREBY ORDERED that the hearing on the Government's Motion 110 is continued to 7/19/2023 at 11:00 AM. Puig's deadline to oppose the Motion is 7/5/2023; the Government's reply brief deadline is 7/12/2023. (gk) (Entered: 06/14/2023) |
| 06/15/2023 | 120 | EX PARTE APPLICATION to Continue Trial Date from August 8, 2023 to November 27, 2023. Filed by Defendant Yasiel Puig Valdes. (Attachments: # 1 Declaration of Jose R. Nuno, # 2 Exhibit A, # 3 Exhibit B, # 4 Proposed Order) (Axel, Keri) (Entered: 06/15/2023) |
| 06/16/2023 | 121 | REPLY in opposition to EX PARTE APPLICATION to Continue Trial Date from August 8, 2023 to November 27, 2023. 120 filed by Plaintiff USA as to Defendant YASIEL PUIG VALDES. (Boyle, Daniel) (Entered: 06/16/2023) |
| 06/20/2023 | 122 | REPLY In Support of EX PARTE APPLICATION to Continue Trial Date from August 8, 2023 to November 27, 2023. 120 filed by Defendant Yasiel Puig Valdes. (Axel, Keri) (Entered: 06/20/2023) |
| 06/26/2023 | 123 | ORDER GRANTING EX PARTE APPLICATION TO CONTINUE TRIAL DATE by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Upon Defendant's Ex Parte Application 120 , IT IS HEREBY ORDERED that the trial in this case is continued to a date to be mutually agreed upon by the parties. Defendant shall file a written Speedy Trial Act waiver in conjunction with any stipulation regarding the new trial date. If the parties are unable to agree on a new trial date, they shall appear for a Status Conference on 6/30/2023 at 11:00 AM. (gk) (Entered: 06/26/2023) |
| 06/30/2023 | 125 | MINUTES OF Status Conference held before Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. The Court and counsel confer regarding the status of the case. Following discussions with counsel, the Court continues the Pretrial Conference to 1/3/2024 02:30 PM before Judge Dolly M. Gee. Jury Trial is continued to 1/16/2024 08:30 AM before Judge Dolly M. Gee. Pretrial motions are due by 12/13/2023, and oppositions are due by 12/20/2023. By 7/7/2023, the parties shall file a stipulation for the briefing schedule with Defendant's signed waiver of the Speedy Trial Act and proposed order re excludable time. Court Reporter: Amy Diaz. (gk) (Entered: 07/03/2023) |
| 07/05/2023 | 126 | NOTICE of Manual Filing of Suarez Declaration filed by Defendant Yasiel Puig Valdes (Axel, Keri) (Entered: 07/05/2023) |
| 07/05/2023 | 127 | NOTICE filed by Defendant Yasiel Puig Valdes *NOTICE OF WITHDRAWAL OF CONSENT TO PLEA AGREEMENT*, Re: Plea Agreement 6 (Axel, Keri) (Entered: 07/05/2023) |
| 07/05/2023 | 128 | OPPOSITION to NOTICE OF MOTION AND MOTION for Order for Regarding Knowing Breach of Plea Agreement 110 filed by Defendant Yasiel Puig Valdes. (Attachments: # 1 Declaration of Keri Curtis Axel, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Declaration of Anthony Fernandez)(Axel, Keri) (Entered: 07/05/2023) |
| 07/06/2023 | 129 | SEALED - YASIEL PUIG'S EX-PARTE APPLICATION FOR ORDER SEALING DECLARATION OF PAOLA A. SUAREZ, PHD (bm) (Entered: 07/07/2023) |

| 07/06/2023 | 130 | SEALED - DECLARATION OF JOSE R. NUNO IN SUPPORT OF DEFENDANT YASIEL PUIG VALDES' APPLICATION TO SEAL DECLARATION OF PAOLA A. SUAREZ, PHD (bm) (Entered: 07/07/2023) |
| 07/06/2023 | 131 | SEALED - ORDER GRANTING DEFENDANT YASIEL PUIG'S EX PARTE APPLICATION FOR ORDER SEALING DECLARATION OF PAOLA A. SUAREZ, PHD 126 (bm) (Entered: 07/07/2023) |
| 07/06/2023 | 132 | SEALED - DECLARATION PAOLA A. SUAREZ, PHD REGARDING GOVERNMENT'S MOTION FOR ORDER RE ADMISSION OF FACTUAL BASIS (bm) (Entered: 07/07/2023) |
| 07/12/2023 | 133 | EX PARTE APPLICATION for Order for PERMITTING LATE FILING Filed by Plaintiff USA as to Defendant Yasiel Puig Valdes. (Attachments: # 1 Proposed Order) (Mitchell, Jeff) (Entered: 07/12/2023) |
| 07/12/2023 | 134 | STIPULATION to Continue Trial Date from August 8, 2023 to January 16, 2024 filed by Plaintiff USA as to Defendant Yasiel Puig Valdes (Attachments: # 1 Proposed Order) (Mitchell, Jeff) (Entered: 07/12/2023) |
| 07/12/2023 | 135 | REPLY In Support Of NOTICE OF MOTION AND MOTION for Order for Regarding Knowing Breach of Plea Agreement 110 filed by Plaintiff USA as to Defendant Yasiel Puig Valdes. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Boyle, Daniel) (Entered: 07/12/2023) |
| 07/12/2023 | 136 | ORDER PERMITTING LATE FILING by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Upon Plaintiff's Ex Parte Application 133 , the Court accepts the late filing and extends the deadline to file the stipulation with motion schedule and proposed order with the Speedy Trial Waivers to 7/12/2023. (gk) (Entered: 07/13/2023) |
| 07/12/2023 | 137 | ORDER CONTINUING TRIAL DATE AND FINDINGS REGARDING EXCLUDABLE TIME PERIODS PURSUANT TO SPEEDY TRIAL ACT by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Jury Trial is continued to 1/16/2024 08:30 AM before Judge Dolly M. Gee. Pretrial Conference is continued to 1/3/2024 02:30 PM before Judge Dolly M. Gee. (gk) (Entered: 07/13/2023) |
| 07/17/2023 | 138 | EX PARTE APPLICATION for Leave to File Sur-Reply. Filed by Defendant Yasiel Puig Valdes. (Attachments: # 1 Declaration of Keri Curtis Axel, # 2 Exhibit A, # 3 Proposed Order) (Axel, Keri) (Entered: 07/17/2023) |
| 07/18/2023 | 139 | ORDER GRANTING DEFENDANT YASIEL PUIG'S EX PARTE APPLICATION FOR LEAVE TO FILE SUR-REPLY by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Defendant's Ex Parte Application for Leave to File a Sur-Reply 138 is GRANTED. Puig may file separately on the docket forthwith the sur-reply, in the form attached to Puig's ex parte application. (gk) (Entered: 07/18/2023) |
| 07/18/2023 | 140 | REPLY RE NOTICE OF MOTION AND MOTION for Order for Regarding Knowing Breach of Plea Agreement 110 filed by Defendant Yasiel Puig Valdes. (Axel, Keri) (Entered: 07/18/2023) |
| 07/19/2023 | 141 | MINUTES OF Motion Hearing held before Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes RE: Government's Motion for Order Re Defendant's Knowing Breach of Plea Agreement 110 . The Court invites counsel to respond to the tentative ruling. Following oral argument, the Court advises counsel that the motion shall be taken under submission and a written order will issue. Court Reporter: Marea Woolrich. (gk) (Entered: 07/20/2023) |

| 08/02/2023 | 142 | NOTICE OF MOTION AND MOTION to Compel Discovery Filed by Defendant Yasiel Puig Valdes. Motion set for hearing on 8/30/2023 at 01:30 PM before Judge Dolly M. Gee. (Attachments: # 1 Declaration of Keri Curtis Axel, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4) (Axel, Keri) (Entered: 08/02/2023) |
|---|---|---|
| 08/10/2023 | 143 | MINUTES (IN CHAMBERS) ORDER DENYING MOTION TO FIND KNOWING BREACH OF PLEA AGREEMENT AND AMENDING ORDER GRANTING MOTION TO FIND BREACH OF PLEA AGREEMENT by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Because the plea agreement was never accepted by the Court, the Court finds that its terms were unenforceable and, on that basis, DENIES the Government's Motion to find that the breach was "knowing," so that it may rely on the factual basis of the Agreement as trial evidence 110 . The order finding a breach of the plea agreement is hereby AMENDED to reflect that the plea agreement was not breached, but was unenforceable for the reasons stated in this order, such that the Government was relieved of its obligations under that agreement 51 . See document for further details. (gk) (Entered: 08/10/2023) |
| 08/15/2023 | 144 | TRANSCRIPT ORDER as to Defendant Yasiel Puig Valdes DCN number: R23CACA1323 for Court Reporter. Order for: Criminal Non Appeal.(Mitchell, Jeff) (Entered: 08/15/2023) |
| 08/16/2023 | 145 | OPPOSITION to NOTICE OF MOTION AND MOTION to Compel Discovery 142 (Attachments: # 1 Exhibit A)(Boyle, Daniel) (Entered: 08/16/2023) |
| 08/18/2023 | 146 | Notice of Appearance or Withdrawal of Counsel: for attorney Riley Portz Smith counsel for Defendant Yasiel Puig Valdes. Adding Riley P. Smith as counsel of record for Yasiel Puig Valdes for the reason indicated in the G-123 Notice. Filed by Defendant Yasiel Puig Valdes. (Attorney Riley Portz Smith added to party Yasiel Puig Valdes(pty:dft))(Smith, Riley) (Entered: 08/18/2023) |
| 08/23/2023 | 147 | REPLY In Support Of NOTICE OF MOTION AND MOTION to Compel Discovery 142 filed by Defendant Yasiel Puig. (Axel, Keri) (Entered: 08/23/2023) |
| 08/24/2023 | 148 | NOTICE OF MOTION AND MOTION for Reconsideration re Order on Motion for Order,,, 143 Filed by Plaintiff USA as to Defendant Yasiel Puig Valdes. Motion set for hearing on 10/11/2023 at 02:30 PM before Judge Dolly M. Gee. (Boyle, Daniel) (Entered: 08/24/2023) |
| 08/24/2023 | 149 | STIPULATION for Order SETTING BRIEFING SCHEDULE ON MOTION filed by Plaintiff USA as to Defendant Yasiel Puig Valdes (Attachments: # 1 Proposed Order) (Boyle, Daniel) (Entered: 08/24/2023) |
| 08/25/2023 | 150 | ORDER SETTING BRIEFING SCHEDULE ON MOTION by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Upon Stipulation 149 , IT IS HEREBY ORDERED that the Government's Motion for Partial Reconsideration and Clarification (the "Motion") 148 , shall be filed no later than 8/24/2023; Defendant's opposition to the Motion shall be filed no later than 9/20/2023; The Government's reply, if any, shall be filed no later than 9/27/2023; and If the Court elects to hear argument, the Motion shall be heard on 10/4/2023 at 02:30 PM before Judge Dolly M. Gee. (gk) (Entered: 08/25/2023) |
| 08/28/2023 | 151 | MINUTES (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL DISCOVERY REGARDING 1/27/2022 INTERVIEW by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. On 1/27/2022, Defendant Yasiel Puig Valdes was interviewed by members of the Department of Homeland Security, the Internal Revenue Service, and the U.S. Attorney's Office for the Central District of California in connection with their investigation into illegal sports gambling and money laundering. Puig moves to compel the production of interview-related materials authored |

| | | |
|---|---|---|
| | | by various Government representatives who participated in the interview, specifically, notes, outlines and draft outlines summarizing the interview, Government outlines and other preparation material used for questioning Puig, and correspondence between Government agents and attorneys that contain or refer to the substance of the interview 142 . The motion to compel is GRANTED IN PART. The Government shall disclose the portion of any written record containing the substance of Puig's oral statement, specifically relevant portions of the notes regarding the January 2022 interview of Puig, consistent with Fed. R. Crim. P. 16(a)(1)(B)(ii). Puig's motion is otherwise DENIED. The 8/30/2023 hearing is VACATED. (gk) (Entered: 08/28/2023) |
| 09/15/2023 | 152 | TRANSCRIPT filed as to Defendant Yasiel Puig Valdes for proceedings held on 7/19/2023, 11:07 a.m. Court Reporter: Marea Woolrich, phone number mareawoolrich@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Electronic Court Recorder before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 10/6/2023. Redacted Transcript Deadline set for 10/16/2023. Release of Transcript Restriction set for 12/14/2023.(mwo) (Entered: 09/15/2023) |
| 09/15/2023 | 153 | NOTICE OF FILING TRANSCRIPT filed as to Defendant Yasiel Puig Valdes for proceedings 7/19/2023, 11:07 a.m. re Transcript 152 THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (mwo) TEXT ONLY ENTRY (Entered: 09/15/2023) |
| 09/20/2023 | 154 | OPPOSITION to NOTICE OF MOTION AND MOTION for Reconsideration re Order on Motion for Order,,, 143 148 filed by Defendant Yasiel Puig Valdes. (Axel, Keri) (Entered: 09/20/2023) |
| 09/27/2023 | 155 | REPLY in Support of NOTICE OF MOTION AND MOTION for Reconsideration re Order on Motion for Order,,, 143 148 (Boyle, Daniel) (Entered: 09/27/2023) |
| 10/02/2023 | 156 | EX PARTE APPLICATION to Continue Hearing Date from October 4, 2023 to October 25, 2023. RE: NOTICE OF MOTION AND MOTION for Reconsideration re Order on Motion for Order,,, 143 148 . Filed by Defendant Yasiel Puig Valdes. (Attachments: # 1 Declaration of Riley P. Smith, # 2 Exhibit 1, # 3 Proposed Order) (Axel, Keri) (Entered: 10/02/2023) |
| 10/03/2023 | 157 | MINUTES (IN CHAMBERS) ORDER TAKING MOTION FOR RECONSIDERATION UNDER SUBMISSION, VACATING HEARING, AND DENYING EX PARTE APPLICATION TO CONTINUE HEARING DATE by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. The Court finds that the Government's motion for reconsideration 148 set for hearing on 10/4/2023, is appropriate for decision without oral argument. Accordingly, the motion is taken UNDER SUBMISSION, and the hearing is VACATED. The ex parte application to continue the hearing date 156 is DENIED as moot. (gk) (Entered: 10/03/2023) |
| 10/05/2023 | 161 | MINUTES (IN CHAMBERS) ORDER DENYING MOTION FOR PARTIAL RECONSIDERATION 148 by Judge Dolly M. Gee as to Yasiel Puig Valdes (1). The MFR is respectfully DENIED. IT IS SO ORDERED. (See order for details.) (kti) (Entered: 10/05/2023) |
| 11/01/2023 | 165 | NOTICE OF APPEAL to Appellate Court filed by Plaintiff USA as to Defendant Yasiel Puig Valdes. Filing fee WAIVED. (Mitchell, Jeff) (Entered: 11/01/2023) |
| 11/01/2023 | 166 | NOTIFICATION by Circuit Court of Appellate Docket Number 23-3214 as to Defendant Yasiel Puig Valdes, 9th CCA regarding Notice of Appeal to USCA - Final Judgment 165 . (mat) (Entered: 11/02/2023) |

ER 300

| | | |
|---|---|---|
| 11/06/2023 | 167 | 18 U.S.C. 3731 CERTIFICATION filed by Plaintiff USA as to Defendant Yasiel Puig Valdes Re: Notice of Appeal to USCA - Final Judgment 165 (Mitchell, Jeff) (Entered: 11/06/2023) |
| 11/06/2023 | 168 | DESIGNATION OF RECORD ON APPEAL filed by Plaintiff USA as to Defendant Yasiel Puig Valdes re Notice of Appeal to USCA - Final Judgment 165 (Mitchell, Jeff) (Entered: 11/06/2023) |
| 11/07/2023 | 169 | 18 U.S.C. 3731 CERTIFICATION (AMENDED) filed by Plaintiff USA as to Defendant Yasiel Puig Valdes Re: Notice of Appeal to USCA - Final Judgment 165 (Mitchell, Jeff) (Entered: 11/07/2023) |
| 11/13/2023 | 170 | NOTICE TO FILER OF DEFICIENCIES in Filed Document RE: Miscellaneous Document 167 . The following error(s) was/were found: Local Rule 11-3.8 title page is missing, incomplete, or incorrect. Other error(s) with document(s): No Title/Caption Page per Local Rule 11-3.8.. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (mat) (Entered: 11/13/2023) |
| 11/13/2023 | 171 | NOTICE TO FILER OF DEFICIENCIES in Filed Document RE: Miscellaneous Document 169 . The following error(s) was/were found: Local Rule 11-3.8 title page is missing, incomplete, or incorrect. Other error(s) with document(s): No Title/Caption Page per Local Rule 11-3.8.. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (mat) (Entered: 11/13/2023) |
| 11/29/2023 | 172 | EX PARTE APPLICATION for Order for MODIFIED PROTECTIVE ORDER REGARDING DISCOVERY Filed by Plaintiff USA as to Defendant Yasiel Puig Valdes. (Attachments: # 1 Proposed Order) (Mitchell, Jeff) (Entered: 11/29/2023) |
| 11/30/2023 | 173 | EX PARTE APPLICATION for Extension of Time to File Response/Reply as to EX PARTE APPLICATION for Order for MODIFIED PROTECTIVE ORDER REGARDING DISCOVERY 172 Filed by Defendant Yasiel Puig Valdes. (Attachments: # 1 Declaration of Jose R. Nuno, # 2 Exhibit A, # 3 Proposed Order) (Nuno, Jose) (Entered: 11/30/2023) |
| 12/01/2023 | 174 | ORDER GRANTING YASIEL PUIG'S UNOPPOSED EX PARTE APPLICATION TO EXTEND TIME TO RESPOND TO GOVERNMENT'S EX PARTE APPLICATION by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. The Court, having considered Defendant Yasiel Puig's unopposed ex parte application 173 , IT IS HEREBY ORDERED that Puig's deadline to oppose the Government's 11/29/2023 Ex Parte Application for Modified Protective Order 172 is continued until 12/6/2023. (gk) (Entered: 12/01/2023) |
| 12/01/2023 | 175 | TRANSCRIPT ORDER as to Defendant Yasiel Puig Valdes for Court Reporter. Order for: Criminal Non Appeal. Court will contact Roberts Fernandez at Robert.fernandez@tr.com with further instructions regarding this order. Transcript preparation will not begin until payment has been satisfied with the court reporter.(aa) (Entered: 12/01/2023) |
| 12/06/2023 | 176 | MEMORANDUM in Opposition to EX PARTE APPLICATION for Order for MODIFIED PROTECTIVE ORDER REGARDING DISCOVERY 172 filed by Defendant Yasiel Puig Valdes. (Attachments: # 1 Declaration of Jose R. Nuno, # 2 Exhibit A, # 3 Exhibit B)(Nuno, Jose) (Entered: 12/06/2023) |
| 12/07/2023 | 177 | RESPONSE to Memorandum in Opposition to Motion, 176 ,filed by Plaintiff USA as to Defendant Yasiel Puig Valdes (Mitchell, Jeff) (Entered: 12/07/2023) |

| 12/07/2023 | 178 | EX PARTE APPLICATION to Vacate TRIAL DATE AND MOTION SCHEDULE Filed by Plaintiff USA as to Defendant Yasiel Puig Valdes. (Attachments: # 1 Proposed Order) (Boyle, Daniel) (Entered: 12/07/2023) |
| 12/08/2023 | 179 | OPPOSITION to EX PARTE APPLICATION to Vacate TRIAL DATE AND MOTION SCHEDULE 178 filed by Defendant Yasiel Puig Valdes. (Axel, Keri) (Entered: 12/08/2023) |
| 12/11/2023 | 180 | REPLY in Support of EX PARTE APPLICATION to Vacate TRIAL DATE AND MOTION SCHEDULE 178 (Boyle, Daniel) (Entered: 12/11/2023) |
| 12/12/2023 | 181 | ORDER VACATING TRIAL DATE AND FINDINGS REGARDING EXCLUDABLE TIME PERIODS PURSUANT TO SPEEDY TRIAL ACT by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes. Upon the Government's Ex Parte Application 178 , the trial date and all pending pretrial deadlines in this matter are VACATED, pending resolution of the Government's interlocutory appeal. The Government shall notify the Court within five days of the resolution of the Government's interlocutory appeal. At the conclusion of the appeal, the parties shall meet and confer and request either a status conference or file a stipulation to set a new pretrial conference and trial date. (gk) (Entered: 12/13/2023) |
| 12/13/2023 | 182 | MODIFIED PROTECTIVE ORDER REGARDING DISCOVERY CONTAINING CONFIDENTIAL INFORMATION by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes, re Plaintiff's Ex Parte Application 172 . See document for details. (gk) (Entered: 12/14/2023) |
| 12/14/2023 | 183 | MODIFIED PROTECTIVE ORDER REGARDING DISCOVERY CONTAINING CONFIDENTIAL INFORMATION by Judge Dolly M. Gee as to Defendant Yasiel Puig Valdes, re Plaintiff's Ex Parte Application 172 . See document for details. (gk) (Entered: 12/15/2023) |

| **PACER Service Center** | | |
| **Transaction Receipt** | | |
| 01/10/2024 14:21:12 | | |
| **PACER Login:** | rsrinivasan | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cr-00394-DMG End date: 1/10/2024 |
| **Billable Pages:** | 15 | **Cost:** | 1.50 |